1  Dan Stormer, Esq. [S.B. #101967]
2  Rebecca Brown, Esq. [S.B. #336638]
   HADSELL STORMER RENICK & DAI LLP
3  128 N. Fair Oaks Avenue
   Pasadena, California 91103
4  T: (626) 585-9600 / F: (626) 577-7079
   Emails: dstormer@hadsellstormer.com
5          rbrown@hadsellstormer.com

6  Attorneys for Defendant
   PEOPLE'S CITY COUNCIL

7

8                 UNITED STATES DISTRICT COURT
                 CENTRAL DISTRICT OF CALIFORNIA
9

10 MATTHEW WEINBERG,                      Case No.: 2:25-cv-03714
   RABBI DOVID GUREVICH,
11 NIR HOFTMAN,
   ELI TSIVES,                           DEFENDANT PEOPLE'S CITY
12                                        COUNCIL'S NOTICE OF MOTION
              Plaintiffs,                 AND MOTION TO DISMISS FIRST
13                                        AMENDED COMPLAINT
              v.
14
   NATIONAL STUDENTS FOR JUSTICE IN
15 PALESTINE, JOHN DOE #1, PRESIDENT      Date:          Nov. 24, 2025
   OF THE UCLA CHAPTER OF SJP, AJP        Time:          9:00 a.m.
16 EDUCATIONAL FOUNDATION, INC.,          Courtroom:     7C
   D/B/A AMERICAN MUSLIMS FOR
17 PALESTINE, OSAMA ABURSHAID,
   HATEM AL-BAZIAN, FACULTY FOR           Complaint Filed:    April 25, 2025
18 JUSTICE IN PALESTIBE NEWTWORK,
   UC DIVEST COALITION, WESPAC
19 FOUNDATION, PEOPLE'S CITY
   COUNCIL,
20
              Defendants
21

22

23

24

25

26

27

28
   _____
   DEFT PEOPLE'S CITY COUNCIL'S MTN
   TO DISMISS FAC

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on November 24, 2025 at 9:00 a.m., or as soon thereafter as the matter may be heard in the above entitled court, located at First Street Courthouse, 350 West First Street, Courtroom 7C, Los Angeles, California 90012, Defendant People's City Council will move the Court to dismiss Plaintiffs' First Amended Complaint without leave to amend pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). Specifically, Defendant People's City Council respectfully request this Court dismiss the First Amended Complaint without leave to amend and those claims for relief for the following reasons:

1. Plaintiffs cannot bring a section 1985(3) conspiracy claim based on People's City Council's First Amendment protected speech and advocacy;
2. Plaintiffs fail to state a claim against People's City Council; and
3. Plaintiffs lack standing to sue People's City Council.

The Motion is made following a meet and confer regarding the substance of the Motion between Defendant's counsel and Plaintiffs' counsel, on October 16, 2025, in accordance with Local Rule 7-3.

The Motion is based upon this Notice of and Motion to Dismiss the First Amended Complaint, the Memorandum of Points and Authorities filed herewith, Declaration of Rebecca Brown, and the pleadings and papers filed herein.

Respectfully Submitted,

Dated: October 27, 2025                HADSELL STORMER RENICK & DAI LLP


By: /s/ Rebecca Brown
Dan Stormer
Rebecca Brown
Attorneys for Defendant

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ......................................................................... ii

I.   INTRODUCTION ............................................................................ 1

II.  RELEVANT FACTUAL BACKGROUND ........................................ 2

III. LEGAL STANDARD ...................................................................... 4

IV.  ARGUMENT ................................................................................ 5

1.  Plaintiffs Cannot Bring a Section 1985(3) Conspiracy Claim Based on People's City Council's First Amendment Protected Speech and Advocacy ..................................................................................... 5

2.  Plaintiffs Fail to State a Claim Against People's City Council ........................ 10

A.  Plaintiffs Fail to Properly Plead that People's City Council Entered into a Conspiracy ................................................................................. 10

B.  Plaintiffs Do Not Properly Plead a Purpose of Depriving Plaintiffs of Equal Protection or Interfering with the Exercise of a Constitutional Right ..... 12

C.  Plaintiffs' Claim Under the Deprivation Clause Should Be Dismissed Because They Do Not Adequately Allege Racial Animus ................................ 15

D.  Plaintiffs Fail to Properly Plead a Purpose of Interfering with State Law Enforcement Under the Hindrance Clause ............................................. 15

E.  Plaintiffs Fail to Properly Plead that People's City Council Prevented or Hindered Law Enforcement from Protecting Plaintiffs' Rights Under the Hindrance Clause ......................................................................... 16

3.  Plaintiffs Lack Standing to Sue People's City Council Because Their Alleged Injuries Are Not Fairly Traceable to People's City Council's Alleged Conduct ........................................................................ 17

4.  Plaintiffs' First Amended Complaint Should Be Dismissed with Prejudice Against People's City Council Without Leave to Amend ................................ 19

V.  CONCLUSION .............................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

### Federal Cases

*A Soc'y Without a Name, for People without a Home, Millennium Future-Present v. Virginia,*
   655 F.3d 342 (4th Cir. 2011) ................................................................. 12

*Abrams v. United States,*
   250 U.S. 616 (1919) (Holmes, J., dissenting) ...................................... 6

*Adams v. Johnson,*
   355 F.3d 1179 (9th Cir. 2004) .............................................................. 6

*Alaska Right to Life Political Action Comm. v. Feldman,*
   504 F.3d 840 (9th Cir. 2007) .............................................................. 18

*Allen v. Wright,*
   468 U.S. 737 (1984), overruled on other grounds by *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) .................................... 18

*Ashcroft v. Free Speech Coal.,*
   535 U.S. 234 (2002) ........................................................................... 11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................. 5

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ....................................................................... 5, 12

*Black Lives Matter D.C. v. Trump,*
   544 F. Supp. 3d 35 (D.D.C. 2021) ..................................................... 12

*Brandenburg v. Ohio,*
   395 U.S. 444 (1969) ............................................................................. 8

*Bray v. Alexandria Women's Health Clinic,*
   506 U.S. 263 (1993) ......................................................... 13, 14, 15, 16

*Burns v. County of King,*
   883 F.2d 819 (9th Cir. 1989) .............................................................. 11

