MARK KLEIMAN (S.B.N. 115919)
KLEIMAN / RAJARAM
12121 WILSHIRE BOULEVARD, # 810
LOS ANGELES, CA 90025
TELEPHONE: (310) 392-5455
FACSIMILE: (310) 306-8491
EMAIL: mark@krlaw.us

Attorneys for Defendant
NATIONAL STUDENTS FOR
JUSTICE IN PALESTINE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW WEINBERG, RABBI DOVID GUREVICH, NIR HOFTMAN, ELI TSIVES,<br><br>        Plaintiffs,<br>    vs.<br>NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, JOHN DOE #1, PRESIDENT OF THE UCLA CHAPTER OF SJP, AJP EDUCATIONAL FOUNDATION, INC., D/B/A AMERICAN MUSLIMS FOR PALESTINE, OSAMA ABURSHAID, HATEM AL-BAZIAN, FACULTY FOR JUSTICE IN PALESTINE NETWORK, UC DIVEST COALITION, WESPAC FOUNDATION, PEOPLE'S CITY COUNCIL,<br><br>        Defendants. | Case No. 2:25-cv-03714 MCS (JCx)<br><br>**DEFENDANT NATIONAL STUDENTS FOR JUSTICE IN PALESTINE'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:   December 8, 2025<br>Time:  9:00 a.m.<br>Courtroom:  7C<br><br>Complaint Filed:  April 25, 2025 |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on Monday, December 8, 2025, at 9:00 a.m. or as soon thereafter as this matter may be heard in Courtroom 7C of the above-entitled Court located at First Street Courthouse, 350 W. 1st Street, Courtroom 7C, Los Angeles, CA 90012, Defendant NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, will and hereby does move the Court to dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

This Motion is made following an earlier meet and confer regarding the substance of the Motion between Defendant's counsel and Plaintiffs' counsel on October 27, 2025, in accordance with Local Rule 7-3.

This motion is based upon this Notice of Motion and Motion to Dismiss Plaintiffs' First Amended Complaint, the attached Memorandum of Points and Authorities filed herewith, the pleadings, papers, files and records in the case, and any evidence or argument that may be presented at a hearing on this matter.


Dated:  October 29, 2025                KLEIMAN RAJARAM


                                        By:_____
                                             Mark Klemian

                                        Attorneys for Defendant
                                        National Students for Justice in Palestine

DEFENDANT NATIONAL STUDENTS FOR JUSTICE IN PALESTINE'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................. 5

MEMORANDUM OF POINTS AND AUTHORITIES ....................................... 8

1. Introduction and Summary of Argument ........................................ 8

2. Plaintiffs' Allegations ....................................................... 8

   a. Plaintiffs' Confused (and Confusing) Pleadings
     Make Summarization Difficult .......................................... 8

   b. Summary of the Allegations .......................................... 9

3. Legal Standards ............................................................ 10

   a. Subject Matter Jurisdiction .......................................... 10

   b. Failure to State Facts Justifying Relief ............................. 11

4. Weinberg Did Not Suffer a Concrete, Particularized Injury
   and Should be Dismissed ................................................... 11

5. Plaintiffs Have Not Made Out A Case Against NSJP ..................... 12

   a. The Failure to Allege That NSJP Caused
     Anything Plaintiffs Are Complaining About ......................... 12

6. Plaintiffs Fail to Allege Facts Plausibly Tying NSJP to a
   Civil Rights Conspiracy ................................................... 14

   a. Plaintiffs' Allegations Against NSJP Do Not Plausibly Show
     a Violation of the Deprivation Clause of 42 U.S.C. § 1985(3) ....... 14

     i) Plaintiffs Fail to Plausibly Allege that NSJP
       Entered Into a Conspiracy ...................................... 15

DEFENDANT NATIONAL STUDENTS FOR JUSTICE IN PALESTINE'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

ii)  Plaintiffs Fail to Plausibly Allege Intent to Infringe an
Actionable Federal or Constitutional Right ........................................... 17

iii) Plaintiffs Fail to Plausibly Allege an Invidiously
Discriminatory Animus Motivated NSJPs
Alleged Conduct ................................................................................ 18

b.  The Allegations Against NSJP Do Not Plausibly Show a
Violation of the Hindrance Clause of 42 U.S.C. § 1985(3) .................... 19

