Robert L. Herbst (NYSBN 1333194)
rherbst@herbstlawny.com
HERBST LAW PLLC
420 Lexington Avenue, Suite 300
New York, New York 10170
Tel: 914-450-8163

Joshua Colangelo-Bryan (NYSBN 4162319)
colangeloj@humanrightsfirst.org
HUMAN RIGHTS FIRST
121 West 36th Street, PMB 520
New York, NY 10018
Tel: (212) 845-5243

Ramsey Judah (SBN 342300)
ramsey@judahlawgroup.com
JUDAH LAW GROUP
1026 W. Foothill Blvd
Upland, CA  91786
Tel: 626-899-7667

Attorneys for Defendant
WESPAC FOUNDATION

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW WEINBERG, et al., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, INC., et al. <br><br><br> Defendants. | CASE NO: 2:25-cv-03714-MCS-JCx <br><br> Honorable Mark C. Scarsi <br> Courtroom 7C <br><br> **DEFENDANT WESPAC FOUNDATION'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** <br><br> **Date:** **Monday, December 15, 2025** <br> **Time:** **9:00 a.m.** <br> **Place:** **Courtroom 7C** <br> **350 W. 1st Street** <br> **Los Angeles, California 90012** <br><br> Complaint Filed: April 25, 2025 |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................ 1

II.    ARGUMENT ............................................................................................. 3

   A.   This Action Should Be Dismissed for Lack of Personal Jurisdiction ............. 3

      1.   Plaintiffs' Agency Theory Relies on Allegations Made on "Information and Belief" About WESPAC's Agreement with NSJP That Have Been Refuted ..................................................................... 4

      2.   There Is No Other Basis Upon Which Plaintiffs Have Plausibly Alleged an Agency Relationship ...................................................... 6

      3.   Plaintiffs' Cursory References to Funding Are Speculative, Refuted, and Irrelevant ................................................................. 10

      4.   Plaintiffs Are Not Entitled to Jurisdictional Discovery ................. 12

   B.   The One Cause of Action Against WESPAC Fails to State a Claim ............ 13

   C.   This Action Should Be Dismissed with Prejudice ........................................ 14

III.    CONCLUSION ....................................................................................... 15

i

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF
Case No: 2:25-cv-03714-MCS-JCx

# **TABLE OF AUTHORITIES**

## **CASES**

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066 (9th Cir. 2011) ............... 3

*Counts v. Meriwether*, No. 2:14-cv-00396-SVW-CW, 2015 WL 12656945 (C.D. Cal. June 12, 2015) .................................................................................................. 15

*Elliott Erwitt, LLC v. Sugar Factory*, No. CV 23-0049 PA (MAAX), LLC, 2023 WL 12155595 (C.D. Cal. Aug. 25, 2023) ..................................................................... 6

*Found. for Anime & Niche Subcultures v. Texas Anime Conventions*, 769 F. Supp. 3d 1034 (N.D. Cal. 2025) ........................................................................................ 9-10

*Helmann v. Codepink Women for Peace*, No. 2:24-CV-05704-SVW-PVC, 2025 WL 3030582 (C.D. Cal. June 13, 2025) ........................................................... 7-8, 13

*Houseton v. Kirk*, No. 2:23-CV-06887-SVW-MRW, 2024 WL 1601818 (C.D. Cal. Feb. 8, 2024) .................................................................................................... 15

*In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, No. 20-CV-03131-JSC, 2021 WL 4461199 (N.D. Cal 2021) ................................................................................................ 9

*Manhart v. WESPAC Found., Inc.*, No. 24-CV-08209, 2025 WL 2257408 (N.D. Ill. Aug. 7, 2025) ........................................................................................................ 13

*Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045 (9th Cir. 2017) ....... 7

*MSP Recovery Claims, Series LLC v. Actelion Pharms. US, Inc*., No. 3:22-CV-07604-JSC, 2024 WL 3408221 (N.D. Cal. 2024) ..................................................... 9

*Precision Transducer Sys. v. STFO Trading LLC*, No. CV094245JFWPJWX, 2009 WL 10700319 (C.D. Cal. Oct. 15, 2009) ................................................................... 6

*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529 (9th Cir. 1992) ................................... 14

*Silverstein v. Experienced Internet.com, Inc.*, No. C 05-0160 PVT, 2005 WL 1629935 (N.D. Cal. July 11, 2005)................................................................................ 6

*Smith v. Bellco Credit Union*, No. 2:20-CV-09772-MCS-JPR, 2020 WL 8611063, (C.D. Cal. Dec. 14, 2020) (Scarsi, J.).................................................................. 11-12

