Dan Stormer, Esq. [S.B. #101967]
Rebecca Brown, Esq. [S.B. #336638]
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
T: (626) 585-9600 / F: (626) 577-7079
Emails: dstormer@hadsellstormer.com
        rbrown@hadsellstormer.com

Attorneys for Defendant
PEOPLE'S CITY COUNCIL

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW WEINBERG, RABBI DOVID GUREVICH, NIR HOFTMAN, ELI TSIVES,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, JOHN DOE #1, PRESIDENT OF THE UCLA CHAPTER OF SJP, AJP EDUCATIONAL FOUNDATION, INC., D/B/A AMERICAN MUSLIMS FOR PALESTINE, OSAMA ABURSHAID, HATEM AL-BAZIAN, FACULTY FOR JUSTICE IN PALESTIBE NEWTWORK, UC DIVEST COALITION, WESPAC FOUNDATION, PEOPLE'S CITY COUNCIL,<br><br>Defendants | Case No.: 2:25-cv-03714-MCS-JC<br><br>[Assigned to the Honorable Mark C. Scarsi – Courtroom 7C]<br><br>**DEFENDANT PEOPLE'S CITY COUNCIL'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:         Dec. 15, 2025<br>Time:         9:00 a.m.<br>Courtroom:    7C<br><br>Complaint Filed:    April 25, 2025 |

---
DEFT PCC'S REPLY ISO THEIR
MTN TO DISMISS FAC

## I. INTRODUCTION

Plaintiffs' Opposition fails to compensate for the glaring deficiencies in their Ku Klux Klan Act claim against Defendant People's City Council's (PCC). Plaintiffs' confused attempts to circumvent the First Amendment, repetition of conclusory allegations, and distorted interpretations of binding and persuasive case law reveal that they cannot articulate specific, plausible factual allegations showing PCC violated § 1985(3). Accordingly, the FAC must be dismissed without leave to amend as to PCC.

First, Plaintiffs' allegations against PCC rest exclusively on speech and expressive activity protected by the First Amendment. Second, Plaintiffs do not plausibly plead the elements of either the deprivation or hindrance clause of § 1985(3). Finally, Plaintiffs lack standing because none of their alleged injuries are traceable to PCC. Further amendment would be futile.

## II. ARGUMENT

### 1. Plaintiffs' Claim Against PCC is Barred by the First Amendment.

As much as PCC can discern Plaintiffs' argument, it appears to be: (1) PCC supported, encouraged, solicited, and "trained" people supporting the protest; (2) some individuals at the protest allegedly deprived Plaintiffs of civil rights; therefore (3) all supporters of the protest were part of a civil conspiracy. Plaintiffs' theory is antithetical to this country's First Amendment.

The Supreme Court has long prohibited imposing civil conspiracy liability on supporters of, organizers of, and participants in a protest for torts (or crimes) of others. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 908–34 (1982) (assessing attempt to impose conspiracy liability on 146 civil rights activists for torts and crimes arising from actions connected to civil rights protests).

Every allegation about PCC in Plaintiffs' complaint involves PCC's speech in support of the protest. None of its speech encourages, supports, and advocates for denying anyone's civil rights based on their race (although even that speech would be protected). Plaintiffs' opposition hardly makes an attempt to rescue their pleading, either. Instead, they

DEFT PCC'S REPLY ISO THEIR
MTN TO DISMISS FAC

1

lean into their theory that speech supporting—or "promoting" or "soliciting" or "training"—the protest is evidence of a conspiracy to violate Plaintiffs' civil rights. Opp'n at 23.

Plaintiffs' theory of liability would rip a wide hole in the First Amendment. Because it's inevitable that a broad-based political or social movement will include someone involved in a tort or criminal act. Patriots assaulted loyalists as they gathered support for American independence. Abolitionists harbored fugitive slaves. The civil rights movement had its celebrated civil disobedience. Pro-life activists blockaded reproductive health clinics and murdered doctors. But the actions of a few did not extinguish the rights of everyone else who was part of those movements. The reverse heckler's veto Plaintiffs seeks to impose—where one bad actor can strip the speech and associational rights of everyone who ostensibly shares a positionality—sweeps broadly. And it threatens loudly.

