Robert L. Herbst (NYSBN 1333194)
rherbst@herbstlawny.com
HERBST LAW PLLC
420 Lexington Avenue, Suite 300
New York, New York 10170
Tel: 914-450-8163

Joshua Colangelo-Bryan (NYSBN 4162319)
colangeloj@humanrightsfirst.org
HUMAN RIGHTS FIRST
121 West 36th Street, PMB 520
New York, NY 10018
Tel: (212) 845-5243

Ramsey Judah (SBN 342300)
ramsey@judahlawgroup.com
JUDAH LAW GROUP
1026 W. Foothill Blvd
Upland, CA  91786
Tel: 626-899-7667

Attorneys for Defendant
WESPAC FOUNDATION

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW WEINBERG, et al., | CASE NO: 2:25-cv-03714-MCS-JCx |
| Plaintiffs, | Honorable Mark C. Scarsi<br>Courtroom 7C |
| v. | **DEFENDANT WESPAC FOUNDATION'S CORRECTED REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** |
| NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, INC., et al. | |
| Defendants. | **Date:   Monday, December 15, 2025**<br>**Time:   9:00 a.m.**<br>**Place:  Courtroom 7C**<br>**350 W. 1st Street**<br>**Los Angeles, California 90012** |
| | Complaint Filed: April 25, 2025 |

# <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ........................................................................................... 1

II.  ARGUMENT .................................................................................................. 2

   A.  This Action Should Be Dismissed for Lack of Personal Jurisdiction............. 2

      1.  Plaintiffs' Agency Theory Relies on Allegations Made on "Information and Belief" About WESPAC's Agreement with NSJP That Have Been Refuted.................................................................... 3

      2.  There Is No Other Basis Upon Which Plaintiffs Have Plausibly Alleged an Agency Relationship ...................................................... 4

      3.  Plaintiffs' Cursory References to Funding Are Speculative, Refuted, and Irrelevant .................................................................... 7

      4.  Plaintiffs Are Not Entitled to Jurisdictional Discovery.................. 9

   B.  The One Cause of Action Against WESPAC Fails to State a Claim............. 9

   C.  This Action Should Be Dismissed with Prejudice ....................................... 10

III.  CONCLUSION ........................................................................................... 10

# **TABLE OF AUTHORITIES**

## **CASES**

*Counts v. Meriwether*, 2015 WL 12656945 (C.D. Cal. June 12, 2015) .................. 10

*Elliott Erwitt, LLC v. Sugar Factory*, LLC, 2023 WL 12155595 (C.D. Cal. Aug. 25, 2023) ............................................................................................................. 4

*Found. for Anime & Niche Subcultures v. Texas Anime Conventions*, 769 F. Supp. 3d 1034 (N.D. Cal. 2025) ........................................................................... 7

*Helmann v. Codepink Women for Peace*, 2025 WL 3030582 (C.D. Cal. June 13, 2025) ............................................................................................................. 5, 9

*In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 4461199 (N.D. Cal 2021) . 6

*Manhart v. WESPAC Found., Inc.*, 2025 WL 2257408 (N.D. Ill. Aug. 7, 2025) ...... 9

*Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045 (9th Cir. 2017) ....... 5

*MSP Recovery Claims, Series LLC v. Actelion Pharms. US, Inc.*, 2024 WL 3408221 (N.D. Cal. 2024) ......................................................................................... 6

*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529 (9th Cir. 1992) .................................... 10

*Smith v. Bellco Credit Union*, 2020 WL 8611063, (C.D. Cal. Dec. 14, 2020) (Scarsi, J.) ................................................................................................................ 8

*Sunderland v. PharmaCare U.S., Inc.*, 2024 WL 2116069 (S.D. Cal. May 10, 2024) ............................................................................................................. 6

*Turner-Gray v. Avis Budget Grp. Inc.*, 2024 WL 4504529 (N.D. Cal. Oct. 15, 2024) ............................................................................................................. 5

*Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017) ........................... 2, 6

## **STATUTES**

42 U.S.C. § 1985(3) .......................................................................................... 9-10

Cal. Civ. Code § 2295 ............................................................................................. 4

# I.    INTRODUCTION

Plaintiffs' Opposition to Defendants' Motions to Dismiss ("Opp." or "Opposition") relies almost exclusively on the proposition that WESPAC and NSJP had a fiscal-sponsor agreement which created an agency relationship and provided that WESPAC would run NSJP's operations. Plaintiffs claim that, given these contract terms, WESPAC is subject to personal jurisdiction in this District and liable for civil rights violations resulting from NSJP's alleged conduct.

