MARK KLEIMAN (S.B.N. 115919)
KLEIMAN / RAJARAM
12121 WILSHIRE BOULEVARD, # 810
LOS ANGELES, CA 90025
TELEPHONE: (310) 392-5455
FACSIMILE: (310) 306-8491
EMAIL: mark@krlaw.us

Attorneys for Defendant
NATIONAL STUDENTS FOR
JUSTICE IN PALESTINE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW WEINBERG, RABBI DOVID GUREVICH, NIR HOFTMAN, ELI TSIVES,<br><br>Plaintiffs,<br>vs.<br>NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, JOHN DOE #1, PRESIDENT OF THE UCLA CHAPTER OF SJP, AJP EDUCATIONAL FOUNDATION, INC., D/B/A AMERICAN MUSLIMS FOR PALESTINE, OSAMA ABURSHAID, HATEM AL-BAZIAN, FACULTY FOR JUSTICE IN PALESTINE NETWORK, UC DIVEST COALITION, WESPAC FOUNDATION, PEOPLE'S CITY COUNCIL,<br><br>Defendants. | Case No. 2:25-cv-03714 MCS (JCx)<br><br>**DEFENDANT NATIONAL STUDENTS FOR JUSTICE IN PALESTINE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date: December 15, 2025<br>Time: 9:00 a.m.<br>Courtroom: 7C<br><br>Complaint Filed: April 25, 2025 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. Introduction and Summary of Argument

This entire suit is a regrettably attempt to unfairly capitalize on this Court's decision in *Frankel*, in which affected parties, students and faculty alike, were unnamed and unprepared to promptly engage and offer substantial counter-arguments that the Court was unable then to consider. Plaintiffs' cynical expectation of a *Frankel II* cannot be sustained on the dubious grounds advanced here.

## 2. Weinberg Cannot Possibly Cure His Failure to Demonstrate Standing

Weinberg originally claimed harm from having to change his ordinary routine during April and May out of concern for his safety. (FAC ¶147). He also admitted that this implied two-month travail was actually at most one week. (¶¶168, 135), that the detour in his route could not have been more than 180 feet (¶96) and carefully never claimed that he used the Powell library. (¶139). It appears that he has wisely abandoned these claims (Dkt. 81, pp. 13-14) and has retreated to a claim that his feelings have been hurt because of what he believes was racially motivated exclusion. *Id.*

This is stunning. Not a single line in these miles of print claims that Weinberg even witnessed such exclusion.[1] There is no "actual injury" here, and ruling otherwise would require the courts to become Hall Monitors for angry looks and indistinct mutterings. Weinberg must be dismissed from the action.

---

[1] And if he had, this would not meet the "**actual** injury" requirements of Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992) (emphasis added). In this Circuit, the psychological consequence of encountering disagreeable conduct is not an actual injury. Caldwell v. Caldwell, 545 F.3d 1126, 1133 (9th Cir. 2008).

**3. The First Amended Complaint Fails to Demonstrate Any Injury Traceable to the National Students for Justice in Palestine**

Plaintiffs' entire theory of NSJP's involvement can be divined from one student's simultaneous membership in five different organizations each of which gets blamed for the Encampment. (FAC ¶ 67) The connection is so tenuous that Plaintiffs are forced to lean heavily and repeatedly upon "information and belief" without ever stating what facts make that belief plausible. This stops so far short of the line between possibility and plausibility that "plausible" is barely in sight. Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009). Although Kupsh is allegedly the mastermind, the FAC never explains what he did, or even what he said. Plaintiffs instead retreat to sweeping conclusory statements which, unsupported by allegations, are unentitled to the assumption of truth. Enos v. Todd Young, No. 21-16129, 2022 U.S. App. LEXIS 29373, at *2-3 (9th Cir. Oct. 21, 2022)' *accord*, Cornejo v. Tumlin, No. 20-cv-05813-CRB, 2024 U.S. Dist. LEXIS 75849, at *26-27 (N.D. Cal. Apr. 25, 2024) (Mere rote allegation of a in a civil rights violation insufficient.)

This violates more than the law of logic. It violates the law of agency. It is firmly established that a national organization cannot be held liable for the behavior of a local affiliate unless the national organization authorized, directed, or ratified the affiliate's specifically violative conduct. See Carbon Fuel Co. v. United Mine Workers, 444 U.S. 212, 216, 62 L. Ed. 2d 394, 100 S. Ct. 410 (1979) (applying the common law agency test to determine whether an international was liable for an unauthorized strike by its local); Berger v. Iron Workers Reinforced Rodmen Local 201, 269 U.S. App. D.C. 67, 843 F.2d 1395, 1427-28 (D.C. Cir. 1988) (applying the Carbon Fuel test in the context of a Title VII action); and Laughon v. Int'l All. of Theatrical Stage Emples., 248 F.3d 931,

934-935 (9th Cir. 2001) (applying the common law agency test to find that a local union's possible violation of Title VII could not be attributed to the international union, as there was no evidence that the local was controlled by the international.

