

1  William J. Brown, Jr. (SBN 192950)
2  bill@brownwegner.com
   Kyle J. Berry (SBN 355393)
3  kberry@brownwegner.com
4  BROWN WEGNER LLP
   2010 Main Street, Suite 1260
5  Irvine, California 92614
6  Telephone: (949) 705-0080

7
   *Attorneys for Plaintiffs*
8

9
               **UNITED STATES DISTRICT COURT**
10    **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
11

12

13  Matthew Weinberg, et al.,            **Case No. 2:25-cv-03714-MCS-AYP**
14
                    Plaintiffs,          **Joint Rule 26(f) Report**
15

16  v.

17
    National Students for Justice in    **Honorable Mark C. Scarsi**
18  Palestine, et al.,                   **United States District Judge**
19
                    Defendants.
20
                                         **Scheduling Conference:**
21
                                         Date: April 13, 2026
22

23                                       Time: 10:00 AM

24                                       Courtroom: 7C

25

26

27

28

**JOINT RULE 26(F) REPORT**

[Additional Counsel Cont. from previous page]
Thomas R. McCarthy (VA Bar No. 47154)*
Thomas A. Wilson (DC Bar No. 90019385)*
Zachary P. Grouev (FL Bar No. 10386291)*
Julius Kairey (VA Bar No. 101216)*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
twilson@consovoymccarthy.com
zach@consovoymccarthy.com
julius@consovoymccarthy.com

Patrick Strawbridge (MA Bar No. 678274)*
CONSOVOY MCCARTHY PLLC
8th Floor South PMB #706
Boston, MA 02109
(617) 227-0548
patrick@consovoymccarthy.com

Richard A. Rosen (NY Bar No. 1663830)*
Omer Wiczyk (NY Bar No. 4321600)*
THE LOUIS D. BRANDEIS CENTER
FOR HUMAN RIGHTS UNDER LAW
1330 6th Avenue, 23rd Floor
New York, NY 10019
(917) 363-9004
rrosen@brandeiscenter.com
owiczyk@brandeiscenter.com

* Admitted pro hac vice
*Attorneys for Plaintiffs*

Mark Kleiman
KLEIMAN / RAJARAM
12121 Wilshire Boulevard, #810
Los Angeles, CA 90025
Phone: 310-392-5455

1

Email: mark@krlaw.us

2

*Attorney for Defendant National Students for Justice in Palestine*

3

4

Dan Stormer
Rebecca Brown

5

HADSELL STORMER RENICK & DAI LLP

6

128 N. Fair Oaks Avenue
Pasadena, CA 91103

7

Phone: 626-585-9600

8

Emails: dstormer@hadsellstormer.com
rbrown@hadsellstormer.com

9

10

*Attorneys for Defendant People's City Council*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs Matthew Weinberg, Eli Tsives, Dovid Gurevich, and Nir Hoftman, by and through their attorneys, the law firms Consovoy McCarthy, PLLC and Brown Wegner, LLP, and the Louis D. Brandeis Center for Human Rights Under Law, and Defendants National Students for Justice in Palestine and People's City Council, by and through their attorneys Kleiman/Rajaram and Hadsell Stormer Renick & Dai, LLP, respectively, hereby submit this Joint Rule 26(f) Report:

a. <u>Statement of the Case:</u>

<u>Plaintiffs' Position:</u>

After the horrific terror attack on October 7, 2023, America was plunged into a college campus antisemitism crisis. This case is about a particularly shocking chapter of that crisis—a coordinated campaign of egregious acts of racial exclusion, intimidation, and assault (often styled as the "Popular University for Gaza" or the "student intifada") conducted by a web of organizations and individuals working in concert to intimidate Jewish students, faculty, and staff; to prevent them from accessing all facilities and services of their universities; and to hinder the efforts of law enforcement officials charged with protecting them. The plaintiffs in this case were on the receiving end of that campaign on UCLA's campus.

The parties responsible for this campaign formulated and executed a comprehensive plan to, in part, prevent Jewish individuals on college campuses from enjoying equal access to public spaces using racialized violence and area-denial tactics. When law enforcement tried to restore order and ensure the protection of equal rights for Jews, the same parties made clear that they were more than willing to fight to maintain the ground that they had lawlessly "occupied."

