Dan Stormer, Esq. [S.B. #101967]
Bina Ahmad, Esq. [S.B. #329387]
Rebecca Brown, Esq. [S.B. # 336638]
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600
Facsimile: (626) 577-7079
Emails: dstormer@hadsellstormer.com
        bahmad@hadsellstormer.com
        rbrown@hadsellstormer.com

Attorneys for Defendant
PEOPLE'S CITY COUNCIL

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW WEINBERG, RABBI DOVID GUREVICH, NIR HOFTMAN, ELI TSIVES, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, JOHN DOE #1, PRESIDENT OF THE UCLA CHAPTER OF SJP, AJP EDUCATIONAL FOUNDATION, INC., D/B/A AMERICAN MUSLIMS FOR PALESTINE, OSAMA ABURSHAID, HATEM AL-BAZIAN, FACULTY FOR JUSTICE IN PALESTINE NEWTWORK, UC DIVEST COALITION, WESPAC FOUNDATION, PEOPLE'S CITY COUNCIL <br><br> Defendants. | Case No.: 2:25-cv-03714-MCS-JC <br><br> [Assigned to the Honorable Mark C. Scarsi – Courtroom 7C] <br><br> **DEFENDANT PEOPLE'S CITY COUNCIL'S REPLY IN SUPPORT OF DEFENDANT CITY COUNCIL'S MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL** <br><br> DATE:       APRIL 29, 2026 <br> TIME:        9:00 A.M. <br> COURTROOM.:  7C <br><br> Complaint Filed:   April 29, 2025 |

DEFT PCC'S REPLY ISO DEFT PCC'S
MTN FOR INTERLOCUTORY APPEAL

**INTRODUCTION**

Defendant PCC seeks interlocutory appellate review based on controlling questions of law and substantial grounds for difference of opinion. PCC's motion for certification of its interlocutory appeal of the Court's Order asks the legal question whether amongst a large group of hundreds of people, an entirely separate actor's conduct and speech may be used to form the distinct and separate actor's discriminatory intent, and thus form a conspiracy. This Court should certify this interlocutory appeal.

**ARGUMENT**

**I.      PCC Presents Controlling Questions of Law**

Questions concerning First Amendment issues and conspiracy are indisputably controlling questions of law. Despite Plaintiffs' attempts to downplay *Adams*, *Adams* held plainly and clearly that "First Amendment and First Amendment conspiracy claims involve[] controlling question[s] of law." *Adams v. Cnty. Of Sacramento*, No. 2:22-cv-01499 WBS KJN, 2023 U.S. Dist. LEXIS 83787, at *1-2 (E.D. Cal. May 12, 2023). *Adams* did not simply make this finding because "§1292(b) motion in *Adams* [was] unopposed." Plaintiffs' Opposition to Defendant PCC's Motion for Certification of Interlocutory Appeal, Doc. 128 at 8. Rather, because "resolution of the [First Amendment and conspiracy] issue[s] on appeal could materially affect the outcome of litigation in the district court," *Adams* reasoned these were "not collateral to the major issues of the case." *Adams*, 2023 U.S. Dist. LEXIS 83787, at *1-2, citing *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982). These questions of First Amendment and conspiracy issues do not need to "be dispositive of the [entire] lawsuit in order to be regarded as controlling." *Adams*, 2023 U.S. Dist. LEXIS 83787, at *1-2, citing *Finder v. Leprino Foods Co.*, 1:13-cv-02059 AWI BAM, 2016 U.S. Dist. LEXIS 100417, 2016 WL 4095833, *3 (E.D. Cal. Aug. 1, 2016); *see also In re Rieves*, 2023 U.S. App. LEXIS 2980 (6th Cir. 2023).

