William J. Brown, Jr. (SBN 192950)
bill@brownwegner.com
Kyle J. Berry (SBN 355393)
kberry@brownwegner.com
BROWN WEGNER LLP
2010 Main Street, Suite 1260
Irvine, California 92614
Telephone: 949.705.0080

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW WEINBERG, et al., | Case No.: 2:25-cv-03714 MCS (AJR) |
| Plaintiffs, | **DECLARATION OF THOMAS A. WILSON** |
| v. | |
| NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, et al., | |
| Defendants. | |

DECLARATION OF THOMAS A. WILSON

[Additional Counsel Cont. from previous page]
Thomas R. McCarthy (VA Bar No. 47154)*
Thomas A. Wilson (DC Bar No. 90019385)*
Julius Kairey (VA Bar No. 101216)*
Zachary P. Grouev (FL Bar No. 10386291)*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
Telephone: (703) 243-9423
tom@consovoymccarthy.com
twilson@consovoymccarthy.com
julius@consovoymccarthy.com
zach@consovoymccarthy.com

Patrick Strawbridge (MA Bar No. 678274)*
CONSOVOY MCCARTHY PLLC
8th Floor South PMB #706
Boston, MA 02109
Telephone: (617) 227-0548
patrick@consovoymccarthy.com

Richard A. Rosen (NY Bar No. 1663830)*
Omer Wiczyk (NY Bar No. 4321600)*
THE LOUIS D. BRANDEIS CENTER
FOR HUMAN RIGHTS UNDER LAW
1330 6th Avenue, 23rd Floor
New York, NY 10019
Telephone: (917) 363-9004
rrosen@brandeiscenter.com
owiczyk@brandeiscenter.com

* Admitted pro hac vice

*Counsel for Plaintiffs*

DECLARATION OF THOMAS A. WILSON

**DECLARATION OF THOMAS A. WILSON**

1. I am an attorney at the law firm Consovoy McCarthy PLLC and counsel for Plaintiffs Matthew Weinberg, Rabbi Dovid Gurevich, Nir N. Hoftman, and Eli Tsives.

2. I am over the age of eighteen and under no mental disability or impairment. I have personal knowledge of the following facts and, if called as a witness, I would competently testify to them.

3. The following materials attached as exhibits are true and accurate copies:

   a. Exhibit A is a letter Plaintiffs sent Mark Kleiman, counsel for National Students for Justice in Palestine (NSJP), on April 20, 2026. In this letter, Plaintiffs agree to accept a $12,000 payment from Mr. Kleiman to cover expenses Plaintiffs incurred in attending the April 13, 2026 status conference, even though that figure is significantly less than the actual expenses Plaintiffs incurred.

   b. Exhibit B is an email Plaintiffs sent Mr. Kleiman, counsel for NSJP, on April 22, 2026. This email follows up on the April 20, 2026 letter.

   c. Exhibit C is a series of emails between Plaintiffs and NSJP regarding sanctions against Mr. Kleiman for failure to attend the April 13, 2026 status conference. These emails were sent between April 22, 2026, and April 29, 2026.

   d. Exhibit D is a letter Plaintiffs sent Mr. Kleiman on March 4, 2026, regarding NSJP's failure to comply with the discovery requirements of Federal Rules 33 and 34.

   e. Exhibit E is a letter Mr. Kleiman sent Plaintiffs on February 10,

DECLARATION OF THOMAS A. WILSON

2026, which states, among other things, that NSJP will make its Rule 26(a) disclosures by February 13, 2026, and produce documents in its possession, custody, or control by the same date.

f.  Exhibit F, dated April 6, 2026, is a summary of the respective positions taken by Plaintiffs and NSJP regarding various discovery disputes, which was sent to Magistrate Judge Richlin.

Executed this 4th day of May, 2026

/s/ Thomas A. Wilson
Thomas A. Wilson
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
twilson@consovoymccarthy.com

DECLARATION OF THOMAS A. WILSON

# Exhibit A



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

**VIA EMAIL ONLY**

April 20, 2026

Mark Kleiman
KLEIMAN / RAJARAM
12121 Wilshire Boulevard, #810
Los Angeles, CA 90025
Phone: 310-392-5455
Email: mark@krlaw.us

Re:   *Weinberg, et al., v. National Students for Justice in Palestine, et al.*, No. 2:25-cv-3714-MCS-AJR (C.D. Cal.)

Dear Mr. Kleiman:

We are writing regarding the Court's sanctions order. *See* Dkt.138. Because you failed to appear at the scheduling conference on April 13, 2026, Plaintiffs may recover the expenses they incurred to attend the conference. *See* Fed. R. Civ. P. 16(f)(2). The order requires the parties to attempt to "agree on the measure of the sanction." Dkt.138.

In the Central District of California, "[r]easonable travel time by the attorney is compensable, at full rates, if that is the practice in the community. In Los Angeles, the practice is to compensate at full rates for travel time[.]" *Rodriguez v. Cnty. of Los Angeles*, 96 F. Supp. 3d 1012, 1025 (C.D. Cal. 2014), *aff'd*, 891 F.3d 776 (9th Cir. 2018); *see also Rios v. City of Los Angeles*, 2023 WL 3432164 (Mar. 2, 2023) (similar). In determining the attorney's reasonable hourly fee, courts have relied on the "2024 Wolters Kluwer Real Rate Report." *See, e.g., Aung v. Watts*, 2025 WL 2659222, at *3 (C.D. Cal. Aug. 7, 2025). Under that report, the median rate for partners is $895 and the median rate for associates is $713. *Trs. of The Laundry & Dry Cleaning Workers Loc. No. 52 Health & Welfare Tr. Fund v. Kleen Kraft Servs., Inc.* 2026 WL 638867, at *4 (C.D. Cal. Feb. 2, 2026). Those rates are below the standard rates Consovoy McCarthy charges for the services of its attorneys, but this letter uses them in accordance with local practice.

The time and expenses incurred are provided below, by attorney:

Patrick Strawbridge:
- Flight: $940.39.
- Hotel: $231.14.
- Travel time: 10.4 hours from North Carolina to California (9.7 hours for connecting flights, 0.7 hours for travel to the courthouse); 7.7 hours from California to North Carolina (7.0 hours for connecting flights, 0.7 hours for travel from the courthouse). The travel time includes 2.0 hours of review of court materials by Attorney Strawbridge in preparation of the hearing.
- Additional time (excluding time traveling): 1 additional hour to prepare for and attend the scheduling conference.
- Total: $1,171.53 in expenses, $17,094.50 for travel time, preparation and attendance (19.1 hours times $895.00).

William Brown:
- Mileage: $66.70.
- Parking: $10.00.
- Time: 3.2 hours to prepare for and appear at the status conference, travel to and from the conference, and confer with Patrick Strawbridge on hearing preparation while enroute.
- Total: $76.70 in expenses, $2,864.00 for time (3.2 hours times $895.00).

Thomas Wilson:
- Time: 1.3 hours to draft notes for the scheduling conference, correspond with Julius Kairey and Zachary Grouev regarding the scheduling conference, and send the notes to Patrick Strawbridge.
- Total: $926.30 for time (1.3 hours times $713.00).

Julius Kairey:
- Time: 1.0 hours to prepare Patrick Strawbridge for the conference by editing the notes prepared by Thomas Wilson, and to discuss the notes with T. Wilson.
- Total: $713 for time (1.0 hours times $713.00).

Accordingly, the total expenses Plaintiffs incurred is $22,846.03.

In order to reach a resolution, however, Plaintiffs will accept payment of $12,000, if payment is made by April 24, 2026. Payment may be made by check made out to "Consovoy McCarthy PLLC."

