William J. Brown, Jr. (SBN 192950)
bill@brownwegner.com
Kyle J. Berry (SBN 355393)
kberry@brownwegner.com
BROWN WEGNER LLP
2010 Main Street, Suite 1260
Irvine, California 92614
Telephone: (949) 705-0080

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Matthew Weinberg, et al., | **Case No. 2:25-cv-03714-MCS-AJR** |
| *Plaintiffs,* | **PLAINTIFFS' MOTION TO COMPEL PRODUCTION FROM DEFENDANT PEOPLE'S CITY COUNCIL RE: TEN DOCU-MENTS** |
| v. | |
| National Students for Justice in Palestine, et al., | DISCOVERY MATTER |
| *Defendants.* | On Submission |
| | Magistrate Judge: Hon. A. Joel Richlin |

**PLAINTIFFS' MOTION TO COMPEL**

[Additional Counsel Cont. from previous page]

Thomas R. McCarthy (VA Bar No. 47154)*
Thomas A. Wilson (DC Bar No. 90019385)*
Julius Kairey (VA Bar No. 101216)*
Zachary P. Grouev (FL Bar No. 1038629)*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
Telephone: (703) 243-9423
tom@consovoymccarthy.com
twilson@consovoymccarthy.com
julius@consovoymccarthy.com
zach@consovoymccarthy.com

Patrick Strawbridge (MA Bar No. 678274)*
CONSOVOY MCCARTHY PLLC
8th Floor South PMB #706
Boston, MA 02109
Telephone: (617) 227-0548
patrick@consovoymccarthy.com

Richard A. Rosen (NY Bar No. 1663830)*
Omer Wiczyk (NY Bar No. 4321600)*
THE LOUIS D. BRANDEIS CENTER
FOR HUMAN RIGHTS UNDER LAW
1330 6th Avenue, 23rd Floor
New York, NY 10019
Telephone: (917) 363-9004
rrosen@brandeiscenter.com
owiczyk@brandeiscenter.com

* Admitted pro hac vice

*Attorneys for Plaintiffs*

PLAINTIFFS' MOTION TO COMPEL                    ii

## MOTION TO COMPEL PRODUCTION FROM PEOPLE'S CITY COUNCIL RE: TEN DOCUMENTS

TO THE HONORABLE COURT, DEFENDANTS, AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Plaintiffs Matthew Weinberg, Nir Hoftman, Eli Tsives, and Dovid Gurevich (Plaintiffs) will and hereby do move this Court to compel Defendant People's City Council (PCC), notwithstanding its objections, to produce ten documents, five of which have been selected be each party in accordance with the Court's Order. *See* Dkt.156. The five documents selected by PCC are: PCC854, 1182-83, and 1370-73 (produced with redactions), and PRIVILEGE LOG #230 and #238 (withheld). The five documents selected by Plaintiffs are: PCC851-53, 1310, 1426, 1450-52, and 1482-1504 (produced with redactions). These documents will be supplied to the Court for *in camera* review.

DATED: May 22, 2026          BROWN WEGNER LLP
                             CONSOVOY MCCARTHY PLLC
                             THE LOUIS D. BRANDEIS CENTER
                             FOR HUMAN RIGHTS UNDER LAW

                             By: /s/ Thomas R. McCarthy*
                             Thomas R. McCarthy*
                             Patrick Strawbridge*
                             Thomas A. Wilson*
                             Zachary P. Grouev*
                             Julius Kairey*
                             Richard A. Rosen*
                             Omer Wiczyk*

                             Attorneys for Plaintiffs

**PLAINTIFFS' MOTION TO COMPEL**          1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Plaintiffs file this Motion pursuant to the Court's Minute Order of May 11, 2026. *See* Dkt.156. At issue is whether People's City Council (PCC) must produce ten documents that are responsive to Plaintiffs' document requests, which PCC has either withheld or produced with redactions. PCC objects to production on First Amendment and right-to-privacy grounds. *See, e.g.*, App.372-35. For the reasons that follow, PCC's objections fail.

## I.    BACKGROUND

Plaintiffs allege that they were injured by an antisemitic conspiracy by Defendants, who established and maintained an encampment on UCLA's campus. *See generally* Dkt.54 (Am. Compl.). That conspiracy "was driven by racial and ethnic animus against Jews, who are a protected class under the civil rights laws, and was aimed at interfering with Plaintiffs' rights, as members of the Jewish community, to safely traverse campus and take advantage of UCLA's public facilities free from race-based violence and area denial." Am. Compl. ¶156; *see* 42 U.S.C. §1985(3).