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*,
  710 F.3d 946 (9th Cir. 2013)....................................................................6

*Clapper v. Amnesty Int'l. USA*,
  568 U.S. 398 (2013) ...............................................................................18

*Conner v. Sticher*,
  801 F.2d 1266 (11th Cir. 1986) ..............................................................19

*Counts v. Meriwether*,
  No. 2:14-cv-00396-SVW-CW, 2015 U.S. Dist. LEXIS 165723 (C.D. Cal.
  June 12, 2015)..........................................................................................20

*Fayer v. Vaughn*,
  649 F.3d 1061 (9th Cir. 2011) (per curiam)........................................5, 16

*Foman v. Davis*,
  371 U.S. 178 (1962) ................................................................................20

*Frankel v. Regents of the Univ. of Cal.*,
  744 F. Supp. 3d 1015 (C.D. Cal. 2024)....................................................6

*Frazier v. Int'l Longshoremen's Union Local # 10*,
  116 F.3d 1485 (9th Cir. 1997) .................................................................12

*Gaetz v. City of Riverside*,
  722 F. Supp. 3d 1054 (C.D. Cal. 2024)...........................................*passim*

*Hess v. Indiana*,
  414 U.S. 105 (1973) ..................................................................................9

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ...................................................................5

*Kurd v. Republic of Turkey*,
  374 F. Supp. 3d 37 (D.D.C. 2019) ...........................................................13

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ................................................................................18

*Illinois ex rel. Madigan v. Telemarketing Associates, Inc.*,
  538 U. S. 600 (2003) .................................................................................7

*Matsumoto v. Labrador*,
  122 F.4th 787 (9th Cir. 2024)..................................................................10

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
    597 U.S. 1 (2022) ........................................................................................ 7

*Nat'l Abortion Fed'n v. Operation Rescue*,
    8 F.3d 680 (9th Cir. 1993) ................................................................. 14, 16

*National Gay Task Force v. Bd. of Education of City of Oklahoma City*,
    729 F.2d 1270 (10th Cir. 1984) .............................................................. 9

*Native Village of Kivalina v. Exxon Mobil Corp.*,
    696 F.3d 849 (9th Cir. 2012) ................................................................ 18

*Sever v. Alaska Pulp Corp.*,
    978 F.2d 1529 (9th Cir. 1992) ....................................................... 11, 17

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*,
    502 U.S. 105 (1991) (Kennedy, J., concurring in judgment) .............. 6

*Sines v. Kessler*,
    324 F. Supp. 3d 765 (W.D. Va. 2018) .................................... 12, 15, 16

*StandWithUs Ctr. for Legal Just. et al. v. Mass. Inst. of Tech.*,
    No. 24-1800, 2025 U.S. App. LEXIS 27390 (1st Cir. Oct. 21, 2025) ... 14, 15, 16

*Steshenko v. Gayrard*,
    70 F. Supp. 3d 979 (N.D. Cal. 2014) .................................................. 21

*Texas v. Johnson*,
    491 U.S. 397 (1989) ............................................................................... 6

*United States v. Alvarez*,
    567 U.S. 709 (2012) ........................................................................... 6, 7

*United States v. Corinthian Colls.*,
    655 F.3d 984 (9th Cir. 2011) ................................................................ 5

*United States v. Miselis*,
    972 F.3d 518 (4th Cir. 2020) ................................................................ 9

*United States v. Rundo*,
    990 F.3d 709 (9th Cir. 2021) ........................................................... 9, 10

*United States v. Stevens*,
    559 U.S. 460 (2010) ........................................................................... 6, 7

*Virginia v. Black*,
    538 U.S. 343 (2003) ............................................................................. 6

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ............................................................ 8

### Federal Statutes and Regulations

Federal Rule of Civil Procedure Rule
    Rule 12(b)(6) ............................................................................. 1, 5, 6

42 U.S.C.
    § 1985(3)...............................................................................*passim*
Anti-Riot Act, 18 U.S.C.
    §§ 2101–2102 ................................................................................ 9

## I.    INTRODUCTION

Plaintiffs allege that by posting on social media about the April 2024 UCLA Palestine solidarity student encampment, collective People's City Council ("PCC") violated the Ku Klux Klan Act of 1871. Over one hundred years ago when white supremacist groups such as the Ku Klux Klan actively attempted to undermine Reconstruction and threaten the lives of African Americans around the country, Congress responded by enacting the Ku Klux Klan Act of 1871, 42 U.S.C. §§ 1985–1986. This Act made it a federal crime to deny any group or individual any of the rights and privileges guaranteed by the United States Constitution. Section 1985(3) of the Act also provides a private right of action against individuals who conspire to deny others their civil rights.

Plaintiffs allege that they were assaulted, threatened, and denied access to parts of UCLA's campus. Plaintiffs attribute these injuries to members of the UCLA student encampment, which ran from April 25, 2024 to the early morning hours of May 2, 2024. Plaintiffs attempt to invoke the Ku Klux Klan Act to hold Defendant PCC liable for these independent actors' alleged actions on the premise that PCC posted on social media about the encampment. As set forth in their First Amended Complaint ("FAC"), Plaintiffs contend that because PCC posted on social media about the encampment, they conspired with the other organizational Defendants to violate Plaintiffs' Thirteenth Amendment rights with antisemitic motives, and eventually caused Plaintiffs' alleged injuries.

Plaintiffs' FAC must be dismissed without leave to amend because it attacks alleged speech and conduct by PCC that is protected under the First Amendment. It is clearly established that expressing support for a protest, promoting it, and even recruiting for it, all of which form the basis of the unlawful conspiracy alleged by Plaintiffs, is advocacy protected by the First Amendment.

The FAC must also be dismissed without leave to amend because Plaintiffs fail to state a claim for a violation of the Ku Klux Klan Act against PCC under the deprivation and hindrance clauses. Plaintiffs claim that they were harmed as a result of PCC's conspiracy with other Defendants to deprive Plaintiffs of their Thirteenth Amendment

rights and to hinder law enforcement from securing Plaintiffs' Thirteenth Amendment rights. However, Plaintiffs fail to allege nonconclusory and specific facts that could plausibly plead many of the elements required for their claims under these two clauses, including: (1) a meeting of the minds; (2) a conspiracy *for the purpose of* depriving Plaintiffs of or interfering with their Thirteenth Amendment rights; (3) motivation by antisemitic animus; (4) into a conspiracy *for the purpose of* hindering law enforcement to interfere with Plaintiffs' Thirteenth Amendment rights; and (5) harm due law enforcement's refusal or inability to protect Plaintiffs' rights.