7.  Conclusion ...................................................................................... 20

DEFENDANT NATIONAL STUDENTS FOR JUSTICE IN PALESTINE'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page**

Alaska Right to Life Political Action Comm. v. Feldman,
  504 F.3d 840, 848 (9th Cir. 2007) ........................................................ 10

Appling v. City of L.A.,
  701 F. App'x 622, 626 (9th Cir. 2017) ................................................. 18

Ashcroft v. Iqbal,
  556 U.S. 662, 678 (2009) ...................................................................... 11

Augustine v. U.S.,
  704 F.2d 1074, 1077 (9th Cir. 1983) .................................................... 11

Bell Atl. Corp. v. Twombly,
  550 U.S. 544, 548 (2009) ................................................................. 11,15

Black Lives Matter D.C. v. Trump,
  544 F. Supp. 3d 15 (D.D.C. 2021) ........................................................ 16

Bray v. Alexandria Women's Health Clinic,
  506 U.S. 263 (1993) .............................................................................. 17

Burns v. County of King,
  883 F.2d 819 (9th Cir. 1989) ................................................................ 15

Caldeira v. Cnty. of Kauai,
  866 F.2d 1182 (9th Cir. 1989) .............................................................. 17

Caldwell v. Caldwell,
  545 F.3d 1126, 1133 (9th Cir. 2008) .................................................... 12

Dahlia v. Rodriguez,
  735 F.3d 1060, 1076 (9th Cir. 2013) .................................................... 11

Frazier v. Int'l Longshoremen's Union Local #10,
  116 F. 3d 1485 (9th Cir. 1997) ............................................................. 16

DEFENDANT NATIONAL STUDENTS FOR JUSTICE IN PALESTINE'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

Gaetz v. City of Riverside,
    722 F. Supp. 3d 1054 (C.D. Cal. 2024) ............................................................ 15

Gharibian ex rel. United States v. Valley Campus Pharmacy, Inc.,
    No.21-56253, 2023 WL 195514 ( 9th Cir. Jan. 17, 2023)................................ 11

Griffin v. Breckenridge,
    403 U.S. 88 (1971)........................................................................................... 15

Jones v. Cnty. of San Bernardino,
    No. EDCV 21-695 JGB (SPx), 2021 U.S. Dist LEXIS 214904,
    at *13 (C.D. Cal. Oct. 15, 2021) ..................................................................... 17

Lockary v. Kayfetz,
    587 F.Supp. 631 (N.D. Cal. 1984) ................................................................... 15

Lujan v. Defenders of Wildlife,
    504 U.S. 555, 560-561 (1992) ..................................................................... 10,12

Molina v. Diaz,
    No. EDCV 20-00518-SVW (AS), 2021 U.S. Dist. LEXIS
    246829, at *18-19 (C.D. Cal. Dec. 28, 2021) .................................................. 18

Mosher v. Saalfeld,
    589 F.2d 438 (9th Cir. 1978) ........................................................................... 16

Nat'l Abortion Fed'n v. Operation Rescue,
    8 F.3d 680 (9th Cir. 1993) ............................................................................... 17

Safe Air for Everyone v. Meyer,
    373 F.3d 1035, 1039 (9th Cir. 2004) ............................................................... 10

Sever v. Alaska Pulp Corp.,
    978 F.2d 1529 (9th Cir. 1992) ..................................................................... 14,15

Sines v. Kessler,
    324 F. Supp. 3d 765 (W.D. Va. 2018) ............................................................. 16

DEFENDANT NATIONAL STUDENTS FOR JUSTICE IN PALESTINE'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

Sprewell v. Golden State Warriors,
    266 F.3d 979, 988 (9th Cir. 2001) ..................................................... 11

StandWithUs Ctr. For Legal Just. et. al. v. Mass. Inst. of Tech.,
    No. 24-1800, 2025 U.S. App. LEXIS 27390
    (1st Cir. Oct. 21, 2025) ................................................................... 17

Sures v. Kupsh,
    Los Angeles Superior Court Case No. 25STRO01776,
    Aug. 14, 2025) ............................................................................. 13