*Soelect, Inc. v. Hyundai Motor Co.*, No. 23-CV-05405-CRB, 2024 WL 4293911 (N.D. Cal. 2024) ....................................................................................................... 9

ii

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST
AMENDED COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF
Case No:  2:25-cv-03714-MCS-JCx

*Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109 (9th Cir.
2013 ........................................................................................................................ 15

*Sunderland v. PharmaCare U.S., Inc.*, No. 23CV1318-JES (AHG), 2024 WL
2116069 (S.D. Cal. May 10, 2024)............................................................................ 9

*Turner-Gray v. Avis Budget Grp. Inc.*, No. 23-CV-05507-SI, 2024 WL 4504529
(N.D. Cal. Oct. 15, 2024) .......................................................................................6-7

*Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017) .........................2, 8-9

**STATUTES**

42 U.S.C. § 1985(3) ................................................................................................. 14

Cal. Civ. Code § 2295................................................................................................. 6

1    **I.    INTRODUCTION**

2        Plaintiffs' Omnibus Opposition to Defendants' Motions to Dismiss ("Pl. Opp."

3    or "Opposition") relies almost exclusively on the proposition that WESPAC[1] and

4    NSJP entered into a fiscal-sponsor agreement which created an agency relationship

5    and provided that WESPAC would essentially run NSJP's operations. Plaintiffs

6    claim that, given these contract terms, WESPAC is subject to personal jurisdiction in

7    this District and also liable for civil rights violations as a result of alleged conduct by

8    NSJP.

9        On what basis do Plaintiffs contend WESPAC and NSJP had an agency

10   relationship making WESPAC subject to personal jurisdiction and liable to Plaintiffs,

11   all due to NSJP's alleged acts? According to Plaintiffs, they divined this from a

12   complaint filed by WESPAC's carrier in an insurance coverage action that did not

13   even relate to this case. Fatal to Plaintiffs' jurisdictional and liability theories, though,

14   is that their implausible speculation regarding the fiscal-sponsor agreement's terms

15   (offered "[o]n information and belief") is definitively contradicted by the actual

16   agreement, submitted herewith. *See* Reply Declaration of Nada Khader, Exhibit A.[2]

17       Beyond that the actual agreement vitiates Plaintiffs' imagining of its terms,

18   Plaintiffs cannot point to any other allegations to support the idea that WESPAC had

19   an agency relationship with NSJP, let alone one that makes it vicariously subject to

20   personal jurisdiction and liability based on NSJP's alleged actions. In fact, as

21   addressed in WESPAC's opening brief, Judge Wilson recently rejected the theory

22   that WESPAC's being a fiscal sponsor created an agency relationship through which

23   personal jurisdiction could be properly exercised in this District and through which

24   WESPAC could be liable for a sponsoree's conduct. In attempting to deflect the

---

26   [1] All terms defined in WESPAC's opening brief are given the same meaning herein.

27   [2] As addressed below, WESPAC had no reason to suspect that Plaintiffs' jurisdictional and
     liability theories rested on its agreement with NSJP or it would have submitted said document
     with its opening brief.

28

import of this decision, Plaintiffs are left saying simply that Judge Wilson was "wrong on the law" – even though they cannot point to a single legal authority supporting their contention that Judge Wilson erred.

Moreover, even if Plaintiffs' position about an agency relationship were valid (which it is not), such a relationship would not *ipso facto* create personal jurisdiction. Following the Ninth Circuit's decision in *Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017), some district courts have concluded that a subsidiary's contacts cannot ever be attributed to a parent for jurisdictional purposes. Others have concluded that such contacts can be attributed to a parent, but only if the parent has full control over the subsidiary's daily operations. Under the former interpretation, Plaintiffs' agency theory is legally (as well as factually) frivolous. Under the latter interpretation – and if case law relating to parent-subsidiary relationships applies to sponsor-sponsoree relationships – Plaintiffs have failed entirely to demonstrate that WESPAC had the requisite control. Indeed, entirely absent from the fiscal sponsor agreement between NSJP and WESPAC that Plaintiffs purportedly rely on is any provision for such control. Further, Plaintiffs plead nothing to suggest that the commission of alleged civil rights violations by NSJP would be within the scope of any agency relationship, if one even existed, meaning that such violations could not be imputed to WESPAC under any theory.