Plaintiffs attempt to force PCC's speech into First Amendment exceptions for soliciting a crime or incitement fail. Opp'n at 23–25.

First, PCC soliciting supplies for the protest is not within the First Amendment's prohibiting on soliciting a crime. "Setting aside fairly specific solicitations, aimed at particular victims or particular criminal actions, [even] speech that advocates crime can only be punished if it is intended to and likely to cause imminent criminal conduct." Eugene Volokh, *The "Speech Integral to Criminal Conduct" Exception*, 101 Cornell L. Rev. 981, 994 (2016); *see also id*. at 993–94 (distinguishing between soliciting a *particular* murder and constitutionally-protected "[c]ounseling murder in the sense of urging killing in the abstract (whether of capitalists, police officers, thieves, or whoever else)"). Plaintiffs do not allege PCC solicited anyone to deny these Plaintiffs their civil rights on the basis of their race; without such an allegation, PCC's solicitation of support for the protest is protected by the First Amendment. *Id*.

Second, Plaintiffs' attempt to cast PCC's May 1, 2024—""KETTLE THE COPS CHALLENGE—LAPD F**CK OFF"—as incitement also fails. For starters, Plaintiffs are not LAPD officers and none of them allege any injury from that date. FAC ¶¶ 135

|   |   |
|---|---|
| 1 | (Hoffman not there on May 1); 137–39 (Weinberg feared even going near protest); 142– |
| 2 | 43 (Gurevich's sole injury came a month later); 146 (Tsives, too, avoided the protest by |
| 3 | May 1). |
| 4 | Even so, PCC's tweet does not fit the incitement exception. Incitement essentially |
| 5 | protects against setting off the passions of riled-up mob. *See* John Stuart Mill, On Liberty |
| 6 | 100 (London, John W. Parker & Son, 2d ed. 1859) (distinguishing between "[a]n opinion |
| 7 | that corn-dealers are starvers of the poor … when simply circulated through the press |
| 8 | [from] when delivered orally to an excited mob assembled before the house of a corn- |
| 9 | dealer"). The imminence prong of the incitement doctrine necessarily requires a sequence |
| 10 | of events close in time: the assemblage of those who can be incited, then inciting speech, |
| 11 | and then the near-immediate listeners' reaction. So when a protest mob that took over a |
| 12 | street to block police cars holding some of their fellow protesters was pushed off the street |
| 13 | by police, and one of the protesters yelled, "We'll take the fucking streets later," there was |
| 14 | no incitement. *Hess v. Indiana*, 414 U.S. 105, 106–09 (1973). The speech did not incite the |
| 15 | originally street-taking—it was already in progress—and there no imminence for any |
| 16 | future action ("later"). *Id*. at 108–09. Plaintiffs fail to even allege PCC's tweet preceded |
| 17 | the supposed "Battle of UCLA" or that anyone involved read the tweet contemporaneously |
| 18 | with the alleged "Battle." Plaintiffs make no plausible allegation of imminence, thus failing |
| 19 | to plead incitement.[1] While crude and offensive to many, PCC's tweet is protected. |
| 20 | *Claiborne Hardware*, 458 U.S. at 928 ("[s]trong and effective extemporaneous rhetoric |
| 21 | cannot be nicely channeled in purely dulcet phrases," and often includes "spontaneous and |
| 22 | emotional appeals for unity and action in a common cause"). |
| 23 | Plaintiffs' argument that protected speech can be used to establish motive does not |
| 24 | help them either because it is a corollary to the rule that protected speech cannot serve as |
| 25 | the basis for the tort; definitionally, that's what it means for speech to be protected. |
| 26 | Plaintiffs attempt to have the exception swallow the rule and base their claim against PCC |

---

[1] In fact, the imminence requirement has led some courts to question whether written speech can *ever* constitute incitement. *Herceg v. Hustler Magazine, Inc.*, 814 F.2d 1017, 1023 (5th Cir. 1987); *see also* SENECA, ON ANGER, Book 2, Section 29 ("The greatest remedy for anger is delay.").

on its protected speech. PCC's support of the UCLA protest was protected speech and this Court dismiss Plaintiffs' claims against it.