On what basis do Plaintiffs offer these contentions? They claim to have divined the terms of WESPAC's agreement with NSJP from a complaint filed by WESPAC's insurer in a coverage action unrelated to this case. Fatal to Plaintiffs' theory, though, is that their speculation regarding the fiscal-sponsor agreement's terms (offered "[o]n information and belief") is definitively contradicted by the actual agreement, submitted herewith. *See* Khader Reply Declaration, Ex. A ("Agreement").[1]

Moreover, Plaintiffs cannot point to any other allegations to support the idea that WESPAC had an agency relationship with NSJP, let alone one making it vicariously subject to personal jurisdiction and liability for what NSJP allegedly did. In fact, Judge Wilson recently rejected the theory that WESPAC's being a fiscal sponsor created an agency relationship through which personal jurisdiction could be properly exercised in this District and through which WESPAC could be liable for a sponsoree's conduct. In attempting to deflect the import of this decision, Plaintiffs say that Judge Wilson was "wrong on the law" – even though they cannot point to a single legal authority supporting that position.

Even if *arguendo* Plaintiffs' argument about an agency relationship were valid, such relationship would not *ipso facto* create personal jurisdiction. Following

---

[1] As addressed below, WESPAC had no reason to suspect that Plaintiffs' jurisdictional and liability theories rested on its agreement with NSJP or it would have submitted said document with its opening brief.

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF
Case No: 2:25-cv-03714-MCS-JCx

1  *Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017), some district courts
2  have concluded a subsidiary's contacts can never be attributed to a parent for
3  jurisdictional purposes. Others have held such contacts attributable to a parent, but
4  only if the parent has full control over the subsidiary's daily operations. Under the
5  former interpretation, Plaintiffs' agency theory is legally frivolous. Under the latter
6  interpretation, Plaintiffs have failed entirely to plausibly allege that WESPAC had
7  the requisite control. Further, Plaintiffs plead nothing to suggest that the commission
8  of alleged civil rights violations by NSJP would be within the scope of any agency
9  relationship, if one even existed, so such violations could not be imputed to WESPAC
10  under any theory.

11      Ultimately, it is most telling that Plaintiffs spend nearly the first eleven pages
12  of the Opposition detailing the alleged facts out of which their claims arise without
13  mentioning WESPAC a single time. Plaintiffs' omission was not accidental.
14  WESPAC did *nothing* concerning the relevant events. This inescapable reality is
15  what leaves Plaintiffs conjuring up contract terms that do not exist. Such baseless
16  speculation is not the stuff of a valid federal action.

17  **II.    ARGUMENT**

18      **A. This Action Should Be Dismissed for Lack of Personal Jurisdiction**

19      In the Opposition, Plaintiffs enunciate their jurisdictional position for the first
20  time, *i.e.,* NSJP had contacts with California, there is an agency relationship between
21  NSJP and WESPAC, and thus WESPAC is vicariously subject to personal
22  jurisdiction here. *See* Opp. at 27. Notably, Plaintiffs dismiss WESPAC's Executive
23  Director's Declaration – establishing WESPAC did not provide funding to be used
24  at UCLA – on the basis that it does not "controvert the relevant allegations," which
25  Plaintiffs say relate instead to the purported agency relationship. *Id.* at 28.

26      However, it was understandable for WESPAC to surmise that Plaintiffs'
27  theory of personal jurisdiction rested upon the (false) notion that WESPAC had

28

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST
AMENDED COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF
Case No:  2:25-cv-03714-MCS-JCx

funded the protests, rather than upon agency. The only allegation in the FAC on this subject was that "NSJP, WESPAC, FJP, and Abuirshaid are subject to specific jurisdiction because *each* has sufficient minimum contacts with California." FAC ¶ 59 (emphasis added). Nothing in that allegation suggested Plaintiffs sought to attribute NSJP's contacts to WESPAC via an agency relationship. Also, in response to a Rule 11 notice WESPAC served addressing personal jurisdiction, Plaintiffs' counsel provided a response silent on jurisdiction. Declaration of Robert Herbst ("Herbst Decl."), Exs. A and B.