Plaintiffs cannot save this argument through an improbable allegation that this one student effectively led five different organizations at the same time. This dubious assertion cannot be used to get beyond an allegation of mere parallel conduct .Kendall v. Visa U.S.A., Inc. 518 F.3d 1042, 1048 (9th Cir. 2008) (Parallel conduct insufficient to sustain a charge of conspiracy, and "[e]ven participation participation on the association's board of directors is not enough by itself".) *Accord*, SmileDirectClub, LLC v. Tippins 31 F.4th 1110 (9th Cir 2022). Kupsh's presence on NSJP's steering committee cannot bear nearly the weight Plaintiffs require of it.

**4. Plaintiffs Still Cannot Plausibly Show a Violation of the Deprivation Clause of 42 U.S.C. § 1985(3)**

To plead a violation of the Deprivation Clause of 42 U.S.C. § 1985(3), Plaintiffs must plausibly allege NSJP conspired to deprive a person or class of persons of equal protection, privileges, or immunities, and that they were injured as a result of that conspiracy. Sever v. Alaska Pulp Corp., 978 F.2d 1529,1536 (9th Cir. 1992); 42 U.S.C. § 1985(3). Plaintiffs agree that they must plausibly allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" and that the conspiracy "aimed at interfering with rights that are protected against private" encroachment. Nat'l Abortions Fed'n v. Operation Rescue, 8 F.3d 680, 682 (9th Cir. 1993); ECF Doc. 81 at 16.

i. Plaintiffs Have Not Plausibly Alleged a Conspiracy

Plaintiffs still fail to allege sufficient *material factual matter* to plausibly show that NSJP entered into a conspiracy—a "meeting of the minds"—to

establish the UCLA encampment. Gaetz v. City of Riverside, 722 F. Supp. 3d 1054, 1069 (C.D. Cal. 2024). Plaintiffs must "state specific facts to support the existence of the claimed conspiracy." Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989).

Especially where First Amendment rights are involved, broad allegations of conspiracies are insufficient to plead a claim under § 1985(3) unless supported by specific material facts. Lockary v. Kayfetz, 587 F.Supp. 631, 639 (N.D. Cal. 1984).

Instead of offering such specific material facts, Plaintiffs admittedly rely entirely on circumstantial allegations to support their conspiracy claim. ECF Doc. 81 at 17. Plaintiffs allege that (1) NSJP released a general 'Toolkit' encouraging students across the country to support and join encampments on their campuses (FAC ¶82); (2) NSJP was listed as a 'collaborator' on social media posts encouraging support for the encampment (FAC ¶66); (3) Dylan Kupsh was somehow a "leader" in "no fewer than four" organizations, including NSJP (FAC ¶106); and (4) the encampment participants had a "well-disciplined and organized ground game." ECF Doc. 81 at 18.

None of these four facts render plausible an inference of a conspiracy, and they are certainly insufficient in this context, where expressive rights of the Defendants are involved (all but one of these allegations target pure speech and associative conduct by NSJP).

A generalized, untargeted Toolkit offering unsolicited advice for student activists across the country cannot plausibly show that NSJP entered any specific conspiracy to enact an encampment on the specific UCLA campus, more than six months later. The First Amendment and long-standing caselaw demands more. Similarly, NSJP's generalized social media posts encouraging followers to engage in expressive protest and advocacy ("stand alongside" the encampments across the

country), even if published jointly with other community groups, offer no support to the claim that NSJP entered a specific agreement to work with others with the intent of excluding Plaintiffs from Royce Quad due to their religion. The fact that Kupsh, a single individual, allegedly held positions in at least four different organizations does not suddenly support an inference that those organizations had a meeting of the minds to pursue a specific goal, merely because they had a member (even a 'leader') in common. Lastly, Plaintiffs state that the encampment appeared to be well-organized. Even if true, this would only show that the participants on the ground coordinated amongst themselves to maintain an orderly presence—it has nothing to do with NSJP, and cannot support Plaintiffs' bald and implausible conspiracy claim.

ii. Plaintiffs Have Not Plausibly Alleged NSJP Was Motivated by Animus Toward a Protected Class

Plaintiffs' Opposition plainly concedes that not all classes are protected under § 1985(3). Under Sever, the statute only applies "when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their rights." Sever, 978 F.2d at 1537 (citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)). Specifically, "the courts [must] have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection." Id.

Plaintiffs Complaint and Opposition do not even attempt to argue that believers in Zionis, are such a class, and their abject failure to overcome the restriction on private causes of action under the Civil Rights Act is dispositive and requires dismissal. Even if Plaintiffs could show antisemitic motivation on the part of

NSJP, which they cannot, they would still fail to plead a claim because they have not even pled that Jewish people are a protected class under the Act.