Plaintiffs allege that Defendants here conspired, among themselves and with several other parties, to deprive Jews of their rights to be free from race-based violence and to access certain areas on their universities' campuses. Plaintiffs bring their claims against these Defendants—National Students for Justice in Palestine, People's City Council, Faculty for Justice in Palestine Network, and UC Divest Coalition under 42 U.S.C. §1985. Plaintiffs seek declaratory relief and compensatory, punitive, and/or nominal damages.

Each Plaintiff suffered injury because of the encampment at UCLA. Plaintiffs Weinberg and Tsives were unable to access parts of their own campus because they are Jewish. Plaintiffs Hoftman and Gurevich were assaulted. And Plaintiff Hoftman had his property stolen. Each Plaintiff also suffered emotional distress.

Defendant NSJP's Position:

By November of 2023 numerous United Nations experts were warning that Israel's actions in Gaza were a "genocide in the making." The President of Israel had announced "there are no innocent civilians in Gaza" and Israel's Minister of Defense had described Gazans as "human animals," declaring that Israel "will eliminate everything." Israel's Intelligence Minister produced a proposal to displace the entire population of Gaza. By January, 2024 the International Court of Justice pronounced that it was plausible that acts of genocide were being committed. The Court ordered Israel to take specific steps and later ruled that Israel had not complied with these orders, especially orders that required enablement of humanitarian assistance.

Against this horrific backdrop Muslims, Jews, and Christians all over the United States protested. In October of 2023, thousands of Jews

demonstrated against Israel's genocide in Gaza, and nearly a thousand were arrested during a peaceful sit-in in Congress and a later sit-in at New York's Grand Central Terminal.

College campuses across the country saw multi-racial, multi-denominational demonstrations. UCLA was no exception, with students and staff of all faiths participating in an encampment to protest UCLA's financial and scientific involvement in what international legal bodies and genocide scholars had declared was a genocide. Far from being a so-called "Jew exclusion zone", the UCLA encampment hosted a well-attended Passover Seder and included many Jewish students, faculty, and community members.

NSJP disputes that there is any evidence that anyone was kept out of the encampment because of their religion. To the contrary, safety teams and protective barriers were established after repeated brutal attacks by a mob of off-campus counter-protestors that included white supremacist organizations as well as Zionists.

NSJP disputes that it did anything to encourage or support activity that denied anyone their civil rights because they were Jewish or members of any faith, or that it hindered any effort to protect the rights of Jewish people.

The "parts" of the campus that are at issue were two hundred-foot lawns on a 419-acre campus. The Encampment never blocked access to any buildings during the April 25-May 2 period. NSJP had no control over and exercised no direction of the Encampment, and never authorized, directed, encouraged, or ratified harm to any of the Plaintiffs, and disputes allegations that they were harmed.

Further, none of these alleged injures are fairly traceable to the acts of NSJP, which is a distinct entity from local SJP chapters and affiliates that operate independently.

1

2    <u>Defendant PCC's Position:</u>

3        Defendant People's City Council ("PCC") denies Plaintiffs' allegations

4    that it is liable for conspiring to violate Plaintiffs' civil rights under 42

5    U.S.C. § 1985. PCC and its members played no role in creating, planning,

6    organizing, establishing, running, or directing the encampment. Likewise,

7    PCC and its members played no role in funding the encampment or train-

8    ing encampment participants, such as alleged human phalanxes and self-

9    defense teams. PCC and its members played no role in granting or denying

10   anyone access to the encampment. To express their political views of soli-

11   darity with the people of Palestine, members of PCC attended the Palestine

12   Solidarity Encampment at UCLA and PCC posted about the encampment

13   on social media. Any involvement PCC had in the encampment is squarely

14   First Amendment-protected activity. Any social media posts or public state-

15   ments PCC made about the encampment is likewise First Amendment-pro-

16   tected speech.

17       No one was denied access to the space where the encampment existed

18   on the basis of their Jewish identity. No one was subjected to violence at

19   the encampment on the basis of their Jewish identity. To the contrary, Jew-

20   ish students and supporters were welcome to, and did, participate in the

21   encampment. On the night of April 30, 2024, a violent mob of pro-Israel

22   supporters viciously attacked people inside the encampment for hours as

23   law enforcement stood by and refused to intervene.