In addition, despite its holding, *Union Carbide Corp.* in fact does support PCC's argument as it reaffirmed that in "free-speech cases interlocutory appeals sometimes are

more freely allowed, and writs of mandamus sometimes more freely issued, than in other types of case, especially where the interlocutory order can be characterized as imposing a 'prior restraint' on speech or the press." *Union Carbide Corp. v. U.S. Cutting Serv., Inc.*, 782 F.2d 710, 712 (7th Cir. 1986). *Union Carbide Corp.* only found there was no Free Speech issue in that case because the prohibited communications concerned the rule that a lawyer for one party cannot communicate directly with the opposing party. *Id.*

Plaintiffs attempt to argue PCC's question is moot based on easily distinguishable circumstantial evidence cases which in fact highlight PCC's position. *United States v. Disla*, a *criminal* case Plaintiffs cite, does not make the determination that broad circumstantial evidence *in general* may be used to prove whether someone entered into a conspiracy for an unlawful objective. 805 F.2d 1340 (9th Cir. 1986). Rather, *Disla* analyzed circumstantial evidence for a single conspiracy in a narrow manner using a "multi-factor analysis including 'nature of the scheme; the identity of the participants; the quality, frequency, and duration of each conspirator's transactions; and the commonality of time and goal.'" *Id.* at 1349, citing *United States v. Bibbero*, 749 F.2d 581, 587 (9th Cir. 1984). In other words, *Disla* stands for the principle that simply alleging a conspiracy amongst a group of people is not enough—one must look to the nature of the scheme, participant identities, quality, frequency and duration of their transactions and the commonality of time and goal. 805 F.2d at 1349. *Mendocino Env't Ctr. v. Mendocino Cnty.* is also inapplicable and does not find that broad circumstantial evidence *in general* may be used to prove distinct actors' conspiracy. 192 F.2d 1283 (9th Cir. 1999). Rather, in *Mendocino*, the circumstantial evidence used to infer a conspiratorial agreement was narrowed to a small group of law enforcement agents who all knew each other, worked together and signed off on documents together. *Id. See also* Plaintiffs' cited case *Wisconsin v. Mitchell*, 508 U.S. 476, 488-89 (1993) (in a *criminal* case for racially motivated battery, an individual defendant's First Amendment speech rights were not violated when the state used this individual

defendant's speech immediately prior to committing a racially motivated attack and speech chilling argument this use will chill other people's speech should they be charged for a serious offense too attenuated).

In contrast, PCC's question is whether, broadly and without the narrowed application in *Disla, Mendocino* or *Mitchell*, amongst a group of hundreds of people, an entirely separate actor's conduct and speech may be used to form another distinct actor's discriminatory intent to form a conspiracy without the actor endorsing the unlawful or discriminatory acts of another. PCC's question is not whether circumstantial evidence of a small group of actors who know each other, have frequent contact with a common shared goal may be used to infer a conspiracy, or whether their own statements may be used to impute their own liability for their own acts. PCC's question is whether broad circumstantial evidence of separate and unknown actors in a large group may be used to infer a separate and distinct actor's discriminatory intent and form the basis of a conspiracy without PCC endorsing the separate actor's discriminatory acts.

## II.   PCC Presents Substantial Grounds for Difference of Opinion on the Questions of Law

In addition to these controlling questions of law, PCC has presented substantial grounds for difference of opinion on these questions. Even though PCC is able to show difference of opinion, PCC is not required to show conflicting decisions. *Reese v. BP Exploration (Alaksa) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). Rather, just a novel and difficult question. *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2011).

This Court's Order reaches a different finding than the *StandWithUs* decision. Doc. 113 at 16-18. *StandWithUs* closely mirrors this case, including that large and diverse groups of people and organizations protested, built encampments making movement difficult, condemned Israel's actions and Zionism, and alleged some acts of violence and antisemitism. *StandWithUs Ctr. For Legal Just. v. Mass. Inst. Of Tech.*, 158 F.4th 1, 5-10 (1st Cir. 2025), compared to this case, Order re Motions to Dismiss,

DEFT PCC'S REPLY ISO DEFT PCC'S MTN FOR INTERLOCUTORY APPEAL

-3-

Doc. 113 at 2-5. Plaintiffs ignore the First Circuit's lengthy ruling by watering down the First Circuit's reasoning to simply because "plaintiffs in that case alleged only 'two acts of arguable 'violence' against Jewish or Israeli students' and "did not allege that these two incidents were authorized, endorsed, or planned by any student group." Doc. 128 at 9. But *StandWithUs'* reasoning finding no conspiracy is based on more than just the fact that there were only two alleged incidents. *StandWithUs*, 158 F.4th at 25. The First Circuit dismissed the case based on several factors, including in part because the speech and acts of third parties amongst a large and diverse set of groups did not sufficiently plead the defendants' discriminatory purpose for entering a conspiracy and thus did not support a conspiracy claim. *Id.* at 17-18.