If we are unable to agree on the measure of the sanctions, Plaintiffs will move for an award of expenses, as permitted by the Court's order. *See* Dkt.138. That motion will seek the full amount of expenses owed to Plaintiffs, as well as "an award for fees incurred to file the motion." *Id.*

Sincerely,

/s/ Thomas R. McCarthy

4

## CERTIFICATE OF SERVICE

I certify that, on April 20, 2026, I served the foregoing letter on counsel for the parties listed below, by email:

Mark Kleiman
KLEIMAN / RAJARAM
12121 Wilshire Boulevard, #810
Los Angeles, CA 90025
Phone: 310-392-5455
Email: mark@krlaw.us

*Counsel for National Students for Justice in Palestine*

Dan Stormer
Rebecca Brown
Bina Ahmed
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, CA 91103
Phone: 626-585-9600
Emails: dstormer@hadsellstormer.com
rbrown@hadsellstormer.com
bahmed@hadsellstormer.com

*Counsel for People's City Council*

*/s/ Thomas R. McCarthy*

# Exhibit B

Case 2:25-cv-03714-MCS-AJR Document 152-1 Filed 05/04/26 Page 11 of 46 Page ID #:2354

 **Gmail**

Julius Kairey <julius@consovoymccarthy.com>

---

# Weinberg et al. v. NSJP et al. -- Sanctions Regarding April 13, 2026 Scheduling Conference

---

**Julius Kairey** <julius@consovoymccarthy.com>                                      Wed, Apr 22, 2026 at 10:29 AM
To: Mark Kleiman <mark@krlaw.us>, Pamela Savoie <pam@krlaw.us>
Cc: Rebecca Brown <rbrown@hadsellstormer.com>, "bahmad@hadsellstormer.com" <bahmad@hadsellstormer.com>, Alex Villegas <avillegas@hadsellstormer.com>, Dan Stormer <dstormer@hadsellstormer.com>, William Brown <bill@brownwegner.com>, Thomas McCarthy <tom@consovoymccarthy.com>, Patrick Strawbridge <patrick@consovoymccarthy.com>, Zach Grouev <zach@consovoymccarthy.com>, Taxi Wilson <twilson@consovoymccarthy.com>

Mark,

We are writing to follow up on our letter of April 20, 2026. Please let us know if you are willing to agree to the measure of sanctions that Plaintiffs propose in that letter by 5 p.m. Pacific time today. We would like to avoid motions practice on this issue, if possible.

Regards,
Julius

On Mon, Apr 20, 2026 at 3:28 PM Julius Kairey <julius@consovoymccarthy.com> wrote:

Mark,

Please see the attached letter from Plaintiffs.

Regards,
Julius

--

Julius I. Kairey
**Consovoy McCarthy PLLC**
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
703.243.9423

www.consovoymccarthy.com

# Exhibit C

 Gmail

Julius Kairey <julius@consovoymccarthy.com>

## Weinberger v NSJP

**Taxi Wilson** <twilson@consovoymccarthy.com>                    Wed, Apr 29, 2026 at 5:28 PM
To: Jonathan Wallace <jonathan.wallace80@gmail.com>
Cc: Julius Kairey <julius@consovoymccarthy.com>

Please dial in now if you want to discuss.

On Wed, Apr 29, 2026 at 5:27 PM Jonathan Wallace <jonathan.wallace80@gmail.com> wrote:
I couldn't, I was on with DOJ. Can you call me on ███████? I have a 530 zoom but could mute and take your call.

On Wed, Apr 29, 2026 at 5:01 PM Taxi Wilson <twilson@consovoymccarthy.com> wrote:
Ok, please join this line now:

Toll-Free Dial-in Number: ███████

Conference ID: █████

On Wed, Apr 29, 2026 at 4:58 PM Jonathan Wallace <jonathan.wallace80@gmail.com> wrote:
I would like to discuss paying 12, can we conference?

On Wed, Apr 29, 2026, 1:28 PM Taxi Wilson <twilson@consovoymccarthy.com> wrote:
Thanks Jonathan, let's connect now in that case. Please use the below for the dial-in:

Toll-Free Dial-in Number: ███████

Conference ID: █████

Best,

On Wed, Apr 29, 2026 at 1:23 PM Jonathan Wallace <jonathan.wallace80@gmail.com> wrote:
I am free now until 2, then 3 to 430, then after 530 on. EST

On Wed, Apr 29, 2026, 1:21 PM Taxi Wilson <twilson@consovoymccarthy.com> wrote:
Jonathan,

Do you have time this afternoon to connect regarding your counteroffer and Plaintiffs' motion? If so please give us some times that work and we will circulate a dial-in.

Best,

On Tue, Apr 28, 2026 at 8:55 AM Jonathan Wallace <jonathan.wallace80@gmail.com> wrote:
Thanks, I will!

On Tue, Apr 28, 2026 at 8:52 AM Taxi Wilson <twilson@consovoymccarthy.com> wrote:
Jonathan,

Last night, my colleague Julius circulated a dial-in for this morning's call. As noted in the instructions that Julius provided, the way this works is that you use your phone to call the number listed and to enter the conference ID key.

Please let us know if you have any trouble.

Best,

On Tue, Apr 28, 2026 at 8:17 AM Jonathan Wallace <jonathan.wallace80@gmail.com> wrote:
Hi, confirming our 9 am. Please let me know what number you will be calling from, then call me on ███████. Thanks.

On Mon, Apr 27, 2026 at 5:51 PM Taxi Wilson <twilson@consovoymccarthy.com> wrote:
Jonathan -- You noted in your earlier email that you would provide a counteroffer when we speak. We can speak at 9am ET tomorrow morning. To help streamline our conversation and to give us time to discuss your counteroffer with our clients, we'd appreciate your counteroffer in writing this evening, which we will treat in accordance with FRE 408.

Best,

On Mon, Apr 27, 2026 at 5:12 PM Jonathan Wallace <jonathan.wallace80@gmail.com> wrote:
I do not have adequate signal or acoustics to do a call right now.

On Mon, Apr 27, 2026, 5:09 PM Taxi Wilson <twilson@consovoymccarthy.com> wrote:
Mark, you stated that you would be free at 2pm, and 15 minutes ago Jonathan emailed us asking us to call him, confirming that he is free and did not think that being on a train would prevent him from taking a call.

We have been on the line and will wait for five more minutes for you and Jonathan to join.

Best,

On Mon, Apr 27, 2026 at 4:55 PM Mark Kleiman <mark@krlaw.us> wrote:
Thank you, Taxi.  That you understood the details of the first message and read enough of the second to term it "equally unhelpful" is strongly suggestive that you have listened to them both.  A simple reply to Jonathan or an inquiry to me would have clarified any uncertainty you have about his involvement.  It is regrettable that this did not occur.

Jonathan has just boarded a train at Jamaica Station in NY and will not be available at two. I am trying to ascertain when he will be available and will get back to you as soon as I have that information

On Mon, Apr 27, 2026 at 1:48 PM Taxi Wilson <twilson@consovoymccarthy.com> wrote:
Thanks, Mark. We will circulate a dial-in for 2pm PT.

Regarding Mr. Wallace, he emailed us roughly two hours ago asking to discuss your sanctions but failing to explain why he had any interest in doing so, much less suggesting that he had any authority to negotiate on your behalf. He then called an attorney at our law firm who is not affiliated with this matter and left an equally unhelpful voicemail.

Talk soon.

Best,

On Mon, Apr 27, 2026 at 4:30 PM Mark Kleiman <mark@krlaw.us> wrote:
I will be available any time after 2 pm Pacific.  I am adding Jonathan Wallace who already contacted your office on my behalf and whose call you have yet to return.

Mark

On Mon, Apr 27, 2026 at 1:21 PM Taxi Wilson <twilson@consovoymccarthy.com> wrote:
Mark,

In your email of Wednesday, April 22, you stated that you would provide your position regarding Plaintiffs' expenses by this past Saturday, April 25. You failed to do so. Because you clearly do not intend to pay the proposed compromise (or to propose and pay any other reasonable expense figure) by today, Plaintiffs intend to move for their full expenses.

As such, Plaintiffs request that you meet and confer with us today regarding our forthcoming motion for expenses. Please let us know when you are available.

Best,

On Thu, Apr 23, 2026 at 9:10 AM Taxi Wilson <twilson@consovoymccarthy.com> wrote:

Thanks for your note, Mark. The timing indicated in our letter is necessitated by Judge Scarsi's order, which requires the parties to "file within 14 days a joint statement indicating NSJP's counsel completed the payment." Fourteen days from April 13 is this coming Monday, April 27. We cannot prepare the joint statement until you have "completed the payment," which typically must be done on a weekday, hence our request for payment by this Friday, April 24.