PCC moved to dismiss Plaintiffs' amended complaint on October 27, 2025. *See* Dkt.69. Plaintiffs served their Requests for Production of Documents on PCC on December 5. On January 20, 2026, the Court denied PCC's motion to dismiss. *See* Dkt.113. On April 24, PCC served its Second Supplemental Responses to Plaintiffs' Requests for Production. Plaintiffs served a deficiency letter on PCC on May 6, after which the parties met and conferred, but were unable to resolve many of their disputes. Of note, PCC maintained its First Amendment objection to the production of many responsive documents, as shown in PCC's 189-page privilege log.

The Court conducted an informal discovery conference with the parties on May 11. *See* Dkt.156. The Court ordered each party to identify five documents on which Plaintiffs would move to compel. *See id.* This would

PLAINTIFFS' MOTION TO COMPEL          1

"allow the Court to provide a ruling on [the First Amendment] issues informed by context." *Id.* Plaintiffs now move to compel the production of the five documents identified by PCC, as well as five additional documents identified by Plaintiffs.

The documents identified by PCC are:

- PCC854: Twitter direct messages, which were produced with redactions. App.116-17.
- PCC1182-83: Twitter direct messages, which were produced with redactions. App.160-61.
- PCC1370-73: Twitter direct messages, which were produced with redactions. App.226-27.
- PRIVILEGE LOG #230 & #238: Twitter and Instagram direct messages, which were withheld. App.265-66, 271.

The documents identified by Plaintiffs are:

- PCC851-53: Twitter direct messages, which were produced with redactions. App.116.
- PCC1310: Twitter direct messages, which were produced with redactions. App.208-209.
- PCC1426: Twitter direct messages, which were produced with redactions. App.283.
- PCC1450-52 & PCC1482-1504: Emails, which were produced with redactions as to the identity of the third party who communicated with PCC. App.295-96, 298-99.

## II.    LEGAL STANDARD

While the First Amendment protects "[t]he freedom to associate with others for the common advancement of political beliefs and ideas," *Perry v. Schwarzenegger*, 591 F.3d 1147, 1152 (9th Cir. 2010), the Supreme Court has made clear that this right "is not … absolute," *Roberts v. U.S. Jaycees*,

**PLAINTIFFS' MOTION TO COMPEL**          2

468 U.S. 609, 623 (1984). "In this circuit, a claim of First Amendment privilege is subject to a two-part framework." *Perry*, 591 F.3d at 1140. First, "[t]he party asserting the privilege must demonstrate a prima facie showing of arguable first amendment infringement." *Id.* (cleaned up). That requires "the presentation of 'objective and articulable facts, which go beyond broad allegations or subjective fears.'" *Dole v. Loc. Union 375, Plumbers Int'l Union of Am., AFL-CIO*, 921 F.2d 969, 972 (9th Cir. 1990). If the objecting party carries its initial burden, then the evidentiary burden shifts to the requesting party to "demonstrate that the information sought through the discovery is rationally related to a compelling governmental interest and the least restrictive means of obtaining the desired information." *Perry*, 591 F.3d at 1140.

## III.   ARGUMENT

PCC argues that the First Amendment and right to privacy allow it to withhold a large number of documents that are responsive to Plaintiffs RFPs and heavily redact many produced documents. But PCC has failed to make a *prima facie* case of infringement. Nor has PCC addressed the protection afforded it under the protective order. Finally, Plaintiffs' need for the documents sought outweighs any First Amendment interest PCC has in withholding or redacting the documents. The Court should thus overrule PCC's objections and compel PCC to produce the documents it has withheld, and to remove redactions from the remaining documents it has produced.