Finally, the FAC must be dismissed without leave to amend because Plaintiffs lack standing to sue PCC. Plaintiffs lack standing because their alleged injuries are not fairly traceable to PCC's alleged conduct, but rather are the result of independent third party conduct that is wholly unrelated to PCC.

For the reasons set forth below, any further amendment to the complaint would be futile, and the Court should dismiss the FAC as to PCC without leave to amend.

## II.    RELEVANT FACTUAL BACKGROUND

The FAC describes expressive activity at UCLA in April-June 2024, including social media posts, statements, protests, and an encampment. According to the FAC, PCC joined with numerous other Defendant organizations to conspire to deprive Plaintiffs of their equal privileges under the law and to hinder law enforcement from securing Plaintiffs' constitutional rights. This alleged conspiracy is centered around the UCLA Palestine solidarity student encampment. Allegations concerning PCC's role in the conspiracy focus on PCC's social media posts about the encampment. *See, e.g.* Dkt. 54 ¶¶ 14, 62, 64, 103-104, 107, 109, 115, 121-122.

Plaintiffs rely entirely on protected speech activity and conclusory allegations in an attempt to plead the elements of a § 1985(3) conspiracy. For example, Plaintiffs allege that PCC maintains social media accounts and produces a podcast (*Id*. ¶ 50); that PCC collaborated with Students for Justice in Palestine on an Instagram post announcing an encampment at USC that encouraged people to join (*Id*. ¶ 62); that PCC helped "organize"

the encampment and "promote" it on social media (*Id*. ¶¶ 63–64); and that PCC used social media "to plan, execute, supply, reinforce, and 'defend' the encampment;" and encouraged people to show up at the encampment (*Id*. ¶¶ 103–104). Plaintiffs also allege that PCC used social media to solicit equipment for the encampment (*Id*. ¶ 107); published a list of supplies the encampment needed and issued statements purporting to be from the encampment (*Id*. ¶ 111); recruited people to grow the encampment through social media and in the press (*Id*. ¶ 115); and posted statements to social media praising confrontations with the police (*Id*. ¶¶ 121–22, 161). In purely conclusory fashion, Plaintiffs claim that the alleged conspiracy "was driven by racial and ethnic animus against Jews" (*Id*. ¶ 156), "was aimed at interfering with Plaintiffs' rights, as members of the Jewish community, to safely traverse campus and take advantage of UCLA's public facilities free from race-based violence and area denial" (*Id.*), and "the encampment was also squarely aimed at 'preventing or hindering' law-enforcement from securing those same rights for Jews" (*Id*. ¶ 159).

Plaintiffs allege that they suffered injuries as a result of PCC's conspiracy. Plaintiff Hoftman, a professor at UCLA, alleges that he was assaulted by several members of the encampment's security team for "being a Jew walking in an occupied area." *Id*. ¶ 132. Plaintiff Weinberg, a law student at UCLA, alleges that he feared that "appearing at or traveling through the part of campus over which Defendants had conspired to exercise control would threaten his physical safety." *Id*. ¶ 138. Notably, the FAC admits that Weinberg never attempted to enter the encampment or nearby area. *Id*. ¶¶ 139-140. Plaintiff Gurevich, a rabbi at UCLA, alleges that at a June 10, 2024 action, an individual slapped his phone out of his hand and that others threatened him because he is "a Jew who exercised his right to express support for UCLA's Jewish students and to appear in public at a public space." *Id*. ¶¶ 142-143. Plaintiff Tsives, a student at UCLA, alleges that whenever he "attempted to pass through one of the 'checkpoints' surrounding the encampment, he was either physically blocked by uniformed members of the encampment's 'security team' at point of entry or surrounded and forced out of the area

by a 'human phalanx' shortly after." *Id.* ¶ 145.

Notably, what is not pled in the FAC is any nonconclusory allegations of any meeting of the minds between PCC and any other Defendant to carry out the alleged conspiracies. Likewise, the FAC does not contain any specific facts that allege PCC entered into a conspiracy for the purpose of depriving Plaintiffs of equal protection under the law or for the purpose of hindering law enforcement from protecting Plaintiffs' constitutional rights. The FAC is also absent of any nonconclusory allegations that PCC was motivated by racial animus. Plaintiffs do not allege anywhere in the FAC that they were harmed because law enforcement refused or was unable to protect their rights. Finally, the FAC does not set forth any specific facts that show that any member of PCC was involved in any of Plaintiffs' alleged injuries, or that any of the independent, third party actors who allegedly caused Plaintiffs' injuries was motivated or aided by PCC to do so.

## III.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim meets the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *United States v. Corinthian Colls.*, 655 F.3d 984, 991 (9th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

While courts "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party," *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005), courts are not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations," *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam). Mere "conclusory allegations

1  of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams*

2  *v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). A court may dismiss a complaint under

3  Rule 12(b)(6) based on either (1) lack of a cognizable legal theory or (2) insufficient facts

4  under a cognizable legal theory. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710

5  F.3d 946, 956 (9th Cir. 2013).

6  **IV.    ARGUMENT**

7  **1.    Plaintiffs Cannot Bring a Section 1985(3) Conspiracy Claim Based on**

8  **People's City Council's First Amendment Protected Speech and Advocacy**

9  "'If there is a bedrock principle underlying the First Amendment, it is that the

10  government may not prohibit the expression of an idea simply because society finds the

11  idea itself offensive or disagreeable.'" *Frankel v. Regents of the Univ. of Cal.*, 744 F.

12  Supp. 3d 1015, 1021 n.2 (C.D. Cal. 2024) (quoting *Texas v. Johnson*, 491 U.S. 397, 414

13  (1989)). "'The hallmark of the protection of free speech is to allow "free trade in ideas"—

14  even ideas that the overwhelming majority of people might find distasteful or

15  discomforting.'" *Id.* (quoting *Virginia v. Black*, 538 U.S. 343, 358 (2003), in turn quoting

16  *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting)).