United Bhd. of Carpenters & Joiners, Local 610 v. Scott,
    463 U.S. 825 (1983)................................................................. 15,19

United States v. Valley Campus Pharmacy, Inc.,
    No. 2:16-cv-04777-MCS-PLA, 2021 U.S. Dist. LEXIS 196459,
    at *3 (C.D. Cal. Oct. 12, 2021) ....................................................... 11

Waln v. Dysart Sch. Dist.,
    54 F.4th 1152, 1161 (9th Cir. 2022) ................................................. 9

**STATUTES**

42 U.S.C. § 1985(3) ........................................................................ *passim*

**RULES**

Fed.R.Civ.P. 12(b)(1)....................................................................... 10

Fed.R.Civ.P. 12(b)(6)....................................................................... 11

DEFENDANT NATIONAL STUDENTS FOR JUSTICE IN PALESTINE'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. Introduction and Summary of Argument

Plaintiffs have sued a national student group in a complaint with thirty-two separate allegations being made on "information and belief". The complaint pays far more attention to what others say about NSJP and very little about what NSJP actually says.  NSJP is not antisemitic and says nothing antisemitic. There are no allegations that it ever said or did anything that caused the harms Plaintiffs allege. The entire claim against them hangs by the slender thread of one steering committee member (who himself did nothing objectionable), but who is now being blamed for everything, real or imagined.  Although Plaintiffs admit this one organizer was deeply involved with four different organizations, they have selected NSJP as their imagined culprit.

The claim against NSJP is unfounded in fact and untethered to the law of civil rights conspiracies.  It should be dismissed.[1]

### 2. Plaintiffs' Allegations

Before we can even summarize the allegations as to National Students for Justice in Palestine (NSJP) we must describe two of Plaintiffs' repeated errors which make even accurate summarization difficult.

### a. Plaintiffs' Confused (and Confusing) Pleadings Make Summarization Difficult

The FAC's conflates and confounds National Students for Justice in Palestine with a campus chapter at UCLA. Plaintiffs bewilderingly insist on using "NSJP" and "SJP" interchangeably to mean National Students for Justice in Palestine. (FAC ¶2).[2]  Yet the FAC refers SJP in entirely local contexts, "Under

---

[1] NSJP adopts and incorporates by reference the arguments advanced by its co-defendants to the extent that they are not already covered in this brief.

[2] All references to paragraphs shall refer to the First Amended Complaint unless otherwise specified.

the banner of SJP" (¶11); "SJP is aware of Does identity [referring to the campus chapter] (¶37); "SJP (along with Doe) and UC Divest" (¶108); "FJP also met with SJP and provided several 'faculty advisors'" (¶110); "SJP, FJP, Doe, UC Divest and People's City Council engaged in a massive recruitment effort to grow the encampment" (¶115); "SJP, Doe, UC Divest, People's City Council, and FJP . . ." (¶123). NSJP proceeds on the assumption that none of these six paragraphs have anything to do with NSJP, and asks the Court to be vigilant for similar conflations.[3]

Equally confounding is the Plaintiffs' promiscuous use of "on information and belief", which is invoked <u>thirty-two times</u> in the FAC, many times appearing to describe purported NSJP activities. (¶¶ 34, 37, 67, 74, 75, 92, and 108.) These allegations must still be "based on factual information sufficient to make the inference of culpability plausible". <u>Waln v. Dysart Sch. Dist.</u>, 54 F.4th 1152, 1161 (9th Cir. 2022). Our summary of Plaintiffs' allegations addresses factual allegations and eschews poorly supported guesses.

**b.  <u>Summary of the Allegations</u>**

Plaintiffs generally allege that NSJP is a "national membership organization" that fostered a nationwide campaign of college encampments branded as the "Popular University for Gaza" and that in particular the UCLA encampment was "associated with" NSJP (¶4). The encampments were to occupy physical space, exclude Jewish students, to build fortified positions, and to militantly confront the police. To this end NSJP allegedly collaborated with other groups of young people, community organizations and funding sources. NSJP promoted the encampments through a national social media campaign and encouraged people to spread the word via Instagram posts.

---

[3]  The absence of any facts supporting the FAC's sweeping conclusion that the UCLA chapter was NSJP's "agent" will be addressed in §4, *infra*.