Ultimately, it is most telling that Plaintiffs spend nearly the first eleven pages of the Opposition detailing the alleged facts out of which their claims arise without mentioning WESPAC a single time. Plaintiffs' omission was not accidental. Rather, as we have repeatedly emphasized, WESPAC did nothing in relation to the relevant protest. This inescapable reality is what leaves Plaintiffs to engage in mental machinations conjuring up contract terms that do not exist. But, at the end of the day, such baseless speculation is not the stuff of a valid federal action – and this one should never have been brought against WESPAC.

## II.    ARGUMENT

### A. This Action Should Be Dismissed for Lack of Personal Jurisdiction

In the Opposition, Plaintiffs enunciate their jurisdictional position for the first time, *i.e.,* NSJP had contacts with California, there is an agency relationship between NSJP and WESPAC, and thus WESPAC is vicariously subject to personal jurisdiction in this District. *See* Opp. Br. at 27. Notably, Plaintiffs dismiss a declaration from WESPAC's Executive Director that establishes WESPAC did not provide any funding to be used at the UCLA protests on the basis that it does not "controvert the relevant allegations," which relate instead to the purported agency relationship, according to Plaintiffs. *Id.* at 28.

We must note, however, that it was understandable for WESPAC to surmise that Plaintiffs' theory of personal jurisdiction rested on the (false) notion that WESPAC had funded the protests, rather than agency, for two reasons. First, even though a plaintiff "bears the burden of establishing that jurisdiction is proper," (*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011)), neither of Plaintiffs' pleadings suggested WESPAC was subject to personal jurisdiction just for being an alleged principal. The only allegation Plaintiffs made on the subject was that "NSJP, WESPAC, FJP, and Abuirshaid are subject to specific jurisdiction because *each* has sufficient minimum contacts with California." FAC ¶ 59 (emphasis added). Nothing in that allegation suggested Plaintiffs sought to attribute NSJP's contacts to WESPAC via an agency relationship for jurisdictional purposes. Second, WESPAC served a Rule 11 notice on Plaintiffs' counsel, contending, *inter alia*, that there is no basis to exercise personal jurisdiction over WESPAC here. *See* Declaration of Robert Herbst ("Herbst Decl."), Exhibit A. Plaintiffs' counsel provided a written response that was silent on this point. *See id.*, Exhibit B.

### 1.    Plaintiffs' Agency Theory Relies on Allegations Made on "Information and Belief" About WESPAC's Agreement with NSJP That Have Been Refuted

Turning to the jurisdictional theory on which Plaintiffs have settled, Plaintiffs' arguments about a purported agency relationship are entirely unavailing. Plaintiffs contend first that WESPAC "second-guesses the FAC's well-pleaded factual allegations, which plausibly establish specific jurisdiction based on NSJP's undisputed contacts with California and a common-law agency relationship between WESPAC and NSJP." Opp. Br. at 27. By "well-pleaded factual allegations," Plaintiffs refer to various assertions in the FAC that are entirely speculative as underscored by their being made only "[o]n information and belief." *See id.* at 28 (citing FAC ¶¶ 47-49, 70-75, 112).

Plaintiffs allege they "have *reason to believe* that discovery will reveal that SJP [sic] was, at least for some purposes, functioning as WESPAC's agent under the fiscal sponsorship agreement." FAC ¶ 71 (emphasis added). Put differently, Plaintiffs hope that in the future they might learn something to substantiate their conjecture that WESPAC and NSJP had "some form of agency relationship" because they did not have any such information when they filed the original complaint and do not have such information today. *See id.* ¶ 112 ("on information and belief, WESPAC's fiscal sponsorship arrangement with SJP [] established at least some form of agency relationship").

More particularly, Plaintiffs allege – again "[o]n information and belief" – that "WESPAC's relationship with SJP [sic] under the July 2023 fiscal sponsorship agreement was consistent with" a "definition of the term 'Fiscal Sponsor' contained in WESPAC's insurance policy." FAC ¶ 49 (cited in Opp. Br. at 28). Also "[o]n information and belief," Plaintiffs speculate that WESPAC must have "'assumed responsibility to manage programs, events, revenue, grants, contributions, contracts

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF
Case No:  2:25-cv-03714-MCS-JCx

and/or insurance programs'" for NSJP. *See* Opp. Br. at 28 (citing FAC ¶¶ 48-49). And based only on these pieces of conjecture, Plaintiffs claim "[i]t is plausible that" (i) WESPAC "had 'the right to substantially control' the NSJP 'programs'" and (ii) "the agreement created a common-law agency relationship between WESPAC and NSJP because many such agreements…do exactly that." *Id.* at 32.