### 2. Plaintiffs Fail to Properly Plead that PCC Entered into a Conspiracy.

Plaintiffs' "extensive allegations of communications and interactions between" PCC and other Defendants consist of conclusory allegations, allegations of independent parallel behavior, and one coordinated social media post. Opp'n at 17:8-9. These allegations fail to "state specific facts to support the existence of the claimed conspiracy" involving PCC. *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989).

Nothing in the FAC identifies who PCC agreed with, when, or about what (beyond posting the same image on social media). Opp'n at 17:13-14; *see Sines v. Kessler,* 324 F. Supp. 3d 765, 794 (W.D. Va. 2018) ("The promotional poster at most demonstrates an agreement to promote the rally"). As in *Sines*, allegations that PCC's leaders host a podcast which discussed the encampment, promoted the encampment, communicated to their followers about the encampment, and attended the encampment "do not plausibly allege that Defendant [PCC] joined the alleged conspiracy." 324 F. Supp. 3d at 794. Plaintiffs twist the facts of *Sines*, claiming a surviving defendant simply "functioned as an organizer," Opp'n at 18:4, it was also alleged that he "directed and incited physical assaults and violence, the use of open flames, and the intimidation of minority residents," *Sines,* 324 F. Supp. 3d at 785. Likewise, the defendant Plaintiffs claim "simply 'attended the event,'" Opp'n at 18:7, was also a "key participant[] in the violence," *Sines,* 324 F. Supp. 3d at 790. Plaintiffs make no even remotely similar allegations against PCC.

Plaintiffs' vague and conclusory allegations about activity at the encampment (which are unclear if they refer to PCC) do not suggest that PCC reached any agreements with any other groups or individuals and make no allegations that PCC or its members engaged in any specific conduct at the encampment. Allegations that non-students participated in the encampment or that the encampment was built quickly say nothing about PCC reaching any agreement. *See* Opp'n at 8:24-28, 9:17-18; 17:16-18.

The decision in *Gaetz v. City of Riverside*, 722 F. Supp. 3d 1054, 1069 (C.D. Cal.

2024), is directly on point: mobilizing supporters or lobbying others to speak out and take action does not plausibly allege conspiracy. While PCC relied on its *Gaetz* in their motion, Plaintiffs ignore it.

As in *A Soc'y Without a Name v. Virginia*, 655 F.3d 342 (4th Cir. 2011), Plaintiffs here offer "allegations [that] amount to 'parallel conduct and a bare assertion of a conspiracy'" and lack factual specificity, such as "the persons who agreed to the alleged conspiracy, the specific communications amongst the conspirators, or the manner in which any such communications were made." *Id.* at 347.

### 3. Plaintiffs Do Not Plead the Requisite Discriminatory Purpose.

While Plaintiffs claim that "[t]he overriding purpose of the encampment … was antisemitic violence and the exclusion of Jews," Opp'n at 19:11-12, the allegations they rely upon to support this assertion make no mention of PCC or PCC's purpose. *See id.* at 9:22-11:12. Plaintiffs offer no nonconclusory allegation that PCC intended to target Jewish individuals to deprive them of or interfere with their constitutional rights. At most, Plaintiffs allege that PCC was "merely [] aware of a deprivation of right that [they] cause[d], and [] merely accept[ed] it," which is insufficient. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 276 (1993).

Plaintiffs' attempt to distinguish *Bray, Kurd*, and *Operation Rescue* makes immaterial distinctions. PCC relies on each to explain the standard for the intent to deprive of a right requirement, and that *Bray* was decided after trial, the particular sufficiency of the *Kurd* pleadings, and that the court found for the plaintiffs in *Operation Rescue*, are all irrelevant to the applicability of the standard. The *StandWithUs* plaintiffs' allegations that members of MIT's Palestine solidarity encampment violated § 1985(3)'s deprivation clause by conspiring to "engage in, promote, and incite racial, religious, and ethnicity-based harassment and violence" motivated by discriminatory animus against Jewish and Israeli members of the MIT community are striking similar factually and legally to the present allegations, and any differences in the specifics of the alleged harms are immaterial. Dkt. 69-1 Ex. 1 at ¶¶ 271-280.