**1.    Plaintiffs' Agency Theory Relies on Allegations Made on "Information and Belief" About WESPAC's Agreement with NSJP That Have Been Refuted**

Plaintiffs contend that WESPAC "second-guesses the FAC's well-pleaded factual allegations, which plausibly establish specific jurisdiction based on NSJP's undisputed contacts with California and a common-law agency relationship between WESPAC and NSJP." Opp. at 27. By "well-pleaded factual allegations," Plaintiffs refer to various assertions in the FAC that are entirely speculative as underscored by their being made only "[o]n information and belief." *See id.* at 28 (citing FAC ¶¶ 47-49, 70-75, 112).

More particularly, Plaintiffs allege – "[o]n information and belief" – that "WESPAC's relationship with SJP [sic] under the July 2023 fiscal sponsorship agreement was consistent with" a "definition of the term 'Fiscal Sponsor' contained in WESPAC's insurance policy." FAC ¶ 49 (cited in Opp. at 28). Also "[o]n information and belief," Plaintiffs speculate that WESPAC must have "'assumed responsibility to manage programs'" for NSJP. *See* Opp. at 28 (citing FAC ¶¶ 48-49). And based on these pieces of conjecture, Plaintiffs claim "[i]t is plausible that" (i) WESPAC "had 'the right to substantially control' the NSJP 'programs'" and (ii)

"the agreement created a common-law agency relationship between WESPAC and NSJP because many such agreements…do exactly that." *Id.* at 32.

A tortured series of suppositions offered only "[o]n information and belief" does not create personal jurisdiction. Indeed, there is nothing plausible about Plaintiffs' assertion, "[o]n information and belief," that an agreement between WESPAC and NSJP regurgitated verbatim a generic policy term defining fiscal sponsorship for purposes of a "Fiscal Sponsor *Limitation* of Coverage." *See* Opp. at 32 (citing Compl. (Dkt.1) ¶ 35, *ANI v. WESPAC Foundation*); *see* Compl. ¶ 40 (Fiscal Sponsor Limitation) (emphasis added).

Indeed, the Agreement, which actually governs the WESPAC-NSJP fiscal sponsorship, does not contain any of the terms Plaintiffs imagine. *See* Khader Reply Declaration, Ex. A. It says nothing about agency, let alone that NSJP is WESPAC's agent. It says nothing about WESPAC's assuming "'responsibility to manage programs'" for NSJP. It says nothing about WESPAC's "control" over NSJP.

Thus, Plaintiffs have done nothing more than make speculative allegations "[o]n information and belief" that WESPAC has refuted by competent evidence. *See Elliott Erwitt, LLC v. Sugar Factory, LLC*, 2023 WL 12155595, at *4 (C.D. Cal. Aug. 25, 2023) (granting motion to dismiss for lack of jurisdiction because jurisdictional allegations made "in a conclusory fashion, and on information and belief" were contradicted by declaration).

## 2. There Is No Other Basis Upon Which Plaintiffs Have Plausibly Alleged an Agency Relationship

Beyond that the Agreement dispositively refutes Plaintiffs' allegations, there is no other basis to assume an agency relationship existed. Under California law, an agent is "one who represents another, called the principal, in dealings with third persons." Cal. Civ. Code § 2295. The elements of an agency relationship are "(1) An agent or apparent agent holds a power to alter the legal relations between the principal

and third persons and between the principal and himself; (2) an agent is a fiduciary with respect to matters within the scope of the agency; and (3) a principal has the right to control the conduct of the agent with respect to matters entrusted to him." *Turner-Gray v. Avis Budget Grp. Inc.*, 2024 WL 4504529, at *3 (N.D. Cal. Oct. 15, 2024) (citations and internal quotations omitted). As a matter of federal common law, "[a]gency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf." *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017).