To the extent that Plaintiffs attempt to assert NSJP was motivated by anti-*Jewish* animus, they fail to allege any factual matter whatsoever that could permit the court to plausibly infer such an anti-Semitic animus. Every piece of circumstantial evidence Plaintiffs have identified in support of that conclusory assertion references Zionists, not the Jewish race. ECF Doc. 81 at 9-11. Plaintiffs allege the encampment was intended to "keep out 'Zionists'" (FAC ¶13), "to limit Zionist access" (FAC ¶94.e), to out-maneuver "Zionists and police" (FAC ¶94.a), to "chase out anyone who waived an Israeli flag" (FAC ¶107) or "showed support for Jews *and* Israel" (FAC ¶107, emphasis added), and that one participant said it was radicalizing to fight "Zionists and the police" (FAC ¶95.k). All of this is alleged to have been done without regard to the race of the Zionists in question, and indeed non-Jewish supporters of Israel are not alleged to have been treated any differently from Zionists who happened to be Jewish.

The only allegations that could show any targeting based on religion are Plaintiff Tsives' claim that the specific individuals who "stopped and blocked" him did so after they "saw" his necklace (FAC ¶117, 145), that there was an antisemitic van "parked outside" of the encampment (FAC ¶100), that there was antisemitic graffiti in the general vicinity of the encampment (FAC ¶99), and that some unspecified people chanted "eliminationist slogans" at an unspecified time (FAC ¶ 138). Plaintiffs have not articulated any theory that would allow them to impute *any* of this speech to NSJP. Even if the court were to find that some unidentified graffiti artists, van owner, or chanter expressed antisemitism, it would go no distance toward rendering plausible an inference of race-based animus by NSJP.

Finally, to the extent that Plaintiffs cite this Court's rulings in Frankel for the proposition that any opposition to Zionism and its adherents is *per se* racial animus, they do so erroneously, and the Frankel injunction does not and cannot support such a sweeping proposition. The court's injunction in Frankel did not once mention belief in Zionism, and certainly did not say that any opposition to this belief is *per se* antisemitic. *See generally* Frankel v. Regents of University of California, 744 F.Supp.3d 1015 (C.D. Cal. 2024). Rather, the Court merely held that the UCLA students pled a sincerely held religious belief supporting Israel, and that under the particular language Title VI—which clearly protects far broader categories than the causes of action invoked in this case—UCLA could not permit discrimination against those students. Id. The Court's "narro[w]" injunction under Title VI certainly does not render believers in Zionism a protected class under Sever for purposes of Plaintiffs' 42 U.S.C. § 1985(3) claim.

Plaintiffs have also failed to plausibly allege a conspiracy "aimed at interfering with rights that are protected against private" encroachment. Nat'l Abortions Fed'n v. Operation Rescue, 8 F.3d 680, 682 (9th Cir. 1993); ECF Doc. 81 at 16. Plaintiffs claim that the underlying rights aimed at are the rights under the Thirteenth Amendment. First, Plaintiffs fail to plead that those rights are protected against private infringement. Second, the Thirteenth Amendment protects against infringements of rights motivated by animus. For the same reasons argued above, Plaintiffs have failed to plausibly allege animus, and therefore fail to allege a conspiracy targeting their rights under the Thirteenth Amendment.

**5. Plaintiffs Still Cannot Plausibly Allege a Violation of the Hindrance Clause of 42 U.S.C. § 1985(3)**

Plaintiffs' claim under the Hindrance Clause fails for the same reasons as their Deprivation claim—they fail to plausibly allege a conspiracy motivated by animus. Plaintiffs' claim also fails for two additional reasons.

First, Plaintiffs allege that the encampment participants had the intention of thwarting police efforts to remove the encampment from Royce Quad (ECF Doc. 21-22), but they do not allege that said law enforcement activity was "directed at a protected class exercising a constitutional right." Nat'l Abortion Fed'n v. Operation Rescue, 8 F.3d 680, 683, 685 (9th Cir. 1993). Walking a particular path through campus is not the same as exercising a constitutional right, and the FAC does not allege a single fact that could show that the police action against the encampment was "directed at" a protected class—they have not plead that it was "directed at" adherents of Zionism or Jewish students, nor that those students are a protected class under the Civil Rights Act.

Second, Plaintiffs have not articulated any injuries resulting from 'hindered' law enforcement efforts. Plaintiffs concede that enforcement only "issued an unlawful assembly order on May 1 and eventually cleared the encampment during the early hours of May 2," mere hours later. (FAC ¶160). Plaintiffs' failure to plead any injury as a result of Defendants' conduct during law enforcement's response to the encampment is fatal to their claim under the Hindrance clause. Instead, Plaintiffs simply state that "the acts of racially motivated violence and exclusion" that injured them were "in furtherance" of the claimed conspiracy. This is not enough to plead an actionable injury under the Hindrance Clause.

**6. Conclusion**

We urge dismissal.

Respectfully submitted,

Dated: December 5, 2025

KLEIMAN RAJARAM

By: /s/ Mark Klemian
Mark Klemian

Attorneys for Defendant
National Students for Justice in Palestine

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Defendant National Students for Justice in Palestine certifies that this brief contains 2,300 words, which complies with the word limits of this Court.

Dated: December 5, 2025

KLEIMAN RAJARAM

By:______________________
Mark Kleiman

Attorneys for Defendant
National Students for Justice in Palestine