24       PCC never entered into a conspiracy for the purpose of depriving Jew-

25   ish individuals of their right to be free from race-based violence. PCC never

26   entered into a conspiracy for the purpose of depriving Jewish individuals of

27   their right to be free from racially motivated deprivation of the use of public

28   amenities. PCC never entered into a conspiracy for the purpose of hindering

law enforcement from securing Jewish individuals equal protection of the law. PCC does not and never has held racial animus against Jewish individuals. PCC never prevented or hindered law enforcement from protecting Plaintiffs' constitutional rights. PCC bears no connection to or responsibility for Plaintiffs' alleged injuries.

### b. <u>Subject Matter Jurisdiction:</u>

<u>Plaintiffs' Position:</u>

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 over Plaintiffs' claims, which arise under the Constitution and laws of the United States. The federal question consists of an action under 42 U.S.C. § 1985.

<u>Defendants' Positions:</u>

Defendant NSJP disputes that there is subject matter jurisdiction as to Weinberg's claim because he does not have a concrete, particularized injury.

Defendant PCC disputes that the Court has jurisdiction to hear this matter because Plaintiffs lack standing to bring this action against PCC.

### c. <u>Legal Issues:</u>

<u>Plaintiffs' Position:</u>

(1) Whether Defendants have violated § 1985 of the Ku Klux Klan Act by conspiring to deprive Plaintiffs of their rights to be free from race-based area denial and violence, and/or to hinder state officials from enforcing Plaintiffs' civil rights (Count I);

(2) Whether Plaintiffs are entitled to declaratory relief, compensatory, punitive, and/or nominal damages, the costs of the action, and

reasonable attorneys' fees, and any other relief the Court deems equitable and just.

Defendant NSJP's Position:

NSJP states the legal issues as follows:

(1)    Whether Weinberg has a concrete, particularized injury;

(2)    Whether any plaintiff has an injury fairly traceable to NSJP's conduct;

(3)    Whether Jewish "ethnic identity" is a federally protected class under 42 U.S.C. § 1985;

(4)    Whether "Zionism," which is a disputed political ideology held by both Jews and non-Jews, and rejected by a significant number of Jews and non-Jews, is a defining characteristic of a federally protected class under 42 U.S.C. § 1985;

(5)    Whether NSJP had the requisite animus to deprive any of the plaintiffs of their civil rights;

(6)    Whether NSJP conspired with anyone or any group to deny any of the plaintiffs their civil rights;

(7)    Whether NSJP ever acted in furtherance of such a conspiracy;

(8)    Whether plaintiffs were harmed by any acts in furtherance of such a conspiracy;

(9)    Whether NSJP hindered law enforcement for the purpose of denying plaintiffs' civil rights;

(10)    Whether any of the plaintiffs were injured because of such a hindrance;

(11)    Whether NSJP's actions were protected by the First Amendment as protected speech or protected right of assembly;

(12)    Whether the discovery sought by Plaintiffs:

a. Violates protections under the First Amendment regarding speech, association, assembly and privacy;

b. Is irrelevant to the incidents alleged;

c. Is disproportionate to the damages at issue in this case; or

d. Is unduly burdensome.

Defendant PCC's Position:

(1) Whether Defendant PCC's conduct and statements related to the UCLA Palestine Solidarity Encampment is protected by the First Amendment.

(2) Whether Plaintiffs have Article III standing to bring this action against Defendant PCC.

(3) Defendant PCC contends that much of the discovery requested by Plaintiffs is privileged under the First Amendment.

**d. Parties, Evidence, etc.:**

The Plaintiff-Parties are Matthew Weinberg, Eli Tsives, Dovid Gurevich, and Nir Hoftman.

The Defendant-Parties are National Students for Justice in Palestine, People's City Council, Faculty for Justice in Palestine Network, and UC Divest Coalition.[1]

The Parties agree that the following are percipient witnesses, while reserving the right to add additional witnesses as discovery progresses:

- Matthew Weinberg
- Eli Tsives

---

[1] Defendants Faculty for Justice in Palestine Network and UC Divest Coalition were properly served on June 16, 2025, and August 14, 2025, respectively, and have failed to appear in this action to date. *See* Dkts.30, 49. Plaintiffs will likewise move for an entry of default against both of these defendants.