First, directly on point to PCC's question, given the size and diversity of groups and individuals engaged in the protests, the First Circuit found it was not credible for Plaintiffs to allege an unlawful conscious objective among this broad and diverse group. The First Circuit reasoned, "to imagine that these two altercations were the 'conscious objective' of protests coordinated, as plaintiffs allege, by *multiple groups and involving dozens of students* overly strains credulity, *as does* the suggestion that only these two incidents would have occurred if 'racially and ethnically motivated violence' were the explicit purpose of the protests." *Id.* at 25 (emphasis added). The First Circuit here noted that in *addition* to two incidents being insufficient to allege racially motivated violence was the purpose, it was also not credible to allege a conscious objective among such a broad swath of people.

Second, *StandWithUs* held that simply because Plaintiffs assert something as antisemitic does not make it so. Especially absent any allegations that "the protesters agreed to target Jewish students, as opposed to agreeing to demand that the university adopt the activists' position regarding the conflict between Israelis and Palestinians." *Id.* at 26.

Third, *StandWithUs* also relied on the defendants' statements demonstrating their true purpose and goal. The First Circuit found Plaintiffs' theory was implausible

DEFT PCC'S REPLY ISO DEFT PCC'S
MTN FOR INTERLOCUTORY APPEAL                                    -4-

given the joint statements from the student groups to which it points as evidence of a conspiracy. Those statements state plainly the protestors' purported goals: to pressure MIT to 'divest' from Israel and to cease 'sponsored research for the Israeli Occupation Forces,' to express 'solidarity with Columbia students' who were 'calling for divestment,' to 'speak out' to 'stop the genocide' and 'defend Palestine,' and to express their shared desire for a 'permanent ceasefire in Gaza.

*Id.*

Here, the Court based its reasoning on the greater number of alleged incidents in this case as compared to those in *StandWithUs*. Yet *StandWithUs* based part of its reasoning on whether it was credible to allege an unlawful conscious objective among broad and diverse "multiple groups" and "dozens of students." *Id.* at 25. In other words, amongst this large and broad group of people, *StandWithUs* did *not* attribute a separate actor's discriminatory conduct to form the basis of the separate defendants' discriminatory intent in a conspiracy. But in this case, the Court cites PCC's "speech acts" of "'KETTLE THE COPS CHALLENGE— LAPD F**CK OFF,'" and "a published list of supplies, including goggles and shields, as well as public statements on PCC letterhead" which by themselves do not evidence discriminatory intent. Doc. 113 at 22-23. Only when this speech is viewed in the larger context of multiple groups, dozens of students and alleged antisemitic incidents is PCC's speech held as evidence of discriminatory intent. This is the opposite of what *StandWithUs* decided.

Yet even though PCC is able to show *StandWithUs* represents a difference of opinion, PCC is not required to show that *StandWithUs* or any case holds conflicting decisions. *Reese*, 643 F.3d at 688. Rather, all PCC is required to show is just a novel and difficult question. *Couch*, 611 F.3d at 633. Here, the novel and difficult question is whether amongst a large and diverse group of hundreds of people unknown to each other, if an entirely separate actor's conduct and speech may be used to form a separate and distinct actor's discriminatory intent to form a conspiracy. This is without a "multi-factor analysis including 'nature of the scheme; the identity of the participants; the

quality, frequency, and duration of each conspirator's transactions; and the commonality of time and goal.'" *Disla*, 805 F.2d at 1349.