As to your complaint that our letter cites caselaw, these are the cases we relied on to calculate what seemed like the least objectionable rates for our time, even though the rates are discounted compared to those that our firm's attorneys typically charge. And we assume that the unfamiliar "proprietary database" you refer to is the 2024 Wolters Kluwer Real Rate Report; as noted in our letter, courts in this District recognize it as an authoritative source for determining reasonable attorney's fees.

Our offer to settle the matter for $12,000 is more than reasonable, representing a reduction of over $10,000 from the discounted fees and expenses we incurred related to the conference. Of course, whether and when you respond is your decision. But please keep in mind that, as emphasized in our letter, if you decide not to complete payment within the 14 days contemplated in Judge Scarsi's order we will note that no agreement was reached despite Plaintiffs' best efforts and file a motion seeking full fees and expenses, plus additional costs incurred for filing the motion.

Best,

On Wed, Apr 22, 2026 at 7:46 PM Mark Kleiman <mark@krlaw.us> wrote:
> Taxi,
>
> You may file whatever motion you with of course, but thie timing is at the least unseemly. The hearing I missed was on April 13, as was Judge Scarsi's order. You gave yourself a week to decide on your position and wrote me on on April 20.
>
> Your letter, which you took a week to compose, cited four cases and a proprietary database with which I am unfamiliar. After taking you expect my response in two days.
>
> In addition to the matter of our discovery disagreement I am working under a seven-day deadline to oppose two motions to dismiss for which I received only seven days notice. I will respond to you by Saturday. I do not think that is unreasonable. If you believe you can persuade the Court that you get a week and I get two days, you should of course proceed.
>
> Thank you,
>
> Mark
> --



> 12121 Wilshire Blvd., Ste. 810
> Los Angeles, CA 90025
> 310-392-5455
> 310-306-8491 (fax)
> www.kleimanrajaram.com
>
> Uplink Page for Secure and Confidential File Sharing:
> https://spaces.hightail.com/uplink/mkleiman

**WARNING!!**

This email is protected by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 and is legally privileged.

The information contained in this email is only for use by the individual or entity named above.  If you are not the intended recipient or the employee or agent responsible to deliver to the intended recipient, any dissemination, distribution or copy of this message is strictly prohibited. If you have received this message in error, please immediately call us collect at 310-392-5455 and destroy the original message.

Thank you.

--



12121 Wilshire Blvd., Ste. 810
Los Angeles, CA  90025
310-392-5455
310-306-8491 (fax)
www.kleimanrajaram.com

Uplink Page for Secure and Confidential File Sharing:
https://spaces.hightail.com/uplink/mkleiman

**WARNING!!**

This email is protected by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 and is legally privileged.

The information contained in this email is only for use by the individual or entity named above.  If you are not the intended recipient or the employee or agent responsible to deliver to the intended recipient, any dissemination, distribution or copy of this message is strictly prohibited. If you have received this message in error, please immediately call us collect at 310-392-5455 and destroy the original message.

Thank you.

--

12121 Wilshire Blvd., Ste. 810
Los Angeles, CA 90025
310-392-5455
310-306-8491 (fax)
www.kleimanrajaram.com

Uplink Page for Secure and Confidential File Sharing:
https://spaces.hightail.com/uplink/mkleiman

**WARNING!!**

This email is protected by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 and is legally privileged.

The information contained in this email is only for use by the individual or entity named above. If you are not the intended recipient or the employee or agent responsible to deliver to the intended recipient, any dissemination, distribution or copy of this message is strictly prohibited. If you have received this message in error, please immediately call us collect at 310-392-5455 and destroy the original message.

Thank you.

# Exhibit D



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

**<u>VIA ELECTRONIC MAIL ONLY</u>**

March 4, 2026

Mark Kleiman
KLEIMAN / RAJARAM
12121 Wilshire Boulevard, #810
Los Angeles, CA 90025
Phone: 310-392-5455
Email: mark@krlaw.us

Re:    *Weinberg, et al., v. National Students for Justice in Palestine, et al.*, No. 2:25-cv-3714-MCS-AJR (C.D. Cal.)

Dear Mark:

I am writing this letter pursuant to Central District Local Rule 37-1 and Rule 37 of the Federal Rules of Civil Procedure in advance of our pre-filing conference of counsel regarding the continued failure of Defendant National Students for Justice in Palestine to comply with the discovery requirements of Federal Rules 33 and 34.

Our review of NSJP's responses to both Plaintiffs' First Requests for Production of Documents to Defendant National Students for Justice in Palestine and Plaintiffs' First Interrogatories to Defendant National Students for Justice in Palestine, received on Mar. 3, 2026, confirms that all of NSJP's responses either admit their own deficiency and essentially request a further extension to respond beyond what Plaintiffs have already provided, or invoke boilerplate objections based on unsubstantiated pretexts.[1] NSJP has produced *no* documents and has answered *none* of Plaintiffs' interrogatories. Indeed, despite representing in your letter of Feb. 10, 2026, that NSJP would serve its

---

[1] NSJP failed to respond at all to Plaintiffs' Second Requests for Production of Documents to Defendant National Students for Justice in Palestine ("Second Set of RFPs"), served Dec. 22, 2025.

automatic Rule 26(a) discovery by Feb. 13 and "produce those documents that are in [NSJP's] possession, custody, or control by then," NSJP still has not done so, and has ignored Plaintiffs' counsel's email correspondence regarding the same. NSJP's failure to produce *any* responsive documents is all the more galling considering that Plaintiffs cited several relevant NSJP communications in its First Amended Complaint. *See* Dkt.54 at ¶¶61–66 (citing several NSJP Instagram posts and collaborations from Apr. 24 through Apr. 30, 2024, regarding the UCLA encampment).

NSJP's withholding of relevant documents and failure to answer interrogatories based on boilerplate objections is equivalent to providing no responses to Plaintiffs' discovery requests. In fact, NSJP literally provides no responses to Plaintiffs' Second Set of RFPs. NSJP's delinquency is particularly troubling considering that Plaintiffs made clear in their deficiency letter to NSJP of Jan. 26, 2026, that Plaintiffs would agree not to move to deem NSJP's objections waived and to compel production of documents on the condition that NSJP's eventual responses would not be "'boilerplate objections,'" which "do not constitute responses to discovery as required by the rules"; that in your letter of Feb. 10, 2026, you represented to having been aware of the deficiency letter Plaintiffs sent to PCC on Jan. 26, 2026, which further detailed the impermissibility of boilerplate objections; and because you are no doubt aware of your obligation to respond to *all* of Plaintiffs' discovery requests, including Plaintiffs' Second Set of RFPs.

Equally troubling, NSJP's document-collection efforts appear deliberately inadequate. At the outset, NSJP has attempted to arbitrarily limit its responsibility to search for responsive documents by declaring that it "will neither search for nor produce documents that are in the personal possession of its attorneys, former attorneys, accountants, financial advisors, investigators, agents, employees, representatives, directors, officers, consultants, or persons acting on behalf of Defendant." Resp. to RFPs at 6–7; *see also* Resp. to Interrogatories 6. This approach to document collection is plainly deficient. "Federal courts have consistently held that documents are deemed to be within a party's 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody, or control, or has the legal right to obtain the documents on demand." *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) (cleaned up). And "a reasonable

inquiry into the factual basis of a party's discovery responses ... requires, at a minimum, a reasonable procedure to distribute discovery requests to all employees and agents of the party potentially possessing responsive information, and to account for the collection and subsequent production of the information to the opposing party." *Id.* at 190 (cleaned up). NSJP accordingly must "conduct a reasonable inquiry into the factual basis of [its] responses to discovery, and, based on that inquiry, is under an affirmative duty to seek that information reasonably available to [it] from its employees, agents, or others subject to its control." *Albert v. Lab'y Corp. of Am.*, 536 F. Supp. 3d 798, 800 (W.D. Wash. 2020) (cleaned up). NSJP may not simply declare, contrary to the Federal Rules, that it will not search for responsive documents from its agents, officers, employees, and any others acting on its behalf.