### A. PCC Has Failed to Establish a *Prima Facie* Case of Infringement

PCC's First Amendment objection fails at the outset. While PCC insists that it "can easily establish a prima facie case of infringement," App.373, it conspicuously declines to provide even one attestation

**PLAINTIFFS' MOTION TO COMPEL**      3

regarding "the impact compelled disclosure would have" on members' First Amendment rights, *Perry*, 591 F.3d at 1163, based on "'objective and articulable facts,'" *Dole*, 921 F.2d at 972. Instead, PCC offers "broad, theoretical arguments by its counsel" about the potential chill its members might face. *Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 84 (D. Ariz. 2022). But such "conclusory statements, alone, do not establish a prima facie showing of First Amendment infringement." *Id.* (collecting cases); *see also Dole*, 921 F.2d at 974 ("Evidence arguing, rather than factually documenting, an alleged chill of associational freedom does not warrant quashing" subpoenas.).

PCC's conclusory assertions that it "can easily establish a prima facie case of infringement" are all the more galling when considering that the Court has approved the parties' stipulated protective order, which provides robust protections from public disclosure. Remarkably, nowhere in PCC's responses to Plaintiffs' RFPs does PCC address, much less engage with, the substantial impact that the stipulated protective order (which has been entered for months) has on its First Amendment arguments. *Accord, e.g., Sines v. Kessler*, 2018 WL 3730434, at *15 (acknowledging that a protective order "mitigate[s] th[e] harm" associated with a potential "chilling effect"). Any third-party privacy concerns can be addressed through designation of items as Confidential or Highly Confidential—Attorneys' Eyes Only. *See* Dkt.123 at 7 (Section 5.2). PCC cannot explain how producing the requested documents, with assurances that they will not be disclosed publicly, would somehow affect its membership or associations with others.

## B. Plaintiffs Have a Compelling Need for the Information Sought

But even if PCC could meet its initial burden, the discovery Plaintiffs seek is "rationally related" to a "compelling" interest—namely, prosecuting a conspiracy to deprive a racial and religious minority of federal civil

PLAINTIFFS' MOTION TO COMPEL        4

rights—and PCC is the only party that possesses the information that Plaintiffs have demanded. *Perry*, 591 F.3d at 1160 (cleaned up). The "importance of the litigation" is self-evident. *Id.* at 1161; *see also, e.g., Dole*, 950 F.2d at 1461 ("Here, there is little doubt that the Department's purpose of investigating possible criminal violations of the LMRDA serves a compelling governmental interest."). The antisemitic conspiracy alleged here caused each Plaintiff to suffer injury simply because he is Jewish, and was part of an "epidemic of hate, violence, and harassment targeting Jewish students" after Hamas' terrorist attacks in Israel. *See* Am. Compl. ¶¶79-81, 131-48. This "organized violence" was carried out by numerous individuals and organizations, in order to deprive Plaintiffs of federally protected rights, and to hinder efforts by law enforcement to protect those rights. *Id.* ¶163. The requested documents are critical to understanding who else was responsible for this unlawful conduct.

Same for the "centrality of the information sought to the issues in the case," *Perry*, 591 F.3d at 1161, as each of Plaintiffs' requests is tailored to identify the scope, core objectives, and means of effectuating the antisemitic conspiracy at issue and the individuals or entities involved, *accord, e.g., Sines*, 2018 WL 3730434, at *14. The Court has "encouraged Plaintiffs to … proceed with Rule 45 subpoenas" against individuals with relevant information. Dkt.156. But in order to do so, Plaintiffs need to know the identity of the individuals with whom PCC has communicated. While PCC has redacted names of individuals who communicated electronically with PCC, those same individuals may have had other communications with PCC that are relevant to this litigation. Whatever burden that compliance with Plaintiffs' requests might place on PCC and its membership's First Amendment rights is thus plainly justified to avoid the "derogation of the search

**PLAINTIFFS' MOTION TO COMPEL** 5

for truth" that "expansively construed" privileges would work on civil discovery. *United States v. Nixon*, 418 U.S. 683, 710 (1974).

Moreover, PCC severely overreads the cases on which it relies. Start with *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958). There, the NAACP had "produced substantially all the data called for" by the State of Alabama, so the First Amendment inquiry narrowly turned on the State's demand for a complete list of the NAACP's rank-and-file members. *Id.* at 454; *accord, e.g., Wilkinson v. F.B.I.*, 111 F.R.D. 432, 437 (C.D. Cal. 1986) ("The only information that the group [in Alabama] withheld was the list containing the names of its rank-and-file members. And it was to this information only that the Court applied the First Amendment associational privilege."). But Plaintiffs have not made a remotely analogous request here. Rather, each of Plaintiffs' requests focuses on documents and communications related to the UCLA encampment, which goes to proving the alleged antisemitic conspiracy—that the information sought implicates individuals' speech poses no barrier to production. *Accord, e.g., Sines*, 2018 WL 3730434, at *14; *cf. United States v. Stromberg*, 22 F.R.D. 513, 521 (S.D.N.Y. 1957) ("The First Amendment does not protect a conspiracy from punishment because speech is used to effect the crime.").