17  The First Amendment protects all speech except speech historically and

18  traditionally recognized as being excluded: those "'historic and traditional categories long

19  familiar to the bar.'" *United States v. Stevens*, 559 U.S. 460, 468 (2010) (quoting *Simon &*

20  *Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 127 (1991)

21  (Kennedy, J., concurring in judgment)). Those categories include: (1) incitement to

22  imminent lawless action; (2) obscenity; (3) defamation; (4) speech integral to criminal

23  conduct; (5) fighting words; (6) child pornography; (7) fraud; (8) true threats; and (9)

24  speech presenting some grave and imminent threat the Government has the power to

25  prevent. *United States v. Alvarez*, 567 U.S. 709, 717 (2012).

26  There is no First Amendment balancing test; speech either is within one of the

27  categories unprotected by the First Amendment or it is protected. *Stevens*, 559 U.S. at 471

28  (Government cannot restrict speech "so long as [it] is deemed valueless or unnecessary, or

DEFT PEOPLE'S CITY COUNCIL'S MTN
TO DISMISS FAC

5

so long as an ad hoc calculus of costs and benefits tilts in a statute's favor"); *see also Alvarez*, 567 U.S. at 717 ("In light of the substantial and expansive threats to free expression posed by content-based restrictions, this Court has rejected as 'startling and dangerous' a 'free-floating test for First Amendment coverage . . . [based on] an ad hoc balancing of relative social costs and benefits.'" (alterations in original) (quoting *Stevens*, 559 U.S. at 470)).

It is the burden of the party asserting that the speech lacks First Amendment protection to show that it fits within an unprotected category of speech. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022) (citing *Illinois ex rel. Madigan v. Telemarketing Associates, Inc.*, 538 U. S. 600, 620, n. 9 (2003)).

Plaintiffs' rambling, prolix complaint hardly provides clarity as to what they contend is PCC's overt act in furtherance of the vast conspiracy they allege as a § 1985(3) violation. But each nonconclusory allegations about PCC in the complaint is about PCC's speech. It alleges PCC:

- maintains social media accounts and produces a podcast. Dkt. 54 ¶ 50;
- collaborated with Students for Justice in Palestine's national organization "on an Instagram post announcing a 'Popular University for Gaza' encampment at USC that encouraged non-students from around Los Angeles to join the encampment;" *id*. ¶ 62;
- helped "organize" the encampment and "promote" it on social media; *id*. ¶¶ 63–64;
- used social media "to plan, execute, supply, reinforce, and 'defend' the encampment," and encouraged people to show up at the encampment; *id*. ¶¶ 103–104;
- used social media to solicit equipment for the encampment; *id*. ¶ 107;
- published a list of supplies the encampment needed and issued statements purporting to be from the encampment; *id*. ¶ 111;
- recruited people to grow the encampment through social media and in the

1    press; *id*. ¶ 115;

2    • posted statements to social media praising confrontations with the police; *id*.

3        ¶¶ 121–22, 161.

4        The First Amendment protects PCC because none of this speech falls into any of

5    the categories unprotected by the First Amendment. Plaintiffs cannot meet their burden of

6    showing that it does because PCC's speech is not obscene, it is not defamatory, it is not

7    integral to criminal conduct, it is not fighting words, it is not child pornography, it is not

8    fraudulent, it is not true threats, and is presents no grave and imminent threat that the

9    Government has the power to prevent. It is not incitement to imminent lawless action,

10   either, although that exception is most often invoked by those seeking to suppress

11   protected advocacy.

12       The incitement doctrine holds that the First Amendment protects "advocacy of the

13   use of force or of law violation except where such advocacy is directed to inciting or

14   producing imminent lawless action and is likely to incite or produce such action."

15   *Brandenburg v. Ohio,* 395 U.S. 444, 447 (1969). *Brandenburg* involved a Ku Klux Klan

16   leader who spoke at a Klan rally where participants carried firearms and burned large

17   wooden cross. *Id*. at 445. Brandenburg encouraged his fellow Klansmen to "[b]ury the

18   n[***]ers" and "send the Jews back to Israel," promised "[t]his is what we are going to do

19   to the n[***]ers," and said "the n[**]ers should be returned to Africa." *Id*. at 446 n.1. He

20   further promised that "if our President, our Congress, our Supreme Court, continues to

21   suppress the white, Caucasian race, it's possible that there might have to be some

22   revengeance taken." *Id*. On appeal from a conviction under Ohio's Criminal Syndicalism

23   statute, the Supreme Court found all this speech was protected and reversed the conviction

24   because even advocacy of "revengeance" against federal government official is protected

25   unless it is (1) intended to produce (2) imminent (3) illegal action and (4) likely to do so.

26   *Id*. at 448–49. "'Imminent lawless action,' as used in *Brandenburg*, means violence or

27   physical disorder." *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000). And action is not

28   "imminent" merely because it increases the chance that unlawful actions will occur "at

DEFT PEOPLE'S CITY COUNCIL'S MTN
TO DISMISS FAC                                    7

some indefinite future time." *Hess v. Indiana*, 414 U.S. 105, 108 (1973).

Especially when viewed in light of these standards, PCC's social media posts supporting the UCLA encampment protest are protected by the First Amendment.

PCC's speech "promoting" the UCLA protest is protected. *United States v. Rundo*, 990 F.3d 709, 717 (9th Cir. 2021) ("promoting" even criminal activity is protected advocacy, not incitement); *National Gay Task Force v. Bd. of Education of City of Oklahoma City*, 729 F.2d 1270, 1274 (10th Cir. 1984) ("'Promoting,' like 'advocating' does not necessarily imply incitement to imminent action."). "The verb 'promote' occupies an overinclusive position on the continuum of relation between advocacy and action," referring to a "comparable, and perhaps even wider range" of advocacy than "encourage." *United States v. Miselis*, 972 F.3d 518, 536 (4th Cir. 2020).