9

Plaintiffs allege "on information and belief" that Dylan Kupsh, a graduate student played a central role (although an unspecified and undescribed one) as a member of NSJP's Steering Committee, and (again) "on information and belief played a significant coordinating and mediating role between the various groups", including NSJP and the UC Divest Coalition.

Plaintiffs appear to claim that NSJP is somehow vicariously liable for their injuries. Matthew Weinberg alleges that he avoided the encampment out of fear and had to alter his routes to classes and study areas, and that he was "shocked and frustrated". Eli Tsives was also "shocked and frustrated" when he had to take slower, alternate routes, as he was physically blocked or surrounded when attempting to walk into or through the encampment.  Nir Hoftman alleges that he was "tackled" while trying to cross through the encampment and that one of his earbuds, which fell out of his ear at that time, was stolen by someone. Plaintiff Dovid Gurevich, a Rabbi, alleges that eight days after the encampment ended, his phone was knocked from his hand and that he was threatened with violence.

### 3. Legal Standards

#### a. Subject Matter Jurisdiction

A complaint must be dismissed if the Court lacks subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). Plaintiffs must establish Article III jurisdiction which requires that they demonstrate they (1) "suffered an injury in fact that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical;' (2) a causal connection between that injury and the complained-of conduct; and (3) that a favorable decision will likely redress the alleged injury." Alaska Right to Life Political Action Comm. v. Feldman, 504 F.3d 840, 848 (9th Cir. 2007) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992).

On a Rule 12(b)(1) motion to dismiss, the Court may consider evidence beyond the complaint and "need not presume the truthfulness of the plaintiff's allegations" concerning jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d

1035, 1039 (9th Cir. 2004). The moving party should prevail "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." <u>Augustine v. U.S.</u>, 704 F.2d 1074, 1077 (9th Cir. 1983).

### b. <u>Failure to State Facts Justifying Relief</u>

A Rule 12(b)(6) motion should be granted if the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). A claim is plausible only when "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court should disregard conclusory factual allegations, and "draw on its judicial experience and common sense" to determine whether a claim is plausible. *Id.* at 678-79.  ). A court may reject as implausible allegations that are too speculative to warrant further factual development. <u>Dahlia v. Rodriguez</u>, 735 F.3d 1060, 1076 (9th Cir. 2013). The allegations must be enough to raise a right to relief above the speculative level. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 548 (2009). Allegations that are merely conclusory, are unwarranted deductions, or unreasonable inferences need not be accepted. <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001).

Thus, a court is not bound to accept as true a legal conclusion couched as a factual allegation. <u>United States v. Valley Campus Pharmacy, Inc.</u>, No. 2:16-cv-04777-MCS-PLA, 2021 U.S. Dist. LEXIS 196459, at *3 (C.D. Cal. Oct. 12, 2021),  aff'd sub nom. <u>Gharibian ex rel. United States v. Valley Campus Pharmacy, Inc</u>., No.21-56253, 2023 WL 195514 ( 9th Cir. Jan. 17, 2023).

### 4. <u>Weinberg Did Not Suffer a Concrete, Particularized Injury and Should be Dismissed.</u>

Weinberg never encountered the encampment and his knowledge was limited to what friends told him and what he saw from whatever media he consumed. (¶¶ 137-139.)  The encampment was at its largest, 180' wide, which is

11

the space between Royce Hall and Powell Library. (¶96). It did not disrupt his classes, which were in the law school, over 300 yards from the Eastern edge of the encampment. It upset him, and it forced him to take a different route to "other parts of the campus." (¶140). Tellingly, although he describes Powell Library as a location "which students often use to study" there is no allegation that <u>he</u> studied there, rather than use the five-story, 130,000 square foot library at the Law School.[4]

Weinberg cannot meet the *Lujan* requirements. First, his allegations do not articulate a concrete and particularized injury from learning of the encampment. That a plaintiff is offended by particular conduct or speech does not qualify. Encountering slogans he dislikes is not sufficient for standing, even in cases alleging religious discrimination.

"[T]he psychological consequence presumably produced by observation of conduct with which one disagrees. . . . is not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms.").