A tortured series of suppositions does not create personal jurisdiction. Beyond the fact that Plaintiffs' allegations are delicately offered only "[o]n information and belief," the purported basis of Plaintiffs' assertion about the "fiscal sponsorship agreement" does not withstand scrutiny. Indeed, Plaintiffs are simply speculating about the content of an agreement between WESPAC and NSJP based on a generic provision in WESPAC's insurance agreement that defines fiscal sponsorship for purposes of a "Fiscal Sponsor Limitation of Coverage." *See* Opp. Br. at 32 (citing Compl. (Dkt.1) ¶ 35, *ANI v. WESPAC Foundation*, No. 1:25-cv-1320 (S.D.N.Y. Feb. 13, 2025)); *see* Compl. ¶ 40 (Fiscal Sponsor Limitation)  There is nothing remotely plausible in asserting "[o]n information and belief," that an agreement between WESPAC and NSJP, which is the *sine qua non* of Plaintiffs' case against WESPAC, regurgitated verbatim a generic policy term relating to a *limitation* on coverage.[3]

And indeed, the actual agreement that governed the fiscal sponsorship between WESPAC and NSJP – entitled "Letter of Agreement between WESPAC Foundation and 'National Students for Justice in Palestine' Project" ("WESPAC-NSJP Agreement") – does not contain any of the terms Plaintiffs imagine. *See* Reply Declaration of Nada Khader, Exhibit A. The WESPAC-NSJP Agreement says nothing about agency, let alone that NSJP is WESPAC's agent. It says nothing about

---

[3] Plaintiffs also argue "[i]t is plausible that" WESPAC "assumed responsibility to manage" and to "control" NSJP programs because its insurer "believed that the agreement satisfied a contract clause using that exact language" and "interpreted the agreement" in that fashion. Opp Br. at 31. Nothing in the relevant complaint suggests such a belief on the insurer's part. *See generally* Compl. (Dkt.1), *ANI v. WESPAC Foundation*, No. 1:25-cv-1320 (S.D.N.Y. Feb. 13, 2025).

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST
AMENDED COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF
Case No:  2:25-cv-03714-MCS-JCx

WESPAC's assuming "'responsibility to manage programs, events, revenue, grants, contributions, contracts and/or insurance programs'" for NSJP. It says nothing about WESPAC's "control" over NSJP.

As such, Plaintiffs have done nothing more than make speculative allegations "[o]n information and belief" that WESPAC has refuted by competent evidence. Thus, Plaintiffs' allegations cannot establish personal jurisdiction. *See Elliott Erwitt, LLC v. Sugar Factory, LLC*, No. CV 23-0049 PA (MAAX), 2023 WL 12155595, at *4 (C.D. Cal. Aug. 25, 2023) (granting motion to dismiss for lack of jurisdiction given that jurisdictional allegations, which were made "in a conclusory fashion, and on information and belief," were contradicted by declaration from defendant); *Precision Transducer Sys. v. STFO Trading LLC*, No. CV094245JFWPJWX, 2009 WL 10700319, at *4 (C.D. Cal. Oct. 15, 2009) (same); *Silverstein v. Experienced Internet.com, Inc.*, No. C 05-0160 PVT, 2005 WL 1629935, at *3 (N.D. Cal. July 11, 2005) (same).

### 2.    There Is No Other Basis Upon Which Plaintiffs Have Plausibly Alleged an Agency Relationship

Beyond that the WESPAC-NSJP Agreement dispositively refutes Plaintiffs' allegations, there is no other basis to assume an agency relationship between the entities. Under California law, an agent is "one who represents another, called the principal, in dealings with third persons." Cal. Civ. Code § 2295. The elements of an agency relationship are "(1) An agent or apparent agent holds a power to alter the legal relations between the principal and third persons and between the principal and himself; (2) an agent is a fiduciary with respect to matters within the scope of the agency; and (3) a principal has the right to control the conduct of the agent with respect to matters entrusted to him." *Turner-Gray v. Avis Budget Grp. Inc.*, No. 23-CV-05507-SI, 2024 WL 4504529, at *3 (N.D. Cal. Oct. 15, 2024) (citing *Garlock*

*Sealing Techs., LLC v. NAK Sealing Techs. Corp.*, 148 Cal. App. 4th 937, 964, 56
Cal. Rptr. 3d 177 (2007) (internal quotation omitted)).