Binding and persuasive authority makes clear that Plaintiffs cannot plead the required purpose for a claim under the deprivation or hindrance clause.

### 4. Plaintiffs Do Not Adequately Allege Racial Animus.

Plaintiffs' allegations offer no facts plausibly suggesting PCC was motivated by racial animus. Their conclusory statements that the protest movement was driven by "antisemitic animus" or "racial and ethnic animus against Jews" are nothing more than legal conclusions "cast in the form of factual allegations." FAC ¶¶ 106, 155; *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam); *see StandWithUs Ctr. for Legal Just. et al. v. Mass. Inst. of Tech.*, No. 24-1800, 2025 U.S. App. LEXIS 27390, at *18 (1st Cir. Oct. 21, 2025). The allegation Plaintiffs rely upon to argue that they adequately allege racial animus make no mention of PCC, PCC's animus towards any race, or PCC's intent behind engaging in the alleged conspiracy. *See* Opp'n at 9:22-11:12. In fact, the Opposition fails to identify one single fact that suggests that PCC held and acted upon racial animus against Jewish individuals.

### 5. Plaintiffs Fail to Plead a Purpose of Interfering with State Law Enforcement.

Plaintiffs do not allege facts sufficient to support a plausible inference that PCC engaged in a conspiracy with the purpose of hindering law enforcement from protecting Jewish individuals' constitutional rights. Plaintiffs' argument hinging on the protest's location says nothing about any intent by PCC to interfere with law enforcement's protection of Jewish individuals' rights nor any intent by anyone involved with the encampment to interfere with law enforcement. To the contrary, this allegation supports an inference that the organizers in fact attempted to avoid interacting with law enforcement. Plaintiffs' list of actions taken by encampment participants also lack any alleged connection to PCC's intent. PCC's alleged contemporaneous tweet regarding kettling law enforcement also conveys no intent to conspire to interfere with law enforcement, much less any intent to do so with the goal of interfering with Jewish people's constitutional rights.

Plaintiffs allege no facts that suggest that PCC engaged directly with law enforcement, physically interfered with law enforcement's response to the encampment, expressed any intent to do so, or encouraged others to do so to interfere with Jewish people's constitutional rights.

### 6. Plaintiffs Fail to Properly Plead that People's City Council Prevented or Hindered Law Enforcement from Protecting Plaintiffs' Rights Under the Hindrance Clause.

An alleged goal of denying Jewish students' constitutional rights is not synonymous with an alleged injury to Plaintiffs' person or property because of any conspiracy to prevent or hinder law enforcement from securing their rights, as Plaintiffs appear to argue. Plaintiffs do not allege that they were harmed because law enforcement officers were unable to or refused to protect them. Plaintiffs do not and cannot plead any actual injury to their person or property because of any conspiracy to prevent or hinder law enforcement from securing their rights.

### 7. Plaintiffs Lack Standing to Sue PCC.

Plaintiffs' traceability argument fails because they are unable to allege a "line of causation between the [alleged] illegal conduct and injury" that is more than attenuated. *Allen v. Wright*, 468 U.S. 737, 752 (1984). Plaintiffs' claim of causal link is at best hypothetical and tenuous because they fail to identify a single nonconclusory allegation in their FAC from which the Court could trace Plaintiffs' injuries back to PCC's alleged conduct, regardless of the number of links in the chain. For example, Plaintiffs do not offer any nonconclusory fact-based allegations of the motivation behind the unidentified third-party actors who allegedly harmed Plaintiffs. *See* FAC ¶¶ 131-148. Nor do Plaintiffs allege that *anyone* at or associated with the encampment took *any* action or even attended the encampment *because of* PCC's alleged conduct. Following Plaintiffs' logic, the Court would be forced to "speculat[e] about the decisions of independent actors," which is insufficient to establish standing. *Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 414 (2013). In particular, there is clearly no causal connection between Plaintiff Gurevich's

alleged injuries and PCC's alleged conduct because Plaintiffs do not allege any facts that link PCC to the June 10 events.