Plaintiffs do not, and cannot truthfully, offer allegations to satisfy these elements. Thus, beyond the incurable inaccuracies in Plaintiffs' theorizing about the Agreement, there simply is no basis to conclude WESPAC and NSJP had an agency relationship. Judge Wilson's recent opinion confirmed this very point. *See Helmann v. Codepink Women for Peace*, 2025 WL 3030582, at *21 (C.D. Cal. June 13, 2025) ("There is only one link between the Sponsoring Defendants and California: the Sponsoring Defendants' fiscal sponsorship relationship with PYM. This is not enough for *personal jurisdiction*. *It does not create an agency relationship*.") (emphasis added).

Plaintiffs argue that the Court should disregard Judge Wilson's ruling because "the facts and the governing law distinguish this case from *StandWithUs*,"[2] evidently referring to "more specific allegations about *WESPAC's fiscal sponsorship agreement with NSJP* based on allegations in a lawsuit brought by WESPAC's insurer." Opp. at 33-34 (emphasis in original). But even if allegations repeated from another litigation could constitute distinguishing facts, the unfounded extrapolations Plaintiffs make about the Agreement based on the coverage case are refuted by the

---

[2] *StandWithUs* was a separate action consolidated with *Helmann*.

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST
AMENDED COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF
Case No:  2:25-cv-03714-MCS-JCx

Agreement itself. As to distinguishable "governing law," Plaintiffs cite no law that would support their desired outcome, instead relying on an attorney's hypothetical about "Jones Lab." *See id.* at 34-35. Ultimately, Plaintiffs say nothing except that Judge Wilson was "wrong on the law," without citation to any contrary authority. *Id.* at 34.

Underscoring the frivolousness of Plaintiffs' position, even if *arguendo* WESPAC and NSJP had an agency relationship, such relationship would not by itself suffice to create personal jurisdiction over WESPAC. In *Williams v. Yamaha Motor Co.*, the Ninth Circuit interpreted *Daimler AG v. Bauman*, 571 U.S. 117 (2014), as leaving open the question of whether an agency relationship could ever justify the exercise of specific personal jurisdiction over a principal. 851 F.3d 1015, 1023-25 (9th Cir. 2017) (even if such theory were viable, parent did not exercise adequate control over subsidiary to be subject to jurisdiction).

Since *Williams*, some district courts have concluded that a subsidiary's contacts cannot be attributed to a parent under any agency test. *E.g., MSP Recovery Claims, Series LLC v. Actelion Pharms. US, Inc.*, 2024 WL 3408221, at *4 (N.D. Cal. 2024). Other courts have held that the jurisdictional contacts of a subsidiary can be attributed to a parent, but only if there is "a showing higher than 'normal oversight of a parent over a subsidiary' and more akin to 'control of day-to-day operations.'" *Sunderland v. PharmaCare U.S., Inc.*, 2024 WL 2116069, at *4 (S.D. Cal. May 10, 2024) (internal citation omitted); *see also In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 4461199, at *2 (N.D. Cal. 2021) (no jurisdiction over parent where evidence "shows close monitoring and risk management, not control of day-to-day operations").

Plaintiffs did not address these issues, but if the former interpretation of jurisdictional doctrine is correct, Plaintiffs' agency theory is as baseless legally as it is factually. If the latter interpretation is correct – and if case law relating to parent-

subsidiary relationships can even be applied to sponsor-sponsoree relationships – Plaintiffs have failed entirely to allege plausibly that WESPAC engaged in "control of day-to-day operations" in a manner even beyond "close monitoring and risk management."

Moreover, it is a series of allegedly wrongful acts that Plaintiffs seek to impute to WESPAC. So, even if the law allowed Plaintiffs to cite NSJP's conduct in arguing WESPAC is subject to personal jurisdiction, Plaintiffs still would have to establish that NSJP's allegedly wrongful acts were committed with WESPAC's authorization or with apparent authority from WESPAC upon which Plaintiffs relied to their detriment. *See Found. for Anime & Niche Subcultures v. Texas Anime Conventions*, 769 F. Supp. 3d 1034, 1040-41 (N.D. Cal. 2025) (no jurisdiction over out-of-state defendants-principals because misappropriation by in-state agent was not authorized by principals, and plaintiff had failed to "plead facts that support a theory of apparent authority"). Needless to say, there is no allegation that WESPAC authorized NSJP to engage in (violent) civil rights violations or that Plaintiffs relied on any form of apparent authority.