1    - Dovid Gurevich

2    - Nir Hoftman

3    - Knowledgeable members of Defendants' organizations and addi-

4    tional persons knowledgeable about the encampments, including the De-

5    fendant organizations' Rule 30(b)(6) designees. The Parties dispute the ex-

6    tent to which the identities of and information concerning members of De-

7    fendants' organizations is protected under the First Amendment.

8                                      ***

9    Plaintiffs' Position:

10    Plaintiffs reserve the right to seek leave to further amend their plead-

11    ing to add defendants after Defendants NSJP and PCC comply with their

12    discovery obligations in this matter.

13    Plaintiffs identify the following additional potential witnesses:

14    - Dylan Kupsh

15    - Ricci Sergienko

16    - Jason Reedy

17    - Jack Kearns

18    - Albert Corado

19    - Sean Eren

20    Plaintiffs do not identify any further witnesses at this time, but they

21    reserve the right to add additional witnesses as discovery commences, in-

22    cluding but not limited to other observers of the encampments, members or

23    agents of the Defendants, and any witnesses identified in Defendants' ini-

24    tial disclosures, depositions, or responses to written discovery.

25    Plaintiffs identify the following key documents, while reserving the

26    right to add additional documents as discovery progresses: communications

27    discussing the various encampments and other incidents on campus; com-

28    munications discussing antisemitic harassment experienced by students

and faculty since October 7, 2023; reports documenting antisemitic incidents on campus (including but not limited to the Report on Antisemitism and Anti-Israeli Bias at UCLA); documents reflecting the Defendants' role(s) in the encampments and their intentions with respect thereto; and any documents relating to damages.

Defendant NSJP's Position:

NSJP identifies the former Department of Justice attorneys (as yet unidentified) who told journalists that their bosses basically ordered them to find there was antisemitism; the UCLA Task Force on Anti-Palestinian, Anti-Muslim, and Anti-Arab Racism, video footage taken by Legal Observers and independent journalists illustrating unrelenting and brutal attacks on encampment members, Isabella Lee, a UCLA staff and officials who have yet to be identified.

NSJP does not identify any further witnesses at this time, but it reserves the right to add additional witnesses as discovery commences, including but not limited to other observers of the encampments, members or agents of the Defendants, and any witnesses identified in third party discovery, including but not limited to UCLA, as well as Plaintiffs' initial disclosures, depositions, or responses to written discovery

NSJP has identified extensive video footage, some of which is in the possession of its counsel and will be produced by February 27, and has copies of UCLA's footage. The original UCLA footage is presumably in its custody. NSJP will supplement this list with the specific descriptions of footage and additional material as it becomes known and available.

Defendant PCC's Position:

Defendant PCC identifies no additional percipient witnesses at this time. Defendant PCC identifies no key documents on the main issues in the case. Defendant PCC reserves the right to add additional percipient witnesses and key documents as discovery commences.

### e. **Damages:**

Plaintiffs' Position:

Plaintiffs contend that they are entitled to compensatory, punitive, and/or nominal damages. Damages for statutory violations of civil rights can be difficult to quantify, but here, Plaintiffs experienced emotional distress and, with regard to Plaintiffs Hoftman and Gurevich, assault.

Defendants' Positions:

Defendant NSJP holds that the Plaintiffs are unentitled to any damages, objects to their refusal or failure to provide a realistic range or provable damages, and holds that in any event NSJP is not liable for them.

Defendant PCC objects that Plaintiffs have failed to provide a realistic range of provable damages. Defendant PCC denies that Plaintiffs are entitled to any damages and denies that PCC is liable for any of Plaintiffs' claimed damages.

### f. **Insurance:**

Plaintiffs have no applicable insurance coverage.

Defendant NSJP has no insurance.

Defendant PCC has no applicable insurance coverage.

**g. <u>Motions:</u>**

Plaintiffs reserve the right to seek leave to further amend their pleading to add additional parties after Defendants and third parties properly comply with their discovery obligations in this case.