### III.    This Interlocutory Appeal Could Materially Advance This Litigation

Despite Plaintiffs' argument, even if this interlocutory appeal would only eliminate PCC as a defendant, this would still provide for the "orderly course of justice measured in terms of the simplifying" of issues, proof, and questions of law. *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972). Plaintiffs' cited case *Wang v. Zymergen Inc.* is easily distinguishable. 759 F. Supp. 3d 1002, 1012 (N.D. Cal. 2024). *Wang* held that an interlocutory appeal would have minimal impact on the overall case as there were "*so many parties, issues and claims* [that would] remain" whether or not the appealing party remained in the case. *Id.* at 1012 (emphasis added). Here, Plaintiffs have pled only two causes of action. First Amended Complaint ("FAC"), Doc. 54. In addition, after the Court's Order on the parties' Motions to Dismiss, only two defendants remain: NSJP and PCC. Doc. 113. This is far cry from having "so many parties, issues and claims [that would] remain" if PCC were dismissed from this case. *Wang*, 759 F. Supp. 3d at 1012. Here, even reducing one of the claims would materially advance this litigation given the small number of claims and remaining defendants.

### IV.    PCC's Motion Seeking Certification of Interlocutory Appeal is Timely

28 U.S.C. § 1292 "sets no particular time limit on seeking certification of an interlocutory appeal." *Wolfchild v. United States*, 78 Fed. Cl. 472, 481 (2007). After Plaintiffs' allotted time to file an amended complaint passed, PCC filed this motion 50 days later. Doc. 126. PCC's team required additional staffing and time for new staff to become familiar with the case and draft the motion. *See* Declaration of Bina Ahmad ("Ahmad Decl."). A 50-day time period to draft and file a motion seeking certification for interlocutory appeal is timely. PCC did not take two months to file this motion, as Plaintiffs argue. Doc. 128 at 4.

Even if PCC had waited two months or more, courts have still found this to be timely. *Am. Mgmt. Sys., Inc. v. United States,* 57 Fed. Cl. 275, 276 (2003) (allowing

DEFT PCC'S REPLY ISO DEFT PCC'S
MTN FOR INTERLOCUTORY APPEAL

-6-

certification after two-month delay); *Vereda, Ltda. v. United States,* 46 Fed. Cl. 569, 570-71 (2000) (granting certification after three-month delay, without discussing timeliness). Though courts vary interpreting what is timely for a motion seeking certification of interlocutory appeal, generally waiting longer than three months has been found as untimely. *See Gagan v. Sharer,* 2006 WL 3736057 (D. Ariz. Nov. 6, 2006) (15 months to request certification without an explanation untimely); *see also Wolfchild*, 78 Fed. Cl. at 481 (delays longer than three months to seek certification for interlocutory appeal generally too long); *Abbey v. United States*, 89 Fed. Cl. 425 (2009) (delays longer than three months for motions to certify interlocutory appeals generally found untimely); *Scholl v. United States*, 68 Fed. Cl. 58 (2005) (with four-month delay in filing, motion to certify denied as untimely); *Franklin v. Gen. Trucking LLC*, No. CIVIL 07-5002, 2008 U.S. Dist. LEXIS 84724, 2008 WL 4531779 (W.D. Ark. Oct. 8, 2008) (four-month delay to file motion for certification untimely); *Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369 (S.D.N.Y. 2008) (four month delay in filing motion for interlocutory appeal untimely).

Here, PCC did not wait two months to file this motion for certification of an interlocutory appeal. Even though courts have found such motions timely without an explanation of delay, *Vereda*, 46 Fed. Cl. at 570-71, here PCC's legal team required time for additional staffing to supplement the single attorney on the case to file this motion. *See* Ahmad Decl. ¶¶ 3-8. Thus, PCC's motion is timely.