Further, as Plaintiffs made clear in their letter to you of Feb. 5, 2026, since the initiation of this litigation, you as NSJP's counsel have been under an obligation to advise your client to preserve relevant documents. But NSJP's responses suggest that you have not taken this obligation seriously. For example, despite Plaintiffs' numerous requests for documents and communications related to the UCLA encampment—which goes to the very heart of this action—NSJP still has failed to produce *any* responsive documents. Similarly, it beggars belief that NSJP possesses *no* responsive documents or communications relating to "Jews, Judaism or any Jewish practices or beliefs." Response to RFP Nos. 10–11. Indeed, NSJP's blanket claim that it possesses no such documents or communications is irreconcilable with its assertion that "NSJP has not completed its investigation" (NSJP Resp. to RFPs at 2), and suggests that NSJP is deliberately stonewalling efforts to collect the very documents required to prove antisemitic animus, which is a key element of Plaintiffs' claims. So too with NSJP's apparent decision—never once proposed during the parties' numerous meet-and-confers—to unilaterally narrow the relevant time period for document collection to the four-month window between April and August 2024. Needless to say, planning the complex, coordinated antisemitic conspiracy that took place at UCLA in late April took well more than a month, and Plaintiffs' complaint cites relevant documents published well after the encampment.[2]

---

[2] The temporal scope of permissible discovery is broad, and "[c]ourts judge the appropriate temporal scope of discovery based on what is reasonable in the circumstances of the specific case." *Alvarado-Herrera v. Acuity*, 2022 WL 18108429,

4

NSJP's continual failure to produce documents, its internally contradictory claims about what documents exist, and its absurdly narrow timeframe for document collection suggest spoliation. If NSJP's officers, employees, agents, or other representatives have destroyed documents or communications, then Plaintiffs reserve the right to seek all appropriate redress from the Court, including sanctions. *See* Fed. R. Civ. P. 37(e). If, however, you have not attempted to collect such documents and communications from relevant officers and other NSJP representatives, then it is clear that you have not assigned proper custodians for document collection and otherwise have conducted an inadequate search of your client's files. Given these specifically identified deficiencies, according to the very authority NSJP cites in its Response to RFP No. 1, Plaintiffs have "show[n] a specific deficiency in the other party's production" and thus satisfied the requirements for "discovery on discovery." *Brewer v. BNSF Ry. Co.*, 2018 WL 882812, at *2 (D. Mont. Feb. 14, 2018); *accord, e.g.*, *Taylor v. Google LLC*, 2024 WL 4947270, at *2 (N.D. Cal. Dec. 3, 2024).[3]

We look forward to attempting to resolve these issues without assistance from the Court during our agreed-upon meet-and-confer this coming Friday, Mar. 6, 2026. Please let us know what time will work with your schedule.

---

at *2 (D. Nev. Nov. 8, 2022). Even an "eight-year timeframe" may be appropriate. *Id.*; *see also In re Folding Carton Antitrust Litig.*, 83 F.R.D. 260, 265 (N.D. Ill. 1979) (approving 15-year scope in interrogatories given length of conspiracy alleged). Given the amount of planning that went into the UCLA encampments, the Campus Support Coalition, and the Students for Gaza initiative—all of which are relevant to Plaintiffs' claims in this action—Plaintiffs continue to propose a reasonable timeframe of September 2023 through the present, to track the academic school year during which the events occurred, and capture relevant communications and documents formed afterward.

[3] NSJP also objects that Plaintiffs' instructions regarding the production of metadata information are "unduly burdensome." Resp. to RFPs at 5. Plaintiffs disagree that their instructions regarding metadata create an undue burden but are willing to meet and confer with NSJP regarding this issue.

## NSJP'S RESPONSES ARE
## NOTHING BUT IMPERMISSIBLE BOILERPLATE

When responding to discovery requests, an objecting party must "state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B); *see also* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."). In each objection, the objecting party must also "state whether any responsive materials are being withheld on the basis of that objection." *Id.* 34(b)(2)(C). The Federal Rules thus make clear that the party opposing discovery "has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Maria Del Socorro Quintero Perez, CY v. United States*, 2016 WL 705904, at *6 (S.D. Cal. Feb. 23, 2016); *accord, e.g.*, *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015).

Therefore "unexplained and unsupported boilerplate objections are improper," and cannot suffice to meet an objecting party's obligations under the Federal Rules. *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 379 (C.D. Cal. 2009). And "[e]xclusive reliance on such boilerplate objections waives any legitimate objection that could have been raised." *Cengage Learning, Inc. v. Davis Textbooks*, 2016 WL 8730880, at *2 (E.D. Cal. Sept. 16, 2016); *accord* Fed. R. Civ. P. 33(b)(4) (interrogatories); 34(b)(2)(B) (requests for production). So, where a party objects on grounds of relevance, breadth, burden, or oppression, for example, the party must "*demonstrat[e]* how the discovery request is irrelevant, overly broad, burdensome, or oppressive." *Quintero Perez*, 2016 WL 705904, at *6. (emphasis added). This also applies to claims of privacy and privilege, unless the objecting party provides a detailed privilege log. *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) ("We hold that boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege."); *see also Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 239 (N.D. Cal. 2015) ("The Ninth Circuit is clear: a party

cannot withhold documents as privileged if it fails to substantiate its privilege assertions.").

Simply put, "general or boilerplate objections such as 'overly burdensome and harassing' are improper," as are "boilerplate relevancy objections" where the objecting party fails to "se[t] forth any explanation or argument why the requested documents are not relevant, are improper." *Garber*, 234 F.R.D. at 188.

Yet boilerplate, unsubstantiated responses to Plaintiffs' RFPs and interrogatories are all that NSJP musters. In conclusory fashion, NSJP lodges six General Objections to Plaintiffs' first sets of RFPs and interrogatories:

1. "Overbreadth and 'Relating to' Language"
2. "Relevance and Proportionality under Rule 26(b)(1)"
3. "First Amendment Speech and Associational Privacy Objections"
4. "Temporal and Geographical Overbreadth and Disproportion"
5. "Undue Burden regarding Discovery"
6. "Attorney-Client and Work Product Privileges"

*See* NSJP Resp. to RFPs at 2–7; NSJP Resp. to Interrogatories at 2–7.

Critically, NSJP never takes the step of applying any of its General Objections to the specific RFPs or Interrogatories that Plaintiffs served, instead vaguely asserting in its General Objections that some apply to "multiple requests," or stating that a General Objection applies "to the extent that the Requests call for documents" that would trigger the objection. Put another way, NSJP's approach does not identify which objections apply to which specific RFP or interrogatory. But when NSJP moves from its General Objections to specific responses, it merely "incorporates by reference each of the above general objections" and makes no effort to tailor the objection to the specific request. Plaintiffs thus have no way of knowing which of NSJP's General Objections apply to which specific RFP or interrogatory—much less why NSJP thinks such objections are appropriate—which inhibits Plaintiffs from providing any meaningful response or attempting to determine whether NSJP's various privilege claims are valid. NSJP then recycles the refrain that "it is searching for documents" and "will produce these documents as soon as

they are identified." Given that NSJP still has failed to even produce a single document in connection with its own Rule 26(a) disclosures, this representation is cold comfort.

By doing nothing more than incorporating general objections into each specific RFP and interrogatory response, NSJP's responses meet the definition of "boilerplate" and plainly defy not only the parties' previous agreement but also the Federal Rules. *See* Fed. R. Civ. P. 34(b)(2)(B) (objecting party must "state with specificity the grounds for objecting to the request, including the reasons"); Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity."). NSJP's "[e]xclusive reliance on such boilerplate objections waives any legitimate objection that could have been raised." *Cengage Learning*, 2016 WL 8730880, at *2; *accord, e.g.*, *Pashaie v. H77LA, LLC*, 2024 WL 4800698, at *4 (C.D. Cal. Sept. 9, 2024) (Richlin, M.J.) (explaining that "'[i]t is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection'" and holding that, where objecting party failed to assert objection or "otherwise identify any limit on his production" the "objection … [was] waived"); *Leprino Foods Co. v. Avani Outpatient Surgical Ctr., Inc.*, 2024 WL 650434, at *5 (C.D. Cal. Jan. 4, 2024) (granting plaintiff's motion to compel "full and complete written responses without any objection" to plaintiff's RFPs because defendant waived all objections by failing to timely respond thereto).

Because NSJP's responses demonstrate that it has not made a good-faith effort to comply with the Federal Rules or the modified discovery schedule to which the parties agreed, we advise you that Plaintiffs are prepared to move to deem NSJP's objections waived, to compel documents and responses, and to seek to recover fees and expenses under Rule 37.