Nor is the Ninth Circuit's *Perry* decision the panacea that PCC suggests by (again) invoking the decision in virtually all of its responses. The *Perry* court deliberately limited its holding "to private, internal campaign communications concerning the formulation of campaign strategy and messages." 591 F.3d at 1165 n.12 (emphasis removed). So nothing in *Perry* supports PCC's constant refrain that it need not disclose members' communications with third parties. *See, e.g., Mi Familia Vota v. Fontes*, 344 F.R.D. 496, 513 (D. Ariz. 2023) ("[C]ourts have held that a political party or other

organization may not invoke the First Amendment privilege to thwart discovery of its external communications with government officials or other third parties"). And in all events, as noted above, Plaintiffs' requests rationally relate to a compelling interest—particularly given that internal communications may demonstrate Defendants' purposes and designs, which are directly relevant to the elements of Plaintiffs' claims—and thus warrant disclosure under *Perry* and its progeny.

PCC's repeated citation of *Art of Living Found. v. Does 1-10*, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9), also misses the mark. While the *Art of Living* court concluded that the objecting party did not need to reveal the identity of an anonymous speaker, its First Amendment calculus bears no resemblance to this case. There, the objecting defendants were bloggers who "provide[d] a forum for criticism of Plaintiff" and others, and the plaintiff sued alleging claims of defamation, misappropriation of trade secrets, copyright infringement, and trade libel. *Id.* at *1. But here, the anonymous speakers were involved in or uttered communications directly related to an alleged conspiracy to deprive Jews of their civil rights. *E.g.*, PCC851 (communication between PCC's official Twitter/X account and an anonymous UCLA student admitting that members of the encampment were "putting [their] bodies on the line barricading zionists from invading the space" as early as April 25, 2024); PCC1310 (communication between PCC's official Twitter/X account and an anonymous individual at the time of the launch of the encampment); PCC1482-1504 (email to PCC with photographs showing, among other things, arrests at the encampment). The anonymity concerns in this case are thus on all fours with those in *Sines*, where the court compelled disclosure of an anonymous speaker's identity because "uncovering potential witnesses and participants" in the alleged conspiracy—also

**PLAINTIFFS' MOTION TO COMPEL**        7

arising under §1985(3) and targeting Jews, among others—amounts to "an integral part of Plaintiffs' case, particularly because Plaintiffs have reason to believe [the anonymous speaker] is a coconspirator." 2018 WL 3730434, at *14.

At bottom, Plaintiffs' RFPs seek information about people, communications, and documents that are directly connected to PCC's alleged involvement in planning and executing an antisemitic conspiracy. And, as the Court has made clear, "[c]onspiring to deprive Jews of their Thirteenth Amendment rights is not a protected activity under the First Amendment." Dkt.113 at 22. Discovery has now been ongoing for several months, and Plaintiffs require this information to prove their case.

### C. PCC's Privacy Objections Fail

PCC's state-law privacy objection fares no better. PCC objects that Plaintiffs' RFPs seek information "protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States." App.375.

This objection fundamentally misunderstands the law of privilege in federal court. Federal Rule of Evidence 501 provides that "[t]he common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless [the United States Constitution; a federal statute; or rules prescribed by the Supreme Court] provid[e] otherwise." Fed. R. Evid. 501; *Burrows v. Redbud Cmty. Hosp. Dist.*, 187 F.R.D. 606, 610 (N.D. Cal. 1998) (explaining that the Federal Rules "dictate that privileges asserted in federal question cases shall be governed by federal law"). There is only one exception: claims or defenses "for which state law supplies the rule of decision." Fed. R. Evid. 501. In short, if federal law "governs the parties' dispute," then "the law of California, the forum state,

does not inform federal privilege law." *Chatman v. Felker*, 2009 WL 173515, at *9 (E.D. Cal. Jan. 23), *report and recommendation adopted*, 2009 WL 1110590 (E.D. Cal. Apr. 24); *see also Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.10 (9th Cir. 1992).