In *Rundo*, the government indicted four white supremacists for conspiracy to violate the Anti-Riot Act, 18 U.S.C. §§ 2101–2102, for recruiting members, training and preparing them to commit violence at political rallies, and engaging in that political violence by attacking people at rallies in Huntington Beach, San Bernardino, and Berkeley. 990 F.3d at 713. Three of the defendants challenged the law as overbroad under the First Amendment. *Id*. The Ninth Circuit found the act's prohibitions on "urging" a riot, "organizing" a riot, "encouraging" a riot, and "promoting" a riot each violated the First Amendment by criminalizing speech that did not fall within one of the categorical exclusions to the First Amendment, so they could not form the basis of the government's conspiracy theory. *Id*. at 717. Because "[u]rge 'means simply to "encourage," "advocate," "recommend," or "advise … earnestly and with persistence,"' it is protected advocacy. *Id*. (quoting *Miselis*, 972 F.3d at 538) (second alteration in original) (citations omitted). Same with "'organize'" *Id*. So too with "'encourage,'" which "mean[s] '[t]o instigate; to cite to action; to embolden; to help,'" or "'to recommend advise.'" *Id*. (quoting Encourage, Black's Law Dictionary, and Encourage, Oxford English Dictionary). And "[t]he same is true for 'promote,' which is synonymous with 'encourage.'" *Id*. (citing *Miselis*, 972 F.3d at 536–37).

So too for Plaintiffs' allegations that PCC recruited people to join the protest and published a list of supplies the protest needed.[1] Dkt. 54 ¶¶ 103–04, 111. "'[R]ecruiting' has broad contours that overlap extensively with the First Amendment. It sweeps in a large swath of expressive activities—from encouragement, counseling, and emotional support; to education … [and] to public advocacy." *Matsumoto v. Labrador*, 122 F.4th 787, 814–15 (9th Cir. 2024). "The ordinary meaning of the verb 'recruit' is to seek to persuade, enlist, or induce someone to join an undertaking or organization, to participate in an endeavor, or to engage in a particular activity or event." *Id*. (citing Recruit, Oxford English Dictionary; Recruit, Merriam-Webster Dictionary; and Recruit, Cambridge Dictionary). Persuading, enlisting, or inducing someone to join an undertaking or organization, to participate in an endeavor, or to engage in a particular activity or event, is core advocacy protected by the First Amendment.  Recruiting can also include providing advice or information. *Id*. at 809. It can include "'emotional . . . and informational assistance.'" *Id*. It can include providing financial support and logistical assistance. *Id*. at 810. It could include providing legal advice or even "expressions of persuasive encouragement." *Id*. Such "[e]ncouragement, counseling, and emotional support are plainly protected speech under Supreme Court precedent." *Id.* at 811. "This protection includes promotion and urging of particular actions." *Id*. at 812 (citing *Rundo*, 990 F.3d at 717).

---

[1] While conspicuously absent from Plaintiffs' Amended Complaint, PCC's social media post "publish[ing] lists of supplies (including supplies like goggles and shields likely to be used by the encampment's "security teams") was made the day after a mob of thugs armed with batons and explosives waged a four-hour attack on the encampment while law enforcement stood by and watched. *See* Swaine, Natanson, Lee, Cahlan & Baran, *Despite warnings of violence at UCLA, police didn't step in for over 3 hours*, WASHINGTON POST (May 11, 2024), https://www.washingtonpost.com/investigations/2024/05/11/ucla-protests-police-inaction-fights. During the prolonged attack, "at least 16 people were visibly injured, the majority of them pro-Palestinian, including two protesters who could be seen with blood streaking across their faces and soaking into their clothes, videos and images show. The counterprotesters ignited at least six fireworks; struck protesters at least 20 times with wooden planks, metal poles and other objects; and punched or kicked at least eight protesters." *Id*.

Expressing support for a protest, promoting it, and even recruiting for it is advocacy protected by the First Amendment. *Cf. Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002) ("The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it.").

### 2.    Plaintiffs Fail to State a Claim Against People's City Council.

Plaintiffs fail to plead claims against PCC for a conspiracy in violation of the deprivation and hindrance clauses of 42 U.S.C. § 1985(3). To adequately state a claim for violation of the deprivation or hindrance clause, Plaintiffs must plead "plausible allegations—with specific facts" of four elements. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992); 42 U.S.C. § 1985(3). First, Plaintiffs must plead the existence of a conspiracy. *Sever*, 978 F.2d at 1536. Second, Plaintiffs must plead that the conspiracy is "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws" (deprivation clause); or "for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws" (hindrance clause). *Sever*, 978 F.2d at 1536; 42 U.S.C. § 1985(3). Plaintiffs must also plead an act in furtherance of this conspiracy and plead an injury to their person or property or a deprivation of their right. *Sever*, 978 F.2d at 1536. Under the deprivation clause, Plaintiffs also must plead that the deprivation of the right was motivated by racial animus. *Sever*, 978 F.2d at 1536.

### A.    Plaintiffs Fail to Properly Plead that People's City Council Entered into a Conspiracy.

Plaintiffs fail at the outset by failing to properly plead a conspiracy. Plaintiffs "must state specific facts to support the existence of the claimed conspiracy" between PCC and others to deprive Plaintiffs of equal protection under the law (deprivation clause) or to hinder law enforcement from protecting constitutional rights (hindrance clause). *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989). Plaintiffs must plead "plausible allegations—with specific facts—that there was a 'meeting of the minds' or an

'agreement' between" the conspirators. *Gaetz v. City of Riverside,* 722 F. Supp. 3d 1054, 1069 (C.D. Cal. 2024).

Critically, "independent parallel behavior standing alone is not enough" to plead the existence of a conspiracy. *Gaetz,* 722 F. Supp. 3d at 1061 (quotation and citation omitted). For example, the Ninth Circuit ruled that where evidence "shows no more than that some of the various defendants occasionally met with each other and may have discussed [plaintiff's] grievances . . . [it] is not sufficient to support an inference [] of . . . a 'meeting of the minds.'" *Frazier v. Int'l Longshoremen's Union Local # 10*, 116 F.3d 1485 [published in full-text format at 1997 U.S. App. LEXIS 15469, at *11-12] (9th Cir. 1997).

Here, Plaintiffs' repeated allegations that PCC engaged in a coordinated social media campaign with the other Defendants "fail[] because [they are] comprised almost entirely of conclusory allegations unsupported by concrete facts" concerning any agreement. *A Soc'y Without a Name, for People without a Home, Millennium Future-Present v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011). Plaintiffs' "allegations, taken as true, do not show sufficient events, conversations, or documents indicating an agreement or meeting of the minds amongst the defendants to violate plaintiffs' rights based on their membership in a protected class." *Black Lives Matter D.C. v. Trump*, 544 F. Supp. 3d 35, 39 (D.D.C. 2021) (internal quotations and citations omitted).