<u>Caldwell v. Caldwell</u>, 545 F.3d 1126, 1133 (9th Cir. 2008).

5. <u>Plaintiffs Have Not Made Out A Case Against NSJP.</u>

    a. <u>The Failure to Allege That NSJP Caused Anything Plaintiffs Are Complaining About</u>

18,000 words. Sixty-six pages. 174 paragraphs. Yet none of this links NSJP to any of Plaintiffs' alleged injuries. Although great attention is paid to Dylan Kupsh, Plaintiffs never describe anything he did that is related to what happened to them. Kupsh is alleged, on information and belief, to have served on NSJP's Steering Committee. Kupsh attended the encampment and "**on**

---

[4] https://www.moorerubleyudell.com/project/hugh-hazel-darling-law-library/, last visited Oct. 29, 2025.

**information and belief** helped organize it". (¶67).  He may have voted on whether SJP should issue a statement launching the "Popular University for Gaza", although Plaintiffs fail to allege whether he voted for it or against it. (*Id.*)  He had an utterly unspecified but nonetheless "substantial role" in the decision to launch the initiative. (¶92).  Kupsh is also alleged to be a "leading member" of UC Divest, one of "a host of other similar organizations supporting the encampment. (¶93). He played, **on information and belief** a significant coordinating and mediating role between the various groups." (¶108).

Plaintiffs are complaining that a member of NSJP's steering committee voted about something, that he was an active member of another organization at the same time, and  that he coordinated and mediated … *something*, but we are never told what. Plaintiffs fail to allege, nor can they, without risking Rule 11 problems, that Kupsh had anything to do with checkpoints to keep people out of the encampment.  They fail to allege that Kupsh attacked Hoftman or blocked Tsives, or had anything to do with the people who supposedly did, and they fail to allege that he was even present on June 10 or had any role in the demonstration at which Rabbi Gurevitch was shouted at and had the phone slapped out of his hand.

Plaintiffs sued nine defendants – but Kupsh is not among them despite his allegedly pivotal role. The simplest explanation is also the truest –Plaintiffs know that Kupsh did nothing wrong and recognize the malicious prosecution / abuse of process suit that would immediately follow his exoneration.[5]

To overcome this fatal weakness, Plaintiffs have turned to fiction writing and have created an entirely fictitious character, "John Doe #1".  They claim to know everything about him – except his name. They know he equipped and trained "'human phalanxes and 'organized self-defense teams'".to threaten counter-

---

[5] This is far from idle speculation. UC Regents vice-Chair Jay Sures sued Kupsh on equally questionable grounds and has been ordered to pay $150,624 in anti-SLAPP fees. (Sures v. Kupsh, Los Angeles Superior Court Case No. 25STRO01776, Aug. 14, 2025).

protesters and deny access to Jewish students, faculty, and staff. (¶115), They know he engaged in a violent clash with law enforcement and fought to "expand and maintain "control over nearby buildings". *Id.* Plaintiffs know that even after the encampment was broken up, Doe, undaunted, "attempted to establish new encampments" target buildings, and block access to graduate school facilities." (¶123). They also know that Doe engaged in a "long-running antisemitic conspiracy". (¶130).

That so very much can be known about a person who cannot be named, and cannot even be described, beggars belief. With some 200 people arrested at the encampment, with the publication of arrestees' names, with doxxing, perp walks,and all manner of publicity, it is challenging to accept that Plaintiffs know so many details of Doe's actions, yet nothing about the actual person. Plaintiffs, of course, fail to explain how so much knowledge cohabits with so much ignorance.

And it is here that Plaintiffs' conflation of NSJP with the local UCLA chapter does its best work. Doe is repeatedly alleged to have done all of this in conjunction with "SJP". But the context of each paragraph screams out that it is the local chapter, not the national organization, being (mis)described.

6. **Plaintiffs Fail to Allege Facts Plausibly Tying NSJP to a Civil Rights Conspiracy.**

   a. **Plaintiffs' Allegations Against NSJP Do Not Plausibly Show a Violation of the Deprivation Clause of 42 U.S.C. § 1985(3)**

To plead a violation of the Deprivation Clause of 42 U.S.C. § 1985(3), Plaintiffs must plausibly allege four elements: (1) a conspiracy; (2) to deprive a person or class of equal protection of the laws or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) resultant injury. Sever v. Alaska Pulp Corp., 978 F.2d 1529,1536 (9th Cir. 1992); 42 U.S.C. § 1985(3).