As a matter of federal common law, "[a]gency is the fiduciary relationship that
arises when one person (a 'principal') manifests assent to another person (an 'agent')
that the agent shall act on the principal's behalf and subject to the principal's control,
and the agent manifests assent or otherwise consents so to act." *Mavrix Photographs,
LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (quoting Restatement
(Third) Of Agency § 1.01). To establish agency, the agent "must have authority to
act on behalf of the principal and '[t]he person represented [must have] a right to
control the actions of the agent.'" *Id.* (quoting Restatement (Third) Of Agency § 1.01,
cmt. C).

Plaintiffs do not, and cannot truthfully, allege that NSJP ever represented
WESPAC in dealings with third parties. Plaintiffs do not, and cannot truthfully,
allege that NSJP had any power to alter the legal relations between WESPAC and
other parties, that NSJP acted as a fiduciary to WESPAC, or that WESPAC entrusted
NSJP with conducting business on its behalf. And, certainly, Plaintiffs do not, and
cannot truthfully, allege that WESPAC did anything to assent to NSJP's acting on its
behalf. Thus, beyond the incurable inaccuracies in Plaintiffs' theorizing about the
NSJP-WESPAC Agreement, there simply is no basis to conclude WESPAC and
NSJP had an agency relationship, let alone one that would make WESPAC
automatically subject to personal jurisdiction under any circumstances in which
NSJP allegedly is so subject.

Judge Wilson's recent opinion confirmed this very point. *See Helmann v.
Codepink Women for Peace*, No. 2:24-CV-05704-SVW-PVC, 2025 WL 3030582, at
*21 (C.D. Cal. June 13, 2025) ("The Sponsoring Defendants are not residents of
California. Plaintiffs do not allege that the Sponsoring Defendants—or any of their
members—organized or participated in the mob…There is only one link between the

Sponsoring Defendants and California: the Sponsoring Defendants' fiscal sponsorship relationship with PYM. This is not enough for *personal jurisdiction*. *It does not create an agency relationship*.") (emphasis added).

Plaintiffs argue that the Court should disregard Judge Wilson's ruling because "the facts and the governing law distinguish this case from *StandWithUs*."[4] Opp. Br. at 33. It is unclear what Plaintiffs mean by "facts," although they may be referring to what they describe as "more specific allegations about *WESPAC's fiscal sponsorship agreement with NSJP* based on allegations in a lawsuit brought by WESPAC's insurer." *Id.* at 33-34 (emphasis in original). Even if allegations repeated from another litigation constitute distinguishing facts, the unfounded extrapolations Plaintiffs make about the WESPAC-NSJP Agreement based on the complaint in the insurance coverage case have been refuted. Similarly, it is unclear what Plaintiffs mean by distinguishable "governing law" because Plaintiffs cite no law that would support their desired outcome. *See id.* at 34-35. Rather, they are forced to rely on an attorney's hypothetical about "Jones Lab." *See id.* Ultimately, Plaintiffs are not able to say anything except that Judge Wilson was "wrong on the law." *Id.* at 34. Absent citation to some contrary legal authority, this is not a credible argument.

Underscoring the frivolousness of Plaintiffs' position, even if WESPAC and NSJP had an agency relationship (which clearly they did not), such relationship would not by itself suffice to create personal jurisdiction over WESPAC, notwithstanding Plaintiffs' incomplete assertion that "[f]or purposes of personal jurisdiction, the actions of an agent are attributable to the principal." Opp. Br. at 30.

In *Williams v. Yamaha Motor Co.*, the Ninth Circuit interpreted *Daimler AG v. Bauman*, 571 U.S. 117 (2014), as leaving open the question of whether an agency relationship could ever justify the exercise of specific personal jurisdiction over a

---

[4] *StandWithUs* was a separate action consolidated with *Helmann*.

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF
Case No: 2:25-cv-03714-MCS-JCx

principal. 851 F.3d 1015, 1023-25 (9th Cir. 2017) (holding that, even if such theory were viable, parent did not exercise adequate control over subsidiary to be subject to jurisdiction). Since *Williams*, some district courts in the Ninth Circuit have concluded that a subsidiary's contacts simply cannot be attributed to a parent under any agency test. *E.g., MSP Recovery Claims, Series LLC v. Actelion Pharms. US, Inc.*, No. 3:22-CV-07604-JSC, 2024 WL 3408221, at *4 (N.D. Cal. 2024); *see also Soelect, Inc. v. Hyundai Motor Co.*, No. 23-CV-05405-CRB, 2024 WL 4293911, at *6 (N.D. Cal. 2024) ("[T]he agency test might no longer be valid.").