*O'Handley* offers no support to Plaintiffs, as they claim. In *O'Handley*, the defendant took an action that directly connected the plaintiff to the actor that caused the harm (Twitter) when the defendant used Twitter's tool that enables outside actors to report suspected violations to directly report the plaintiff's social media post to Twitter, and Twitter immediately limited access to his post and subsequently suspended the plaintiff's account. *O'Handley v. Weber,* 62 F.4th 1145, 1153-55, 1162 (9th Cir. 2023). Plaintiffs do not allege that PCC ever engaged directly with or about Plaintiffs, that PCC ever engaged with the individuals who are alleged to have harmed Plaintiffs, that PCC made anyone at the encampment aware of Plaintiffs, that PCC suggested anyone at the encampment commit the alleged harms against Plaintiffs, or even that PCC was aware of Plaintiffs' existence. The fact that there were multiple steps in the causal link in *O'Handley* is not sufficient to render it applicable to the present case.

Nor is *Abdulaziz*. The Court in *Abdulaziz* held that the defendant's alleged conduct was fairly traceable to the plaintiff's harm because the harm would not have occurred absent the defendant's wrongful conduct: "had Twitter not been negligent in maintaining its security system and hiring and managing its employees, KSA operatives could not have accessed his personal information." *Abdulaziz v. Twitter*, No. 21-16195, 2024 U.S. App. LEXIS 28169, at *3 (9th Cir. Nov. 6, 2024). Plaintiffs make no such allegations that their injuries would not have occurred absent PCC's alleged conduct or that anyone under PCC's authority or control caused Plaintiffs' alleged injuries.

Finally, "[e]ach Plaintiff need not be able to point to an injury incurred from each Defendant" when the acts of the defendant's co-conspirators are "reasonably foreseeable." *Sines*, 324 F. Supp. 3d at 795. Plaintiffs do not allege that their injuries caused by reasonably foreseeable acts of the other Defendants or were reasonably foreseeable consequences of the conspiracy. *See Pinkerton v. United States,* 328 U.S. 640, 647-48 (1946) ("A different case would arise if the substantive offense committed by one of the

1  conspirators . . . was merely a part of the ramifications of the plan which could not be
2  reasonably foreseen as a necessary or natural consequence of the unlawful agreement.")
3         Similarly, Plaintiff Weinberg does not have standing to sue PCC because Plaintiffs
4  do not allege that Weinberg suffered an injury in fact. *See Conner v. Sticher*, 801 F.2d
5  1266, 1268 (11th Cir. 1986) (plaintiff's subjective belief that harm may occur provides no
6  basis for relief). Plaintiffs appear to argue that because Weinberg may have standing to
7  seek forward-looking relief (which this lawsuit does not seek, *see* FAC at 65), he
8  automatically has standing to seek compensatory damages. Plaintiffs do not and cannot
9  offer any authority to support this absurd and incorrect argument. Plaintiffs do not have
10 standing to sue PCC.

## III.  CONCLUSION

For the foregoing reasons, Defendant People's City Council requests that the Court dismiss the First Amended Complaint as to People's City Council without leave to amend.

Dated: December 5, 2025                  Respectfully Submitted,

                                         HADSELL STORMER RENICK & DAI LLP


                                         By: /s/ Rebecca Brown
                                             Dan Stormer
                                             Rebecca Brown
                                         Attorneys for Defendant
                                         PEOPLE'S CITY COUNCIL

## L.R. 11-6.2 Attestation

The undersigned, counsel of record for Defendant People's City Council, certifies that this brief contains 2946 words, which complies with the word limit of this Court's Standing Order.

Dated: December 5, 2025         HADSELL STORMER RENICK & DAI LLP

By: /s/ Rebecca Brown
    Dan Stormer
    Rebecca Brown

Attorneys for Defendant People's City Council

DEFT PCC'S REPLY ISO THEIR
MTN TO DISMISS FAC

10