### 3. Plaintiffs' Cursory References to Funding Are Speculative, Refuted, and Irrelevant

Despite emphasizing agency as their supposed jurisdictional lynchpin, Plaintiffs assert that because it is "plausible" that WESPAC and NSJP had a written fiscal-sponsorship agreement creating an agency relationship, it also is "plausible" "WESPAC-associated funds were used in support of NSJP's participation in the underlying conspiracy." Opp. at 32. However, as addressed, the allegations Plaintiffs reference to support their serial assertions about what is "plausible" were all made "[o]n information and belief" – and have been refuted. Moreover, the declaration from Nada Khader, WESPAC's Executive Director, submitted with WESPAC's opening brief, explained unequivocally that WESPAC "never provided funding to

NSJP to be used in connection with the protest and encampment at UCLA." *See* Dkt. 71-1¶ 6. Plaintiffs attempt to discredit these sworn statements with the cartoonish remark that "[i]t is no surprise that Khader denies mailing NSJP a check labeled 'For use in a civil rights conspiracy at UCLA'" (Opp. at 33), but that does not remotely reflect the substance of Ms. Khader's statements, which Plaintiffs cannot refute.

Plaintiffs also contend Ms. Khader did not address "whether any of those programs or funds were in fact used to support NSJP's 'Popular University for Gaza' initiative or the 'Campus Support Coalition,'…." Opp. at 33 (citing FAC ¶ 74). If Plaintiffs are insinuating – "[o]n information and belief" – that WESPAC provided funds to NSJP in order to support those entities, the sworn statement of Nada Khader submitted herewith establishes this was not the case. Khader Reply Declaration ¶ 3. Ms. Khader was not even aware of those entities at the relevant time. *Id.*

But even if WESPAC had provided funds to support the "Popular University for Gaza" or the "Campus Support Coalition" and, in turn, said funds were used by some unidentified person to support protests at UCLA (which has not been adequately pled), Plaintiffs would still fall far short of alleging that WESPAC "(1) committed an intentional act, (2) expressly aimed at the forum state, [and] (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Smith v. Bellco Credit Union*, 2020 WL 8611063, at *4 (C.D. Cal. Dec. 14, 2020) (Scarsi, J.) (internal quotations and citations omitted).

Under Plaintiffs' hypothetical about funds that "were used," WESPAC would not have taken any intentional act *aimed at California* that it knew was likely to cause harm *in California*, given that the "Popular University for Gaza" and the "Campus Support Coalition" are, according to Plaintiffs, nationwide, not California-based, organizations. FAC ¶ 60 ("the nationwide 'Popular University of Gaza'"), ¶ 74 ("Campus Support Coalition" is "'a collective of organizations managed by National

1  SJP that work together to support students fighting for Palestinian liberation on
2  university campuses.").

3           **4.    Plaintiffs Are Not Entitled to Jurisdictional Discovery**

4           Plaintiffs ask for "jurisdictional discovery against WESPAC on the nature and
5  scope of its *fiscal sponsorship agreement* with NSJP and the resulting agency
6  relationship." Opp. at 35 (emphasis added); *id*. at 36 ("[WESPAC] does dispute that
7  its fiscal sponsorship agreement with NSJP accomplished what ANI thought it had."
8  There is no basis for jurisdictional discovery here for the simple reason that Plaintiffs
9  now have the document they would seek through such discovery.