In addition, National Students for Justice in Palestine intends to file a motion asking this Court to certify the order denying its motion to dismiss for interlocutory appeal to the United States Court of Appeals for the Ninth Circuit. Defendant PCC reserves the right to file a motion asking this Court to certify the order denying its motion to dismiss for interlocutory appeal to the United States Court of Appeals for the Ninth Circuit. Defendant PCC anticipates filing one or more motions *in limine* prior to trial.

Otherwise, the Parties do not expect to add other claims, seek to transfer venue, or file other similar motions. The Parties will notify the Court promptly if this changes at any time.


**h. <u>Dispositive Motions:</u>**

<u>Plaintiffs' Position:</u>

Plaintiffs do not believe at this point that any claims and requests for relief can be resolved on summary judgment, but reserve the right to seek summary judgment at the appropriate time.


<u>Defendants' Positions:</u>

Defendant NSJP anticipates filing a motion seeking certification of the trial court's order denying its motion to dismiss; a motion for judgement on the pleadings, a motion for summary judgement, and post-trial, a motion for sanctions pursuant to 28 U.S.C. §1927.

Defendant PCC anticipates that it will file a motion for summary judgment and/or summary adjudication.

***

The Parties agree that the deadline to file motions for summary judgment will be October 5, 2026, the deadline to oppose such motions will be October 19, 2026, the deadline to reply will be October 26, 2026, and the last day to hear summary judgment motions will be November 9, 2026.

### i. **Manual for Complex Litigation:**

The Parties agree that none of the procedures from the Manual for Complex Litigation should be used in this matter.

### j. **Status of Discovery:**

Plaintiffs' / Defendant PCC's Position:

Plaintiffs served their initial disclosures on January 2, 2026, and have made two document productions under Rule 26(a). Defendant PCC served its initial disclosures on February 13, 2026. Defendant NSJP has not served any of its mandatory Rule 26(a) disclosures, and recently began assembling the information and documents necessary for those disclosures.

In addition, on December 5, 2025, Plaintiffs served 31 requests for production of documents and 11 interrogatories on National Students for Justice in Palestine and 34 requests for production of documents and 10 interrogatories on People's City Council. On December 22, 2025, Plaintiffs served an additional 9 requests for production of documents on National Students for Justice in Palestine. On December 31, 2025, Plaintiffs served Rule 30(b)(6) deposition notices on both of these Defendants, followed by supplemental notices on January 23, 2026. Defendant NSJP still has not produced any objections or responses to interrogatories and requests for production, and Defendant PCC has served only objections to Plaintiffs' discovery requests to date. Both Defendants NSJP and PCC have also served

objections to Plaintiffs' Notices of Deposition pursuant to Rule 30(b)(6). The Parties disagree as to whether Plaintiffs' discovery requests were premature and as to the sufficiency and timeliness of Defendants' objections.

The Parties conducted their Rule 26(f) conference on January 30, 2026. Plaintiffs re-served their interrogatories and Rule 30(b)(6) notice later that day on People's City Council, in an abundance of caution in light of People's City Council's argument, which Plaintiffs dispute, that the discovery requests served before the Rule 26(f) conference were invalid. Plaintiffs maintain that their discovery requests were proper and timely, given that this Court's Standing Order allows discovery before the scheduling conference, *see* Dkt.28 ¶ 8(b), but re-served their discovery requests in an abundance of caution so that discovery could proceed expeditiously without asking the Court to resolve the issue.

On February 6, 2026, Plaintiffs represented to Defendant PCC that they will not move to deem PCC's objections, served on January 5, 2026, waived and will not seek sanctions as PCC has agreed to respond to Plaintiffs' discovery request in the time set forth in the Federal Rules of Civil Procedure.

Defendant NSJP's Position:

NSJP had moved for a protective order. The Court denied the order, stating that it was moot, which can only mean that there was not a live controversy. The fact that the Court issued this order before NSJP had even had an opportunity to file its statutorily allowed reply brief suggests that this is indeed precisely what the Court meant. Despite this, in a good faith effort to address what Plaintiffs claim is a deficiency, NSJP's counsel spent two and one-half hours last week in meet and confer sessions with anywhere from three to as many as five of Plaintiffs' counsel. NSJP had been

proceeding in the belief that Defendants had proposed terms for a resolution of this impasse which NSJP had accepted but were not recited here. For the Court's information, NSJP's counsel was under the impression that the plaintiffs had offered to set aside their claims regarding deficiencies if NSJP agreed to respond to the discovery by March 2, which it has agreed to do.