**V.     This Court Should Stay These Proceedings While the Interlocutory Appeal is Pending**

Staying these proceedings while the interlocutory appeal is pending poses little harm to Plaintiffs, balances the hardships between the parties, and facilitates the orderly course of justice. Here, beyond just the costs of having to defend this suit, PCC seeks a stay pending the interlocutory appeal because of the serious chill this case imposes on PCC and similarly situated people and organizations' speech. Opposing PCC's First Amendment chilling of speech argument, Plaintiffs unhelpfully cite to *Twitter Inc. v*

*Paxton*, a pre-enforcement challenge dismissed as not yet ripe. 26 F.4th 1119, 1124 (9th Cir. 2022). It is because *Twitter* was not ripe that the court found Twitter's hardship based on chilled speech insufficient to overcome the uncertainty of the legal issue presented. *Id. Twitter* does *not* stand for the principle that stays based on a hardship of chilled speech are insufficient as the court did not even reach the merits of this request.

In addition, unlike the cases Plaintiffs cite, *In re Pandora Media, LLC Copyright Litigation* and *Lockyer v. Mirant Corp.*, a stay in this case poses little to no harm to Plaintiffs. *In re Pandora Media*, 2023 WL 2661192 (C.D.Cal Jan. 31, 2023); *Lockyer*, 398 F.3d 1098, 1111-12 (9th Cir. 2005). Plaintiffs cite *In re Pandora Media* to argue that a stay in this case would not serve the orderly course of justice, but *Pandora's* complexity is inapplicable here. 2023 WL 2661192. In *Pandora*, defendants requested a stay based on their counterclaim against plaintiffs. *Id.* at 4. *Pandora* ruled a stay would only complicate case management and not help with a manageable and predictable calendar as it was "highly complex and involve[d] *several related cases*, not to mention claims and *counterclaims* from *more than a dozen parties*." *Id.* at 7 (emphasis added). Here, unlike *Pandora*, this case is *not* complex as it has only *two* claims, *two* remaining defendants and *no* counterclaims. An interlocutory appeal potentially eliminating a claim or defendant PCC can only further simplify and streamline this case and facilitate the orderly course of justice.

In addition, Plaintiffs' cite to *Lockyer*, a bankruptcy case, is also unhelpful to their argument as *Lockyer* is not only a bankruptcy case, but contemplates a stay during an appeal pending decision in other suits or proceedings. 398 F.3d 1098. *Lockyer* ruled against a stay because unlike in other cases granting a stay only seeking damages, the Attorney General in *Lockyer* sought injunctive relief, and the separate pending bankruptcy proceeding had an undetermined finality. *Id.* at 1111-12. Granting a stay in a case already seeking injunctive relief risked inflicting on the *Lockyer* plaintiffs further ongoing harm. *Id*. But here, Plaintiffs only seek damages and do not seek injunctive relief. FAC at 65. In addition, there are no separate ongoing proceedings with an

undetermined finality. *Lockyer,* 398 F.3d at 1111-12. Thus, this Court should grant a stay of these proceedings while the interlocutory appeal is pending.

## CONCLUSION

This Court should certify PCC's interlocutory appeal. PCC presents several controlling questions of law and substantial grounds for difference of opinion on these questions of law. PCC's motion is also timely, and this Court should grant a stay pending the interlocutory appeal.

Dated: April 14, 2026

Respectfully Submitted,
HADSELL STORMER RENICK & DAI LLP


By: /s/ - Bina Ahmad
    Bina Ahmad
    Rebecca Brown
    Dan Stormer
Attorneys for Defendant People's City Council

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Central District of California by using the CM/ECF System.

Participants in the case who are registered CM/ECF Users will be served by the CM/ECF System.

Dated: April 14, 2026

Respectfully Submitted,
HADSELL STORMER RENICK & DAI LLP


By: /s/ - Bina Ahmad _____
     Bina Ahmad
     Rebecca Brown
     Dan Stormer
Attorneys for Defendant People's City Council

DEFT PCC'S REPLY ISO DEFT PCC'S
MTN FOR INTERLOCUTORY APPEAL

-i-

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants People's City Council, certifies that this brief contains 2,897 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 14, 2026

Respectfully Submitted,
HADSELL STORMER RENICK & DAI LLP

By: /s/ - Bina Ahmad
     Bina Ahmad
     Rebecca Brown
     Dan Stormer
Attorneys for Defendant People's City Council