Sincerely,

/s/ Thomas R. McCarthy
Thomas R. McCarthy

8

# CERTIFICATE OF SERVICE

I certify that, on March 4, 2026, I served the foregoing letter on counsel for the parties listed below, by email:

Mark Kleiman
KLEIMAN / RAJARAM
12121 Wilshire Boulevard, #810
Los Angeles, CA 90025
Phone: 310-392-5455
Email: mark@krlaw.us

*Counsel for National Students for Justice in Palestine*

Dan Stormer
Rebecca Brown
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, CA 91103
Phone: 626-585-9600
Emails: dstormer@hadsellstormer.com
rbrown@hadsellstormer.com

*Counsel for People's City Council*

*/s/ Thomas R. McCarthy*

# Exhibit E



**KLEIMAN / RAJARAM**
12121 Wilshire Blvd., Suite 810
Los Angeles, CA 90025
Tel:   (310) 392-5455
Fax:  (310) 306-8491

Mark Kleiman
mark@krlaw.us

Pooja Rajaram
pooja@krlaw.us

---

February 10, 2026
*Via E-mail*

Thomas "Taxi" Wilson
Consovoy McCarthy, PLLC
1600 Wilson Blvd Suite 700
Arlington, Virginia 22209
twilson@consovoymccarthy.com

Re:  Weinberg v. NSJP

Dear Taxi,

Let me see if we can unpack the numerous items that came out of 2½ hours of conferences last week.

1. **Initial Disclosures**  We will make our 26a disclosures by 2/13 and will produce those documents that are in our possession, custody, or control by then.  If we identify documents that we do not possess or control we will comply with the identification requirements of the Rule and will get them if an when we gain control of them. We will do our best to fully comply but as I said on the call, there may be a rolling production on these items.

2. **Responses to RFPs and Interrogatories** We will respond by March 2.  I understand that you want agreement that you would serve your deficiency letter by March 4 and that I would be available for a substantive meet-and-confer on March 5 or 6.  Although I recognize your sense of urgency I am not going to be able to accommodate it.  Your team wrote Rebecca Brown a 6,000 word letter about her discovery responses and had nine lawyers on the phone with her.  I feel relatively fortunate that there were only five on our initial call.

   I have not read her discovery responses or your letter so I do not comment on whether such loquacity is merited.  I want merely to point out that I have an all-day deposition March 4 and a major argument in an anti-SLAPP motion on March 5.  I can be prepared to address at least some of your position on March 6, as you request, but not being able to anticipate either the volume or complexity of your response I cannot commit to being able to meaningfully address a missive of that size.

Thomas "Taxi" Wilson
February 10, 2026
page two

The March 20 date for a privilege log seems optimistic.  I do not have nine lawyers to put on a phone call or review documents. Depending on the volume, a privilege review and an accurate privilege log may take longer than that.  If there is going to be slippage beyond the 20th for a privilege log and the 30th for substantial completion, I propose that we target March 20 and March 30, but that if necessary we confer by March 17, I update you on progress and bottlenecks and we work out a more realistic date at that point.

3.  **30(b)(6) Depositions**  I am amenable to April 9 and 10, but we still have a **lot** to work out with respect to numerosity of topics and many other procedural issues.  But I am reserving those days for safekeeping.

4.  **Protective Order**  Thank you for the revisions.  I shall look at them in the next day or two.

Regards,

Mark

# Exhibit F

April 6, 2026

RE:   *Weinberg, et al., v. National Students for Justice in Palestine, et al.*, No. 2:25-cv-3714-MCS-AJR (C.D. Cal.)

### Brief Descriptions of Each Party's Position on the Disputes

**Issue 1:** Whether NSJP properly advised individuals with potentially relevant documents and communications to preserve such documents and communications.

### Plaintiffs' Position

NSJP appears to have made virtually no effort to preserve documents potentially critical to Plaintiffs' case. During the parties' meet-and-confer on March 9, 2026, NSJP's counsel confirmed that he did not attempt to contact NSJP's subchapters or members involved in the alleged antisemitic conspiracy on UCLA's campus to instruct them to retain potentially relevant documents. While NSJP's counsel acknowledged that the Court rejected NSJP's argument that it "cannot be held liable for the actions of its local chapters," Dkt.113 at 13 n.4, he explained that he disagreed with this view and took the position that he has never had any obligation to advise these subchapters or members to retain documents relevant to this litigation. Instead, NSJP's counsel explained that he merely advised NSJP's national leadership (the names of whom NSJP refuses to identify) to retain documents and to contact whichever (also unidentified) individuals it thought should also retain documents.

"The duty to preserve evidence also 'includes an obligation to identify, locate, and maintain, information that is relevant to specific, predictable, and identifiable litigation.'" *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1137 (N.D. Cal. 2012) (quoting *The Sedona Conf. Comment on Legal Holds: The Trigger and the Process* 3 (public cmt. Aug. 2007)). NSJP's decision to limit its document-retention instruction solely to NSJP's unidentified national leadership rather than any of its subchapters or members—including those that organized and facilitated the alleged antisemitic conspiracy—falls far short of this obligation. Indeed, attorneys have faced sanctions over similar conduct. *See, e.g.*, *Qualcomm Inc. v. Broadcom Corp.*, 2008 WL 66932, at *9 (S.D. Cal. Jan. 7), *vacated in part*, 2008 WL 638108 (S.D. Cal. Mar. 5) (imposing sanctions where attorneys failed to "take responsibility for ensuring that their clients conduct[ed] a comprehensive and appropriate document search"); *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 2020 WL 2838806, at *5–6 (N.D. Cal. June 1). NSJP's approach also contradicts its previous representations, memorialized

1

in Plaintiffs' February 5 letter to NSJP, that NSJP "ha[d] advised [its] client, National Students for Justice in Palestine (NSJP), *and all of its constituents, subparts, chapters, representatives and/or members, in writing,* of their obligation to preserve ESI potentially relevant to this litigation." App. 92 (emphasis added). Nor is NSJP's approach reconcilable with the Court's conclusion that NSJP "has not offered a persuasive reason why the Court should treat its UCLA chapter as an agent of the national organization, rather than simply as a subpart or department of the organization itself," Dkt.113 at 13 n.4, a "necessary implication" of which is that NSJP must seek to retain potentially relevant documents from the subchapters likely to possess them, *In re Alle*, 2021 WL 3032712, at *8 (C.D. Cal. July 19) (Scarsi, J.). Discovery into NSJP's approach to document retention is warranted: Given that NSJP has disclaimed any obligation to instruct potentially key witnesses to preserve documents relevant to Plaintiffs' claims, there is much more than "some indication" that PCC's "discovery has been insufficient or deficient." *Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557, 566 (S.D. Cal. 2019).

Plaintiffs thus request that the Court (1) permit Plaintiffs to pursue discovery regarding NSJP's document-retention efforts; (2) order NSJP to disclose further details of its document-retention efforts in this matter; (3) order NSJP to identify subchapters and members who were involved in the alleged antisemitic conspiracy and may possess information relevant to Plaintiffs' claims, including those who may no longer be members of NSJP; (4) order NSJP to immediately contact these subchapters and custodians and instruct them to preserve all potentially relevant documents and communications, including by deactivating their personal devices' auto-delete settings for communications; and (5) issue whatever other relief the Court deems proper.

### NSJP's Position

Here are my prior instructions, which are in full force for this query.