Plaintiffs' claims against PCC arise under 42 U.S.C. §1985. That federal civil rights statute, not the California Constitution (or any other California law) supplies the rule of decision in this case. Thus, PCC's "right to privacy" under the California Constitution does not create an evidentiary privilege applicable in federal court. To the extent PCC argues that federal courts should adopt a privilege based on the California Constitution as a matter of comity, that approach is foreclosed by Supreme Court precedent requiring courts to look beyond the forum state when determining whether to recognize a new common law privilege. *See Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164, 1170 (C.D. Cal. 1998).

PCC's assertion of a federal privacy privilege is likewise without merit. The federal Constitution does not protect a "general right to privacy." *Katz v. United States*, 389 U.S. 347, 350 (1967). Rather, "the protection of a person's ... right to be let alone by other people—is, like the protection of his property and of his very life, left largely to the law of the individual States." *Id.* at 350-51 (footnotes omitted); *cf. Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 235 (2022) (explaining, while overruling *Roe v. Wade*, that one aspect of that decision's "remarkably loose ... treatment of the constitutional text" was to recognize "a right to privacy" not mentioned in the Constitution). PCC's assertion of a federal "right to privacy" enforceable as a litigation privilege is irreconcilable with the Supreme Court's repeated rejection of any "general right to privacy." *Katz*, 389 U.S. at 350-51.

**PLAINTIFFS' MOTION TO COMPEL**          9

In addition to these substantive defects, PCC may not invoke the "privacy" rights of third parties as a basis for objecting to discovery requests. "[A] party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). "Applying this rule, courts have found that a defendant lacks standing to raise objections to unsealing based on purported injury to the opposing party or a third party." *Carijano v. Occidental Petroleum Corp.*, 2019 WL 6896921, at *3 (C.D. Cal. June 20); *accord, e.g., Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 694 (S.D. Fla. 2011) (holding that party "lack[ed] standing to object to discovery because of the privacy rights of nonpart[ies]").

Thus, PCC lacks standing to object to discovery simply because it believes third parties may have privacy concerns regarding its discovery responses. Moreover, even if PCC had standing to assert the supposed privacy rights of these third parties, "third-party privacy rights" do not constitute a "federally recognized privilege," *Hill v. Eddie Bauer*, 242 F.R.D. 556, 562 (C.D. Cal. 2007), so any objection as to such a privilege cannot supply a basis for withholding responses here. *Accord, e.g., Garraway v. Ciufo*, 2020 WL 1263562, at *8 (E.D. Cal. Mar. 16) (holding that "objections based on privacy rights of third parties are not justified" because "there is no generic 'privacy' objection" to discovery requests); *Fontes*, 344 F.R.D. at 513 (explaining that many "courts have held that a[n] … organization may not invoke the First Amendment privilege to thwart discovery of its external communications with government officials or other third parties").

## IV.    CONCLUSION

The Court should overrule PCC's objections, and order PCC to produce all ten documents without redactions.

DATED: May 22, 2026              BROWN WEGNER LLP
                                 CONSOVOY MCCARTHY PLLC
                                 THE LOUIS D. BRANDEIS CENTER
                                 FOR HUMAN RIGHTS UNDER LAW


                                 By: /s/ Thomas R. McCarthy*
                                 Thomas R. McCarthy*
                                 Patrick Strawbridge*
                                 Thomas A. Wilson*
                                 Zachary P. Grouev*
                                 Julius Kairey*
                                 Richard A. Rosen*
                                 Omer Wiczyk*

                                 Attorneys for Plaintiffs

**PLAINTIFFS' MOTION TO COMPEL**              11

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs certifies that the foregoing is not more than 10 pages, which complies with the Court's page limit for discovery motions.

Dated: May 22, 2026                                    /s/ Thomas R. McCarthy
                                                        Thomas R. McCarthy

## CERTIFICATE OF SERVICE

The undersigned counsel of record for Plaintiffs certifies that a true and correct copy of the foregoing was electronically filed and served upon all counsel of record who have appeared in the case and are registered with the CM/ECF. Parties may access this filing through the Court's CM/ECF System.

Dated: May 22, 2026                                       /s/ Thomas R. McCarthy
                                                          Thomas R. McCarthy

**PLAINTIFFS' MOTION TO COMPEL**        13