Likewise, Plaintiffs' allegation that PCC collaborated with the other Defendants to establish the encampment does not sufficiently plead the existence of a conspiracy because it lacks any factual details showing an agreement between PCC and any Defendant. *See Twombly*, 550 U.S. at 556-57 ("conclusory allegation of agreement at some unidentified point does not supply facts adequate to show" an unlawful conspiracy); *see also Sines v. Kessler,* 324 F. Supp. 3d 765, 794 (W.D. Va. 2018) (allegations that the defendants "all agreed and coordinated with and among each other to plan, organize, promote, and commit the unlawful acts that injured Plaintiffs and countless others" were conclusory and "do not plausibly allege that [a defendant] joined the alleged conspiracy").

Plaintiffs make numerous allegations about PCC engaging in parallel behavior with

other Defendants such as offering press statements, participating in media hits, equipping and training "human phalanxes," and organizing "self-defense teams." *Id.* ¶ 115. This independent behavior is not sufficient to establish a conspiracy. *See Gaetz,* 722 F. Supp. 3d at 1061.

Plaintiffs' only specific allegation of PCC making an agreement with any other Defendant is that PCC "collaborated" with Defendant Students for Justice in Palestine ("SJP") on an Instagram post. Dkt. 54 ¶¶ 64, 104, 14 n. 4. Yet Plaintiffs offer no further detail regarding this purported agreement, such as its goal or purpose. At most, all that can be inferred from this allegation is that PCC and SJP agreed to share a social media post. As Plaintiffs' single allegation regarding PCC does not give rise to a plausible suggestion of conspiracy to deprive or interfere with Plaintiffs' rights, the claim against PCC should be dismissed.

## B.    Plaintiffs Do Not Properly Plead a Purpose of Depriving Plaintiffs of Equal Protection or Interfering with the Exercise of a Constitutional Right.

Plaintiffs' deprivation clause claim fails for the independent reason that Plaintiffs do not adequately allege a conspiracy for the purpose of depriving Plaintiffs of equal protection of the laws. Similarly, Plaintiffs also fail to allege a conspiracy under the hindrance clause because they do not allege that the purpose of the conspiracy was to interfere with Plaintiffs' exercise of a constitutional right. "[C]onclusory allegations that the aim of the conspiracy was to curtail Plaintiffs' [constitutional] rights" with no support fail to state a claim. *Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 62 (D.D.C. 2019).

The "'intent to deprive of a right' requirement demands that the defendant do more than merely be aware of a deprivation of right that he causes, and more than merely accept it; *he must act at least in part for the very purpose of producing it*." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 276 (1993) (emphasis added). "A conspiracy is not 'for the purpose' of denying equal protection simply because it has an effect upon a protected right. The right must be 'aimed at' [and] its impairment must be a conscious objective of the enterprise." *Id.* at 275 (citation omitted). For example, "where the effect

of a demonstration, a parade, or picketing interferes with someone's rights, this would not be actionable unless that was the purpose of the conspiracy." *Nat'l Abortion Fed'n v. Operation Rescue*, 8 F.3d 680, 685 (9th Cir. 1993).

The First Circuit's recent decision in the strikingly similar *StandWithUs Ctr. for Legal Just. et al. v. Mass. Inst. of Tech.*, No. 24-1800, 2025 U.S. App. LEXIS 27390 (1st Cir. Oct. 21, 2025), clearly explains why the present case should be dismissed. The *StandWithUs* plaintiffs alleged that students established a multi-day Palestine solidarity encampment on campus. *See* Declaration of Rebecca Brown Ex. 1. The plaintiffs alleged that as a result of the protest activities, they were assaulted, harassed, and felt unsafe on campus. *Id.* at ¶¶ 11, 153-155. The plaintiffs claimed the protesters violated § 1985(3)'s deprivation clause by conspiring to "engage in, promote, and incite racial, religious, and ethnicity-based harassment and violence" motivated by discriminatory animus against Jewish and Israeli members of the MIT community. *Id.* at ¶¶ 271-280.

The First Circuit upheld the District Court's dismissal of the case and determined that "plaintiffs failed to plead that the student activist groups conspired 'for the very purpose' of depriving plaintiffs of their constitutional right to be free from racial violence." *StandWithUs,* 2025 U.S. App. LEXIS 27390, at *48 (quoting *Bray*, 506 U.S. at 276). The Court ruled that "plaintiffs' allegations offer no facts to plausibly suggest that the protestors agreed to target Jewish students, as opposed to agreeing to demand that the university adopt the activists' position regarding the conflict between Israelis and Palestinians." *Id.* at *50-51.

As in *StandWithUs*, "Plaintiffs' theory is particularly implausible given the joint statements from the student groups to which it points as evidence of a conspiracy." *Id.* at *51. Here, Plaintiffs concede that "[t]he purpose [of the encampment] was to cost the university money, to physically disrupt, and to express mass oppositional power." Dkt. 54 ¶ 95k.

In both cases, "[i]n lieu of pointing to any evidence of the student groups' purpose, plaintiffs instead catalogue the harms suffered by Jewish and Israeli students."

*StandWithUs,* 2025 U.S. App. LEXIS 27390, at *51. Here, Plaintiffs attempt to substantiate their claim that "the conspiracy . . . was driven by racial and ethnic animus against Jews . . . and was aimed at interfering with Plaintiffs' rights" by alleging the harm that "the encampment created and expanded a race-based Jew exclusion zone." Dkt. 54 ¶ 156. The First Circuit held that such "conclusory assertions fail to state a claim that impairing the rights of Jewish students was among the student protestors' 'conscious objective[s].'" *StandWithUs,* 2025 U.S. App. LEXIS 27390, at *51 (quoting *Bray*, 506 U.S. at 275-76). If Plaintiffs' rights were in fact violated by individuals at the encampment, they are unable to plead that such a violation was PCC's purpose.