Section 1985(3) itself provides no substantive rights, so plaintiffs must identify an underlying constitutional or federal statutory right that has been

14

violated. United Bhd. of Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825, 833-34 (1983). Furthermore, when the underlying right is only protected against infringement by government actors, such as freedom of speech, Plaintiffs must show that the conspiracy included government actors or was aimed at influencing state action. Id. at 830.

Finally, Plaintiffs must plausibly allege a racial or otherwise class-based, invidiously discriminatory animus motivating Defendants' actions. Sever, 978 F.2d at 1536 (citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)). Not all classes are protected under § 1985(3), and the statute only applies "when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their rights." Id. (internal citations and quotations omitted).

### i. **Plaintiffs Fail to Plausibly Allege that NSJP Entered Into a Conspiracy**

To plead a conspiracy under § 1985(3), Plaintiffs must "state specific facts to support the existence of the claimed conspiracy." Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989). Especially where First Amendment rights are involved, broad allegations of conspiracies must be supported by material facts, not conclusory statements. Lockary v. Kayfetz, 587 F.Supp. 631, 639 (N.D. Cal. 1984). Plaintiffs must plausibly allege a "'meeting of the minds' or an 'agreement' between" the conspirators. Gaetz v. City of Riverside, 722 F. Supp. 3d 1054, 1069 (C.D. Cal. 2024). Merely alleging "independent parallel behavior" is not enough. Id. at 1061 (quotation and citation omitted).

Plaintiffs fail to plausibly allege NSJP engaged in a conspiracy, and instead rely entirely on generalized and conclusory statements to that effect. (FAC ¶¶ 130, 138, 141, 156). Plaintiffs allege no conversation, specific agreement, or "meeting of the minds" between NSJP and any other Defendant or party. At best, Defendants allege that the NSJP was a "collaborator" on some social media posts that offered

15

broad, generalized encouragement to students to "stand alongside" encampment demonstrations, to "show up", and to "[f]ind an encampment, protest, walkout, or other mobilization happening near you". (FAC ¶¶ 14, 61, 64-66 fn. 4). A mere handful of co-signed, generalized social media posts encouraging expressive activity and protest do not plausibly show a meeting of the minds between Defendants with a specific agreed upon goal, and agreed content of the conspiracy. *See* Twombly, 550 U.S. at 556-57 ("conclusory allegation of agreement at some unidentified point does not supply facts adequate to show" an unlawful conspiracy); *see also* Sines v. Kessler, 324 F. Supp. 3d 765, 794 (W.D. Va. 2018) (allegations that the defendants "all agreed and coordinated with and among each other to plan, organize, promote, and commit the unlawful acts that injured Plaintiffs and countless others" were conclusory and "do not plausibly allege that [a defendant] joined the alleged conspiracy"); Black Lives Matter D.C. v. Trump, 544 F. Supp. 3d 15, 39 (D.D.C. 2021)(finding plaintiffs' "allegations, taken as true, do not show sufficient events, conversations, or documents indicating an agreement or meeting of the minds amongst the defendants to violate plaintiffs' rights based on their membership in a protected class")(internal quotations and citations omitted).

Even if Plaintiffs could plausibly allege direct communication between NSJP and the alleged co-conspirators, which they have not, that would still be insufficient to plausibly allege an actionable conspiracy. *See* Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978)(merely alluding to conversations in which agreements were made without setting forth the substance of those conversations is insufficient to show a conspiracy); Frazier v. Int'l Longshoremen's Union Local #10, 116 F.3d 1485 [published in full-text format at 1997 U.S. App. LEXIS 15469, at *11-12] (9th Cir. 1997) (where evidence "shows no more than that some of the various defendants occasionally met with each other and may have discussed

DEFENDANT NATIONAL STUDENTS FOR JUSTICE IN PALESTINE'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

[plaintiff's] grievances… [it] is not sufficient to support an inference [] of… a 'meeting of the minds'").