Other courts have held that the jurisdictional contacts of a subsidiary can be attributed to a parent, but only if there is "a showing higher than 'normal oversight of a parent over a subsidiary' and more akin to 'control of day-to-day operations.'" *Sunderland v. PharmaCare U.S., Inc.*, No. 23CV1318-JES (AHG), 2024 WL 2116069, at *4 (S.D. Cal. May 10, 2024) (internal citation omitted); *see also In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, No. 20-CV-03131-JSC, 2021 WL 4461199, at *2 (N.D. Cal. 2021) (no jurisdiction over parent where evidence "shows close monitoring and risk management, not control of day-to-day operations").

Plaintiffs did not address any of these issues, but if the former interpretation of jurisdictional doctrine is correct, Plaintiffs' agency theory is as baseless legally as it is factually. If the latter interpretation is correct – and if case law relating to parent-subsidiary relationships can even be applied to sponsor-sponsoree relationships – Plaintiffs have failed entirely to demonstrate that WESPAC engaged in "control of day-to-day operations" that goes beyond even "close monitoring and risk management," for reasons addressed.

Moreover, it is a series of allegedly wrongful acts that Plaintiffs seek to impute to WESPAC. So, even if the law allowed Plaintiffs to cite NSJP's conduct in arguing WESPAC is subject to personal jurisdiction, Plaintiffs still would have to establish that NSJP's allegedly wrongful acts were committed with WESPAC's authorization

or with apparent authority from WESPAC upon which Plaintiffs relied to their detriment. *See Found. for Anime & Niche Subcultures v. Texas Anime Conventions*, 769 F. Supp. 3d 1034, 1040-41 (N.D. Cal. 2025) (no jurisdiction over out-of-state defendants-principals because misappropriation by in-state agent was not authorized by principals, and plaintiff had failed to "plead facts that support a theory of apparent authority"). Perhaps needless to say, there is no allegation that WESPAC authorized NSJP to engage in (violent) civil rights violations or that Plaintiffs relied on any form of apparent authority. To the contrary, the WESPAC-NSJP Agreement provides that "NSJP agrees to not use the Funds received from WESPAC in any way that would jeopardize the tax-exempt status of WESPAC." Reply Declaration of Nada Khader, Exhibit A. For all these reasons, even if Plaintiffs had shown the existence of an agency relationship – which they have failed entirely to do – said relationship could not be the basis for exercising personal jurisdiction over WESPAC.

### 3. Plaintiffs' Cursory References to Funding Are Speculative, Refuted, and Irrelevant

Despite emphasizing agency as their supposed jurisdictional lynchpin, Plaintiffs offer a stray reference to funding. Specifically, they assert that because it is "plausible" that WESPAC and NSJP had a written fiscal-sponsorship agreement creating an agency relationship, it also is "plausible" that "WESPAC 'manage[d]' 'programs' and WESPAC-associated funds were used in support of NSJP's participation in the underlying conspiracy because NSJP directed national resources towards supporting the UCLA encampment…." Opp. Br. at 32. This argument is entirely unavailing.

As addressed, the allegations Plaintiffs reference to support their serial assertions about what is "plausible" to infer regarding the WESPAC-NSJP Agreement and WESPAC's alleged resulting "management" of programs were all made "[o]n information and belief" – and have been definitively refuted. Moreover,

the declaration from Nada Khader, WESPAC's Executive Director, submitted with WESPAC's opening brief explained unequivocally that WESPAC "never provided funding to NSJP to be used in connection with the protest and encampment at UCLA" and that she, as the sole WESPAC employee who would have effectuated a transfer of such funding, "had no advance knowledge of any plans for the protest and encampment at UCLA." *See* Dkt. 71-1, Declaration of Nada Khader ¶¶ 6-7. Plaintiffs attempt to discredit these sworn statements with the cartoonish remark that "[i]t is no surprise that Khader denies mailing NSJP a check labeled 'For use in a civil rights conspiracy at UCLA'" (Opp. Br. at 33), but that does not remotely reflect the substance of Ms. Khader's statements, which of course Plaintiffs cannot refute.