10   **B. The One Cause of Action Against WESPAC Fails to State a Claim**

11          Plaintiffs disavow any argument that WESPAC, as fiscal sponsor, is strictly
12  liable for NSJP's alleged acts, contrary to the position they took previously. *Compare*
13  Opp. at 36 ("WESPAC accuses Plaintiffs of suggesting that 'being a fiscal sponsor
14  automatically subjects a sponsor to liability for anything anyone associated with a
15  sponsoree does anywhere in the world.'…But that strawman isn't what Plaintiffs
16  argue.") *with* Herbst Decl., Ex. B (response of Plaintiffs' counsel to WESPAC's Rule
17  11 communication, stating "[t]he amended complaint more than adequately asserts
18  WESPAC's liability based on its role as fiscal sponsor for [NSJP]," and "[t]he fiscal
19  sponsorship theory was not a viable basis for sanctions in *Manhart*, and it is not one
20  here either"). Plaintiff's concession is well-warranted given the law on this point. *See*
21  *Helmann*, 2025 WL 3030582 at *20-21; *Manhart v. WESPAC Found., Inc.*, 2025 WL
22  2257408 at *12 (N.D. Ill. Aug. 7, 2025) (dismissing claims against WESPAC).

23          Plaintiffs now argue that they have stated a claim pursuant to § 1985(3)
24  because their amended pleading "alleges that WESPAC had a written fiscal
25  sponsorship agreement under which it 'assumed responsibility to manage
26  programs…for NSJP, creating an agency relationship at least with respect to the
27  specific 'programs' WESPAC 'assumed responsibility to manage,' and WESPAC-

28

9

associated funds [sic]," including the "'Popular University for Gaza' initiative and the 'Campus Support Coalition.'" Opp. at 36-37. As addressed, Plaintiffs' allegations on these points were made "[o]n information and belief" and have been dispositively refuted.

Moreover, Plaintiffs never explain how their allegations – even if those allegations had been plausibly made – would state a claim for a civil rights violation. Nor is it obvious how even a well-pleaded allegation that WESPAC generally managed the national "Popular University for Gaza" or "Campus Support Coalition" would constitute engaging in (1) a conspiracy specific to UCLA; (2) to deprive any class of persons of equal protection (deprivation clause); or to hinder constituted authorities from securing to all equal protection (hindrance clause); (3) an act in furtherance of this conspiracy; and (4) for deprivation-clause purposes, discriminatory animus. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992); 42 U.S.C. § 1985(3)

## C.    This Action Should Be Dismissed with Prejudice

Plaintiffs make a half-hearted argument that any dismissal of their pleading should be without prejudice, saying they "could plead additional facts about NSJP's relationship to WESPAC based on NSJP's website[.]" Opp. at 48, n.5. Plaintiffs have filed two pleadings without cognizable jurisdictional or liability theories. If there were unspecified points to be made from NSJP's website, Plaintiffs have no excuse for not having made them by now. Also, they do not explain how such points could save their case. Plaintiffs are not entitled to a third bite at the apple. *See Counts v. Meriwether*, 2015 WL 12656945, at *2–3 (C.D. Cal. June 12, 2015).

## III.    CONCLUSION

This Court should dismiss with prejudice.

Dated: December 6, 2025

By: /s/ Robert L. Herbst

HERBST LAW PLLC
Robert L. Herbst (NYSBN 1333194)
rherbst@herbstlawny.com
420 Lexington Avenue, Suite 300
New York, New York 10170
Tel: 914-450-8163

HUMAN RIGHTS FIRST
Joshua Colangelo-Bryan
(NYSBN 4162319)
colangeloj@humanrightsfirst.org
121 West 36th Street, PMB 520
New York, NY 10018
Tel: (212) 845-5243

JUDAH LAW GROUP
Ramsey Judah (SBN 342300)
ramsey@judahlawgroup.com
1026 W. Foothill Blvd
Upland, CA  91786
Tel: 626-899-7667

Attorneys for Defendant
WESPAC FOUNDATION

DEFENDANT WESPAC FOUNDATION'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST
AMENDED COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF
Case No:  2:25-cv-03714-MCS-JCx

1

## **CERTIFICATE OF COMPLIANCE**

2      The undersigned counsel of record for Defendant WESPAC certifies that this

3  brief contains 2,997 words, which complies with the word limit of this Court's

4  Standing Order.

5

6  Dated: December 6, 2025

7                                    By:   /s/ Robert L. Herbst

8                                         Robert L. Herbst

9                                         rherbst@herbstlawny.com

10                                        420 Lexington Avenue, Suite 300
                                          New York, New York 10170
11                                        Tel: 914-450-8163

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28