### k. <u>Discovery Plan:</u>

The Parties disagree as to the requirements and timing of initial disclosures as set forth in Judge Scarsi's Initial Standing Order. Plaintiffs served their initial disclosures on January 2, 2026, and served both NSJP and PCC with deficiency letters advising that their initial disclosures were overdue and that Plaintiffs intended to move to compel. The Parties met and conferred on this issue on January 30, 2026, and Defendants NSJP and PCC agreed to serve their initial disclosures no later than February 13. Defendants Faculty for Justice in Palestine Network and UC Divest Coalition have failed to appear in this case and likewise have not produced any discovery.

The Parties do not believe that discovery need be conducted in phases or be limited to specific issues.

<u>Plaintiffs' Position:</u>

Plaintiffs believe that discovery is required on the following subjects, among others: Defendants' (and their members') knowledge of and participation in encampment activity; Defendants' interactions with each other; Defendants' internal and external communications; Defendants' views regarding Jews, Judaism, and Jewish practices; the financing of or provision

of weapons and other materials/supplies to the encampment; and Defendants' intent to harm Jews in connection with the encampment.

It is unclear at this time whether any party will require expert witnesses.

Defendant NSJP's Position:

Plaintiffs' ambitions for discovery leave little doubt that this case–and this Court—are being used for political theatre. One plaintiff claims his feelings were hurt. One claims he had to walk a few minutes out of his way so he wouldn't have to see the Encampment. One lost an earbud in a scuffle, only later escalating this into a claim that the single earbud was stolen. And one had his phone slapped out of his hand (apparently undamaged). Claimed injuries that are barely observable cannot rationally be used for wholesale invasions of privacy, beliefs, much less the demand for thirty-six topics for a 30(b)(6) deposition.

Defendant PCC's Position:

Defendant PCC intends to conduct discovery on the following topics: Plaintiffs' injuries and damages; Plaintiffs' interactions with participants of the UCLA Palestine Solidarity Encampment; and Plaintiffs' credibility. Defendant PCC intends to retain expert witnesses, including but not limited to forensic psychologists.

***

The Parties agree that fact discovery will conclude by October 5, 2026.

Plaintiffs believe that expert fact discovery should conclude on October 5, 2026. Defendant PCC believes that expert fact discovery should conclude on November 9, 2026. Defendant NSJP believes that expert fact discovery should conclude on November 23, 2026.

The Parties anticipate that discovery of their claims or defenses will involve significant electronically stored information ("ESI"), and other documents stored in PDF or equivalent format. The Parties expect to confer regarding an ESI protocol. To the extent any party believes items need to be produced in native format, the Parties agree they will cooperate to reduce the burden of production.

Plaintiffs and PCC expect production in the form of ESI load files with single page tiff images, document level text files, and natives for unprintable file types, such as Excel and multimedia. Each document produced will be Bates labeled by the producing party. The Parties will further meet and confer regarding the search and review process(es) for ESI, including deduplication and the use of keyword searching.

NSJP asserts that Plaintiffs have sued a student organization that has no employees at all, much less an I.T. Department. NSJP will produce ESI in its custody in native format. In the event that the ESI is contained on a commercial platform NSJP will confer with Plaintiffs' technical experts to get material downloaded in a format as compatible with Defendants' needs as practicable.

The Parties agree that production of privileged or work-product protected documents, ESI, or other information, whether inadvertently or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any federal or state proceeding. The Parties agree to interpret this language to provide the protection set forth in Fed. R. Evid. 502(d). When the disclosure of any information, document or thing protected by privilege or work-product immunity is discovered by the disclosing party and brought to the attention of the receiving parties, the treatment of such material by the receiving parties shall be in accordance with Fed. R. Civ. P. 26(b)(5)(B). Disclosure of such information, document or thing shall not

by itself constitute a waiver by the disclosing party of any claims of privilege or work-product immunity.