Use the Weinberg Vault for the following: I need law professor-grade strategic advice. I am pro bono counsel for NSJP -- not just in this case, but in many other cases around the country. There are 8 lawyers on the other side of the case. NSJP is a student organization with no staff -- just volunteers who are in school, have jobs, etc. I need help with a discovery battle that is brewing in front of our magistrate judge Richlin. The context: (1) I am outnumbered and am slow to respond and the plaintiffs seek to exploit it. (2) The plaintiffs framed the issues in the MTC as they wished -- and as they told me they would. Because I could not respond in time they set it up they they

2

want and I need to undermine and rebut it without breaking Judge Richlin's rules. Unless you have a different idea about how to proceed I need advice and drafting assistance to convey the following: Citing CASES,, preferably ninth circuit or scotus I want to set the stage (perhaps by inserting this into my first response to their first point? Or is there another way?) by pointing out the following -- and I do not want any of my responses to be more than 25% longer than the points the plaintiffs are making. (a) The utter lack of proportionality. Compare the plaintiffs' injuries with a search for nationwide discovery across 400 student groups in the NSJP network. The plaintiffs are completely capable of suing local organizations (PCC, UC Divest) but when it came to NSJP and National FJP they have one this other entirely disprorportionate route (b) There are immense First Amendment implications as alluded to in my objections to their discovery and my motion for a protective order. I want to effectively raise that . The entire case is designed and intended to have a chilling effect on the members nationwide. (c) The national group they DID sue is a network with no control over the student groups on each campus. Currently they are trying to figure out who will sign a declaration, but I have provided two declarations in other cases, one from Florida and one from New York where it is clear that NSJP has no control and cannot command. All Judge Scarsi said in his ruling in our motion to dismiss d) Judge Scarsi never ruled on the merits of our motion for a protective order. He dismissed it as "moot". The propounded discovery renders it un-moot, the issues are live. Interweave these points as early as possible in the rebuttal and if need be briefly allude to them within each section. Rebutting each point the Plaintiffs are making Where there are any references to Sedona Conference policies or pratice guides that support my position, use and cite them.

**Defendant NSJP's Position**

NSJP respectfully submits this response to Plaintiffs' Issue No. 1, addressing the threshold questions of proportionality and First Amendment protections that must govern this discovery dispute. The discovery requests at issue fail to satisfy the mandatory proportionality requirements of the Federal Rules of Civil Procedure and impermissibly burden constitutionally protected associational rights.

NSJP apologizes for the length of its response but same issues of proportionality and the chilling effect this discovery will have on protected speech and political action recurs throughout this dispute, so the later responses will be less lengthy.

3

## A. The Applicable Legal Standard

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed, R, Civ, Proc. 26,  Stevens v. CoreLogic, Inc., 899 F.3d 666, 677, n.9 (9th Cir. 2018).  Discovery may be limited if the court determines that the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive, or if the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Exxon Shipping Co. v. United States Dep't of Interior, 34 F.3d 774, 779 n.10 (9th Cir. 1994).  "Discovery should focus on the needs of the case and generally be obtained from the most convenient, least burdensome, and least expensive sources." Sedona Conf. Principles of Proportionality, Principle 2.

When electronically stored information as not reasonably accessible because of undue burden or cost, the requesting party must show good cause, considering the proportionality limitations.

## B. Application to NSJP's Circumstances

The disproportion between the parties' resources and the scope of Plaintiffs' discovery demands is stark and undeniable. NSJP is a student organization with not staff – just part-time volunteers who are simultaneously attending school and working jobs. NSJP is a decentralized network of approximately 400 student groups across the country. NSJP  has no authority to direct; and or control these organizations, which remain autonomous.  (See Affidavit of Irene Lucia Delaney, Awad v. Fordham University, Index No. 153826  Decla of Mikaela Boelkins ¶22 in Students for Justice in Palestine v. Rodrigues, Case No. 1:23-cv-00275 (N.D. FL.). Plaintiffs, represented by eight attorneys, expect far too much of a       defendant that has no real hierarchy or chain of command.

4

NSJP did not "disclaim" any preservation obligation; it explained that it does not charter, supervise, or direct local SJP groups and cannot simply command those non-party students, using their personal devices, to preserve and later produce their private communications. Judge Scarsi's footnote at Dkt. 113 n.4 declined to accept, at the pleadings stage, NSJP's argument that it can never be liable for chapter conduct, but it did not find that NSJP has blanket legal or practical "control" over all chapter members for purposes of imposing nationwide litigation holds. The Sedona Conference recognizes that preservation obligations must be calibrated to the responding party's actual control and resources, and that expanding legal holds to far-flung non-party volunteers using personal devices can be disproportionate. Plaintiffs' requested relief would convert a campus-specific case into a nationwide preservation regime directed at hundreds of non-party students, with significant First Amendment implications for political association and speech; any further preservation measures should be narrowly tailored to custodians with a concrete connection to UCLA, not imposed wholesale on a national movement

The burden becomes even more disproportionate when considering that Plaintiffs have identified and possess the ability to sue the local organizations directly responsible for the conduct at issue, (specifically PCC and UC Divest Coalition.) Rather than pursuing discovery from the UCLA SJP group, which presumably would have much more direct knowledge of the alleged conduct, Plaintiffs have chosen to impose massive discovery burdens on a national network organization that lacks control over its constituent chapters. This strategic choice to pursue the most burdensome discovery path rather than the most direct one demonstrates that the burden and expense of the proposed discovery outweighs its likely benefit.

The burden of collecting documents and information from 400 independent student organizations, coordinated by volunteers with limited time and resources, compared to the  remote prospect that that any of them will have a scrap of information bearing on events at UCLA is precisely the type of undue burden that warrants protection under the rules governing electronically stored information and discovery generally.

## II. First Amendment Associational Rights Require Heightened Protection

### A. The Two-Part Framework for First Amendment Privilege

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part framework. Perry v. Schwarzenegger, 591 F.3d 1126, 1140 (9th Cir. 2010).  Perry requires a prima facie showing of arguable First Amendment infringement by showing that enforcement of the discovery requests will result in harassment, membership withdrawal, or discouragement of new members, or other consequences which objectively suggest an impact on, or chilling of, the members' associational rights. Id., at 1135-1136,  After a *prima facie* showing the burden shifts to the "discovery request is subjected to "exacting scrutiny". Id. 1t 1139 and must employ the "least restrictive" means.  Ibid.

State-compelled disclosure of affiliation with groups engaged in advocacy may constitute an effective restraint on the freedom of association, and inviolability of privacy in group association may in many circumstances be indispensable to preservation of the freedom of association, particularly where a group espouses dissident beliefs. Freedom of speech and press and freedom of association for the purpose of advancing ideas and airing grievances are constitutionally protected not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference. Bates v. City of Little Rock, 361 U.S. 516, 523 (1960).

### III. The Protective Order Issues Remain Live and Require Resolution

Judge Scarsi dismissed NSJP's motion for a protective order as moot without ruling on the merits of the First Amendment and proportionality arguments. The propounded discovery that forms the basis of the current dispute renders those issues un-moot and requires this Court to address them.

The First Amendment concerns raised in the protective order motion remain fully applicable to the discovery requests now at issue. The proportionality concerns likewise persist. A determination that a motion is moot does not constitute a ruling on the merits of the underlying legal arguments, and those arguments retain their force when the same issues arise in subsequent discovery disputes.

This Court should therefore consider the full scope of the First Amendment associational rights and proportionality concerns that were raised but not resolved in the prior protective order motion. The two-part framework for First Amendment privilege in discovery requires careful judicial consideration before discovery that

6

impacts associational rights may proceed. That consideration has not yet occurred in this case.

Moreover, the lack of hierarchical control undermines any argument that discovery from NSJP is necessary to establish organizational liability or coordination. If NSJP cannot command or control local chapters, then information from NSJP about those chapters' activities has minimal relevance to Plaintiffs' claims.

Here, Plaintiffs' choice to pursue nationwide discovery from a volunteer student organization rather than targeted discovery from local entities with direct knowledge violates these core proportionality principles. The Sedona Conference guidance supports limiting discovery to sources that are reasonably accessible and proportional to the needs of the case.

The discovery requests at issue fail both proportionality requirements and First Amendment protections. Plaintiffs seek sweeping nationwide discovery from a volunteer student organization while possessing the ability to pursue more targeted discovery from local entities with direct knowledge and control. This approach imposes disproportionate burdens on NSJP's limited resources and threatens to chill the associational rights of members across 400 student organizations nationwide.

The Court should require Plaintiffs to demonstrate that their discovery requests satisfy proportionality requirements under the Federal Rules of Civil Procedure and that they have met their burden under the two-part framework for discovery implicating First Amendment associational rights. Absent such showings, the Court should limit discovery to information directly relevant to Plaintiffs' claims and obtainable through less burdensome and less restrictive means.

7

**Issue 2:** Whether NSJP has conducted a reasonable search for and collected documents in response to Plaintiffs' requests.