At most, Plaintiffs allege PCC was "merely [] aware of a deprivation of right that [they] cause[d], and [] merely accept[ed] it," which is not enough. *Bray*, 506 U.S. at 276. For example, Plaintiffs allege that Defendants' efforts were "undertaken with the knowledge that the purpose and effect of surging more people into the unlawful encampment would be to deny Jewish students access to an ever-growing area around Royce Quad." Dkt. 54 ¶ 105. This conclusory statement merely alleges knowledge on the part of Defendants, *not that* Defendants' actions were aimed at denying or interfering with Jewish students' access to parts of campus. *Bray,* 506 U.S. at 275-76.

The only specific act that Plaintiffs alleged that PCC took in agreement with another Defendant was to "collaborate" with SJP on a social media post. Dkt. 54 ¶¶ 64, 104, 14 n. 4. Plaintiffs offer no facts alleging that PCC's purpose behind this alleged post was to violate Jewish individuals' rights to be free from racial violence or racially motivated deprivation of the use of public amenities. *See Sines,* 324 F. Supp. 3d at 794 ("His promotion of the event is insufficient to plausibly allege an agreement to commit violence.").

Plaintiffs' allegations that the encampment's organizers "knew from the beginning that they were there for a 'battle'" and they were "eager to fight . . . 'Zionists,'" only allege awareness of possible events and independent parallel interests, but do not allege a conspiracy aimed at depriving Plaintiffs of their Thirteenth Amendment rights. Dkt. 54 ¶

157; *see Bray,* 506 U.S. at 276; *Gaetz,* 722 F. Supp. 3d at 1061. In sum, Plaintiffs cannot
plead the required purpose for a claim under the deprivation or hindrance clause.

### C. Plaintiffs' Claim Under the Deprivation Clause Should Be Dismissed Because They Do Not Adequately Allege Racial Animus.

Plaintiffs' deprivation clause claim also fails for the independent reason that
Plaintiffs do not adequately allege a conspiracy motivated by racial animus. Plaintiffs
"allege no facts plausibly establishing" that PCC's alleged actions were motivated by
antisemitic animus. *Id.* Plaintiffs' allegations that "the conspiracy . . . was driven by racial
and ethnic animus against Jews," and "antisemitic animus," are nothing more than legal
conclusions "cast in the form of factual allegations." Dkt. 54 ¶¶ 156, 105; *Fayer*, 649 F.3d
at 1064; *see StandWithUs,* 2025 U.S. App. LEXIS 27390, at *18. Plaintiffs make no
factual allegations that PCC engaged in any behavior or made any statements that would
even imply an antisemitic racial animus. *See Sines*, 324 F. Supp. 3d at 794 (holding that
allegations that someone associated with the defendant made racist statements were
"insufficient to demonstrate [defendant] had entered an agreement to engage in racial
violence at the events."). Therefore, the deprivation clause claim against PCC should be
dismissed.

### D. Plaintiffs Fail to Properly Plead a Purpose of Interfering with State Law Enforcement Under the Hindrance Clause.

Plaintiffs' hindrance clause claim also fails for the independent reason that
Plaintiffs do not adequately allege purpose of interfering with state law enforcement
"directed at a protected class exercising a constitutional right." *Nat'l Abortions Fed'n,* 8
F.3d at 685 ("the purpose must be to interfere with state law enforcement, not just to
interfere with the persons seeking to exercise their legal rights."). Plaintiffs do not allege
that PCC engaged directly with law enforcement. Plaintiffs do not allege that PCC
physically interfered with law enforcement's response to the encampment, expressed any
intent to do so, or encouraged others to do so. Instead, all Plaintiffs allege is that on May
1, 2024, while law enforcement cleared the encampment, PCC tweeted "KETTLE THE

COPS CHALLENGE—LAPD F**CK OFF." Dkt. 54 ¶ 122. While this tweet expressed a constitutionally protected dislike of law enforcement, it conveys no intent to conspire to interfere with law enforcement, much less any intent to do so with the goal of interfering with Jewish people's constitutional rights. Likewise, Plaintiffs' allegations that a year after the encampment, PCC tweeted a commendation of the "militant resistance of the camp" and that "most beautiful moments of a protest is [sic] when the cops are scared and/or on the run" do not reveal any intent by PCC a year prior to conspire to interfere with law enforcement to interfere with Jewish peoples' rights. *Id.* ¶¶ 121, 122. Plaintiffs also make conclusory allegations such as "it was clear that continued efforts to recruit to the encampment were about building a sufficiently large mass of violent rioters to physically and forcibly resist attempts by police to restore order and protect the civil rights of Jews." *Id.* ¶¶ 105, 163. Plaintiffs are unable to support these allegations with any factual specificity where the court could infer an intent to conspire to interfere with law enforcement. Plaintiffs' allegations of parallel activity such as stockpiling supplies, recruiting attendees, and engaging in a "battle" with law enforcement do not reveal any intent to conspire for the purpose of interfering with law enforcement to interfere with Jewish individuals' constitutional rights. *Id.* ¶¶ 162-163; *see Gaetz,* 722 F. Supp. 3d at 1061. Therefore, the hindrance clause claim against PCC should be dismissed.

**E.    Plaintiffs Fail to Properly Plead that People's City Council Prevented or Hindered Law Enforcement from Protecting Plaintiffs' Rights Under the Hindrance Clause.**

Plaintiffs also fail to allege any actual injury to their person or property because of any conspiracy to prevent or hinder law enforcement from securing their rights. To state a claim for § 1985(3) conspiracy, Plaintiffs must adequately plead that as a result of the conspiracy, they were "either injured in their person or property or deprived of any right or privilege of a citizen of the United States." 42 U.S.C. § 1985(3); *Sever*, 978 F.2d at 1536. Plaintiffs do not allege that they were harmed because law enforcement officers were unable to or refused to protect them. *See* Dkt. 54 ¶¶ 131-147. On the contrary,

Plaintiffs claim that law enforcement did not declare the encampment illegal until May 1, 2024, *six days* after it commenced, and then "successfully swept" the encampment hours after they declared it illegal. *Id.* ¶¶ 14, 10. None of the Plaintiffs allege that they attempted or intended to access Royce Quad, where the encampment was located, in the hours between when law enforcement declared the encampment unlawful on May 1 and cleared the encampment on May 2. *See id.* ¶¶ 132-147. Plaintiffs do not and cannot plead that they were harmed as a result of a conspiracy by PCC to hinder or prevent law enforcement from securing their rights. Therefore, the hindrance clause claim against PCC should be dismissed.