### ii.  **Plaintiffs Fail to Plausibly Allege Intent to Infringe an Actionable Federal or Constitutional Right**

Plaintiffs fail to identify a deprivation of a constitutional or federal statutory right cognizable under 42 U.S.C. § 1983. This failure is fatal to their claim. *See* Jones v. Cnty. of San Bernardino, No. EDCV 21-695 JGB (SPx), 2021 U.S. Dist. LEXIS 214904, at *13 (C.D. Cal. Oct. 15, 2021) ("A plaintiff cannot state a conspiracy claim under section 1985 in the absence of a claim for deprivation of rights under 42 U.S.C. § 1983.") (citing Caldeira v. Cnty. of Kauai, 866 F.2d 1175, 1182 (9th Cir. 1989)).

The "'intent to deprive of a right' requirement demands that the defendant do more than merely be aware of a deprivation of right that he causes, and more than merely accept it; he must act at least in part for the very purpose of producing it." Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 276 (1993) (emphasis added). "A conspiracy is not 'for the purpose' of denying equal protection simply because it has an effect upon a protected right. The right must be 'aimed at' [and] its impairment must be a conscious objective of the enterprise." Id. at 275 (citation omitted). "[W]here the effect of a demonstration, a parade, or picketing interferes with someone's rights, this would not be actionable unless that was the purpose of the conspiracy." Nat'l Abortion Fed'n v. Operation Rescue, 8 F.3d 680, 685 (9th Cir. 1993).

In this regard, NSJP respectfully joins codefendant People's City Council's argument that the recent decision in the strikingly similar case StandWithUs Ctr. For Legal Just. et. al. v. Mass. Inst. of Tech. is instructive here and compels dismissal. No. 24-1800, 2025 U.S. App. LEXIS 27390 (1st Cir. Oct. 21, 2025); *see* Doc. 69, pp. 13-14 (explaining that a conclusory assertion of intent, coupled with statements of the rights deprivations suffered by Plaintiffs, is inadequate to satisfy

§ 1985(3)'s requirement that the conspiracy have the *purpose* of inflicting those deprivations).

In this case, Plaintiffs identify two substantive rights underlying their claim: "the right to be free from racial violence" and "the right to be free from racially motivated deprivation of the use of public amenities." (FAC ¶ 153). To sufficiently plead their cause of action, therefore, Plaintiffs must plausibly allege that NSJP acted with the intent to depriving them of those rights—both of which are predicated on the existence of racial animus as a motivating factor.

In this case, Plaintiffs fail to plausibly allege any particular intent by NSJP other than the general goal of 'pressuring' universities (Plaintiffs do not specify *what* the Universities are even being pressured to do) and supporting 'autonomous zones'. (FAC ¶ 60). Plaintiffs cite no mention by NSJP of Judaism, Jews, Jewish students, race, or even preventing anyone from accessing a public amenity. Plaintiffs' bare allegations are utterly inadequate to plausibly show a specific intent to infringe on Plaintiffs' constitutional or federal rights.

### iii. **Plaintiffs Fail to Plausibly Allege an Invidiously Discriminatory Animus Motivated NSJP's Alleged Conduct**

Plaintiffs' failure to allege *any* motive on the part of NSJP is dispositive here, and demands dismissal of their claim. The closest Plaintiffs come to alleging a motive by NSJP is the allegation that the organization used its social media to "launc[h] a nationwide 'Popular University for Gaza' initiative… a 'coordinated pressure campaign against university administrations and trustees' linked to a nationwide effort to 'establis[h] autonomous zones on several university campuses.'" (FAC ¶ 60). That allegation, even if true, comes nowhere near plausibly showing invidiously discriminatory animus against a racial or otherwise protected class. See Appling v. City of L.A., 701 F. App'x 622, 626 (9th Cir. 2017)(affirming dismissal of a 1985(3) claim where the plaintiff only asserted conclusory statements of bias); see also Molina v. Diaz, No. EDCV 20-00518-

18

SVW (AS), 2021 U.S. Dist. LEXIS 246829, at *18-19 (C.D. Cal. Dec. 28, 2021) ("The absence of an invidiously discriminatory animus on the part of Defendants is fatal to Plaintiff's § 1985 claim"). Plaintiffs' bald statements that Defendants were "driven by racial and ethnic animus against Jews" and "antisemitic animus" are plainly conclusory and offer no support for the plausibility of their claims. (FAC ¶¶ 156, 105). Plaintiffs do not even allege that NSJP had called for, directed, or ratified any remarks or graffiti and fail to explain why, with a group large enough to occupy a significant space on the campus, (¶96) and with "a host" of organizations (¶ 93) NSJP's acts bear any legally causal relationship to the Plaintiffs' complaints.