Plaintiffs also contend Ms. Khader did not address "whether any of those programs or funds were in fact used to support NSJP's 'Popular University for Gaza' initiative or the 'Campus Support Coalition,' the vectors Plaintiffs identify as enmeshing WESPAC programs and funds with NSJP's participation in the conspiracy." Opp. Br. at 33 (citing FAC ¶ 74, which offers a similar allegation "[o]n information and belief"). While the meaning of "vectors" and "enmeshing" is unclear in this context, Plaintiffs appear to be speculating that, perhaps, funds "were used" by some unnamed actor for the "Popular University for Gaza" or the "Campus Support Coalition." If Plaintiffs are insinuating – "[o]n information and belief" – that WESPAC provided funds to NSJP in order to support those entities, the sworn statement of Nada Khader submitted herewith establishes that this was not the case. Reply Declaration of Nada Khader ¶ 3. Ms. Khader was not even aware of those entities at the relevant time. *Id.*

But even if WESPAC had provided funds to support the "Popular University for Gaza" or the "Campus Support Coalition" and, in turn, said funds were used by some unidentified person to support protests at UCLA (which has not been adequately pled), Plaintiffs would still fall far short of alleging that WESPAC "(1)

committed an intentional act, (2) expressly aimed at the forum state, [and] (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Smith v. Bellco Credit Union*, No. 2:20-CV-09772-MCS-JPR, 2020 WL 8611063, at *4 (C.D. Cal. Dec. 14, 2020) (Scarsi, J.) (internal quotations and citations omitted).

Indeed, under Plaintiffs' hypothetical scenario about funds that "were used," WESPAC would not have taken any intentional act *aimed at California* that it knew was likely to cause harm *in California*, given that the "Popular University for Gaza" and the "Campus Support Coalition" are, according to Plaintiffs, nationwide coalitions, not California-based organizations. FAC ¶ 60 (speaking of "the nationwide 'Popular University of Gaza'"), ¶ 74 (describing the "Campus Support Coalition" as a "'a collective of organizations managed by National SJP that work together to support students fighting for Palestinian liberation on university campuses."); Opp. Br. at 32 (claiming "NSJP directed *national* resources towards supporting the UCLA encampment") (emphasis added). For all the many reasons enumerated above, there is no basis to exercise personal jurisdiction over WESPAC.

### 4.    Plaintiffs Are Not Entitled to Jurisdictional Discovery

As a last resort, Plaintiffs ask for "jurisdictional discovery against WESPAC on the nature and scope of its *fiscal sponsorship agreement* with NSJP and the resulting agency relationship." Opp. Br. at 35 (emphasis added). Put differently, Plaintiffs say that they "have identified a narrow set of facts that are determinative as to personal jurisdiction" that "WESPAC has not directly controverted…but [WESPAC] *does dispute* that its *fiscal sponsorship agreement* with NSJP accomplished what ANI thought it had." *Id.* at 36 (emphasis added); *see also id.* at 48 (seeking "jurisdictional discovery against WESPAC focused on the nature and scope of its *fiscal sponsorship agreement* with NSJP") (emphasis added). Putting aside Plaintiffs' misguided reading of the ANI complaint, there is no basis to order jurisdictional discovery here for the simple reason that Plaintiffs now have the

12

document they would seek through such discovery, *i.e.,* the WESPAC-NSJP Agreement.

### B. The One Cause of Action Against WESPAC Fails to State a Claim

Plaintiffs disavow any argument that WESPAC, as fiscal sponsor, is strictly liable for NSJP's alleged acts, contrary to the position they took previously, including in their response to WESPAC's Rule 11 communication. *Compare* Opp. Br. at 36 ("WESPAC accuses Plaintiffs of suggesting that 'being a fiscal sponsor automatically subjects a sponsor to liability for anything anyone associated with a sponsoree does anywhere in the world.'…But that strawman isn't what Plaintiffs argue.") *with* Herbst Decl., Exhibit B (response of Plaintiffs' counsel to WESPAC's Rule 11 communication, stating "[t]he amended complaint more than adequately asserts WESPAC's liability based on its role as fiscal sponsor for [NSJP]," and "[t]he fiscal sponsorship theory was not a viable basis for sanctions in *Manhart*, and it is not one here either"). Plaintiff's concession is well-warranted given the law on this point and WESPAC's Rule 11 communication. *See Helmann*, 2025 WL 3030582 at *20-21; *Manhart v. WESPAC Found., Inc.*, No. 24-CV-08209, 2025 WL 2257408 at *12 (N.D. Ill. Aug. 7, 2025) (dismissing claims against WESPAC and others).

Instead of taking the *per se* liability position, Plaintiffs now argue that they have stated a claim pursuant to § 1985(3) because their amended pleading "alleges that WESPAC had a written fiscal sponsorship agreement under which it 'assumed responsibility to manage programs…for NSJP, creating an agency relationship at least with respect to the specific 'programs' WESPAC 'assumed responsibility to manage,' and WESPAC-associated funds [sic]," including the "'Popular University for Gaza' initiative and the 'Campus Support Coalition.'" Opp. Br. at 36-37. As detailed above, Plaintiffs' allegations on these points were made "[o]n information and belief" and have been dispositively refuted.