With respect to anticipated issues regarding claims of certain privileges generally, the Parties disagree substantially over the scope and applicability of the First Amendment associational privilege as set forth in *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010).

The Parties do not currently believe any changes are needed to the number of interrogatories, requests for production, or requests for admission allowed under the Federal Rules of Civil Procedure.

The parties have not determined whether an enlargement beyond 10 depositions per side will be necessary in this case, but if the need arises, the Parties will attempt to seek each other's consent and seek leave of Court if necessary.

The Parties have agreed upon a proposed a protective order for entry in this case and will submit a copy of the same for the Court's review.

**l. Discovery Cut-Off:**

The Parties agree that the final day for completion of fact discovery, including resolution of all discovery motions, should be October 5, 2026.

**m. Expert Discovery:**

The Parties agree that, if any party designates an expert, then expert discovery will be appropriate.

Plaintiffs' position is that the expert disclosure deadline should be July 24, 2026, the rebuttal expert disclosure deadline should be September 8, 2026, and the expert discovery cutoff should be October 5, 2026.

Defendant PCC's position is that the expert disclosure deadline should be September 28, 2026, the rebuttal expert disclosure deadline

should be October 19, 2026, and the expert discovery cutoff should be November 9, 2026.

Defendant NSJP's position is that the expert disclosure deadline should be November 3, 2026, the rebuttal expert disclosure deadline should be November 16, 2026, and the expert discovery cutoff should be November 23, 2026.

**n. Settlement Conference/Alternative Dispute Resolution ("ADR"):**

The Parties agree to select, by mutual agreement, a neutral selected from the Court's Mediation Panel. Mediation would occur no later than November 23, 2026.

**o. Trial Estimate:**

The Parties agree that a five-day trial, plus one day for jury selection, would be appropriate, but the Parties reserve the right to seek additional trial days at the close of discovery, if appropriate.

**p. Trial Counsel:**

Plaintiffs anticipate that lead trial counsel will be Thomas R. McCarthy and Patrick Strawbridge. Defendant PCC anticipates that its lead trial counsel will be Rebecca Brown and Dan Stormer. Defendant NSJP anticipates that its lead trial counsel will be Mark Kleiman.

**q. Independent Expert or Master:**

The Parties agree that the Court need not appoint a master or independent scientific expert.

1

    **r. Schedule Worksheet:**

       The Parties are aware that the Court ordinarily schedules trial to occur within 18 months of the filing of the case. The attached schedule worksheet reflects the Parties' belief that additional 119 days is warranted both to take discovery and to prepare for trial in this matter. The parties' meet-and-confer process to date has revealed that there are substantial differences of views among the parties regarding numerous discovery issues, and significant disputes regarding privilege, many of which will likely require substantial briefing and resolution by the magistrate judge. Further, Defendant NSJP has represented that, due to difficulties with collecting documents from its members, it will only be able to produce documents on a rolling basis, in turn potentially lengthening the time needed to fully comply with its discovery obligations.

    **s. Other Issues:**

       The Parties have not identified any other issues affecting the status or management of the case.


DATED: February 25, 2026     Respectfully Submitted,



                    /s/ Thomas R. McCarthy
                    Thomas R. McCarthy

                    *Attorney for Plaintiffs*

                    /s/ Mark Kleiman
                    Mark Kleiman

                    *Attorney for Defendant National Students for Justice in Palestine*

/s/ Rebecca Brown
Rebecca Brown

*Attorney for Defendant People's City Council*

## SIGNATURE ATTESTATION

Pursuant to Local Rule 5-4.3.4, I hereby attest that the other signatories listed, on whose behalf this filing is submitted, concurs in the filing's content and has authorized the filing.

Dated: February 25, 2026                    /s/ Thomas R. McCarthy
                                             Thomas R. McCarthy

# CERTIFICATE OF SERVICE

The undersigned counsel of record for Plaintiffs certifies that a true and correct copy of the foregoing was electronically filed and served upon all counsel of record. Parties may access this filing through the Court's CM/ECF System.


Dated: February 25, 2026                              /s/ Thomas R. McCarthy
                                                       Thomas R. McCarthy