### Plaintiffs' Position

NSJP's document-collection efforts are inadequate. During the parties' March 9 meet-and-confer, NSJP confirmed that it has not attempted to contact NSJP subchapters or individual members who acted on the organization's behalf during the UCLA encampment to determine whether they possess documents responsive to Plaintiffs' requests, much less attempted to collect those members' documents. Instead, NSJP has declared that it "will neither search for nor produce documents that are in the personal possession of" numerous potentially relevant individuals, including its "agents, employees, representatives," or anyone "acting on behalf of [NSJP]." App. 113, 138. NSJP's counsel further has confirmed he has not even attempted to collect documents from Dylan Kupsh, an individual known to have been a member of NSJP's national steering committee during the UCLA encampment and who is named numerous times in the operative complaint. *See, e.g.*, Dkt.54 at 13, 25-26. Moreover, NSJP's counsel confirmed NSJP does not issue corporate devices (*e.g.*, phones or computers), and thus that many communications relevant to Plaintiffs' claims would have taken place on members' personal devices when they were acting on behalf of NSJP during the alleged antisemitic conspiracy at UCLA. Yet NSJP made no effort to locate or collect relevant documents from such devices.

What is more, NSJP's counsel has made representations about documents he never reviewed. In his March 3 responses and objections to Plaintiffs' discovery requests, NSJP represented that "NSJP … has no documents or communications referring to Jews, Judaism, or any Jewish practices or beliefs." App. 118, 119. Such documents and communications are obviously relevant to this case. But during the parties' March 9 meet-and-confer, NSJP's counsel stated that he did not receive any documents from NSJP until March 5. Thus, counsel could not possibly have reviewed *any* documents prior to his March 3 representation that these clearly relevant, responsive documents do not exist.

NSJP's document-collection efforts thus appear deliberately inadequate and unreasonable. Again, counsel have been sanctioned for similar conduct. *See, e.g.*, *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 335 (D. Ariz. 2022) ("[S]anctions are available under Rule 37(c)(1)—for violating Rule 26(e)—when a party provides incomplete, misleading, or false discovery responses and does not complete or correct them by supplement."). "Rule 34 requires the producing party to conduct a reasonable search for responsive relevant documents." *Albert v. Lab'y Corp. of Am.*, 536 F. Supp. 3d 798, 801 (W.D. Wash. 2020) (citing Stephen S. Gensler, *A Bull's-Eye View of Cooperation*

8

*in Discovery*, 10 SEDONA CONF. J. 363 (2009)). "This search can be accomplished several ways but typically involves a first step of asking witnesses to gather documents both paper and stored electronically that is reasonably accessible and second by identifying data sources that may contain relevant information and running search terms in those data sources." *Id.*; *see also, e.g.*, *Action Star Enter. v. Kaijet Tech. Int'l*, 2014 WL 12589632, at *6 (C.D. Cal. July 7, 2014) ("Parties have a discovery obligation to conduct a reasonable search for responsive documents from all custodians from whom the parties have a legal right to obtain documents."). NSJP deliberately declined to take such steps, falling well below the "minimum" standard of "distribut[ing] discovery requests to all employees and agents of the party potentially possessing responsive information." *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 190 (C.D. Cal. 2006) (cleaned up). Indeed, NSJP's failure to attempt to collect documents from personal devices despite knowing such devices were used on NSJP's behalf during the alleged antisemitic encampment suggests a lack of good faith. *See, e.g.*, *Miramontes v. Peraton, Inc.*, 2023 WL 3855603, at *6 (N.D. Tex. June 6) (finding "bad faith" where "Peraton did not instruct its employees to preserve text messages" even though "Peraton employees regularly used their personal cell phones for business purposes").

NSJP's inadequate document-collection process is all the more concerning considering that Plaintiffs repeatedly have advised NSJP of its obligations to collect these documents, and at this point Plaintiffs are concerned that NSJP's inadequate efforts may inhibit Plaintiffs' ability to identify members of the alleged antisemitic conspiracy, and, if necessary, add them as additional defendants, within the two-year limitations period for Plaintiffs' claims.

Plaintiffs thus request that the Court (1) order NSJP to identify subchapters and members who were involved in the alleged antisemitic conspiracy and may possess information relevant to Plaintiffs' claims, including those who may no longer be members of NSJP; (2) order NSJP to make a good-faith effort to collect documents and communications responsive to Plaintiffs' discovery requests from these individuals, including documents and communications stored on personal devices; and (3) issue whatever other relief the Court deems proper.

**NSJP's Position**

NSJP has undertaken, and will continue to undertake, a reasonable, good-faith search for responsive documents that is proportional to the needs of this case and consistent with NSJP's limited structure and resources. NSJP has collected and is reviewing materials from national-level custodians with knowledge of the UCLA encampment and from other individuals reasonably

9

believed to have relevant information, and it is prepared to supplement its production consistent with Rule 26(e) as that review proceeds. Plaintiffs, by contrast, insist that NSJP must immediately identify and collect from hundreds of campus-level "subchapters" and individual students nationwide—including on their personal devices—even though NSJP does not own those devices, does not issue corporate hardware, and does not exercise day-to-day control over those independent student organizations. Sedona and Rule 34 make clear that a responding party's search obligations are tied to sources within its possession, custody, or control, and that discovery from personal devices of non-employees and volunteers must be carefully limited in scope and burden.

Plaintiffs' reliance on sanctions cases involving large corporate litigants with centralized control over employees and systems—such as Qualcomm and Optronic—only underscores the mismatch: NSJP is not a multinational corporation with enterprise archives but a volunteer student network whose potential custodians are largely non-party students communicating on their own phonesComparing NSJP to Peraton, a company with 18,000 employees and $8 billion a year in business, beggars the imagination. (https://tbri.com/blog/peraton-revenue-on-track-for-8b-despite-shaky-start-to-2024/, last visited April 6, 2026.) NSJP will correct or supplement any discovery response as additional documents are identified; there is no basis to infer bad faith, particularly at this early stage. NSJP is willing to work with Plaintiffs and the Court on a staged, targeted discovery plan focused first on a small number of UCLA-related custodians and a reasonable time period, with any further expansion contingent on a concrete showing that narrower discovery is insufficient, rather than the nationwide collection from thousands of non-party students that Plaintiffs now demand.

Finally, . NSJP's initial statement that it had no documents "referring to Jews, Judaism, or any Jewish practices or beliefs" was based on the information available at that time and, consistent with Rule 26(e) and Fast v. GoDaddy.com LLC, 340 F.R.D. 326 (D. Ariz. 2022). Plaintiffs' mischaracterization of the document acquisition and review is at the least disappointing.. Because of the exigencies of representing a student organization that is without any staff support, NSJP's counsel never had any documents until March 13, 2026, and had previously relied entirely on descriptions of the documents by the student volunteers. What Plaintiff's recitation neglects to mention is that:

1. The representation from a student volunteer was relayed to Plaintiffs on March 9, 2026 and was corrected the very next time we spoke on March 30, 2026;

2. That the students had not even sent me documents until March 13; and

3.  That I had related to Plaintiff's counsel that the mention of Jewish persons would disappoint Plaintiffs given their expectations because the mentions appeared in entirely non-pejorative essays on racial justice and on Zionism,, and were purely descriptive.

**Issue 3**: Whether NSJP's objections are impermissible boilerplate and should be deemed waived.

### Plaintiffs' Position

Plaintiffs served NSJP discovery requests on December 5, 2025, and December 22, 2025. NSJP failed to timely respond. Even though "'[i]t is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection'" *Pashaie v. H77LA, LLC*, 2024 WL 4800698, at *4 (C.D. Cal. Sept. 9, 2024) (Richlin, M.J.), Plaintiffs offered in writing not to move to deem NSJP's objections waived on the condition that NSJP provide complete, non-boilerplate responses to Plaintiffs' requests. Specifically, Plaintiffs explained that "'**boilerplate objections' … do not constitute responses to discovery as required by the rules, and, should NSJP serve only such responses, Plaintiffs will move forward with the L.R. 37-2 process to deem NSJP's objections waived and compel answers and production**." App. 86 (emphasis in original). NSJP then agreed to a modified discovery schedule under which NSJP would provide its responses and objections on March 2, 2026. *See* Exh. E. Yet, on March 3, NSJP served responses to Plaintiffs' first set of RFPs and interrogatories that are nothing but boilerplate, simply lodging general objections and incorporating each general objection into RFP and interrogatory responses without tailoring the objections to the specific requests and interrogatories. NSJP did not respond at all to Plaintiffs' second set of RFPs, served December 22. *See* Exh. I, J.