> ### 3.  Plaintiffs Lack Standing to Sue People's City Council Because Their Alleged Injuries Are Not Fairly Traceable to People's City Council's Alleged Conduct.

None of Plaintiffs' pled injuries are traceable to any of PCC's alleged conduct. Standing under Article III requires Plaintiffs to demonstrate a concrete injury that is fairly traceable to the complained-of conduct. *Alaska Right to Life Political Action Comm. v. Feldman*, 504 F.3d 840, 848 (9th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)). The injury pled must "be fairly traceable to the challenged action of the defendant, and not the result of some independent action of some third party not before the court." *Lujan*, 504 at 560-61; *see also Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 414 (2013) (the Court is "reluctan[t] to endorse standing theories that rest on speculation about the decisions of independent actors."). Further, "the line of causation between the [alleged] illegal conduct and injury" must not be "too attenuated." *Allen v. Wright*, 468 U.S. 737, 752 (1984) (concluding that a weak demonstration of causation precludes Article III standing), overruled on other grounds by *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014). Since the line of causation must be more than attenuated, "where the causal chain involves third parties whose numerous independent decisions collectively have a significant effect on plaintiffs' injuries . . . the causal chain [is] too weak to support standing at the pleading stage." *Native Village of*

*Kivalina v. Exxon Mobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012) (citations and quotations omitted).

Plaintiffs plead no concrete injuries fairly traceable to the alleged conspiracy by PCC. Plaintiff Hoftman's pled injuries are that he was assaulted by several members of the encampment. Dkt. 54 ¶ 132. There are no facts alleged that any member of PCC was involved in the alleged assault in any capacity. Plaintiff Tsives' pled injuries are that he was denied access to his ordinary route to class. *Id*. ¶¶ 145-146. There are no facts alleged that any member of PCC was involved in any alleged denial of access to campus. Plaintiff Weinberg does not plead any injury: he does not plead that his right to access public amenities was violated, he only claims that he feared it would be. *Id*. ¶¶ 137-141; *see Conner v. Sticher*, 801 F.2d 1266, 1268 (11th Cir. 1986) (plaintiff's subjective belief that harm may occur provides no basis for relief). Weinberg admits that he ultimately decided to avoid the encampment on his own volition. Dkt. 54 ¶¶ 137-141. There are no facts alleged connecting Plaintiff Weinberg's fear to PCC's actions. Plaintiff Gurevitch's pled injuries are that he was assaulted and subjected to death threats arise from an incident on June 10. *Id*. ¶ 142. The conspiracy allegations against PCC occurred in April-May, there are no facts alleged that connect PCC to the June 10 incident. None of these injuries are fairly traceable to any alleged conduct by PCC. There are no allegations that anyone who caused the alleged injuries is a part of PCC. There are no facts alleged that can plausibly show that PCC controlled or directed, or even encouraged any of the protesters that contributed to the alleged harm by Plaintiffs. There are no facts alleged that anyone saw a PCC social media post, participated in the encampment because they saw a PCC post, harmed Plaintiffs as a result of PCC allegedly organizing the encampment, or harmed Plaintiffs because they received training from PCC.

Plaintiffs' injuries are therefore not fairly traceable to the alleged conduct of PCC, but rather resulted from the acts of unidentified third parties, including the individuals who allegedly assaulted Hoftman and Gurevich and the individuals who allegedly denied campus access to Tsives. PCC had no control over any of these actors, and Plaintiffs fail

to offer a single fact that can plausibly suggest otherwise. As such, Plaintiffs have no standing to bring this suit under 42 U.S.C. § 1985(3), and the claim against PCC must be dismissed.

### 4.    Plaintiffs' First Amended Complaint Should Be Dismissed with Prejudice Against People's City Council Without Leave to Amend

Subsequent amendments cannot cure the severe deficiencies in the FAC. A court may dismiss without leave to amend for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Counts v. Meriwether*, No. 2:14-cv-00396-SVW-CW, 2015 U.S. Dist. LEXIS 165723, at *7–8 (C.D. Cal. June 12, 2015) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Allowing Plaintiffs to amend their complaint against the PCC for a second time would be futile, as no additional facts could cure the irreparable deficiencies in the FAC. *Foman*, 371 U.S. at 182.

Plaintiffs already attempted to cure the deficiencies in their original Complaint by adding numerous additional (but irrelevant) allegations against PCC and elaborating upon their § 1985(3) cause of action. Nonetheless, Plaintiffs still do not—and cannot in good faith—sufficiently allege that PCC entered into a conspiracy with any of the other Defendants "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," motivated by racial animus, or "for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws." 42 U.S.C. § 1985(3). This deficiency is fatal and cannot be cured by further amendment.

Where, as here, "there is no reason to believe that plaintiff[s] could 'cure the deficiencies' in" another, second amended complaint, plaintiffs' complaint must be dismissed with prejudice. *See, e.g., Gaetz,* 722 F. Supp. 3d at 1074 ("Plaintiffs have failed to articulate a viable Section 1985 theory despite filing an amended complaint and an

opportunity to make an offer of proof in the underlying briefing and oral argument . . . the Court finds that further amendment would be futile"); *Steshenko v. Gayrard,* 70 F. Supp. 3d 979, 1000 (N.D. Cal. 2014) (denying leave to amend in a Section 1985(3) case because plaintiff "fails to allege additional facts from which a conspiracy can be plausibly inferred" after the complaint was previously amended once).

## V.    CONCLUSION

For the foregoing reasons, Defendant People's City Council requests that the Court dismiss the First Amended Complaint as to People's City Council without leave to amend.

Respectfully Submitted,

Dated: October 27, 2025            HADSELL STORMER RENICK & DAI LLP

By: /s/ Rebecca Brown
     Dan Stormer
     Rebecca Brown

Attorneys for Defendant People's City Council

## L.R. 11-6.2 Attestation

The undersigned, counsel of record for Defendant People's City Council, certifies that this brief contains 6986 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 27, 2025            HADSELL STORMER RENICK & DAI LLP

By: /s/ Rebecca Brown
     Dan Stormer
     Rebecca Brown

Attorneys for Defendant People's City Council