> b. <u>**The Allegations Against NSJP Do Not Plausibly Show a Violation of the Hindrance Clause of 42 U.S.C. § 1985(3)**</u>

To plead a claim under the Hindrance Clause of § 1985(3), Plaintiffs must plausibly allege (1) a conspiracy, (2) with the *goal* of interfering with state law enforcement, (3) "directed at a protected class exercising a constitutional right", and (4) resulting in injury to Plaintiffs. <u>United Bhd. of Carpenters & Joiners, Local 610 v. Scott</u>, 463 U.S. 825, 828-829 (1983). Plaintiffs must also show the same invidiously discriminatory animus required for a deprivation clause claim. <u>Id</u>. at 687 (Trott, J., concurring and dissenting)(explaining that both clauses require a showing of invidiously discriminatory animus, but disagreeing with the majority's application).

Plaintiffs' claim under the Hindrance Clause fails for the same reasons as their claim under the Deprivation clause: they have failed to allege NSJP entered into a conspiracy, that NSJP's alleged conduct was directed at a protected class, that NSJP was motivated by racial or invidiously discriminatory animus, nor that their constitutional rights have been infringed.

Plaintiffs' Hindrance Clause claims additionally fail because they have not and cannot plausibly allege that NSJP acted with the intent to interfere with state

19

law enforcement, nor an injury resulting from such interference. Plaintiffs allege NSJP used social media posts to promote a "coordinated pressure campaign against university administrations and trustees", and "encouraged" people to attend the encampment and defend it against harassment and attacks. (FAC ¶¶ 60, 103-4). Nowhere do Plaintiffs allege any intent by NSJP to interfere with law enforcement efforts direct at securing their constitutional rights. The only such law enforcement effort identified in the FAC is the sweep of the encampment between May 1 and May 2, and Plaintiffs allege no relevant conduct by NSJP directed at law enforcement, whether during that time or any other. Id.

Plaintiffs additionally fail to allege an injury resulting from any interference with law enforcement efforts. (FAC ¶¶ 131-147). Plaintiffs in fact plead that law enforcement only "issued an unlawful assembly order on May 1 and eventually cleared the encampment during the early hours of May 2," mere hours later. (FAC ¶160). Plaintiffs' failure to plead any injury as a result of Defendants' conduct during law enforcement's response to the encampment is fatal to their claim under the Hindrance clause.

### 7. **Conclusion**

Plaintiffs' second attempt.at pleading is rich in conclusions but poor in facts. This is unlikely to improve since the Plaintiffs'have had over a year to mine every sensationalist account and every government report – and have turned up exactly nothing. Nothing will make NSJP responsible for Plaintiffs' alleged injuries because nothing NSJP did caused them. Plaintiffs' dislike for NSJP's political positions does not entitle them to endless litigation based on that dislike. That Plaintiffs wisely jettisoned the state law theories that would have subjected them to anti-SLAPP liability speaks volumes about their actual assessment of this case. It is lawfare, and we respectfully submit that this Court ought not condone it. We urge dismissal.

DEFENDANT NATIONAL STUDENTS FOR JUSTICE IN PALESTINE'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

Respectfully submitted,

Dated:  October 29, 2025          KLEIMAN RAJARAM

By:_____
          Mark Klemian

Attorneys for Defendant
National Students for Justice in Palestine

DEFENDANT NATIONAL STUDENTS FOR JUSTICE IN PALESTINE'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel of record for Defendant National Students for Justice in Palestine certifies that this brief contains 3,945 words, which complies with the word limited of L.R. 11-6-1.


Dated:  October 29, 2025                    KLEIMAN RAJARAM


                                        By:_____
                                             Mark Klemian

                                        Attorneys for Defendant
                                        National Students for Justice in Palestine

22