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF
Case No: 2:25-cv-03714-MCS-JCx

1    Moreover, Plaintiffs never explain how their allegations – even if those

2    allegations had been plausibly made or indeed even if they were true – would state a

3    claim for a civil rights violation. Nor is it obvious how even a well-pleaded allegation

4    that WESPAC generally managed the national "Popular University for Gaza" or the

5    "Campus Support Coalition" would constitute engaging in a (1) a conspiracy specific

6    to the alleged events at UCLA; (2) to deprive any person or class of persons of the

7    equal protection of the laws (deprivation clause); or to hinder constituted authorities

8    from giving or securing to all equal protection of the laws (hindrance clause); (3) an

9    act in furtherance of this conspiracy; and (4) for deprivation-clause purposes, the

10   requisite discriminatory animus. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536

11   (9th Cir. 1992); 42 U.S.C. § 1985(3)

12   Ultimately, that Plaintiffs cannot allege, even on information and belief, that

13   WESPAC took any specific action in connection with the particular events of which

14   they complain precludes them from stating any claim, let alone a § 1985(3) claim –

15   and indeed should have precluded them from bringing this case against WESPAC at

16   all.

17   **C.    This Action Should Be Dismissed with Prejudice**

18   Plaintiffs make a half-hearted argument that any dismissal of their pleading

19   should be without prejudice. The only point they offer in this context relating to

20   WESPAC is a footnoted statement that "Plaintiffs could plead additional facts about

21   NSJP's relationship to WESPAC based on NSJP's website, which contained a

22   WESPAC donation link." Opp. Br. at 48, n.5.

23   Plaintiffs have filed two pleadings, neither of which reflects a cognizable

24   jurisdictional or liability theory against WESPAC. To whatever extent Plaintiffs

25   suggest now that there are some unspecified points to be made from a publicly

26   available website maintained by NSJP, Plaintiffs have no excuse for not having made

27   those points in their original Complaint or their FAC. And Plaintiffs offer no

28

explanation as to how information from the NSJP website could possibly cure the fatal jurisdictional and substantive failings of the FAC. For these reasons, Plaintiffs are not entitled to a third bite at the apple. *See Counts v. Meriwether*, No. 2:14-CV-00396-SVW-CW, 2015 WL 12656945, at *2–3 (C.D. Cal. June 12, 2015) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (dismissal without leave to amend is proper for "futility of amendment"); *Houseton v. Kirk,* No. 2:23-CV-06887-SVW-MRW, 2024 WL 1601818, at *2 (C.D. Cal. Feb 8, 2024) (*citing Steckman v. Hart Brewing,* 143 F.3d 1293, 1298 (9th Cir. 1998) ("Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal.")); *see also Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013) (cited in Pl. Opp. at 48) (leave to amend not properly granted when there is a "repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'").

## III.   CONCLUSION

For the foregoing reasons and those set forth in its opening brief, WESPAC respectfully requests that this Court grant its motion pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) to dismiss Plaintiffs' FAC in its entirety as against WESPAC, with prejudice, and grant such additional relief as the Court may deem appropriate and proper.

Dated: December 5, 2025

By: /s/ Robert L. Herbst_____
HERBST LAW PLLC
Robert L. Herbst (NYSBN 1333194)
rherbst@herbstlawny.com
420 Lexington Avenue, Suite 300
New York, New York 10170
Tel: 914-450-8163

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HUMAN RIGHTS FIRST
Joshua Colangelo-Bryan
(NYSBN 4162319)
colangeloj@humanrightsfirst.org
121 West 36th Street, PMB 520
New York, NY 10018
Tel: (212) 845-5243

JUDAH LAW GROUP
Ramsey Judah (SBN 342300)
ramsey@judahlawgroup.com
1026 W. Foothill Blvd
Upland, CA  91786
Tel: 626-899-7667

Attorneys for Defendant
WESPAC FOUNDATION

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST
AMENDED COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF
Case No:  2:25-cv-03714-MCS-JCx

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Defendant WESPAC certifies that this brief contains 4,623 words, which complies with the word limit of L.R. 11-6.1.

Dated: December 5, 2024

By: __/s/ Robert L. Herbst_____
Robert L. Herbst
rherbst@herbstlawny.com
420 Lexington Avenue, Suite 300
New York, New York 10170
Tel: 914-450-8163

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF
Case No: 2:25-cv-03714-MCS-JCx