Beyond violating Rules 33 and 34, NSJP's "[e]xclusive reliance on such boilerplate objections waives any legitimate objection that could have been raised." *Cengage Learning, Inc. v. Davis Textbooks*, 2016 WL 8730880, at *2 (E.D. Cal. Sept. 16, 2016); *see also, e.g.*, *Leprino Foods Co. v. Avani Outpatient Surgical Ctr., Inc.*, 2024 WL 650434, at *5 (C.D. Cal. Jan. 4, 2024) (granting plaintiff's motion to compel "full and complete written responses without any objection" to plaintiff's RFPs because defendant waived all objections by failing to timely respond thereto).

Plaintiffs thus request that the Court (1) deem NSJP's objections to Plaintiffs' first and second sets of RFPs and first set of interrogatories waived; (2) order NSJP to provide complete responses to each RFP and interrogatory without any objection; (3) order NSJP to produce documents responsive to Plaintiffs' requests; and (4) issue whatever other relief the Court deems proper.

12

**NSJP's Position**

If everyone is the same height and the same weight, one-size-fits-all clothing makes sense.  NSJP acknowledges that its responses were served later than the default Rule 33 and 34 deadlines, but the delay occurred against the background of a court-ordered stay of discovery, NSJP's resource constraints, and ongoing meet-and-confer efforts, and Plaintiffs expressly offered to forgo waiver arguments if NSJP served responses by an agreed extended date. NSJP did so, serving written responses and objections consistent with that modified schedule; while Plaintiffs mischaracterize those responses as "nothing but boilerplate," many of NSJP's objections—including proportionality, overbreadth, undue burden, and First Amendment concerns—go to the heart of the issues outlined above and cannot be deemed forfeited without unfair prejudice to NSJP's ability to protect sensitive associational information. Where there are recurring defects that are repeated throughout a set of discovery, otherwise meritorious objections will not be waived. Jacobs v. J. Publ'g Co., No. 21-690 MV/SCY, 2024 U.S. Dist. LEXIS 176233, at *5 (D.N.M. Sep. 27, 2024)  Courts in this Circuit routinely decline to impose blanket waiver where, as here, there is no evidence of bad faith, the responding party has served objections and is willing to confer and supplement, and sweeping waiver would result in disproportionate and intrusive discovery.

To the extent the Court finds any of NSJP's objections insufficiently specific, NSJP is prepared to promptly amend and clarify them so that each objection is tailored to the particular request, consistent with Local Rule 37-1 and Judge Richlin's emphasis on cooperative refinement of discovery disputes. But deeming all objections—including those grounded in proportionality, relevance, and First Amendment associational privilege—waived would effectively grant Plaintiffs' motion to compel all discovery without regard to Rule 26(b)(1) and the constitutional interests at stake. Out of an abundance of caution,  NSJP respectfully requests that the Court permit it to refine its objections where appropriate,  and then address any remaining disputes on a request-by-request basis, rather than impose the extraordinary sanction of wholesale waiver that Plaintiffs seek.

13

**Issue 4:** Whether the First Amendment or any right to privacy protects responsive documents from disclosure.

### Plaintiffs' Position

Neither the First Amendment nor any alleged right to privacy protects responsive documents in this case from disclosure. At the outset, Plaintiffs request that the Court deem NSJP's First Amendment and privacy objections waived for the reasons addressed above. This remedy is particularly appropriate considering that the parties have previously addressed these privilege issues at length during numerous meet-and-confers, yet NSJP continues to rely on conclusory boilerplate rather than attempt to substantiate its objections.

Regardless, while NSJP's responses and objections provide string-cites of several cases addressing the standard that courts apply to disclosure of documents that implicate First Amendment associational privilege, *see* App. 110, NSJP never attempts to satisfy that standard. The First Amendment protects "[t]he freedom to associate with others for the common advancement of political beliefs and ideas," *Perry v. Schwarzenegger*, 591 F.3d 1147, 1152 (9th Cir. 2010), but that right "is not, however, absolute," *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984). To establish First Amendment associational privilege, NSJP must first make a *prima facie* showing of arguable infringement based on "'objective and articulable facts.'" *Dole v. Loc. Union 375, Plumbers Int'l Union of Am., AFL-CIO*, 921 F.2d 969, 972 (9th Cir. 1990). It failed to do so. Over a month ago, NSJP provided declarations from several individuals attesting to the harms of being labeled "antisemitic," *see* Dkt.107-1–107-3, but nowhere has NSJP attempted to establish a *prima facie* case of First Amendment chill by providing even one attestation regarding "the impact compelled disclosure would have" on its members' associational rights. *Perry*, 591 F.3d at 1163. NSJP instead has provided only "broad, theoretical arguments by its counsel" about potential chill its members might face, which are insufficient to meet its initial burden. *Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 84 (D. Ariz. 2022). Even if NSJP had satisfied its initial burden, Plaintiffs' requests are "rationally related" to the "compelling" interest of vindicating the victims of the alleged antisemitic conspiracy, *Perry*, 591 F.3d at 1160—another portion of the standard NSJP ignores. Nor does NSJP once acknowledge the robust protective order entered in this case (Dkt.123), which "mitigate[s] the harm" associated with any potential "chilling effect" even as applied to speakers who may otherwise wish to remain anonymous. *Sines v. Kessler*, 2018 WL 3730434, at *15 (N.D. Cal. Aug. 6, 2018).

As to NSJP's privacy arguments, NSJP's assertion of a "constitutionally recognized right of privacy" (App. 111) cannot be squared with the Supreme Court's

14

repeated rejection of any "general right to privacy" under the Constitution. *Katz v. United States*, 389 U.S. 347, 350–51 (1967). Further, NSJP bases its objections on the rights of third parties, but it lacks standing to object to discovery on the basis of a third party's alleged interests. *See, e.g.*, *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ("[A] party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."); *Carijano v. Occidental Petroleum Corp.*, 2019 WL 6896921, at *3 (C.D. Cal. June 20, 2019) ("Applying this rule, courts have found that a defendant lacks standing to raise objections to unsealing based on purported injury to the opposing party or a third party."); *Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 694 (S.D. Fla. 2011) (holding that party "lack[ed] standing to object to discovery because of the privacy rights of non-part[ies]"). And even if NSJP had standing to lodge such an objection, "third-party privacy rights" do not constitute a "federally recognized privilege." *Hill v. Eddie Bauer*, 242 F.R.D. 556, 562 (C.D. Cal. 2007).

Thus, if the Court does not deem NSJP's First Amendment and privacy objections waived, Plaintiffs request that the Court (1) hold that neither a First Amendment nor privacy privilege prevents disclosure of relevant responsive documents and information in this case; (2) order NSJP to provide complete responses to each RFP and interrogatory without invoking such privileges; (3) order NSJP to produce documents responsive to Plaintiffs' requests without invoking such privileges; and (4) issue whatever other relief the Court deems proper.

**NSJP's Position**

Plaintiffs misapprehend Defendant' NSJP's position and its actions. If  a nonprivileged document is, in its entirety, relevant to a party's claims or defenses it will be produced. In keeping with the principles of "exacting scrutiny" as enunciated by both the Supreme court and the Ninth Circuit, once this very high bar is met the discovery must still be narrowly tailored to avoid or at least minimize that discovery's chilling effect.  No on E v. Chiu, 85 F.4th 493, 504 (9th Cir. 2023).

NSJP also will produce a privilege log so there will be transparency about anything that is held back.  If UCLA is mentioned two or three times in a 160-page logbook that is a running account of student organizing efforts, the parts having to do with UCLA will of course be produced – but compelled production of the remainder, without a reason

15

so compelling that it surpasses "exacting scrutiny" would not meet the "narrowly tailored" test, and should not be subject to compelled production. Defendant will describe the subject matter with sufficient specificity to allow for either reasonable discussion or judicial determination of whether exacting scrutiny justifies compelling such production. Finally, Defendant believes that unless a person's name is linked directly to UCLA's events, there are no grounds to compel its disclosure.