William J. Brown, Jr. (SBN 192950)
bill@brownwegner.com
Kyle J. Berry (SBN 355393)
kberry@brownwegner.com
BROWN WEGNER LLP
2010 Main Street, Suite 1260
Irvine, California 92614
Telephone: (949) 705-0080

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Matthew Weinberg, et al., | **Case No. 2:25-cv-03714-MCS-AJR** |
| Plaintiff, | |
| v. | **APPENDIX TO PLAINTIFFS' MOTION TO COMPEL** |
| National Students for Justice in Palestine, et al., | |
| Defendants. | **Before the Hon. A. Joel Richlin** |

[Additional Counsel Cont. from previous page]
Thomas R. McCarthy (VA Bar No. 47154)*
Thomas A. Wilson (DC Bar No. 90019385)*
Zachary P. Grouev (FL Bar No. 10386291)*
Julius Kairey (VA Bar No. 101216)*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
twilson@consovoymccarthy.com
zach@consovoymccarthy.com
julius@consovoymccarthy.com

Patrick Strawbridge (MA Bar No. 678274)*
CONSOVOY MCCARTHY PLLC
8th Floor South PMB #706
Boston, MA 02109
(617) 227-0548
patrick@consovoymccarthy.com

Richard A. Rosen (NY Bar No. 1663830)*
Omer Wiczyk (NY Bar No. 4321600)*
THE LOUIS D. BRANDEIS CENTER
FOR HUMAN RIGHTS UNDER LAW
1330 6th Avenue, 23rd Floor
New York, NY 10019
(917) 363-9004
rrosen@brandeiscenter.com
owiczyk@brandeiscenter.com

* Admitted pro hac vice

*Attorneys for Plaintiffs*

# APPENDIX

| Table of Exhibits | | | |
|---|---|---|---|
| **Exh.** | **Date** | **Description** | **App. Pages** |
| A | 1/30/26 | Plaintiffs' First Interrogatories to PCC | 1-21 |
| B | 12/5/25 | Plaintiffs' First Requests for Production of Documents to PCC | 22-53 |
| C | 4/24/26 | PCC's Second Supplemental Response and Objections to Plaintiffs' First Interrogatories | 54-113 |
| D | 4/24/26 | Amended Privilege Log re: PCC's Responses to Plaintiffs' Discovery Requests | 114-303 |
| E | 4/24/26 | PCC's Second Supplemental Responses and Objections to Plaintiffs' First Requests for Production of Documents | 304-466 |
| F | ***En Camera*** | Plaintiffs' Document #1: PCC851-853 | 467 |
| G | ***En Camera*** | Plaintiffs' Document #2: PCC1310 | 468 |
| H | ***En Camera*** | Plaintiffs' Document #3: PCC1426 | 469 |

3

| | | | |
|---|---|---|---|
| I | ***En Camera*** | Plaintiffs' Document #4: PCC1450-1452 | 470 |
| J | ***En Camera*** | Plaintiffs' Document #5: PCC1482-1504 | 471 |
| K | ***En Camera*** | PCC's Document #1: PCC854 | 472 |
| L | ***En Camera*** | PCC's Document #2: PCC1182-1183 | 473 |
| M | ***En Camera*** | PCC's Document #3: PCC1370-1373 | 474 |
| N | ***En Camera*** | PCC's Document #4: Withheld (PCC Priv. Log #230) | 475 |
| O | ***En Camera*** | PCC's Document #5: Withheld (PCC Priv. Log #238) | 476 |

DATED: May 22, 2026                 CONSOVOY MCCARTHY PLLC


/s/ Thomas R. McCarthy
Thomas R. McCarthy

*Attorney for Plaintiffs*

4

# Exhibit A

**IN THE DISTRICT COURT OF THE
CENTRAL DISTRICT OF CALIFORNIA**

MATTHEW WEINBERG, et al.,

        Plaintiff,

vs.

NATIONAL STUDENTS FOR
JUSTICE IN PALESTINE, et al.,

        Defendants.

Case No.: 2:25-cv-03714-MCS-JCx

## PLAINTIFFS' FIRST INTERROGATORIES TO DEFENDANT PEOPLE'S CITY COUNCIL

In accordance with Federal Rule of Civil Procedure 33, Section 8.b. of the Court's Standing Order (Dkt.28), and the Court's order of November 10, 2025 (Dkt.77), Plaintiffs request that Defendant People's City Council respond to the following Interrogatories within 30 days.

## INSTRUCTIONS

1.    These interrogatories are governed by Federal Rules of Civil Procedure, the Central District of California's Local Rules, and the Court's Standing Order.

2.    **Method of Response and Production:** Responses to these interrogatories shall be provided in writing and served upon counsel for

1

App. 2

Plaintiffs by email sent to twilson@consovoymccarthy.com, julius@consovoymccarthy.com, and owiczyk@brandeiscenter.com in emails not to exceed 20 MB each. To the extent the responses cannot be served via email, please contact the undersigned to make different arrangements.

3. **Information in Your Possession, Custody, or Control.** You shall provide all responsive information in your possession, custody, or control, including, without limitation, all information that is available to you, your agents, representatives, accountants, attorneys, professionals, fiduciaries, or any other source from which such information may reasonably be obtained.

4. **Information No Longer in Your Possession, Custody, or Control.** If you do not know and cannot reasonably obtain the answer to an interrogatory or any portion thereof, you shall: (1) respond to the extent possible; (2) state the reasons why you cannot respond to the remainder; (3) describe the efforts you made to secure the requested information; and (4) identify any person who may possess the requested information or the location where that information is found.

App. 3

5. **Objections.** If you object to part of an interrogatory, you shall state the objection and respond to the remainder of the interrogatory.

6. **Asserting Claim of Privilege.** If you object to an interrogatory on the ground that it seeks information you believe to be privileged, protected, or otherwise immune from discovery, you must furnish an index with the following information: (1) the nature of the privilege, immunity, or other ground claim; (2) the name and position of each author, preparer, sender, addressee, and recipient of the document; (3) the date of the document; (4) the type of document (e.g., memorandum, letter, report, or email); and (5) a general description of the subject matter of the document sufficient to enable the requesting party to assess the applicability of the claimed privilege, immunity, or other ground for the refusal to produce.

7. **Business Records.** To the extent you choose to produce business records in response under Fed. R. Civ. P. 33(d), the records should be produced in a manner consistent with Plaintiffs' instructions to its first set of requests for production.

3

App. 4

8.  **Lost, Destroyed, or Otherwise Disposed Of.** If responsive documents or information have been lost, destroyed, or otherwise disposed of, provide the following:

a.  A detailed description of the document and its contents, including, without limitation, the document's date of creation, originator, recipients, and subject;

b.  A description of the facts surrounding the loss, destruction, or other disposition, including, without limitation: (1) the date of loss, destruction, or other disposition; (2) the name, address, and telephone number of the person(s) who authorized, requested, or performed the destruction or other disposition; and (c) the name, address, and telephone number of any person who may be familiar with the document and who is capable of discussing the contents.

9.  **Period at issue.** Unless otherwise specifically stated, the period at issue covered by these interrogatories begins on January 1, 2023, and runs through the present day.

4

10.    **Supplementation.** These interrogatories are deemed to be continuing in nature, and you are required to supplement your responses hereto promptly if further information is obtained, either directly or indirectly, between the time of these answers and the time of trial.

11.    **Duplication.** If an act, event, transaction, occasion, instance, matter, course of conduct, course of action, person or writing is mentioned or referred to in response to more than one of these interrogatories, You need not provide a complete identification and description in every instance, provided You supply a complete identification in one such instance, and in each such instance make a specific reference to the place, paragraph and page number in the answers to these interrogatories where it, he or she is fully identified and described.

## DEFINITIONS

1.    **People's City Council, PCC, You, Your, and Yours.** The terms "People's City Council," "PCC," "You," "Your," and "yours," refer to Defendant People's City Council, its predecessors, successors, divisions, subsidiaries, and affiliates, and all present and former directors, officers, employees, agents, consultants, representatives, attorneys, and any other persons acting for or on behalf of any of these entities or

5

<span style="color:red">App. 6</span>

individuals. These terms include, but are not limited to, the entity with which Ricci Sergienko, Albert Corado, and Jason Reedy are or were affiliated.

2. **National Students for Justice in Palestine.** The terms "National Students for Justice in Palestine" and "NSJP" refer to the unincorporated association of the same name that is listed as a Defendant in this case, its predecessors, successors, divisions, chapters, sub-chapters, committees, steering committees, subsidiaries, and other affiliates, and all present and former directors, officers, employees, agents, consultants, representatives, attorneys, and any other persons acting for or on behalf of any of these entities or individuals. These terms include, but are not limited to, NSJP's UCLA Chapter, Students for Justice in Palestine, University of California—Los Angeles, Graduate Students for Justice in Palestine, University of California—Los Angeles, and SoCalSJP.

3. **American Muslims for Palestine.** The terms "American Muslims for Palestine" and "AMP" refer to AJP Educational Foundation, Inc., the 501(c)(3) nonprofit organization doing business under the name "American Muslims for Palestine" and that is listed as a Defendant in

App. 7

this case, its predecessors, successors, divisions, subsidiaries, and affiliates, and all present and former directors, officers, employees, agents, consultants, representatives, attorneys, and any other persons acting for or on behalf of any of these entities or individuals.

4.    **WESPAC.** The term "WESPAC" refers to WESPAC Foundation, Inc., the 501(c)(3) nonprofit organization that is listed as a Defendant in this case, its predecessors, successors, divisions, subsidiaries, and affiliates, and all present and former directors, officers, employees, agents, consultants, representatives, attorneys, and any other persons acting for or on behalf of any of these entities or individuals. This term includes, but is not limited to, the entity that served as NSJP's fiscal sponsor, including under a letter dated July 27, 2023. *See* Dkt.1 (Compl.) ¶35, *ANI v. WESPAC*, No. 7:25-cv-1320 (S.D.N.Y. Feb. 13, 2025).

5.    **National Faculty for Justice in Palestine:** The terms "National Faculty for Justice in Palestine" and "NFJP" refer to the unincorporated association of the same name that is listed as a Defendant in this case, its predecessors, successors, divisions, chapters, sub-chapters, committees, steering committees, subsidiaries, and other

affiliates, and all present and former directors, officers, employees, agents, consultants, representatives, attorneys, and any other persons acting for or on behalf of any of these entities or individuals.

6. **UC Divest Coalition.** The terms "UC Divest Coalition" and "UC Divest" refer to the unincorporated association of the same name that is listed as a Defendant in this case, its predecessors, successors, divisions, chapters, sub-chapters, committees, steering committees, subsidiaries, and other affiliates, and all subsidiaries, and affiliates, and all present and former directors, officers, employees, agents, consultants, representatives, attorneys, and any other persons acting for or on behalf of any of these entities or individuals. These terms include, but are not limited to, the entity of the same name of which NSJP National Steering Committee member Dylan Kupsh was a founding member.

7. **Unity of Fields.** The term "Unity of Fields" refers to the unincorporated association of the same name, which was formerly known as the United States branch of "Palestine Action" (a UK-based group that has been designated a terrorist organization by the British government), its predecessors, successors, divisions, chapters, sub-chapters, committees, steering committees, subsidiaries, and other affiliates, and

App. 9

all subsidiaries, and affiliates, and all present and former directors, officers, employees, agents, consultants, representatives, attorneys, and any other persons acting for or on behalf of any of these entities or individuals.

8. **Person.** The term "person" shall include individuals, partnerships, joint ventures, firms, associations, proprietorships, corporations, or other such entities, along with their subsidiaries and divisions, and the individual members, employees, and agents thereof.

9. **Officer.** The term "officer" shall include any person with a formal or informal position of authority, function, or title.

10. **Committee.** The term "committee" shall include any committee, subcommittee, board, panel, or similar group of persons, officers, employees, volunteers, agents, or representatives that is organized to perform an official or unofficial function.

11. **Steering Committee.** The term "steering committee" means any committee that exercises control over a portion of the operations of PCC or its subdivisions.

12. **The National Steering Committee.** The term "National Steering Committee" refers to the committee that exercises overall

9

control over NSJP and of which: (1) Dylan Kupsh is a former member; and (2) Sean Eren and Carrie Zaremba are (or were) members.

13. **The Popular University for Gaza.** The term "Popular University for Gaza" refers to the "coordinated pressure campaign" based on "establishing autonomous zones on … university campuses" that was officially launched by NSJP in a statement on April 20, 2024. *National SJP Launches The Popular University for Gaza*, NSJP (Apr. 20, 2024), perma.cc/8WS8-KJXG.

14. **The Campus Support Coalition.** The term "Campus Support Coalition" refers to the "collective of organizations managed by [NSJP] that work together to support students fighting for Palestinian liberation on university campuses." *Campus Support Coalition*, NSJP (last visited Dec. 3, 2025), bit.ly/4pPl7oe.

15. **The UCLA Encampment.** The term "the UCLA encampment" refers to the encampment that was present near Royce Quad between April 25, 2024, and May 2, 2024.

16. **Efforts to Reestablish the UCLA Encampment:** The term "efforts to reestablish the UCLA encampment" means any action taken on or after May 2, 2024, with the purpose of: reestablishing the UCLA

App. 11

encampment or establishing another encampment on or around UCLA's campus with a similar form or function to the UCLA encampment. Examples of efforts to reestablish the UCLA encampment include, but are not limited to: (1) the May 6 attempt to "occupy" and vandalize Moore Hall; and (2) and the June 10 efforts to "set up an unauthorized and unlawful encampment with tents, canopies, wooden shields, and water-filled barriers" at the top of the Janss Steps, at Kerckhoff Patio, and around UCLA Law School.

17. **Agents.** The term "agents" includes, but is not limited to, attorneys, accountants, professionals, and other representatives.

18. **Document.** The term "document" shall be liberally construed to include, but is not limited to, all of the following items, whether written or produced by hand; printed, written, produce, recorded, or reproduced by any mechanical process; electronically or magnetically recorded or stored; recorded upon any tangible thing; or stored in any retrievable form by means of communication, representation, or data retention not otherwise described in this paragraph: agreements; draft agreements; contracts; draft contracts; correspondence; memoranda; summaries or records of personal conversations, interviews or statements; diaries; desk

11

calendars; graphs; reports; computer tapes; computer disks; computer files; computer printouts; electronic mail communications (e-mails); electronic text communications (e.g., Discord, Signal, SMS, Slack, Sametime, Teams, Telegram, and other messaging software and applications), summaries or records of any meetings; conferences; summaries or records of investigations or audits; summaries of any negotiations; opinions of consultants; photographs; motion picture films; video tapes; magnetic tapes; audio cassettes; microfilm; microfiche; brochures; pamphlets; advertisements; circulars; press releases; drafts; checks; letters; telegrams; cables; telexes; facsimiles; telecopies; judicial records; maps; financial statements; drafted financial statements; trial balances; general ledgers; subsidiary ledgers; financial journals; worksheets; work papers; receipts; invoices; registers; registrations; filings; statements; bank statements; brokerage statements; insurance policies; credit reports; appraisals; confirmations; surveys; budgets; forecasts; tax returns; blueprints; diagrams; specifications; licenses; and all other forms of media involving the transmission, representation, communication, or storage of information, including writings that constitute a translation into any language other than the language in

12

which the original exists. Furthermore, different versions of a document (including, but not limited to drafts, revisions, or versions with notes and/or marks not found on the original or other copies) shall be considered distinct documents that must be produced.

19.    **Communication.** The term "communication" shall be liberally construed to include, but is not limited to, the transmission of all written, electronic, or verbal discussions, correspondence, statements, conversations, ideas, memoranda, notations, letters, notices, and documents.

20.    **Relating, Regarding, and/or Concerning.** The terms "relating to," "related to," "relates to," "regarding," or "concerning" a subject shall mean any document or communication that constitutes, contains, embodies, evidences, reflects, supports, undermines, negates, contradicts, concerns, identifies, states, refers to, regards, records, deals with, describes, or pertains to that subject.

21.    **Each and/or Every.** The term "each" shall be construed to include the term" "every," and the term "every" shall be construed to include the term "each," as necessary to bring within the scope of these

App. 14

Interrogatories information that might otherwise be construed to be outside their scope.

22. **Any and/or All.** The term "any" shall be construed to include the term "all," and the term "all" shall be construed to include the word "any," as necessary to bring within the scope of these interrogatories information that might otherwise be construed to be outside their scope.

23. **Identify.** The term "identify" means,

a. With respect to a person, to provide that person's (1) full name; (2) current address and telephone number; (3) current employer; (4) current business address and telephone number; (5) job or volunteer position; (6) job or volunteer duties.

b. With respect to a person who is serving or has served as an officer, employee, contractor, volunteer, representative, or other agent of PCC or its subdivisions, to additionally provide: (1) a complete description of the responsibilities of such position; (2) the date upon which the person assumed such position; (3) if the person's service in such position has lapsed, the date upon which service lapsed and the person (if any)

14

who subsequently held the position; and (4) if the person is presently serving, the date (if any) upon which the position is expected to lapse and the person (if any) who is expected to next fill the position.

c.    When an interrogatory requests that a writing, document, or record of any kind be identified, provide the following information about such writing, document, or record: (1) the title; (2) the identity of the person in possession, custody, or control of the document; and (3) the identity of all persons mentioned in, who were signatories to or authors of, or who were present at the formation or execution of the writing, document, or record. If the writing, document or record has been destroyed or lost and all copies thereof have been destroyed or lost, state: (1) the date of destruction or loss; (2) whether it has been transferred voluntarily or involuntarily to others, and if so, their identity; (3) all dates, essential terms, and other details of said writing, document, or record; and (iv) the identity of any person known to you who can give competent secondary evidence of its contents.

15

d.    When an interrogatory requests that a communication be identified, provide the following information about such communication: (1) the identities of all persons mentioned in or a signatory to, or who were present at the formation or execution of the communication, including whether such persons were serving as an officer, employee, contractor, volunteer, agent, or representative of NSJP, WESPAC, AMP, PCC, Unity of Fields, or any other third party; (2) the date and time of the communication; and (3) the identity of the person who is in possession, custody, or control of the communication. If the communication has been destroyed or lost and all copies thereof have been destroyed or lost, additionally state: (1) the date of destruction or loss; (2) whether it has been transferred voluntarily or involuntarily to others, and if so, their identity; (3) all dates, essential terms, and other details of said writing, document, or record; and (iv) the identity of any person known to you who can give competent secondary evidence of its contents.

16

24.    **Singular and Plural.** The singular form of a word shall include the plural of that word, and the plural shall include the singular, as necessary to bring within the scope of these interrogatories information that might otherwise be construed to be outside their scope.

## INTERROGATORIES

1.    Fully describe Your organizational chart and the structure of Your committees, including any steering committees, at all times during the period at issue.

2.    Identify all persons serving as Your officers, employees, contractors, volunteers, agents, or representatives during the period at issue, including any such persons who were at the UCLA encampment.

3.    Identify all persons and entities with whom You communicated regarding the Popular University for Gaza, the Campus Support Coalition, the UCLA Encampment, or efforts to reestablish the UCLA encampment during the period at issue.

4.    Identify the person or persons responsible for controlling Your official social media accounts during the period at issue.

17

<span style="color:red">App. 18</span>

5.    Identify all documents and communications relating to the Popular University for Gaza and Campus Support Coalition produced during the period at issue.

6.    Identify all documents and communications relating to the article *Advancing the Line, Emboldening the People: Reflections on the One-Year Anniversary of the UCLA Palestine Solidarity Encampment*, published by Unity of Fields on May 1, 2025, produced during the period at issue.

7.    Identify the person employed by, affiliated with or acting on Your behalf who is most knowledgeable about Your sources of funds.

8.    Identify the person employed by, affiliated with or acting on Your behalf who is most knowledgeable about the UCLA encampment.

9.    Identify the person or persons who authored the article *Advancing the Line, Emboldening the People: Reflections on the One-Year Anniversary of the UCLA Palestine Solidarity Encampment*, published by Unity of Fields on May 1, 2025.

10.    Identify the person or persons controlling, organizing, or otherwise managing Unity of Fields.

18

Dated: January 30, 2026

William J. Brown, Jr. (SBN
192950)
Kyle J. Berry (SBN 355393)
BROWN WEGNER LLP
2010 Main Street, Suite 1260
Irvine, California 92614
(949) 705-0080
bill@brownwegner.com
kberry@brownwegner.com

Respectfully submitted,

/s/ *Thomas R. McCarthy*
Thomas R. McCarthy (pro hac
vice)
Zachary P. Grouev (pro hac
vice)
Julius Kairey (pro hac vice)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
patrick@consovoymccarthy.com
zach@consovoymccarthy.com
julius@consovoymccarthy.com

Patrick Strawbridge (pro hac
vice)
CONSOVOY MCCARTHY PLLC
8th Floor South PMB #706
Boston, MA 02109
(617) 227-0548
patrick@consovoymccarthy.com

Richard A. Rosen (pro hac vice)
Omer Wiczyk (pro hac vice)
LOUIS D. BRANDEIS CENTER
FOR HUMAN RIGHTS UNDER
LAW
1330 6th Avenue, 23rd Floor
New York, NY 10019
(917) 363-9004
rrosen@brandeiscenter.com
owiczyk@brandeiscenter.com

*Counsel for Plaintiffs*

19

App. 20

## CERTIFICATE OF SERVICE

I certify that, on January 30, 2026, I served the foregoing Plaintiffs'

First Set of Interrogatories to Defendant People's City Council on counsel

for the parties listed below, by both email and United States Postal

Service Priority Mail:

Mark Kleiman
KLEIMAN / RAJARAM
12121 Wilshire Boulevard, #810
Los Angeles, CA 90025
Phone: 310-392-5455
Email: mark@krlaw.us

*Counsel for National Students for Justice in Palestine*

Dan Stormer
Rebecca Brown
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, CA 91103
Phone: 626-585-9600
Emails: dstormer@hadsellstormer.com
rbrown@hadsellstormer.com

*Counsel for People's City Council*

*/s/ Thomas R. McCarthy*

20

App. 21

# Exhibit B

## IN THE DISTRICT COURT OF THE
## CENTRAL DISTRICT OF CALIFORNIA

MATTHEW WEINBERG, et al.,

Plaintiff,

vs.

NATIONAL STUDENTS FOR
JUSTICE IN PALESTINE, et al.,

Defendants.

Case No.: 2:25-cv-03714-MSC-JCx

## PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT PEOPLE'S CITY COUNCIL

In accordance with Federal Rule of Civil Procedure 34, Section 8.b. of the Court's Standing Order (Dkt.28), and the Court's order of November 10, 2025 (Dkt.77), Plaintiffs request that People's City Council respond to the following requests for production within 30 days.

## INSTRUCTIONS

1.   These requests are governed by Federal Rules of Civil Procedure, the Central District of California's Local Rules, and the Court's Standing Order.

2.   **Method of Response and Production:** The responses and documents produced in response to these requests shall be provided via

1

App. 23

email             sent             to             twilson@consovoymccarthy.com, julius@consovoymccarthy.com, and owiczyk@brandeiscenter.com in emails not to exceed 20 MB each or via a secure file transfer platform (*e.g.*, Box.com). To the extent responses cannot be served via email or a secure file transfer platform, please contact the undersigned to make different arrangements.

3.     **Format for Producing Documents:** Except as noted below, all documents shall be produced in native format with appropriate load files.

4.     Documents produced in native should include native file links and corresponding images. All documents must contain a bates number and file names of native files should reflect the production bates number. File names shall not contain embedded spaces. Bates numbers should be endorsed on the lower right corner of all images.

5.     All hidden text such as track changes, hidden columns, etc., should be expanded and rendered.

6.     Any data or files that are encrypted or password protected should be decrypted and/or passwords removed prior to production. If a password cannot be removed, the password must be provided.

2

7.    Provide the documents in a native format that is compatible with MS Office, if possible. Please contact counsel for Plaintiffs if files cannot be produced in an MS Office compatible format.

8.    Provide a data file (.DAT) containing fielded information to be loaded into a database for all documents in a production. While hard copy documents may not have fielded information (i.e. metadata), these documents should also be referenced in the .DAT file with as much fielded information as reasonably possible. The first line of a .DAT file must contain a header row identifying field names. All family relationship should be preserved, and all family documents should be produced.

9.    Attachments shall sequentially follow the parent document or email and the relationship should be identified using Parent ID and Attachment ID fields.

10.    All metadata associated with native documents, emails, and media files must be produced. The data load file should include, at a minimum, the metadata fields listed below. Date fields should be provided in the format MM/DD/YYYY and should be the same format throughout the field.

3

| Field Position | Field Name | Type | Description/Metadata |
|---|---|---|---|
| 1 | BEGDOC | Paragraph | Beginning bates number |
| 2 | ENDDOC | Paragraph | Ending bates number |
| 3 | BEGATTACH | Paragraph | Beginning bates number of family |
| 4 | ENDATTACH | Paragraph | Ending bates number of family |
| 5 | ATTCOUNT | Paragraph | Attachment count |
| 6 | PARENTID | Paragraph | Bates number of family parent |
| 7 | DOCDATE | Date | Date of document or creation date (MM/DD/YYYY) |
| 8 | DATESENT | Date | Date Email Sent (MM/DD/YYYY) |
| 9 | TIMESENT | Time | Time Email Sent (HH:MM:SS AM/PM) |
| 10 | DATERECEIVED | Date | Date Email Received (MM/DD/YYYY) |
| 11 | TIMERECEIVED | Time | Time Email Received (HH:MM:SS AM/PM) |
| 12 | TIMEZONE | Paragraph | Time zone used to process custodian data |
| 13 | AUTHOR | Paragraph | Who created document (LASTNAME, FIRST) |
| 14 | FROM | Paragraph | Who is document sent from (LASTNAME, FIRST) |
| 15 | TO | Paragraph | Who is document sent to (LASTNAME, FIRST) |
| 16 | CC | Paragraph | Who is copied on document (LASTNAME, FIRST) |
| 17 | BCC | Paragraph | Who is blind copied on document (LASTNAME, FIRST) |
| 18 | DOCTYPE | Paragraph | What type of document this is (e.g., Message or attachment) |
| 19 | FILEEXT | Paragraph | File Extension (e.g., .msg or .doc) |
| 20 | EMAILSUBJECT | Paragraph | Email subject line |
| 21 | EMAIL MESSAGE ID | Paragraph | Message ID for email |
| 22 | FILENAME | Paragraph | Original file name |
| 23 | LASTMOD | Date | Date last modified (MM/DD/YYYY) |
| 24 | CUSTODIAN | Paragraph | Custodian (LASTNAME, FIRST) |
| 25 | SOURCE | Paragraph | Where did document come from? |
| 26 | ORIGFOLDER | Paragraph | Original file folder (e.g., Personal Folders\Deleted Items\) |
| 27 | PAGES | Number | Number of pages in document |

11.    For handwritten documents, or documents containing handwriting, identify the author of the handwriting to the extent that the identity of the author of the handwriting is known.

12.    Digital photographs shall be submitted as single-page JPEG files with a resolution equivalent to the original image as it was

App. 26

captured/created. All associated metadata and text fields shall be produced as well. All digital videos shall be submitted as native files with associated metadata and an accompanying single page "PLACEHOLDER" image.

13. For documents written in a foreign language, produce all translations of that document into English.

14. Any modifications or deviations from these production specifications may only occur upon agreement between the parties.

15. **Documents No Longer in Your Possession, Custody, or Control.** When a requested document was in your possession, custody, or control, but is no longer, state with particularity the efforts made to locate the document and the specific reason for its disappearance or unavailability, including: (1) the date of disposition; (2) how the document was disposed; (3) the name, current address, and telephone number of each person who authorized said disposition or had knowledge of said disposition; and (4) if, upon information and belief, a copy of the document exists outside your custody or control, state the name, current address, and telephone number of the person who has possession, custody, or control over the document.

App. 27

16.    **Scope.** These requests include all documents in the possession, custody, or control of the responding party, companies under its control, attorneys, former attorneys, accountants, financial advisors, investigators, agents, employees, or other representatives or proxies of the party. A party must include in its responses documents which, while not within its own possession, are nonetheless within the party's custody or control, or reasonably available to the party, the party's agents, or the party's attorney.

17.    **Asserting Claim of Privilege.** For any document, or part thereof, that contains information responsive to any request set forth below that you seek to withhold under a claim of privilege: (1) redact the information being withheld for privilege and indicate on the produced document where you have redacted information; and (2) for each document withheld or redacted under a claim of privilege, provide an index with the following information: (i) type and date of the document; (ii) document title and description of the subject matter of the document; (iii) name and position of each author, preparer (other than stenographical or clerical personnel), sender, addressee, and recipient of the document; (iv) statement of the exact privilege being claimed, the

6

<span style="color:red">App. 28</span>

topic discussed, and the specific facts that form the basis upon which the privilege is claimed. You must provide the information requested in this instruction with sufficient specificity to enable counsel for the Plaintiffs and the Court to assess the applicability of the privilege.

18.    **Objections.** You should state with specificity the grounds of any objection to all or part of a request. If you believe that only part of a request is objectionable, make your objection and then respond to the request to the extent not objectionable.

19.    **Supplementation.** Pursuant to Fed. R. Civ. P. 26(e)(1), Plaintiffs request that the responses to these requests be supplemented if further information is obtained.

20.    **Period at Issue.** Unless otherwise specifically stated, the period at issue covered by these requests begins on January 1, 2023, and runs through the present day.

21.    If there are questions regarding these requests, please contact counsel for Plaintiffs well in advance of the deadline for production.

## DEFINITIONS

1.    **People's City Council, PCC, You, Your, and Yours.** The terms "People's City Council," "PCC," "You," "Your," and "yours," refer to

7

Defendant People's City Council, its predecessors, successors, divisions, subsidiaries, and affiliates, and all present and former directors, officers, employees, agents, consultants, representatives, attorneys, and any other persons acting for or on behalf of any of these entities or individuals. These terms include, but are not limited to, the entity with which Ricci Sergienko, Albert Corado, and Jason Reedy are or were affiliated.

2.    **National Students for Justice in Palestine.** The terms "National Students for Justice in Palestine" and "NSJP" refer to the unincorporated association of the same name that is listed as a Defendant in this case, its predecessors, successors, divisions, chapters, sub-chapters, committees, steering committees, subsidiaries, and other affiliates, and all present and former directors, officers, employees, agents, consultants, representatives, attorneys, and any other persons acting for or on behalf of any of these entities or individuals. These terms include, but are not limited to, NSJP's UCLA Chapter, Students for Justice in Palestine, University of California—Los Angeles, Graduate Students for Justice in Palestine, University of California—Los Angeles, and SoCalSJP.

8

App. 30

3.    **American Muslims for Palestine.** The terms "American Muslims for Palestine" and "AMP" refer to AJP Educational Foundation, Inc., the 501(c)(3) nonprofit organization doing business under the name "American Muslims for Palestine" and that is listed as a Defendant in this case, its predecessors, successors, divisions, subsidiaries, and affiliates, and all present and former directors, officers, employees, agents, consultants, representatives, attorneys, and any other persons acting for or on behalf of any of these entities or individuals.

4.    **WESPAC.** The term "WESPAC" refers to WESPAC Foundation, Inc., the 501(c)(3) nonprofit organization that is listed as a Defendant in this case, its predecessors, successors, divisions, subsidiaries, and affiliates, and all present and former directors, officers, employees, agents, consultants, representatives, attorneys, and any other persons acting for or on behalf of any of these entities or individuals. This term includes, but is not limited to, the entity that served as NSJP's fiscal sponsor, including under a letter dated July 27, 2023. *See* Dkt.1 (Compl.) ¶35, *ANI v. WESPAC,* No. 7:25-cv-1320 (S.D.N.Y. Feb. 13, 2025).

9

5.    **National Faculty for Justice in Palestine:** The terms "National Faculty for Justice in Palestine" and "NFJP" refer to the unincorporated association of the same name that is listed as a Defendant in this case, its predecessors, successors, divisions, chapters, sub-chapters, committees, steering committees, subsidiaries, and other affiliates, and all present and former directors, officers, employees, agents, consultants, representatives, attorneys, and any other persons acting for or on behalf of any of these entities or individuals.

6.    **UC Divest Coalition.** The terms "UC Divest Coalition" and "UC Divest" refer to the unincorporated association of the same name that is listed as a Defendant in this case, its predecessors, successors, divisions, chapters, sub-chapters, committees, steering committees, subsidiaries, and other affiliates, and all subsidiaries, and affiliates, and all present and former directors, officers, employees, agents, consultants, representatives, attorneys, and any other persons acting for or on behalf of any of these entities or individuals. These terms include, but are not limited to, the entity of the same name of which NSJP National Steering Committee member Dylan Kupsh was a founding member.

10

App. 32

7.    **Unity of Fields.** The term "Unity of Fields" refers to the unincorporated association of the same name, which was formerly known as the United States branch of "Palestine Action" (a UK-based group that has been designated a terrorist organization by the British government), its predecessors, successors, divisions, chapters, sub-chapters, committees, steering committees, subsidiaries, and other affiliates, and all subsidiaries, and affiliates, and all present and former directors, officers, employees, agents, consultants, representatives, attorneys, and any other persons acting for or on behalf of any of these entities or individuals.

8.    **Person.** The term "person" shall include individuals, partnerships, joint ventures, firms, associations, proprietorships, corporations, or other such entities, along with their subsidiaries and divisions, and the individual members, employees, and agents thereof.

9.    **Officer.** The term "officer" shall include any person with a formal or informal position of authority, function, or title. As applied to PCC, it includes, but is not limited to, any person serving on a committee or steering committee.

App. 33

10.    **Committee.** The term "committee" shall include any committee, subcommittee, board, panel, or similar group of persons, officers, employees, volunteers, agents, or representatives that is organized to perform an official or unofficial function.

11.    **Steering Committee.** The term "steering committee" means any committee that exercises control over a portion of the operations of PCC or its subdivisions.

12.    **The National Steering Committee.** The term "National Steering Committee" refers to the committee that exercises overall control over NSJP and of which: (1) Dylan Kupsh is a former member; and (2) Sean Eren and Carrie Zaremba are (or were) members.

13.    **The Popular University for Gaza.** The term "Popular University for Gaza" refers to the "coordinated pressure campaign" based on "establishing autonomous zones on … university campuses" that was officially launched by NSJP in a statement on April 20, 2024. *National SJP Launches The Popular University for Gaza*, NSJP (Apr. 20, 2024), perma.cc/8WS8-KJXG.

14.    **The Campus Support Coalition.** The term "Campus Support Coalition" refers to the "collective of organizations managed by

[NSJP] that work together to support students fighting for Palestinian liberation on university campuses." *Campus Support Coalition*, NSJP (last visited Dec. 3, 2025), bit.ly/4pPl7oe.

15. **The UCLA Encampment.** The term "the UCLA encampment" refers to the encampment that was present near Royce Quad between April 25, 2024, and May 2, 2024.

16. **Efforts to Reestablish the UCLA Encampment:** The term "efforts to reestablish the UCLA encampment" means any action taken on or after May 2, 2024, with the purpose of: reestablishing the UCLA encampment or establishing another encampment on or around UCLA's campus with a similar form or function to the UCLA encampment. Examples of efforts to reestablish the UCLA encampment include, but are not limited to: (1) the May 6 attempt to "occupy" and vandalize Moore Hall; and (2) and the June 10 efforts to "set up an unauthorized and unlawful encampment with tents, canopies, wooden shields, and water-filled barriers" at the top of the Janss Steps, at Kerckhoff Patio, and around UCLA Law School.

17. **Agents.** The term "agents" includes, but is not limited to, attorneys, accountants, professionals, and other representatives.

13

<span style="color:red">App. 35</span>

18.    **Document.** The term "document" shall be liberally construed to include, but is not limited to, all of the following items, whether written or produced by hand; printed, written, produce, recorded, or reproduced by any mechanical process; electronically or magnetically recorded or stored; recorded upon any tangible thing; or stored in any retrievable form by means of communication, representation, or data retention not otherwise described in this paragraph: agreements; draft agreements; contracts; draft contracts; correspondence; memoranda; summaries or records of personal conversations, interviews or statements; diaries; desk calendars; graphs; reports; computer tapes; computer disks; computer files; computer printouts; electronic mail communications (e-mails); electronic text communications (e.g., Discord, Signal, SMS, Slack, Sametime, Teams, Telegram, and other messaging software and applications), summaries or records of any meetings; conferences; summaries or records of investigations or audits; summaries of any negotiations; opinions of consultants; photographs; motion picture films; video tapes; magnetic tapes; audio cassettes; microfilm; microfiche; brochures; pamphlets; advertisements; circulars; press releases; drafts; checks; letters; telegrams; cables; telexes; facsimiles; telecopies; judicial

14

records; maps; financial statements; drafted financial statements; trial balances; general ledgers; subsidiary ledgers; financial journals; worksheets; work papers; receipts; invoices; registers; registrations; filings; statements; bank statements; brokerage statements; insurance policies; credit reports; appraisals; confirmations; surveys; budgets; forecasts; tax returns; blueprints; diagrams; specifications; licenses; and all other forms of media involving the transmission, representation, communication, or storage of information, including writings that constitute a translation into any language other than the language in which the original exists. Furthermore, different versions of a document (including, but not limited to drafts, revisions, or versions with notes and/or marks not found on the original or other copies) shall be considered distinct documents that must be produced.

19.    **Communication.** The term "communication" shall be liberally construed to include, but is not limited to, the transmission of all written, electronic, or verbal discussions, correspondence, statements, conversations, ideas, memoranda, notations, letters, notices, and documents.

15

App. 37

20. **Relating, Regarding, and/or Concerning.** The terms "relating to," "related to," "relates to," "regarding," or "concerning" a subject shall mean any document or communication that constitutes, contains, embodies, evidences, reflects, supports, undermines, negates, contradicts, concerns, identifies, states, refers to, regards, records, deals with, describes, or pertains to that subject.

21. **Each and/or Every.** The term "each" shall be construed to include the term" "every," and the term "every" shall be construed to include the term "each," as necessary to bring within the scope of these requests information that might otherwise be construed to be outside their scope.

22. **Any and/or All.** The term "any" shall be construed to include the term "all," and the term "all" shall be construed to include the word "any," as necessary to bring within the scope of these requests for information that might otherwise be construed to be outside their scope.

23. **Identify.** The term "identify" means,

> a. With respect to a person, to provide that person's (i) full name; (ii) current address and telephone number; (iii) current employer; (iv) current business address and telephone

16

number; (v) job or volunteer position; (vi) job or volunteer duties.

b.      With respect to a person who is serving or has served as an officer, employee, contractor, volunteer, representative, or other agent of PCC or its subdivisions, to additionally provide: (i) a complete description of the responsibilities of such position; (ii) the date upon which the person assumed such position; (iii) if the person's service in such position has lapsed, the date upon which service lapsed and the person (if any) who subsequently held the position; and (iv) if the person is presently serving, the date (if any) upon which the position is expected to lapse and the person (if any) who is expected to next fill the position.

c.      When a request asks that a writing, document, or record of any kind be identified, provide the following information about such writing, document, or record: (i) the title; (ii) the identity of the person in possession, custody, or control of the document; and (iii) the identity of all persons mentioned in, who were signatories to or authors of, or who were present at

17

the formation or execution of the writing, document, or record. If the writing, document or record has been destroyed or lost and all copies thereof have been destroyed or lost, state: (i) the date of destruction or loss; (ii) whether it has been transferred voluntarily or involuntarily to others, and if so, their identity; (iii) all dates, essential terms, and other details of said writing, document, or record; and (iv) the identity of any person known to you who can give competent secondary evidence of its contents.

d.    When a request asks that a communication be identified, provide the following information about such communication: (i) the identities of all persons mentioned in or a signatory to, or who were present at the formation or execution of the communication, including whether such persons were serving as an officer, employee, contractor, volunteer, agent, or representative of NSJP, WESPAC, AMP, PCC, Unity of Fields, or any other third party; (ii) the date and time of the communication; and (iii) the identity of the person who is in possession, custody, or control of the

18

App. 40

communication. If the communication has been destroyed or lost and all copies thereof have been destroyed or lost, additionally state: (i) the date of destruction or loss; (ii) whether it has been transferred voluntarily or involuntarily to others, and if so, their identity; (iii) all dates, essential terms, and other details of said writing, document, or record; and (iv) the identity of any person known to you who can give competent secondary evidence of its contents.

24. **Singular and Plural.** The singular form of a word shall include the plural of that word, and the plural shall include the singular, as necessary to bring within the scope of these requests information that might otherwise be construed to be outside their scope.

## REQUESTS FOR PRODUCTION

1. All documents relied upon, consulted, or referenced in your responses to Plaintiffs' first set of interrogatories, served concurrently with these requests.

2. Documents sufficient to show PCC's organizational structure. This request includes but is not limited to all organizational charts, filings with any governmental entity or insurer reflecting PCC's

19

organizational structure, the recordings and minutes of any organizational meetings, and memoranda or other documents reflecting, referring or relating to PCC's organizational structure.

3. All documents reflecting, referring or relating to the roles played and functions performed by Jason Reedy, Albert Corado, and Ricci Sergienko in Your organization, including but not limited to documents regarding Reedy, Corado, and Sergienko's roles as organizers in Your organization.

4. All documents reflecting, referring or relating to Reedy and Corado's roles in the production of People's City Propaganda, including but not limited to documents regarding the production of the July 19, 2024, episode of People's City Propaganda titled "Student Intifada."

5. All documents reflecting, referring or relating to the interview with Unity of Fields that PCC conducted in March of 2025 and posted on its official Instagram page on March 13, 2025.

6. All communications on the subject of Jason Reedy, Albert Corado, and Ricci Sergienko's roles and functions in Your organization, including but not limited to communications between PCC and WESPAC, AMP, NSJP, NFJP, UC Divest, Unity of Fields, or any other third party.

20

7. All documents reflecting, referring or relating to PCC's involvement with the encampments that were part of NSJP's Popular University for Gaza initiative, including but not limited to documents regarding efforts to establish encampments on college campuses around the country, efforts to use PCC resources to fund and supply encampments, and efforts to promote encampments using PCC social media accounts.

8. All communications on the subject of PCC's involvement with the encampments that were part of NSJP's Popular University for Gaza initiative, including but not limited to communications between PCC and WESPAC, AMP, NSJP, NFJP, UC Divest, Unity of Fields, or any other third party.

9. All documents reflecting, referring or relating to Jews, Judaism or any Jewish practices or beliefs, including but not limited to recordings and minutes of Your organizational meetings.

10. All communications on the subject of Jews, Judaism or any Jewish practices or beliefs, including but not limited to communications between PCC and WESPAC, AMP, NSJP, NFJP, UC Divest, Unity of Fields, or any other third party.

App. 43

11. All documents reflecting, referring or relating to PCC's involvement with the Campus Support Coalition, including but not limited to documents regarding requests for support from the Coalition and the use of NSJP resources to fund or support the Coalition.

12. All communications on the subject of the Campus Support Coalition, including but not limited to communications between PCC and WESPAC, AMP, NSJP, NFJP, UC Divest, Unity of Fields, or any other third party.

13. All documents reflecting, referring or relating to PCC's involvement in the UCLA encampment, including but not limited to documents regarding: the use of PCC's official social media accounts to promote the encampment; which members of Yours were present at the UCLA encampment or on the UCLA campus between April 1, 2024, and May 3, 2024; any supplies or funding solicited or provided by You to or for the benefit of the UCLA encampment; and the exclusion of any persons or groups of persons from the encampment. This request also includes communications with UCLA employees or representatives regarding the UCLA encampment; communications regarding encampment security, UCLA security, or law enforcement; and

22

communications regarding the exclusion of any persons or groups from the UCLA encampment.

14. All communications on the subject of the UCLA encampment, including but not limited to communications between PCC and WESPAC, AMP, NSJP, NFJP, UC Divest, Unity of Fields, or any other third party.

15. All documents reflecting, referring or relating to transactions or purchases made for, on behalf of, or involving a transfer of funds related to the UCLA encampment.

16. All communications on the subject of transactions or purchases made for, on behalf of, or involving a transfer of funds relating to the UCLA encampment, including but not limited to communications between PCC and WESPAC, AMP, NSJP, NFJP, UC Divest, Unity of Fields, or any other third party.

17. All records of any meetings relating to the Popular University for Gaza initiative, the Campus Support Coalition, the UCLA encampment, or efforts to reestablish the UCLA encampments. This request includes but is not limited to notes, minutes, presentations, and any other prepared materials used during or created after such meetings.

23

App. 45

18. All documents summarizing, commenting on, reviewing, or otherwise analyzing the events surrounding the UCLA encampment and subsequent efforts to reestablish it. This request includes but is not limited to after-actions, post-mortems, audits, and any other similar memoranda or reports.

19. All social media posts made by You or Your officers, employees, contractors, volunteers, agents, or other representatives, including but not limited to posts on Instagram, Twitter/X, Bluesky, Threads, Mastodon, Discord, and Telegram, regarding the UCLA encampment and subsequent efforts to reestablish it.

20. All documents reflecting, referring or relating to the management of Your social media accounts, including but not limited to Instagram, Twitter/X, Bluesky, Threads, Mastodon, Discord, and Telegram.

21. All communications on the subject of the management of Your social media accounts, including but not limited to communications between PCC and WESPAC, AMP, NSJP, NFJP, UC Divest, Unity of Fields, or any other third party.

App. 46

22. All documents reflecting, referring or relating to PCC's involvement in efforts to reestablish the UCLA encampment, including, but not limited to, documents regarding: the use of PCC's official social media accounts to promote efforts to reestablish the encampment; which members of Yours were present at efforts to reestablish the encampment or on the UCLA campus between May 3, 2024, and August 1, 2024; any supplies or funding provided by You to or for the benefit of efforts to reestablish UCLA encampment; and the exclusion of any persons or groups of persons from the encampment. This request also includes communications with UCLA employees or representatives regarding efforts to reestablish the UCLA encampment; communications regarding encampment security, UCLA security, or law enforcement; and communications regarding exclusion of any persons or groups from subsequent encampments.

23. All communications on the subject of efforts to reestablish the UCLA encampment, including but not limited to communications between PCC and WESPAC, AMP, NSJP, NFJP, UC Divest, Unity of Fields, or any other third party.

25

App. 47

24.   All documents reflecting, referring or relating to AMP's involvement in NSJP's creation, funding, and operation of its national initiatives, including but not limited to documents regarding AMP's involvement in the Popular University for Gaza, the Campus Support Coalition, the UCLA encampment, and efforts to reestablish the encampment.

25.   All communications on the subject of AMP's involvement in NSJP's creation, funding, and operation of its national initiatives, including, but not limited to, communications regarding AMP's involvement in the Popular University for Gaza, the Campus Support Coalition, the UCLA encampment, and efforts to reestablish the encampment to reestablish the UCLA encampment, including but not limited to communications between PCC and WESPAC, AMP, NSJP, NFJP, UC Divest, Unity of Fields, or any other third party.

26.   All documents reflecting, referring or relating to the article *Advancing the Line, Emboldening the People: Reflections on the One-Year Anniversary of the UCLA Palestine Solidarity Encampment*, published by Unity of Fields on May 1, 2025.

26

App. 48

27. All communications on the subject of the article *Advancing the Line, Emboldening the People: Reflections on the One-Year Anniversary of the UCLA Palestine Solidarity Encampment*, published by Unity of Fields on May 1, 2025, between PCC and WESPAC, AMP, NSJP, NFJP, UC Divest, Unity of Fields, including but not limited to communications between PCC and WESPAC, AMP, NSJP, NFJP, UC Divest, Unity of Fields, or any other third party.

28. All documents reflecting, referring or relating to Unity of Fields' involvement in the UCLA encampment and efforts to reestablish the UCLA encampment.

29. All communications on the subject of Unity of Fields' involvement in the UCLA encampment and efforts to reestablish the UCLA encampment.

30. All documents reflecting, referring or relating to Your sources of funding relating to your involvement in the UCLA encampment, the efforts to reestablish the UCLA encampment, the Popular University for Gaza initiative, and the Campus Support Coalition, including but not limited to financial statements and statements of cash flow or income and expenses (whether or not audited).

31. All communications on the subject of Your sources of funding relating to your involvement in the UCLA encampment, the efforts to reestablish the UCLA encampment, the Popular University for Gaza initiative, and the Campus Support Coalition.

32. All documents reflecting, referring or relating to your involvement in the UCLA encampment, the efforts to reestablish the UCLA encampment, the Popular University for Gaza initiative, and the Campus Support Coalition, including but not limited to financial statements and statements of cash flow or income and expenses (whether or not audited).

33. All communications on the subject of Your financial expenses relating to your involvement in the UCLA encampment, the efforts to reestablish the UCLA encampment, the Popular University for Gaza initiative, and the Campus Support Coalition.

34. All documents reflecting, referring or relating to any representations made by You as to whether contributions to You are tax-deductible.

App. 50

Dated: December 5, 2025

William J. Brown, Jr. (SBN
192950)
Kyle J. Berry (SBN 355393)
BROWN WEGNER LLP
2010 Main Street, Suite 1260
Irvine, California 92614
(949) 705-0080
bill@brownwegner.com
kberry@brownwegner.com

Respectfully submitted,

/s/ *Thomas R. McCarthy*
Thomas R. McCarthy (pro hac
vice)
Zachary P. Grouev (pro hac vice)
Julius Kairey (pro hac vice)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
zach@consovoymccarthy.com
julius@consovoymccarthy.com

Richard A. Rosen (pro hac vice)
Omer Wiczyk (pro hac vice)
LOUIS D. BRANDEIS CENTER
FOR HUMAN RIGHTS UNDER LAW
1330 6th Avenue, 23rd Floor
New York, NY 10019
(917) 363-9004
rrosen@brandeiscenter.com
owiczyk@brandeiscenter.com

*Counsel for Plaintiffs*

29

App. 51

## CERTIFICATE OF SERVICE

I certify that, on December 5, 2025, I served the foregoing Plaintiffs'

First Requests for Production of Documents to Defendant People's City

Council on counsel for the parties listed below, by both email and United

States Postal Service Priority Mail:

Mark Kleiman
KLEIMAN / RAJARAM
12121 Wilshire Boulevard, #810
Los Angeles, CA 90025
Phone: 310-392-5455
Email: mark@krlaw.us

*Counsel for National Students for Justice in Palestine*

Max A. Schoening
QURESHI LAW
700 Flower St., Suite 1000
Los Angeles, CA 90017
Phone: 213-786-3478
Email: max@qureshi.law

Christina A. Jump
Samira S. Elhosary
MUSLIM LEGAL FUND OF AMERICA
100 N. Central Expy., STE 1010
Richardson, TX 75080
Phone: 972-914-2507
Emails: cjump@jump-start-legal.com
selhosary@clcma.org

*Counsel for AJP Educational Foundation, Inc., Hatem Al-Bazian,
and Osama Abuirshaid*

App. 52

Robert L. Herbst
HERBST LAW PLLC
420 Lexington Avenue, Suite 300
New York, NY 10170
Phone: 914-450-8163
Email: rherbst@herbstlawny.com

Joshua Colangelo-Bryan
HUMAN RIGHTS FIRST
121 West 36th Street, PMB 520
New York, NY 10018
Phone: 212-845-5243
Email: colangeloj@humanrightsfirst.org

Ramsey Judah
JUDAH LAW GROUP
1026 W. Foothill Blvd
Upland, CA 91786
Phone: 626-899-7667
Email: ramsey@judahlawgroup.com

*Counsel for WESPAC Foundation*

Dan Stormer
Rebecca Brown
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, CA 91103
Phone: 626-585-9600
Emails: dstormer@hadsellstormer.com
rbrown@hadsellstormer.com

*Counsel for People's City Council*

*/s/ Thomas R. McCarthy*

31

App. 53

# Exhibit C

App. 54

Dan Stormer, Esq. [S.B. #101967]
Rebecca Brown, Esq. [S.B. #336638]
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
T: (626) 585-9600 / F: (626) 577-7079
Emails: dstormer@hadsellstormer.com
        rbrown@hadsellstormer.com

Attorneys for Defendant
PEOPLE'S CITY COUNCIL

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW WEINBERG, RABBI DOVID GUREVICH, NIR HOFTMAN, ELI TSIVES, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, JOHN DOE #1, PRESIDENT OF THE UCLA CHAPTER OF SJP, AJP EDUCATIONAL FOUNDATION, INC., D/B/A AMERICAN MUSLIMS FOR PALESTINE, OSAMA ABURSHAID, HATEM AL-BAZIAN, FACULTY FOR JUSTICE IN PALESTINE NEWTWORK, UC DIVEST COALITION, WESPAC FOUNDATION, PEOPLE'S CITY COUNCIL, <br><br> Defendants | Case No.: 2:25-cv-03714-MCS-JC <br><br> [Assigned to the Honorable Mark C. Scarsi – Courtroom 7C] <br><br> **DEFENDANT PEOPLE'S CITY COUNCIL'S SECOND SUPPLEMENTAL RESPONSE AND OBJECTIONS TO PLAINTIFFS' INTERROGATORIES, SET ONE** <br><br> Complaint Filed:        April 25, 2025 |

_____

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)

<span style="color:red">App. 55</span>

**PROPOUNDING PARTY:**    PLAINTIFFS

**RESPONDING PARTY:**    DEFENDANT People's City Council

**SET NUMBER:**    ONE (Nos. 1-10)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant People's City Council ("Defendant") hereby submits the following supplemental responses and objections to Plaintiffs' Interrogatories, Set One, as follows:

## I.    PRELIMINARY STATEMENT

Defendant has not completed its investigation of the facts relating to this case and has not completed their discovery in this action. Accordingly, all the responses contained herein are based only upon such information and documents which are currently available and specifically known to Defendant. It is anticipated that further independent investigation, discovery, legal research and analysis will supply additional facts, add meaning to the known facts, and establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in and variations from the responses herein set forth.

The following responses are given without prejudice to Defendant's right to introduce evidence of any subsequently discovered fact, witness or documents which Defendant may later recall or find. Defendant accordingly reserves the right to change any and all responses herein as additional facts are ascertained, analyses are made, legal research is completed, and contentions are made and considered in the light of ongoing discovery. The responses and objections contained herein are made in a good faith effort to supply as much factual information and as much specification of legal contentions as are presently known which should in no way be to the prejudice of Defendant in relation to future discovery, research or analysis.

## II.    OBJECTIONS TO PLAINTIFFS' INSTRUCTIONS AND DEFINITIONS

Defendant objects to Plaintiffs' instruction regarding "information in your possession, custody, or control" and Plaintiffs' definition of "People's City Council" as

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                    1

App. 56

they seek information protected by the attorney-client privilege and the attorney work product doctrine. Defendant also objects to Plaintiffs' instruction regarding "information in your possession, custody, or control" and Plaintiffs' definition of "People's City Council" as they purport to impose obligations upon it beyond those set forth in the Federal Rules of Civil Procedure and seeks information that is not relevant nor are proportional to the needs of the case. Information in the personal possession of Defendant's agents, representatives, accountants, attorneys, professionals, fiduciaries, directors, officers, employees, consultants, and any other person acting for or on behalf of Defendant are not within the possession, custody, or control of Defendant. *See, e.g., Lalumiere v. Willow Springs Care, Inc.*, No. 1:16-CV-3133-RMP, 2017 U.S. Dist. LEXIS 216041 at *5-6 (E.D. Wa. Sep. 18, 2017). As such, Defendant will not conduct a search for such information.

Defendant objects to Plaintiffs' instruction regarding "information no longer in your possession, custody, or control" because it imposes obligations upon it beyond those set forth in the Federal Rules of Civil Procedure, effectively creates numerous additional interrogatories with discrete subparts, exceeding the number of interrogatories permitted by Federal Rule of Civil Procedure 33, and seeks information that is not relevant nor is proportional to the needs of the case. Defendant further objects that this instruction is improper discovery on discovery and calls for information that is protected by the attorney client privilege and work product doctrine as it instructs Defendant to disclose confidential communications with counsel regarding preparing these discovery responses. *See, e.g., Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557, 566 (S.D. Cal. 2019). On this basis, Defendant will not respond to subsection 3 of this instruction.

Defendant objects to Plaintiffs' instruction regarding "lost, destroyed, or otherwise disposed of" and definition/instruction of the term "identify" regarding documents and communications that have been destroyed or lost on the grounds that they impose obligations upon it beyond those set forth in the Federal Rules of Civil Procedure and seek information that is not relevant nor are proportional to the needs of the case. Further,

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                2

App. 57

it is unduly burdensome for a collective with no paid staff to attempt to identify information and documents that do not exist over a several year period. Furthermore, this instruction effectively creates numerous additional interrogatories with discrete subparts, exceeding the number of interrogatories permitted by Federal Rule of Civil Procedure 33.

Defendant objects to Plaintiffs' defined period at issue on the grounds that it is unduly burdensome and seeks information that is clearly irrelevant to the case as the acts at issue in the lawsuit occurred in the late Spring of 2024 while the Interrogatories seek documents from January 2023 (well over a year before the events at issue) through present day (almost two years after the events at issue). Searching for responsive information for this extended period of time is unduly burdensome for Defendant, which, as a part-time volunteer run collective, has very limited resources to conduct an expansive search.  Per the Parties' discussion, Defendant will respond to each Interrogatory for the time period commencing September 1, 2023, unless otherwise specified.

Defendant objects to Plaintiffs' definition/instruction regarding the term "identify" because it imposes obligations upon it beyond those set forth in the Federal Rules of Civil Procedure, effectively creates numerous additional interrogatories with discrete subparts, exceeding the number of interrogatories permitted by Federal Rule of Civil Procedure 33, and seeks information that are not relevant nor are proportional to the needs of the case. Defendant further objects that this definition/instruction seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts, such as individual's employment information and employment contact information. On these bases, Defendant will not provide the current employer, current business address and telephone number, job or volunteer position, or job or volunteer duties for any identified individuals.

/ / /

/ / /

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                3

App. 58

## III.   SUPPLEMENTAL RESPONSES AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Fully describe Your organizational chart and the structure of Your committees, including any steering committees, at all times during the period at issue.

**RESPONSE TO INTERROGATORY NO. 1:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein.  Defendant objects that this Interrogatory is overbroad, unduly burdensome, and harassing. Defendant objects that this Interrogatory is overbroad as to time. Defendant further objects that this Interrogatory seeks documents that are not proportional to the needs of the case. Defendant further objects that this Interrogatory seeks information that is irrelevant. The Interrogatory is vague and ambiguous, as is the term "organizational chart." Defendant objects that this Interrogatory seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*.  Defendant further objects that this Interrogatory seeks information that is protected by the attorney client privilege, attorney work product protection doctrine, or by any other protection afforded by law. Defendant further objects that this Interrogatory seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. As Plaintiffs explained in their First Amended Complaint, Defendant is an "abolitionist, anti-capitalist, and anti-imperialist collective," which organizes around a variety of issues. Defendant objects that this Interrogatory is overbroad and seeks

information that is not proportional to the needs of the case, including information on Defendant's work that is unrelated to the UCLA student encampment or any of Plaintiffs' allegations. Defendant further objects that the term "organizational chart" is vague and ambiguous.

Defendant objects to this Interrogatory because it seeks disclosure of Defendant's internal organizational structure, internal affairs, and potentially identities of Defendant's members. Compelled disclosure of such information implicates Defendant's and its members' right to free association and would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or

subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. It is well established that political advocacy organizations, including Defendant, have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)). Here, disclosure of Defendant's internal structure would deter Defendant and its members from continuing to engage in protected political organizing. It would also subject Defendant to harassment from those who disagree with Defendant's political views, which Defendant has been subjected to in the past.  Furthermore, compelled disclosure of Defendant's membership is likely to "induce members to withdraw from [Defendant] and dissuade others from joining it because of fear of exposure of their beliefs." *NAACP*, 357 U.S. 447 at 463 (1958); *see also McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011).

As the internal organizational structure of Defendant sheds no light on Defendant's actions regarding the UCLA encampment, Plaintiffs cannot show that the information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Interrogatory is not narrowly tailored as it seeks a plethora of

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                      6

App. 61

information regarding the internal structure of Defendant, regardless of whether it pertains to Defendant's involvement in or response to the UCLA student encampment. The information sought by this Interrogatory is protected by the First Amendment and Defendant will not disclose it on this basis.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

PCC is comprised of five members. There are no committees.

**INTERROGATORY NO. 2:**

Identify all persons serving as Your officers, employees, contractors, volunteers, agents, or representatives during the period at issue, including any such persons who were at the UCLA encampment.

**RESPONSE TO INTERROGATORY NO. 2:**.

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Interrogatory is overbroad, unduly burdensome, and harassing. Defendant further objects that this Interrogatory seeks information that is not proportional to the needs of the case. Defendant further objects that this Interrogatory seeks information that is irrelevant.  Defendant objects that this Interrogatory seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. As Plaintiffs explained in their First Amended Complaint, Defendant is an "abolitionist, anti-capitalist, and anti-imperialist collective," which organizes around a variety of issues. Defendant objects that this Interrogatory is overbroad and seeks information that is not proportional to the needs of the case, including identities of individuals regardless of their involvement in or knowledge regarding the UCLA student

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                    7                    App. 62

encampment or any of Plaintiffs' allegations.

Defendant objects to this Interrogatory because it seeks disclosure of the identities of Defendant's members, representatives, and associates and Defendant's internal structure and strategy. Compelled disclosure of such information implicates Defendant's and its members' right to free association and would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. It is well established that compelled disclosure of Defendant's membership is likely to "induce members to withdraw from [Defendant] and dissuade others from joining it because of fear of exposure of their beliefs." *NAACP*, 357 U.S. 447 at 463 (1958); *see also McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011); *Bursey v. U.S.*, 466 F.2d 1059 (9th Cir. 1972). Publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of Defendant's members, representatives, and associates presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant, which will hamper Defendant's associational activities.

Furthermore, political advocacy organizations, including Defendant, have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)). Here, disclosure of Defendant's internal structure and strategy would deter Defendant and its members from continuing to engage in protected political organizing and deter individuals from joining or working with Defendant. It would also subject Defendant to harassment from those who disagree with Defendant's political views. For these reasons, disclosure will hamper Defendant's associational activities.

As the identities of and information concerning Defendant's officers, employees,

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                    9

App. 64

contractors, volunteers, agents, or representatives over a multi-year period sheds little light on Defendant's actions regarding the UCLA encampment, Plaintiffs cannot show that the information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Interrogatory is not narrowly tailored as it seeks a plethora of information regarding persons associated with Defendant, regardless of whether it pertains to Defendant's involvement in or response to the UCLA student encampment. The information sought by this Interrogatory is protected by the First Amendment.

Subject to and without waiving these objections, Defendant responds to this Interrogatory at this time as follows: Defendant provides the names of its members, which is publicly available information.

- Ricci Sergienko, c/o Defendant's counsel
- Jason Reedy, c/o Defendant's counsel
- Albert Corado, c/o Defendant's counsel
- Phillip Kim, c/o Defendant's counsel
- Steven Chun, c/o Defendant's counsel

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

The five members of PCC are:

- Ricci Sergienko, c/o Defendant's counsel
- Jason Reedy, c/o Defendant's counsel
- Albert Corado, c/o Defendant's counsel
- Phillip Kim, c/o Defendant's counsel
- Steven Chun, c/o Defendant's counsel

There are no other officers, employees, contractors, volunteers, agents, or representatives.

**INTERROGATORY NO. 3:**

Identify all persons and entities with whom You communicated regarding the

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                              10

Popular University for Gaza, the Campus Support Coalition, the UCLA Encampment, or efforts to reestablish the UCLA encampment during the period at issue.

**RESPONSE TO INTERROGATORY NO. 3:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Interrogatory is overbroad, unduly burdensome, and harassing. Defendant further objects that this Interrogatory seeks information that is not proportional to the needs of the case. Defendant further objects that this Interrogatory seeks information that is irrelevant. Defendant objects that this Interrogatory seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. See NAACP v. Alabama, 357 U.S. 449 (1958); Perry v. Schwarzenegger, 591 F.3d 1147 (9th Cir. 2010); see General Objections, supra. Defendant further objects that this Interrogatory seeks information that is protected by the attorney client privilege, attorney work product protection doctrine, or by any other protection afforded by law. Defendant further objects that this Interrogatory seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Interrogatory contains four discrete subparts and therefore is effectively four interrogatories.

Defendant objects that this Interrogatory is overly broad and unduly burdensome because it encompasses all Popular University for Gaza encampments across the country, while only one of these encampments, the UCLA encampment, is at issue in this lawsuit. It also encompasses *all* communications on these four distinct topics, regardless of their relevance to Plaintiffs' claims. Furthermore, a search for all communications regarding all Popular University for Gaza encampments across the country, the Campus Support

Coalition, the UCLA Encampment, and efforts to reestablish the UCLA Encampment, to ascertain the requested information, is unduly burdensome for a part-time volunteer-run collective. *See* Dkt. 110-2 at ¶ 4.  Defendant communicated with an estimated minimum of one hundred individuals and entities regarding all Palestine solidarity encampments. Furthermore, as discussed above, the period at issue is likewise unduly burdensome and seeks information that is clearly irrelevant to the case. A search for all responsive information would require Defendant to manually search through an estimated tens of thousands of messages on multiple platforms. This burden is not proportional to the needs of the case. On these grounds, Defendant will only conduct a search for communications regarding the UCLA student encampment from September 1, 2023 through June 30, 2025 (per Plaintiffs, the conclusion of Defendant's social media posts concerning the one-year anniversary of the 2024 encampment at UCLA).

Defendant objects to this Interrogatory because it seeks disclosure of information concerning Defendant's protected communications, the disclosure of the identities of individuals and entities affiliated with Defendant or which Defendant engaged in protected association activity with, and the disclosure of other political advocacy organizations' membership. Compelled disclosure of such information implicates Defendant's, individuals and entities affiliated with Defendant's, and individuals and entities Defendant has engaged in protected association activity with's right to free association and would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1)

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                    12

harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. The identities of political advocacy organization's members and affiliates are protected under the First Amendment, as are the identities of individuals who confidentially communicate with Defendant regarding political strategy. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation— and their ideas from suppression—at the hand of an intolerant society."); *Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                    13                    App. 68

donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect"); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Entities and individuals who communicate with Defendant regarding political organizing and strategy do so with an expectation of confidentiality. Disclosure of the identities of these individuals and entities will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

As the identities of entities and individuals who communicate with Defendant on this wide array of topics sheds little light on Defendant's actions regarding the UCLA encampment, Plaintiffs cannot show that the information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Interrogatory is not narrowly tailored as it seeks a plethora of information regarding persons who have communicated with Defendant, regardless of whether it pertains to Defendant's involvement in or response to the UCLA student encampment. The information sought by this Interrogatory is protected by the First Amendment and Defendant will not disclose it on this basis.

Defendant further objects that this Interrogatory seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                    14                    App. 69

federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another, particularly around sensitive political issues. Defendant likewise objects to the extent this Interrogatory seeks information regarding the identities of journalists who confidentially communicated with Defendant for the purpose of newsgathering. *See Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) ("Rooted in the First Amendment, the [journalist's] privilege is a recognition that society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public, is an interest of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice." (internal quotations and citation omitted)). Defendant will not disclose the identities of individuals and entities who it confidentially communicated or confidentially communicated with Defendant on this basis.

Subject to and without waiving these objections, Defendant responds to this Interrogatory at this time as follows: Pursuant to Federal Rule of Civil Procedure 33(d), Defendant directs Plaintiffs to PCC000828-904, which contains publicly available and non-privileged information regarding entities Defendant communicated with regarding the UCLA student encampment and efforts to reestablish the encampment from September 1, 2023 through June 30, 2025.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:**

Defendant objects that this Interrogatory is overly broad and unduly burdensome because it encompasses all Popular University for Gaza encampments across the country, while only one of these encampments, the UCLA encampment, is at issue in this lawsuit. It also encompasses *all* communications on these four distinct topics, regardless of their relevance to Plaintiffs' claims. Furthermore, a search for all communications regarding all Popular University for Gaza encampments across the country, the Campus Support Coalition, the UCLA Encampment, and efforts to reestablish the UCLA Encampment, to ascertain the requested information, is unduly burdensome for a part-time volunteer-run collective. *See* Dkt. 110-2 at ¶ 4. Defendant communicated with an estimated minimum

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                    15

App. 70

of one hundred individuals and entities regarding all Palestine solidarity encampments. Furthermore, as discussed above, the period at issue is likewise unduly burdensome and seeks information that is clearly irrelevant to the case. A search for all responsive information would require Defendant to manually search through an estimated tens of thousands of messages on multiple platforms. This burden is not proportional to the needs of the case. On these grounds, Defendant will only conduct a search for communications regarding the UCLA student encampment from September 1, 2023 through June 30, 2025 (per Plaintiffs, the conclusion of Defendant's social media posts concerning the one-year anniversary of the 2024 encampment at UCLA).

Defendant objects to this Interrogatory because it seeks disclosure of information concerning Defendant's protected communications, the disclosure of the identities of individuals and entities affiliated with Defendant or which Defendant engaged in protected association activity with, and the disclosure of other political advocacy organizations' membership. Compelled disclosure of such information implicates Defendant's, individuals and entities affiliated with Defendant's, and individuals and entities Defendant has engaged in protected association activity with's right to free association and would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)    16

50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. The identities of political advocacy organization's members, affiliates, and supporters are protected under the First Amendment, as are the identities of individuals who confidentially communicate with Defendant regarding political strategy. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *Brown v. Socialist Workers '74 Campaign Comm.* (Ohio), 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between

Plaintiff and its donor" and "has a reasonable possibility of a chilling effect"); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Entities and individuals who communicate with Defendant regarding political organizing and strategy do so with an expectation of confidentiality. Disclosure of the identities of these individuals and entities will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

As the identities of entities and individuals who communicate with Defendant on this wide array of topics sheds little light on Defendant's actions regarding the UCLA encampment, Plaintiffs cannot show that the information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Interrogatory is not narrowly tailored as it seeks a plethora of information regarding persons who have communicated with Defendant, regardless of whether it pertains to Defendant's involvement in or response to the UCLA student encampment. The information sought by this Interrogatory is protected by the First Amendment and Defendant will not disclose communications described above that are protected by the First Amendment nor the identities of those who made or received these protected communications and is withholding responsive communications on this basis.

Defendant further objects that this Interrogatory seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                    18                    App. 73

Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another, particularly around sensitive political issues. Defendant likewise objects to the extent this Interrogatory seeks information regarding the identities of journalists who confidentially communicated with Defendant for the purpose of newsgathering. *See Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) ("Rooted in the First Amendment, the [journalist's] privilege is a recognition that society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public, is an interest of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice." (internal quotations and citation omitted)). Defendant will not disclose the identities of individuals and entities who it confidentially communicated or confidentially communicated with Defendant and is withholding responsive communications on this basis..

Pursuant to Federal Rule of Civil Procedure 33(d), Defendant directs Plaintiffs to PCC000828-904, 1137-1513, which contains non-privileged information regarding entities Defendant communicated with regarding the UCLA student encampment and efforts to reestablish the encampment from September 1, 2023 through June 30, 2025.

**INTERROGATORY NO. 4:**

Identify the person or persons responsible for controlling Your official social media accounts during the period at issue.

**RESPONSE TO INTERROGATORY NO. 4:**.

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Interrogatory is overbroad, unduly burdensome, and harassing. Defendant further objects that this Interrogatory seeks information that is not proportional to the needs of the case. Defendant further objects that this Interrogatory seeks information that is irrelevant. Defendant further objects that this Request is overbroad as to time. Defendant objects that this Interrogatory seeks First Amendment-

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                    19

App. 74

protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. See NAACP v. Alabama, 357 U.S. 449 (1958); Perry v. Schwarzenegger, 591 F.3d 1147 (9th Cir. 2010); see General Objections, supra.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. As Plaintiffs explained in their First Amended Complaint, Defendant is an "abolitionist, anti-capitalist, and anti-imperialist collective," which organizes around a variety of issues. Defendant objects that this Interrogatory is overbroad and seeks information that is not proportional to the needs of the case, including information on Defendant's work that is unrelated to the UCLA student encampment or any of Plaintiffs' allegations. Defendant further objects that the term "controlling" is vague and ambiguous.

Defendant objects to this Interrogatory because it seeks disclosure of Defendant's internal organizational structure, internal affairs, and potentially identities of Defendant's members. Compelled disclosure of such information implicates Defendant's and its members' right to free association and would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to

Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. It is well established that political advocacy organizations, including Defendant, have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)). Here, disclosure of Defendant's internal structure would deter Defendant and its members from continuing to engage in protected political organizing. It would also subject Defendant to harassment from those who disagree with Defendant's political views, which Defendant has been subjected to in the past. Furthermore, compelled disclosure of Defendant's membership is likely to "induce members to withdraw from [Defendant] and dissuade others from joining it because of fear of exposure of their beliefs." *NAACP*, 357 U.S. 447 at 463 (1958); *see also McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                    21

App. 76

of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011).

The identity of the individual(s) who were responsible for controlling Defendant's social media accounts for an extended period of time and which post on a variety of unrelated issues is at best minimally relevant to Defendant's actions regarding the UCLA encampment, Plaintiffs cannot show that the information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Interrogatory is not narrowly tailored as it seeks a plethora of information regarding the internal operations of Defendant, regardless of whether it pertains to Defendant's involvement in or response to the UCLA student encampment. The information sought by this Interrogatory is protected by the First Amendment and Defendant will not disclose it.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

Defendant objects to this Interrogatory because it seeks disclosure of Defendant's internal organizational structure, internal affairs, and potentially identities of Defendant's members. Compelled disclosure of such information implicates Defendant's and its members' right to free association and would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members'

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                    22

associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. It is well established that political advocacy organizations, including Defendant, have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)). Here, disclosure of Defendant's internal structure would deter Defendant and its members from continuing to engage in protected political organizing. It would also subject Defendant to harassment from those who disagree with Defendant's political views, which Defendant has been subjected to in the past. Furthermore, compelled disclosure of Defendant's membership is likely to "induce members to withdraw from [Defendant] and dissuade others from joining it because of fear of exposure of their beliefs." *NAACP*, 357 U.S. 447 at 463 (1958); *see*

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                    23                    App. 78

*also McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011).

The identity of the individual(s) who were responsible for controlling Defendant's social media accounts for an extended period of time and which post on a variety of unrelated issues is at best minimally relevant to Defendant's actions regarding the UCLA encampment, Plaintiffs cannot show that the information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Interrogatory is not narrowly tailored as it seeks a plethora of information regarding the internal operations of Defendant, regardless of whether it pertains to Defendant's involvement in or response to the UCLA student encampment. The information sought by this Interrogatory is protected by the First Amendment and Defendant will not disclose it.

**INTERROGATORY NO. 5:**

Identify all documents and communications relating to the Popular University for Gaza and Campus Support Coalition produced during the period at issue.

**RESPONSE TO INTERROGATORY NO. 5:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Interrogatory is overbroad, unduly burdensome, and harassing. Defendant further objects that this Interrogatory seeks information that is not proportional to the needs of the case. Defendant further objects that this Interrogatory seeks information that is irrelevant. Defendant objects that this Interrogatory seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. See NAACP v. Alabama, 357 U.S. 449 (1958); Perry v. Schwarzenegger, 591 F.3d 1147 (9th Cir. 2010); see General Objections, supra. Defendant

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                    24

further objects that this Interrogatory seeks information that is protected by the attorney client privilege, attorney work product protection doctrine, or by any other protection afforded by law. Defendant further objects that this Interrogatory seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Interrogatory contains two discrete subparts and therefore is effectively two interrogatories.

Defendant objects that this Interrogatory is overly broad and unduly burdensome because it encompasses all Popular University for Gaza encampments across the country, while only one of these encampments, the UCLA encampment, is at issue in this lawsuit. It also encompasses *all* documents and communications on these two distinct topics, regardless of their relevance to Plaintiffs' claims. Furthermore, a search for all documents and communications regarding all Popular University for Gaza encampments across the country and the Campus Support Coalition is unduly burdensome for a part-time volunteer-run collective. *See* Dkt. 110-2 at ¶ 4. Defendant made an estimated over one thousand social media posts and communicated with an estimated minimum of one hundred individuals and entities regarding all Palestine solidarity encampments. Furthermore, as discussed above, the period at issue is likewise unduly burdensome and seeks information that is clearly irrelevant to the case. A search for all responsive information would require Defendant to manually search through an estimated over one hundred thousand social media posts and an estimated tens of thousands of messages, both on multiple platforms. This burden is not proportional to the needs of the case. On these grounds, Defendant will only conduct a search for documents and communications regarding the UCLA student encampment from September 1, 2023 through June 30, 2025 (per Plaintiffs, the conclusion of Defendant's social media posts concerning the one-year

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                25

<span style="color:red">App. 80</span>

anniversary of the 2024 encampment at UCLA).

Defendant objects to this Interrogatory because it seeks disclosure of information concerning Defendant's protected communications, the disclosure of the identities of individuals and entities affiliated with Defendant or which Defendant engaged in protected association activity with, the disclosure of other political advocacy organizations' membership, and the disclosure of Defendant's internal advocacy strategy. Compelled disclosure of such information implicates Defendant's, individuals and entities affiliated with Defendant's, and individuals and entities Defendant has engaged in protected association activity with's right to free association and would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                    26                    App. 81

out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. The identities of political advocacy organization's members, affiliates, and supporters are protected under the First Amendment, as are the identities of individuals who confidentially communicate with Defendant regarding political strategy. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *Brown v. Socialist Workers '74 Campaign Comm.* (Ohio), 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect"); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Entities and individuals who communicate with Defendant regarding political organizing and strategy do so with an expectation of confidentiality, especially given the politically

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                                27

App. 82

sensitive and controversial topic of Palestine and Israel. Disclosure of the identities of these individuals and entities and contents of their communications will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

Likewise, political advocacy organizations have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)); *see also Perry,* 591 F.3d 1147; *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984). Disclosure of Defendant's confidential internal documents will dissuade Defendant and its members from engaging in First Amendment protected activity in the future, such as organizing around various political issues and will dissuade others from joining or working with Defendant on political advocacy efforts in the future as they will fear exposure of their political strategy and advocacy efforts.

As information concerning all documents and communications relating a nation-wide initiative sheds little light on Defendant's actions regarding the UCLA encampment, Plaintiffs cannot show that the information they are requesting is highly relevant to their

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                    28

App. 83

claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Interrogatory is not narrowly tailored as it seeks a plethora of information regarding encampments and organizing efforts beyond the UCLA student encampment and Plaintiffs' allegations. Information sought by this Interrogatory is protected by the First Amendment and Defendant will not disclose it.

Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another. Defendant likewise objects to the extent this Interrogatory seeks information regarding information sharing with journalists who confidentially communicated with Defendant for the purpose of newsgathering. *See Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) ("Rooted in the First Amendment, the [journalist's] privilege is a recognition that society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public, is an interest of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice." (internal quotations and citation omitted)). Defendant will not disclose such confidential information.

Subject to and without waiving these objections, Defendant responds to this Interrogatory at this time as follows: Pursuant to Federal Rule of Civil Procedure 33(d), Defendant directs Plaintiffs to PCC000001-482, 484-653, 658-686, 691, 694-726, 731, 738-776, 778-1023, which contains publicly available and non-privileged documents and communications regarding the UCLA student encampment from September 1, 2023 through June 30, 2025. Defendant does not have any information concerning documents and communications relating to the Campus Support Coalition.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:**

Defendant objects that this Interrogatory is overly broad and unduly burdensome

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                29

because it encompasses all Popular University for Gaza encampments across the country, while only one of these encampments, the UCLA encampment, is at issue in this lawsuit. It also encompasses *all* documents and communications on these two distinct topics, regardless of their relevance to Plaintiffs' claims. Furthermore, a search for all documents and communications regarding all Popular University for Gaza encampments across the country and the Campus Support Coalition is unduly burdensome for a part-time volunteer-run collective. *See* Dkt. 110-2 at ¶ 4. Defendant made an estimated over one thousand social media posts and communicated with an estimated minimum of one hundred individuals and entities regarding all Palestine solidarity encampments. Furthermore, as discussed above, the period at issue is likewise unduly burdensome and seeks information that is clearly irrelevant to the case. A search for all responsive information would require Defendant to manually search through an estimated over one hundred thousand social media posts and an estimated tens of thousands of messages, both on multiple platforms. This burden is not proportional to the needs of the case. On these grounds, Defendant will only conduct a search for documents and communications regarding the UCLA student encampment from September 1, 2023 through June 30, 2025 (per Plaintiffs, the conclusion of Defendant's social media posts concerning the one-year anniversary of the 2024 encampment at UCLA).

Defendant objects to this Interrogatory because it seeks disclosure of information concerning Defendant's protected communications, the disclosure of the identities of individuals and entities affiliated with Defendant or which Defendant engaged in protected association activity with, the disclosure of other political advocacy organizations' membership, and the disclosure of Defendant's internal advocacy strategy. Compelled disclosure of such information implicates Defendant's, individuals and entities affiliated with Defendant's, and individuals and entities Defendant has engaged in protected association activity with's right to free association and would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                    30                    App. 85

Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am*., 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. The identities of political advocacy organization's members and affiliates are protected under the First Amendment, as are the identities of individuals who confidentially communicate with Defendant regarding political strategy. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs);

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                    31

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation— and their ideas from suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect"); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Entities and individuals who communicate with Defendant regarding political organizing and strategy do so with an expectation of confidentiality, especially given the politically sensitive and controversial topic of Palestine and Israel. Disclosure of the identities of these individuals and entities and contents of their communications will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

As information concerning all documents and communications relating a nation-wide initiative sheds little light on Defendant's actions regarding the UCLA encampment,

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                    32

App. 87

Plaintiffs cannot show that the information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Interrogatory is not narrowly tailored as it seeks a plethora of information regarding encampments and organizing efforts beyond the UCLA student encampment and Plaintiffs' allegations. Information sought by this Interrogatory is protected by the First Amendment and Defendant will not disclose communications described above that are protected by the First Amendment nor the identities of those who made or received these protected communications and is withholding responsive communications on this basis.

Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another. Defendant likewise objects to the extent this Interrogatory seeks information regarding information sharing with journalists who confidentially communicated with Defendant for the purpose of newsgathering. *See Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) ("Rooted in the First Amendment, the [journalist's] privilege is a recognition that society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public, is an interest of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice." (internal quotations and citation omitted)). Defendant will not disclose such confidential information and is withholding responsive communications on this basis.

Pursuant to Federal Rule of Civil Procedure 33(d), Defendant directs Plaintiffs to PCC000001-482, 484-653, 658-686, 691, 694-726, 731, 738-776, 778-1023, 1137-1513, which contains non-privileged documents and communications regarding the UCLA student encampment from September 1, 2023 through June 30, 2025. Defendant does not have any information concerning documents and communications relating to the Campus

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                          33

Support Coalition.

**INTERROGATORY NO. 6:**

Identify all documents and communications relating to the article *Advancing the Line, Emboldening the People: Reflections on the One-Year Anniversary of the UCLA Palestine Solidarity Encampment*, published by Unity of Fields on May 1, 2025, produced during the period at issue.

**RESPONSE TO INTERROGATORY NO. 6:**.

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Interrogatory is overbroad, unduly burdensome, and harassing.  Defendant further objects that this Interrogatory seeks information that is not proportional to the needs of the case. Defendant further objects that this Interrogatory seeks information that is irrelevant. Defendant objects that this Interrogatory seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. See NAACP v. Alabama, 357 U.S. 449 (1958); Perry v. Schwarzenegger, 591 F.3d 1147 (9th Cir. 2010); see General Objections, supra. Defendant further objects that this Interrogatory seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Interrogatory is overbroad as *all* documents and communications reflecting, referring or relating to the article are not relevant to Plaintiffs' claims.

Defendant objects to this Interrogatory because it seeks disclosure of information concerning Defendant's protected communications and the disclosure of the identities of individuals and entities affiliated with Defendant or which Defendant engaged in protected association activity with. Compelled disclosure of such information implicates

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                34

App. 89

Defendant's, individuals and entities affiliated with Defendant's, and individuals and entities Defendant has engaged in protected association activity with's right to free association and would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am*., 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. The identities of political advocacy organization's members and affiliates are protected under the First

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                35                     App. 90

Amendment, as are the identities of individuals who confidentially communicate with Defendant regarding political strategy. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation— and their ideas from suppression—at the hand of an intolerant society."); *Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect"); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Entities and individuals who communicate with Defendant regarding political organizing and strategy do so with an expectation of confidentiality, especially given the politically sensitive and controversial topic of Palestine and Israel. *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed). Disclosure of the identities of these individuals and entities and contents of their communications will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also

dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

As information concerning *all* documents and communications regarding an article sheds little light on Defendant's actions regarding the UCLA encampment, Plaintiffs cannot show that the information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. The information sought by this Interrogatory is protected by the First Amendment and Defendant will not disclose it.

Defendant further objects that this Interrogatory seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another about the politically sensitive and controversial topic of Israel and Palestine. Defendant likewise objects to the extent this Interrogatory seeks information regarding information sharing with journalists who confidentially communicated with Defendant for the purpose of newsgathering. *See Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) ("Rooted in the First Amendment, the [journalist's] privilege is a recognition that society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public, is an interest of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice." (internal quotations and citation omitted)). Defendant will not provide such protected information.

Subject to and without waiving these objections, Defendant responds to this Interrogatory at this time as follows: Pursuant to Federal Rule of Civil Procedure 33(d), Defendant directs Plaintiffs to PCC000663, 669-670, 673, 677, 742-776.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

Pursuant to Federal Rule of Civil Procedure 33(d), Defendant directs Plaintiffs to

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                    37                    App. 92

PCC000663, 669-670, 673, 677, 742-776, 1058, 1066-69.

**INTERROGATORY NO. 7:**

Identify the person employed by, affiliated with or acting on Your behalf who is most knowledgeable about Your sources of funds.

**RESPONSE TO INTERROGATORY NO. 7:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Interrogatory is overbroad, unduly burdensome, and harassing. Defendant further objects that this Interrogatory seeks information that is not proportional to the needs of the case. Defendant further objects that this Interrogatory seeks information that is irrelevant. Defendant objects that this Interrogatory seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. See NAACP v. Alabama, 357 U.S. 449 (1958); Perry v. Schwarzenegger, 591 F.3d 1147 (9th Cir. 2010); see General Objections, supra. Defendant further objects that this Interrogatory seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein.  Defendant objects that this Interrogatory is overly broad because it seeks information far beyond the scope of this lawsuit as Defendant is an "abolitionist, anti-capitalist, and anti-imperialist collective" which organizes around a variety of issues. Defendant's funding related to its advocacy work on issues wholly unrelated to the UCLA Palestine solidarity encampment is not relevant to Plaintiffs' claims. Defendant further objects that any sources of Defendant's funding are not relevant to Plaintiffs' allegations, including to Defendant's involvement in or response to the UCLA encampment.

Defendant objects to this Interrogatory because it seeks disclosure of Defendant's funding sources. Compelled disclosure of such information implicates Defendant's and its

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                    38

App. 93

members' right to free association and would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. A political advocacy organization's sources of financial support is protected by the First Amendment because the revelation of this information might chill the rights of group members. *Adolph Coors v. Wallace*, 570 F. Supp. 202, 208-10 (N.D. Cal. 1983); *see also Tree of Life*

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                39                    App. 94

*Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect"). In addition, political advocacy organizations have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)). Disclosure of information concerning Defendant's funding sources will cause any individuals or entities that provide funding to Defendant to cease providing funding to Defendant and other political advocacy organizations for fear of public exposure of their political views and associations. *See In re Anonymous Online Speakers*, 661 F.3d 1168 (9th Cir. 2011) (Any identifying information that would unmask anonymous speakers is also privileged). Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of Defendant's funding sources presents grave safety risks. For this reason, disclosure will also dissuade people and entities from providing funding to Defendant, which will hamper Defendant's associational activities.

As information regarding Defendant's funding sources sheds no light on Defendant's actions regarding the UCLA encampment, Plaintiffs cannot show that the information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Interrogatory is not narrowly tailored as it seeks information concerning all of Defendant's sources of funding, regardless of whether it pertains to Defendant's involvement in or response to the UCLA student encampment. The

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                    40                    App. 95

information sought by this Interrogatory is protected by the First Amendment.

Defendant further objects that this Interrogatory seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another and engaging in financial transactions.

Defendant further objects that this Interrogatory seeks information protected by the work product doctrine because it seeks to identify Defendant's designee for the upcoming Rule 30(b)(6) deposition of Defendant. Disclosure of the identity of this individual would reveal Defendant's counsel's mental impressions, conclusions, opinions, and legal theories regarding designating Rule 30(b)(6) deponents. Defendant will not disclose this protected information on this basis.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:**

Defendant objects that this Interrogatory is overly broad because it seeks information that is wholly irrelevant to this lawsuit. Defendant did not expend any funds in connection with the UCLA Palestine solidarity encampment and therefore, any sources of Defendant's funding are not relevant to Plaintiffs' allegations, including to Defendant's involvement in or response to the UCLA encampment. Defendant will not answer this Interrogatory on this basis.

Defendant objects to this Interrogatory because it seeks disclosure of Defendant's funding sources. Compelled disclosure of such information implicates Defendant's and its members' right to free association and would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                     41

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. A political advocacy organization's sources of financial support is protected by the First Amendment because the revelation of this information might chill the rights of group members. *Adolph Coors v. Wallace*, 570 F. Supp. 202, 208-10 (N.D. Cal. 1983); *see also Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect"). In addition, political advocacy organizations have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                    42                        App. 97

and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)). Disclosure of information concerning Defendant's funding sources will cause any individuals or entities that provide funding to Defendant to cease providing funding to Defendant and other political advocacy organizations for fear of public exposure of their political views and associations. *See In re Anonymous Online Speakers*, 661 F.3d 1168 (9th Cir. 2011) (Any identifying information that would unmask anonymous speakers is also privileged). Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of Defendant's funding sources presents grave safety risks. For this reason, disclosure will also dissuade people and entities from providing funding to Defendant, which will hamper Defendant's associational activities.

As information regarding Defendant's funding sources sheds no light on Defendant's actions regarding the UCLA encampment, Plaintiffs cannot show that the information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Interrogatory is not narrowly tailored as it seeks information concerning all of Defendant's sources of funding, despite the lack of use of any funding in connection with the UCLA student encampment. The information sought by this Interrogatory is protected by the First Amendment and Defendant will not respond on this basis.

Defendant further objects that this Interrogatory seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                43                **App. 98**

privacy when confidentially communicating with one another and engaging in financial transactions. Defendant will not respond on this basis.

Defendant further objects that this Interrogatory seeks information protected by the attorney client privilege and work product doctrine because it seeks to identify Defendant's designee for the upcoming Rule 30(b)(6) deposition of Defendant. Disclosure of the identity of this individual would reveal Defendant's counsel's confidential communications with Defendant, mental impressions, conclusions, opinions, and legal theories regarding designating Rule 30(b)(6) deponents. Defendant will not disclose this protected information on this basis.

**INTERROGATORY NO. 8:**

Identify the person employed by, affiliated with or acting on Your behalf who is most knowledgeable about the UCLA encampment.

**RESPONSE TO INTERROGATORY NO. 8:**.

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that the terms "most knowledgeable," "affiliated," and "acting on your behalf" are vague and ambiguous. Defendant objects that this Interrogatory seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. See NAACP v. Alabama, 357 U.S. 449 (1958); Perry v. Schwarzenegger, 591 F.3d 1147 (9th Cir. 2010); see General Objections, supra. Defendant further objects that this Interrogatory seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Interrogatory seeks information protected by the work product doctrine because it seeks to identify Defendant's designee for the upcoming

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                    44

Rule 30(b)(6) deposition of Defendant. Disclosure of the identity of this individual would reveal Defendant's counsel's mental impressions, conclusions, opinions, and legal theories regarding designating Rule 30(b)(6) deponents. Defendant will not disclose this protected information on this basis.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:**

Defendant objects that this Interrogatory seeks information protected by the attorney client privilege and work product doctrine because it seeks to identify Defendant's designee for the upcoming Rule 30(b)(6) deposition of Defendant. Disclosure of the identity of this individual would reveal Defendant's counsel's confidential communications with Defendant, mental impressions, conclusions, opinions, and legal theories regarding designating Rule 30(b)(6) deponents. Defendant will not disclose this protected information on this basis.

**INTERROGATORY NO. 9:**

Identify the person or persons who authored the article *Advancing the Line, Emboldening the People: Reflections on the One-Year Anniversary of the UCLA Palestine Solidarity Encampment*, published by Unity of Fields on May 1, 2025.

**RESPONSE TO INTERROGATORY NO. 9:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant further objects that this Interrogatory seeks information that is not proportional to the needs of the case. Defendant further objects that this Interrogatory seeks information that is irrelevant. Defendant objects that this Interrogatory seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. See NAACP v. Alabama, 357 U.S. 449 (1958); Perry v. Schwarzenegger, 591 F.3d 1147 (9th Cir. 2010); see General Objections, supra. Defendant further objects that this Interrogatory seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                    45                    App. 100

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Interrogatory seeks information that is irrelevant to Plaintiffs' allegations as the identity of the author of an article of an article affiliated with an organization that is not a party to this lawsuit shed no light on Defendant's involvement in or response to the UCLA student encampment.

Defendant objects to this Interrogatory because it seeks disclosure of the identity of an anonymous speaker. Compelled disclosure of such information implicates the anonymous speaker and Defendant's right to free association and would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                    46                    App. 101

out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. It is well established that the identity of an anonymous speaker is protected by the First Amendment. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *see also In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011); *Talley v. California*, 362 U.S. 60, 64-65 (1960). As the Ninth Circuit observed, "(a)s with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation . . . [or] concern about social ostracism.'" *In re Anonymous Online Speakers,* 661 F.3d at 1173 (quoting *McIntyre*, 514 U.S. at 341-42). Compelled disclosure of this anonymous individual's identity is likely to "induce members to withdraw from [Unity of Fields] and dissuade others from joining it because of fear of exposure of their beliefs." *NAACP*, 357 U.S. 447 at 463 (1958); *Bursey v. U.S.*, 466 F.2d 1059 (9th Cir. 1972). Disclosure will also dissuade individuals from engaging in associational activity with Defendant and independently for fear of public exposure of their anonymous identity and political beliefs.

As the identity of the author of an article is of little relevance to Plaintiffs' claims, Plaintiffs cannot show that the information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. The information sought by this Interrogatory is protected by the First Amendment and Defendant will not disclose it.

Defendant further objects that this Interrogatory seeks information that is protected

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                47

App. 102

by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts to the extent that the identity of the anonymous author was communicated to Defendant in confidence and both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another on this topic. Defendant will not disclose this protected information on this basis.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:**

Defendant objects to this Interrogatory because it seeks disclosure of the identity of an anonymous speaker. Compelled disclosure of such information implicates the anonymous speaker and Defendant's right to free association and would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                48

(N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. It is well established that the identity of an anonymous speaker is protected by the First Amendment. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *see also In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011); *Talley v. California*, 362 U.S. 60, 64-65 (1960). As the Ninth Circuit observed, "(a)s with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation . . . [or] concern about social ostracism.'" *In re Anonymous Online Speakers,* 661 F.3d at 1173 (quoting *McIntyre*, 514 U.S. at 341-42). Compelled disclosure of this anonymous individual's identity is likely to "induce members to withdraw from [Unity of Fields] and dissuade others from joining it because of fear of exposure of their beliefs." *NAACP*, 357 U.S. 447 at 463 (1958); *Bursey v. U.S.*, 466 F.2d 1059 (9th Cir. 1972). Disclosure will also dissuade individuals from engaging in associational activity with Defendant and independently for fear of public exposure of their anonymous identity and political beliefs.

As the identity of the author of an article is of little relevance to Plaintiffs' claims, Plaintiffs cannot show that the information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. The information sought by this Interrogatory is protected by the First Amendment and Defendant will not disclose it.

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                                     49                    <span style="color:red">App. 104</span>

Defendant further objects that this Interrogatory seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts to the extent that the identity of the anonymous author was communicated to Defendant in confidence and both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another on this topic. Defendant will not disclose this protected information on this basis.

**INTERROGATORY NO. 10:**

Identify the person or persons controlling, organizing, or otherwise managing Unity of Fields.

**RESPONSE TO INTERROGATORY NO. 10:.**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Interrogatory is overbroad as to time. Defendant further objects that this Interrogatory seeks information that is not proportional to the needs of the case. Defendant further objects that this Interrogatory seeks information that is irrelevant. Defendant objects that this Interrogatory seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. See NAACP v. Alabama, 357 U.S. 449 (1958); Perry v. Schwarzenegger, 591 F.3d 1147 (9th Cir. 2010); see General Objections, supra. Defendant further objects that this Interrogatory seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Interrogatory seeks information that is irrelevant to Plaintiffs' allegations as the identity of the individual(s) who controlled, organized, or managed an organization that is not a party to this lawsuit shed no light on Defendant's

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' ROGS (SET 1)                              50                              <span>App. 105</span>

involvement in or response to the UCLA student encampment.

Defendant objects to this Interrogatory because it seeks disclosure of the identity of an anonymous activist. Compelled disclosure of such information implicates the anonymous activist and Defendant's right to free association and would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. It is well

established that the identity of an anonymous activist is protected by the First Amendment. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011); *Talley v. California*, 362 U.S. 60, 64-65 (1960). As the Ninth Circuit observed, "As with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation . . . [or] concern about social ostracism.'" *In re Anonymous Online Speakers,* 661 F.3d at 1173 (quoting *McIntyre*, 514 U.S. at 341-42). Compelled disclosure of this organization's members is likely to "induce members to withdraw from [Unity of Fields] and dissuade others from joining it because of fear of exposure of their beliefs." *NAACP*, 357 U.S. 447 at 463 (1958); *Bursey v. U.S.*, 466 F.2d 1059 (9th Cir. 1972). Disclosure will also dissuade individuals from engaging in associational activity with Defendant and indecently for fear of public exposure of their anonymous identity and political beliefs.

As the identity of the leaders of this organization is of little relevance to Plaintiffs' claims, Plaintiffs cannot show that the information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Interrogatory is not narrowly tailored as it seeks a plethora of information regarding the internal structure of this organization, regardless of any responsive individual's involvement in the UCLA student encampment or relationship to Defendant. The information sought by this Interrogatory is protected by the First Amendment.

Defendant further objects that this Interrogatory seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts to the extent that the identity of the anonymous organizer(s) was

communicated to Defendant in confidence and both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another on this topic.

Subject to and without waiving these objections, Defendant responds to this Interrogatory at this time as follows: Defendant does not know the identify the person or persons controlling, organizing, or otherwise managing Unity of Fields. Defendant will not identify any person who may possess the requested information or the location where that information is found because doing so would require disclosure of First Amendment protected information.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10:**

Defendant objects to this Interrogatory because it seeks disclosure of the identity of an anonymous activist. Compelled disclosure of such information implicates the anonymous activist and Defendant's right to free association and would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the

information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. It is well established that the identity of an anonymous activist is protected by the First Amendment. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011); *Talley v. California*, 362 U.S. 60, 64-65 (1960). As the Ninth Circuit observed, "As with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation . . . [or] concern about social ostracism.'" *In re Anonymous Online Speakers,* 661 F.3d at 1173 (quoting *McIntyre*, 514 U.S. at 341-42). Compelled disclosure of this organization's members is likely to "induce members to withdraw from [Unity of Fields] and dissuade others from joining it because of fear of exposure of their beliefs." *NAACP*, 357 U.S. 447 at 463 (1958); *Bursey v. U.S.*, 466 F.2d 1059 (9th Cir. 1972). Disclosure will also dissuade individuals from engaging in associational activity with Defendant and indecently for fear of public exposure of their anonymous identity and political beliefs.

As the identity of the leaders of this organization is of little relevance to Plaintiffs' claims, Plaintiffs cannot show that the information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First

Amendment rights. Furthermore, as discussed above, this Interrogatory is not narrowly tailored as it seeks a plethora of information regarding the internal structure of this organization, regardless of any responsive individual's involvement in the UCLA student encampment or relationship to Defendant. The information sought by this Interrogatory is protected by the First Amendment.

Defendant further objects that this Interrogatory seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts to the extent that the identity of the anonymous organizer(s) was communicated to Defendant in confidence and both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another on this topic.

Defendant does not know the identify the person or persons controlling, organizing, or otherwise managing Unity of Fields. Defendant will not identify any person who may possess the requested information or the location where that information is found because doing so would require disclosure of First Amendment and right to privacy protected information.

Dated: April 24, 2026

Respectfully Submitted,

HADSELL STORMER RENICK & DAI LLP


By: /s/ Rebecca Brown
  Dan Stormer
  Rebecca Brown

Attorneys for Defendant People's City Council

## VERIFICATION

I am a member and representative of Defendant People's City Council in the above-captioned matter.  I am familiar with the contents of the foregoing **DEFENDANT PEOPLE'S CITY COUNCIL'S SECOND SUPPLEMENTAL RESPONSE AND OBJECTIONS TO PLAINTIFFS' INTERROGATORIES, SET ONE**.  The information supplied therein is based on my own personal knowledge, the personal knowledge of Defendant's members that has been provided to me, and/or has been supplied by my attorneys or other agents and is therefore provided as required by law.  The information contained in the foregoing document is true, except as to the matters which were provided by my attorneys or other agents, and, as to those matters, I am informed and believe that they are true.

I declare under penalty of perjury under the laws of the California and of the United States that the foregoing is true and correct.

Executed on _____04/24/26_____ at _____Los Angeles, CA_____.

_____Ricci Sergienko_____
Ricci Sergienko
People's City Council

App. 111

## **PROOF OF SERVICE**

I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 128 N. Fair Oaks Avenue, Pasadena, California 91103.

On April 24, 2026, I served the foregoing document described as: **DEFENDANT PEOPLE'S CITY COUNCIL'S SECOND SUPPLEMENTAL RESPONSE AND OBJECTIONS TO PLAINTIFFS' INTERROGATORIES, SET ONE and VERIFICATION** on the interested parties in this cause by sending true and correct electronic copies addressed as follows:

### **SEE ATTACHED SERVICE LIST**

<u>XX</u>    **BY EMAIL**

 <u>XX</u>   My electronic service address is avillegas@hadsellstormer.com. I caused the foregoing document(s) to be transmitted to the addressees listed above, and to the best of my knowledge, the transmission was complete and without error in that I did not receive an electronic notification to the contrary.

Executed on April 24, 2026, at Pasadena, California.

<u>XX</u>    (Federal)    I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

_____
Alexandra Villegas
Declarant

<span style="color:red">App. 112</span>

## SERVICE LIST

| | |
|---|---|
| William J. Brown, Jr.<br>Kyle J. Berry<br>BROWN WEGNER LLP<br>2010 Main Street, Suite 1260<br>Irvine, California 92614<br>Telephone: (949) 705-0080<br>Emails: bill@brownwegner.com<br>     kberry@brownwegner.com | **Attorneys for Plaintiff MATTHEW WEINBERG; RABBI DOVID GUREVICH; NIR HOFTMAN; and ELI TSIVES** |
| Thomas R. McCarthy (pro hac vice)<br>Zachary P. Grouev (pro hac vice)<br>Julius Kairey (pro hac vice)<br>Taxi Wilson (pro hac vice)<br>CONSOVOY MCCARTHY PLLC<br>1600 Wilson Blvd., Ste. 700<br>Arlington, VA 22209<br>Telephone: (703) 243-9423<br>Emails: tom@consovoymccarthy.com<br>     zach@consovoymccarthy.com<br>     julius@consovoymccarthy.com<br>     twilson@consovoymccarthy.com | **Attorneys for Plaintiff MATTHEW WEINBERG; RABBI DOVID GUREVICH; NIR HOFTMAN; and ELI TSIVES** |
| Richard A. Rosen (pro hac vice)<br>Omer Wiczyk (pro hac vice)<br>LOUIS D. BRANDEIS CENTER<br>FOR HUMAN RIGHTS UNDER LAW<br>1330 6th Avenue, 23rd Floor<br>New York, NY 10019<br>Telephone: (917) 363-9004<br>Emails: rrosen@brandeiscenter.com<br>     owiczyk@brandeiscenter.com | **Attorneys for Plaintiff MATTHEW WEINBERG; RABBI DOVID GUREVICH; NIR HOFTMAN; and ELI TSIVES** |
| Mark Kleiman<br>KLEIMAN / RAJARAM<br>12121 Wilshire Boulevard, #810<br>Los Angeles, CA 90025<br>Phone: 310-392-5455<br>Email: mark@krlaw.us | **Attorney for Defendant NATIONAL STUDENTS FOR JUSTICE IN PALESTINE** |

# Exhibit D

*Weinberg, et al. v. National Students for Justice in Palestine, et al.*

**Amended Privilege Log – Defendant People's City Council's Responses to Plaintiffs' Discovery Requests**

April 24, 2026

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 1. | Twitter direct messages | 2/12/25 | PCC 847 | Redacted portions: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding political views and associations with political organizations. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021) *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

1

App. 115

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 2. | Twitter direct messages | 4/26/24 | PCC 851-53 | Redacted portion: Identity of third party who associated with and communicated confidentially with Defendant; Confidential communications between Defendant and third party regarding political organizing strategy, third party's political opinions, and associations with political organizations. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021) *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 3. | Twitter direct messages | 4/25/24 | PCC 854 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. |

2

<span style="color:red">App. 116</span>

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | regarding political organizing strategy. | | 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 4. | Twitter direct messages | 4/30/24 | PCC 855 | Redacted portion: Identity of journalist third party who mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding journalist newsgathering. | Defendant and confidential third party | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026); *Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993)). |
| 5. | Twitter direct messages | 5/1/24 | PCC 856 | Redacted portion: Identity of third party who associated with and communicated confidentially with Defendant; Confidential communications between Defendant and third party | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity* |

3

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | regarding political organizing strategy, third party's political opinions, and third party's protest activity. | | *Found. v. Bonta*, 594 U.S. 595 (2021) *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 6. | Twitter direct messages | 5/23/24 | PCC 861 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding political organizing strategy and third party's political opinions. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. |

App. 118

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 7. | Twitter direct messages | 5/1/24 | PCC 862 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's protest activity, and third party's political opinion. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 8. | Twitter direct messages | 4/30/24 | PCC 864 | Redacted portion: Identity of third party who associated with and mutually engaged in | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); |

5

<span style="color:red">App. 119</span>

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinion. | | *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 9. | Twitter direct messages | 6/7/24, 6/10/24, 6/3/24 | PCC 865-66 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinion. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); |

6

<span style="color:red">App. 120</span>

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 10. | Twitter direct messages | 5/6/24 | PCC 867 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinion. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991));<br>Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---------|------------------|------------------|-------------------|-----------------------------------|----------------|-------------------|
| 11. | Twitter direct messages | 5/1/24-5/2/24, 4/25/24 | PCC 869-70, 872 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions, third party's political activity, and third party's political associations. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 12. | Twitter direct messages | 5/1/24 | PCC 873 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. |

8

<span style="color:red">App. 122</span>

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | regarding third party's political opinions, third party's political activity, and third party's political associations. | | 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 13. | Twitter direct messages | 5/22/24 | PCC 875 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions and third party's political associations. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. |

9

<span style="color:red">App. 123</span>

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 14. | Twitter direct messages | 5/6/24, 4/30/24 | PCC 877-78 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding political organizing strategy, third party's political opinions, third party's political activity, third party's political associations, personal identifying information of third party, and personal contact information. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 15. | Twitter direct messages | 6/3/24-6/4/24, 6/11/24, 5/22/24 | PCC 879-80 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers* |

10

App. 124

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | communications with Defendant; Confidential communications between Defendant and third party regarding political organizing strategy, third party's political opinions, and third party's political activity. | | '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 16. | Twitter direct messages | 5/1/24, 5/23/24 | PCC 882-83 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions, third party's political activity, personal health information of third party, and | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); |

11

App. 125

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---------|------------------|------------------|-------------------|-------------------------------------|----------------|-------------------|
|  |  |  |  | identifying information of third party's family member. |  | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 17. | Twitter direct messages | 5/1/24 | PCC 884 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions, political organizing strategy, and third party's political/protest activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

12

App. 126

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 18. | Twitter direct messages | 4/30/24-5/1/24 | PCC 885-87 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions, third party's protest activity, and third party's political association. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 19. | Twitter direct messages | 4/30/24-5/1/24 | PCC 888 | Redacted portion: Identity of journalist third party who mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party | Defendant and confidential third party | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. |

13

App. 127

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | regarding journalist newsgathering. | | 12, 2026); *Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993)). |
| 20. | Twitter direct messages | 4/30/24, 4/24/24 | PCC 889-90 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions, and third party's political/protest activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 21. | Twitter direct messages | 4/25/24, 5/1/24 | PCC 893-94 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 |

14

App. 128

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | communications between Defendant and third party regarding political opinions. | | (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 22. | Twitter direct messages | 5/1/24 | PCC 895 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding political opinions. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 |

15

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 23. | Twitter direct messages | 5/1/24 | PCC 896 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions, identity of activist, political organizing strategy, and third party's protest activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 24. | Twitter direct messages | 4/25/24 | PCC 898 | Redacted portion: Identity of third party who | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 |

16

App. 130

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | Defendant confidentially communicated with. | | U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 25. | Twitter direct messages | 5/23/24, 4/30/24 | PCC 899-900 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions, third party's protest activity, third party's political associations, and political organizing strategy. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g.,* |

17

App. 131

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 26. | Twitter direct messages | 5/1/24 | PCC 901-02 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions, third party's protest activity, and information regarding third party's family members. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

18

App. 132

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 27. | Twitter direct messages | 5/1/24 | PCC 903 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinion. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 28. | Twitter direct messages | 4/25/24 | PCC 1137 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. |

19

<span style="color:red">App. 133</span>

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---------|------------------|------------------|-------------------|-------------------------------------|----------------|-------------------|
| | | | | | | 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 29. | Twitter direct messages | 4/25/24 | PCC 1138 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. |

20

<span style="color:red">App. 134</span>

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 30. | Twitter direct messages | 4/25/24 | PCC 1139 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 31. | Twitter direct messages | 4/25/24 | PCC 1140 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021)); |

21

App. 135

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 32. | Twitter direct messages | 4/25/24 | PCC 1141 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 33. | Twitter direct messages | 4/25/24 | PCC 1142 | Redacted portion: Identity of third party who | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 |

22

<span style="color:red">App. 136</span>

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | Defendant confidentially communicated with. | | U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 34. | Twitter direct messages | 4/25/24 | PCC 1143 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. |

23

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 35. | Twitter direct messages | 4/25/24 | PCC 1144 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 36. | Twitter direct messages | 4/25/24 | PCC 1145 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity* |

24

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 37. | Twitter direct messages | 4/25/24 | PCC 1146 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

App. 139

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 38. | Twitter direct messages | 4/25/24 | PCC 1147 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 39. | Twitter direct messages | 4/25/24 | PCC 1148 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g.,* |

App. 140

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 40. | Twitter direct messages | 4/25/24 | PCC 1149 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 41. | Twitter direct messages | 4/25/24 | PCC 1150 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers* |

27

<span style="color:red">App. 141</span>

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *'74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 42. | Twitter direct messages | 4/25/24 | PCC 1151 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. |

28

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---------|------------------|------------------|-------------------|-----------------------------------|----------------|-------------------|
| | | | | | | LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 43. | Twitter direct messages | 4/25/24 | PCC 1152 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 44. | Twitter direct messages | 4/25/24 | PCC 1153 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021)); |

29

App. 143

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 45. | Twitter direct messages | 4/25/24 | PCC 1154 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 46. | Twitter direct messages | 4/25/24 | PCC 1155 | Redacted portion: Identity of third party who | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 |

30

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---------|------------------|------------------|-------------------|-----------------------------------|----------------|-------------------|
|  |  |  |  | Defendant confidentially communicated with. |  | U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 47. | Twitter direct messages | 4/25/24 | PCC 1156 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. |

31

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---------|------------------|------------------|-------------------|-----------------------------------|----------------|-------------------|
| | | | | | | 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 48. | Twitter direct messages | 4/25/24 | PCC 1157 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 49. | Twitter direct messages | 4/25/24 | PCC 1158 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity* |

App. 146

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 50. | Twitter direct messages | 4/25/24 | PCC 1159 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

App. 147

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 51. | Twitter direct messages | 4/25/24 | PCC 1160 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 52. | Twitter direct messages | 4/25/24 | PCC 1161 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g.,* |

34

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 53. | Twitter direct messages | 4/25/24 | PCC 1162 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 54. | Twitter direct messages | 4/25/24 | PCC 1163 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers* |

35

App. 149

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---------|------------------|------------------|-------------------|-----------------------------------|----------------|-------------------|
| | | | | | | *'74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 55. | Twitter direct messages | 4/25/24 | PCC 1164 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. |

36

App. 150

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 56. | Twitter direct messages | 4/25/24 | PCC 1165 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 57. | Twitter direct messages | 4/25/24 | PCC 1166 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021)); |

37

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 58. | Twitter direct messages | 4/25/24 | PCC 1167 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 59. | Twitter direct messages | 4/25/24 | PCC 1168 | Redacted portion: Identity of third party who | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 |

38

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | Defendant confidentially communicated with. | | U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 60. | Twitter direct messages | 4/25/24 | PCC 1169 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. |

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 61. | Twitter direct messages | 4/25/24 | PCC 1170 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 61. | Twitter direct messages | 4/25/24 | PCC 1171 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity* |

40

<span style="color:red">App. 154</span>

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 62. | Twitter direct messages | 4/25/24 | PCC 1172 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

App. 155

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 63. | Twitter direct messages | 4/25/24 | PCC 1173 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 64. | Twitter direct messages | 4/25/24 | PCC 1174 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g.,* |

42

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 65. | Twitter direct messages | 4/25/24, 4/30/24 | PCC 1175 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 66. | Twitter direct messages | 4/25/24, 5/1/24 | PCC 1176 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers* |

43

App. 157

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *'74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 67. | Twitter direct messages | 4/25/24, 5/1/24 | PCC 1177 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. |

44

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 68. | Twitter direct messages | 4/25/24, 4/30/24, 5/1/24 | PCC 1178-79 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 69. | Twitter direct messages | 4/25/24, 5/17/24, 5/23/24 | PCC 1180-81 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers* |

45

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *'74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 70. | Twitter direct messages | 4/25/24, 5/1/24, 5/23/24 | PCC 1182-83 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. |

App. 160

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 71. | Twitter direct messages | 4/25/24, 4/30/24, 5/1/24, 5/16/24 | PCC 1184-86 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding political organizing strategy. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 72. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1187 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); |

47

App. 161

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 73. | Twitter direct messages | 4/25/24, 4/30/24, 5/1/24, 5/23/24 | PCC 1188-89 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

48

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 74. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1190 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 75. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1191 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g.,* |

49

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 76. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1192 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 77. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1193 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers* |

50

App. 164

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *'74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 78. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1194 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. |

51

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 79. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1195 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 80. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1196 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021)); |

App. 166

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 81. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1197 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 82. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1198 | Redacted portion: Identity of third party who associated with and | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 |

App. 167

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinion and third party's political associations. | | U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 83. | Twitter direct messages | 4/25/24, 5/1/24, 5/23/24 | PCC 1199-2000 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinion and third | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO,* |

54

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | party's political associations. | | *Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 84. | Twitter direct messages | 4/25/24, 5/1/24, 5/23/24 | PCC 1201-02 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

App. 169

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---------|------------------|------------------|-------------------|-------------------------------------|----------------|-------------------|
| 85. | Twitter direct messages | 4/25/24 | PCC 1203 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 86. | Twitter direct messages | 4/25/24, 5/1/24, 5/22/24, 5/23/24 | PCC 1204-06 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions and third party's political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO,* |

56

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 87. | Twitter direct messages | 4/25/24, 4/30/24, 5/1/24-5/3/24, 6/11/24 | PCC 1207-10 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions and third party's political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. |

App. 171

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 88. | Twitter direct messages | 4/25/24, 4/30/24, 5/1/24 | PCC 1211-12 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 89. | Twitter direct messages | 5/1/24 | PCC 1213 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); |

58

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 90. | Twitter direct messages | 5/1/24, 5/17/24, 4/25/24 | PCC 1214-16 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 91. | Twitter direct messages | 4/25/24 | PCC 1217 | Redacted portion: Identity of third party who | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 |

59

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | Defendant confidentially communicated with. | | U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 92. | Twitter direct messages | 4/25/24 | PCC 1218 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. |

60

App. 174

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 93. | Twitter direct messages | 4/25/24, 4/26/24 | PCC 1219 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding political organizing strategy, third party's political opinion, and third party's political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 94. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1220-21 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers* |

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinion, and third party's political activity. | | '74 Campaign Comm. (Ohio), 459 U.S. 87, 91-92 (1982); Ams. for Prosperity Found. v. Bonta, 594 U.S. 595 (2021); Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (see e.g., Soto v. City of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995); Nuno v. Eslick, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 95. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1222 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (see e.g., NAACP v. Alabama, 357 U.S. 449, 462-63 (1958); Brown v. Socialist Workers '74 Campaign Comm. (Ohio), 459 U.S. 87, 91-92 (1982); Ams. for Prosperity Found. v. Bonta, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (see e.g., Soto v. City of Concord, 162 F.R.D. 603, 616 (N.D. Cal. |

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 96. | Twitter direct messages | 4/25/24 | PCC 1223 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 97. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1224 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 |

63

<span style="color:red">App. 177</span>

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | communications between Defendant and third party regarding third party's political opinion. | | (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 98. | Twitter direct messages | 4/25/24, 4/30/24- 5/2/24, 5/23/24 | PCC 1225- 26 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding political organizing strategy and third party's political opinion. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 |

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 99. | Twitter direct messages | 4/25/24, 5/1/24, 5/17/24, 5/23/24 | PCC 1227-30 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinion and third party's political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 100. | Twitter direct messages | 4/25/24 | PCC 1231 | Redacted portion: Identity of third party who | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 |

65

App. 179

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | Defendant confidentially communicated with. | | U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 101. | Twitter direct messages | 4/25/24 | PCC 1232 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. |

App. 180

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---------|------------------|------------------|-------------------|-----------------------------------|----------------|-------------------|
| | | | | | | 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 102. | Twitter direct messages | 4/25/24 | PCC 1233 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 103. | Twitter direct messages | 4/25/24, 4/30/24, 5/3/24, | PCC 1234-35 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity* |

67

App. 181

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | Defendant and third party regarding third party's political opinion and third party's political activity. | | *Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 104. | Twitter direct messages | 4/25/24, 4/30/24, 5/1/24, 5/23/24 | PCC 1236-38 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinion and political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. |

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 105. | Twitter direct messages | 4/25/24 | PCC 1239 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 106. | Twitter direct messages | 4/25/24, 4/30/24-5/2/24, 5/23/24 | PCC 1240-41 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 |

69

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 107. | Twitter direct messages | 4/25/24 | PCC 1242 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

App. 184

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 108. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1243 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 109. | Twitter direct messages | 4/25/24, 4/30/24 | PCC 1244 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g.,* |

71

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---------|------------------|------------------|-------------------|-----------------------------------|----------------|-------------------|
| | | | | | | *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 110. | Twitter direct messages | 4/25/24, 4/30/24, 5/1/24, 5/23/24 | PCC 1245-47 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 111. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1248 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers* |

72

<span style="color:red">App. 186</span>

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---------|------------------|------------------|-------------------|-----------------------------------|----------------|-------------------|
| | | | | | | '74 Campaign Comm. (Ohio), 459 U.S. 87, 91-92 (1982); Ams. for Prosperity Found. v. Bonta, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (see e.g., Soto v. City of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995); Nuno v. Eslick, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 112. | Twitter direct messages | 4/25/24, 4/30/24, 5/1/24, 5/23/24 | PCC 1249-51 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinion. | Defendant and confidential third party | First Amendment privilege re. association (see e.g., NAACP v. Alabama, 357 U.S. 449, 462-63 (1958); Brown v. Socialist Workers '74 Campaign Comm. (Ohio), 459 U.S. 87, 91-92 (1982); Ams. for Prosperity Found. v. Bonta, 594 U.S. 595 (2021); Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (see e.g., Soto v. City of Concord, 162 F.R.D. 603, 616 (N.D. Cal. |

73

App. 187

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 113. | Twitter direct messages | 4/25/24 | PCC 1252 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 114. | Twitter direct messages | 4/25/24 | PCC 1253 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 |

74

App. 188

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 115. | Twitter direct messages | 4/25/24, 4/30/24 | PCC 1254 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

App. 189

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 116. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1255 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 117. | Twitter direct messages | 4/25/24 | PCC 1256 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g.,* |

App. 190

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 118. | Twitter direct messages | 4/25/24, 4/30/24, 5/1/24, 5/22/24, 5/23/24 | PCC 1257-61 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinion. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

App. 191

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 119. | Twitter direct messages | 4/25/24, 4/30/24, 5/1/24, 5/3/24, 5/6/24, 5/17/24, 5/22/24, 5/23/24, 6/11/24 | PCC 1262-68 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 120. | Twitter direct messages | 4/25/24 | PCC 1269 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity* |

78

App. 192

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 121. | Twitter direct messages | 4/25/24, 4/30/24, 5/23/24 | PCC 1270-71 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 122. | Twitter direct messages | 4/25/24 | PCC 1272 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinion. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 123. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1273-74 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity* |

80

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 124. | Twitter direct messages | 4/25/24 | PCC 1275 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

App. 195

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 125. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1276 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinion. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 126. | Twitter direct messages | 4/25/24 | PCC 1277 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity* |

82

<span style="color:red">App. 196</span>

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 127. | Twitter direct messages | 4/25/24, 4/30/24, 5/2/24, 5/17/24, 5/23/24 | PCC 1278-79 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

83

App. 197

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 128. | Twitter direct messages | 4/25/24 | PCC 1280 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 129. | Twitter direct messages | 4/25/24, 5/1/24 | PCC 1281-82 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political association and political organizing. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO,* |

84

App. 198

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 130. | Twitter direct messages | 4/25/24 | PCC 1283-85 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding political organizing strategy. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. |

85

<span style="color:red">App. 199</span>

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 131. | Twitter direct messages | 4/25/24, 5/1/24, 5/6/24, 5/23/24 | PCC 1286-87 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 132. | Twitter direct messages | 4/25/24, 4/30/24-5/2/24 | PCC 1288-90 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv.* |

App. 200

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | political opinion and political activity. | | *Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 133. | Twitter direct messages | 4/25/24 | PCC 1291 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

App. 201

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 134. | Twitter direct messages | 4/30/24-5/2/24 | PCC 1292-97 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions, third party's political activity, and political organizing. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 135. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1298 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity* |

88

<span style="color:red">App. 202</span>

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 136. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1299 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

App. 203

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 137. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1300 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 138. | Twitter direct messages | 4/25/24, 5/1/24 | PCC 1301-02 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g.,* |

90

App. 204

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---------|------------------|------------------|-------------------|-----------------------------------|----------------|-------------------|
| | | | | | | *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 139. | Twitter direct messages | 4/25/24 | PCC 1303 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 140. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1304 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers* |

91

<span style="color:red">App. 205</span>

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---------|------------------|------------------|-------------------|-----------------------------------|----------------|-------------------|
| | | | | | | '74 Campaign Comm. (Ohio), 459 U.S. 87, 91-92 (1982); Ams. for Prosperity Found. v. Bonta, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (see e.g., Soto v. City of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995); Nuno v. Eslick, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 141. | Twitter direct messages | 4/25/24 | PCC 1305 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (see e.g., NAACP v. Alabama, 357 U.S. 449, 462-63 (1958); Brown v. Socialist Workers '74 Campaign Comm. (Ohio), 459 U.S. 87, 91-92 (1982); Ams. for Prosperity Found. v. Bonta, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (see e.g., Soto v. City of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995); Nuno v. Eslick, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. |

App. 206

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---------|------------------|------------------|-------------------|------------------------------------|----------------|-------------------|
| | | | | | | LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 142. | Twitter direct messages | 4/25/24 | PCC 1306 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions and third party's political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 143. | Twitter direct messages | 4/25/24, 4/30/24, 5/1/24, 5/23/24 | PCC 1307-09 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 |

93

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | communications between Defendant and third party regarding third party's political opinions, third party's political activity, political organizing strategy, and political associations. | | (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 144. | Twitter direct messages | 4/25/24 | PCC 1310 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions and third party's political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 |

94

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 145. | Twitter direct messages | 4/25/24, 4/30/24 | PCC 1311 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 146. | Twitter direct messages | 4/25/24, 5/1/24, 5/23/24, 6/5/24 | PCC 1312-14 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm.* |

95

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | Defendant; Confidential communications between Defendant and third party regarding third party's political opinions. | | *(Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 147. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1315 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. |

96

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 148. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1316 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 149. | Twitter direct messages | 4/25/24, 4/28/24, 5/1/24-5/3/24, 5/22/24-5/23/24, 6/11/24 | PCC 1317-20 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity* |

97

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | Defendant and third party regarding third party's political opinions, third party's political activity, and political organizing strategy. | | *Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 150. | Twitter direct messages | 4/25/24, 4/30/24, 5/3/24, 5/23/24 | PCC 1321-22 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. |

98

App. 212

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 151. | Twitter direct messages | 4/25/24 | PCC 1323 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 152. | Twitter direct messages | 4/25/24, 4/30/24, 5/1/24, 5/23/24 | PCC 1324-26 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021)); |

App. 213

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 153. | Twitter direct messages | 4/25/24, 5/1/24, 5/2/24 | PCC 1327-28 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 154. | Twitter direct messages | 4/25/24, 4/30/24 | PCC 1329 | Redacted portion: Identity of third party who associated with and | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 |

100

App. 214

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions. | | U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 155. | Twitter direct messages | 4/25/24, 4/26/24 | PCC 1330 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions and third party's private beliefs. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO,* |

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 156. | Twitter direct messages | 4/25/24, 4/30/24, 5/23/24 | PCC 1331-32 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

App. 216

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 157. | Twitter direct messages | 4/25/24, 4/30/24, 5/1/24, 5/22/24, 5/23/24 | PCC 1333-34 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 158. | Twitter direct messages | 4/25/24, 4/30/24, 5/2/24, 5/17/24, 5/22/24, 5/23/24 | PCC 1335-37 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g.,* |

App. 217

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---------|-----------------|-----------------|-------------------|-----------------------------------|----------------|-------------------|
| | | | | | | *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 159. | Twitter direct messages | 4/25/24 | PCC 1338 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021));<br>Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 160. | Twitter direct messages | 4/25/24, 4/30/24, 5/1/24, 5/22/24, | PCC 1339-42 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers* |

104

App. 218

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | 5/23/24, 6/11/24 | | communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions and third party's political activity. | | *'74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 161. | Twitter direct messages | 4/30/24, 5/1/24, 5/17/24 5/23/24 | PCC 1343-45 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions and third party's political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); |

App. 219

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 162. | Twitter direct messages | 4/25/24, 4/30/24, 5/1/24, 5/23/24 | PCC 1346-48 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

106

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 163. | Twitter direct messages | 4/25/24, 4/30/24, 5/1/24, 5/3/24, 5/6/13, 5/17/24, 5/22/24, 5/23/24 | PCC 1349-53 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions and political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 164. | Twitter direct messages | 4/25/24, 6/11/24, 6/14/24 | PCC 1354-55 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. |

107

App. 221

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | regarding third party's political opinions. | | 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 165. | Twitter direct messages | 4/25/24, 4/30/24, 5/1/24, 5/3/24, 5/6/24, 5/17/24, 5/22/24, 5/23/24, 6/11/24 | PCC 1356-61 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. |

**App. 222**

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 166. | Twitter direct messages | 5/23/24 | PCC 1362 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 167. | Twitter direct messages | 4/25/24, 4/28/24, 4/30/24, 5/1/24, 5/23/24 | PCC 1363-66 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv.* |

109

App. 223

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | political opinions, political activity, and political organizing. | | *Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 168. | Twitter direct messages | 4/25/24 | PCC 1367 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions and political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB |

110

App. 224

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 169. | Twitter direct messages | 5/23/24 | PCC 1368 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 170. | Twitter direct messages | 5/23/24 | PCC 1369 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity* |

111

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 171. | Twitter direct messages | 4/25/24, 4/28/24, 4/30/24, 5/1/24, 5/22/24 | PCC 1370-73 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding political association, political organizing, third party's political opinions, political organizing strategy, and political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. |

112

App. 226

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 172. | Twitter direct messages | 4/25/24, 4/26/24, 4/28/24 | PCC 1374 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions and third party's political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 173. | Twitter direct messages | 4/25/24, 4/30/24, 5/1/24, 5/6/24, 5/17/24, 5/22/24, 5/23/24 | PCC 1375-78 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 |

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | communications between Defendant and third party regarding third party's political opinions. | | (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 174. | Twitter direct messages | 5/3/24, 5/17/24, 5/23/24 | PCC 1379-81 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 |

114

App. 228

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 175. | Twitter direct messages | 4/25/24, 4/30/24, 5/1/24, 5/3/24, 5/22/24, 5/23/24 | PCC 1382-86 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions and third party's political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 176. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1387 | Redacted portion: Identity of third party who | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 |

115

App. 229

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | Defendant confidentially communicated with. | | U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 177. | Twitter direct messages | 4/25/24, 4/30/24, 5/1/24, 5/23/24 | PCC 1388-89 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions and third party's political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g.,* |

App. 230

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 178. | Twitter direct messages | 4/25/24, 4/30/24, 5/1/24, 5/3/24, 5/22/24, 5/23/24 | PCC 1391-95 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions and political organizing. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

117

<span style="color:red">App. 231</span>

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 179. | Twitter direct messages | 4/30/24, 5/1/24, 5/3/24, 5/6/24, 5/17/24, 5/22/24 | PCC 1396-99 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 180. | Twitter direct messages | 4/25/24, 4/30/24, 5/1/24, 5/22/24, 6/3/24 | PCC 1400-02 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity* |

118

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 181. | Twitter direct messages | 4/25/24, 5/23/24 | PCC 1403 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions and third party's political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. |

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 182. | Twitter direct messages | 5/1/24-5/3/24, 5/6/24, 5/17/24, 5/23/24 | PCC 1404-06 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions and political organizing. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 183. | Instagram direct messages | 4/26/24, 4/30/24, 5/2/24, 5/3/24 | PCC 1415-17 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 |

App. 234

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 184. | Twitter direct messages (2 pages) | 4/28/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding victimization of third party. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB |

121

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 185. | Twitter direct messages (2 pages) | 4/25/24, 4/30/24 | N/A (withheld) | Journalist third party mutually engaged in confidential communications with Defendant regarding journalist newsgathering. | Defendant and confidential third party | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026); *Shoen v. Shoen,* 5 F.3d 1289 (9th Cir. 1993)). |
| 186. | Twitter direct messages (1 page) | 5/1/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions, third party's financial contributions to political causes, political associations, and political organizing. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); *Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012)); |

122

App. 236

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 187. | Twitter direct messages (1 page) | 5/1/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions, financial contributions to political causes, political organizing, and personally identifying information of third party. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); *Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. |

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 188. | Twitter direct messages (1 page) | 5/1/24 | N/A (withheld) | Messages with third party who confidentially communicated with Defendant regarding third party's political opinions, political associations, and political organizing. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 189. | Twitter direct messages (1 page) | 5/1/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); |

124

<span style="color:red">App. 238</span>

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---------|------------------|------------------|-------------------|-------------------------------------|----------------|-------------------|
| | | | | communications with Defendant regarding third party's political opinions, financial contributions to political causes, and political organizing. | | *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); *Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 190. | Twitter direct messages (1 page) | 5/1/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions, financial contributions to | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity* |

125

App. 239

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | political causes, and political organizing. | | *Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); *Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 191. | Twitter direct messages (1 page) | 5/1/24 | N/A (withheld) | Journalist third party mutually engaged in confidential communications with Defendant regarding journalist newsgathering. | Defendant and confidential third party | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026); *Shoen v. Shoen,* 5 F.3d 1289 (9th Cir. 1993)). |

App. 240

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 192. | Twitter direct messages (1 page) | 5/1/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions and political organizing. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 193. | Twitter direct messages (1 page) | 5/1/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions, financial contributions to political causes, political | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. |

127

<span style="color:red">App. 241</span>

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---------|------------------|------------------|-------------------|-----------------------------------|----------------|-------------------|
| | | | | organizing, and personal identity information of third party. | | 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); *Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 194. | Twitter direct messages (1 page) | 5/1/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions, third party's political activity, and political organizing confidential details. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); |

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 195. | Twitter direct messages (1 page) | 5/1/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions, third party's political activity, and political organizing confidential details. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

129

<span style="color:red">**App. 243**</span>

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 196. | Twitter direct messages (1 page) | 5/1/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions, financial contributions to political causes, political organizing, third party's political activity, and third party's political associations. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); *Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 197. | Twitter direct messages (1 page) | 5/1/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); |

130

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---------|------------------|------------------|-------------------|-----------------------------------|----------------|-------------------|
| | | | | communications with Defendant regarding third party's political opinions, third party's political activity, and political organizing confidential details and information sharing. | | *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 198. | Twitter direct messages (2 pages) | 5/1/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions and political organizing confidential details and information sharing. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); |

131

App. 245

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 199. | Twitter direct messages (2 pages) | 4/24/24, 4/28/24, 5/1/24 | N/A (withheld) | Journalist third party confidentially communicated with Defendant regarding journalist newsgathering. | Defendant and confidential third party | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026); *Shoen v. Shoen,* 5 F.3d 1289 (9th Cir. 1993)). |
| 200. | Twitter direct messages (1 page) | 5/2/24 | N/A (withheld) | Messages with third party who confidentially communicated with Defendant regarding third party's political opinions and political organizing and information sharing. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO,* |

App. 246

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---------|------------------|------------------|-------------------|-----------------------------------|----------------|-------------------|
| | | | | | | *Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 201. | Twitter direct messages (1 page) | 5/3/24 | N/A (withheld) | Journalist third party confidentially communicated with Defendant regarding journalist newsgathering. | Defendant and confidential third party | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026); *Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993)). |
| 202. | Twitter direct messages (1 page) | 5/4/24 | N/A (withheld) | Messages with third party who confidentially communicated with Defendant regarding third party's political opinions. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv.* |

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 203. | Twitter direct messages (1 page) | 5/6/24 | N/A (withheld) | Messages with third party who confidentially communicated with Defendant regarding third party's political opinions and personally identifying information. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB |

134

App. 248

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 204. | Twitter direct messages (1 page) | 5/16/24 | N/A (withheld) | Messages with third party who confidentially communicated with Defendant regarding third party's political opinions and political organizing and information sharing. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 205. | Twitter direct messages (2 page) | 5/10/24 | N/A (withheld) | Journalist third party mutually engaged in confidential communications with Defendant regarding journalist newsgathering. | Defendant and confidential third party | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB |

135

<span style="color:red">App. 249</span>

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026); *Shoen v. Shoen,* 5 F.3d 1289 (9th Cir. 1993)). |
| 206. | Twitter direct messages (1 page) | 5/7/24, 5/17/24 | N/A (withheld) | Messages with third party who confidentially communicated with Defendant regarding third party's political opinions and third party's political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 207. | Twitter direct messages (1 page) | 4/28/24, 5/1/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers* |

App. 250

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | Defendant regarding third party's political opinions and political organizing. | | *'74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 208. | Twitter direct messages (1 page) | 5/5/24, 5/6/24, 5/17/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions, political associations, third party's political activities, and political organizing. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); |

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 209. | Twitter direct messages (1 page) | unknown | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions and political organizing/strategy. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

App. 252

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 210. | Twitter direct messages (1 page) | 6/10/24 | N/A (withheld) | Messages with third party who confidentially communicated with Defendant regarding third party's political opinions. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 211. | Twitter direct messages (2 pages) | 5/1/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions and political organizing and information sharing. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. |

139

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 212. | Twitter direct messages (1 page) | 6/11/24 | N/A (withheld) | Journalist third party mutually engaged in confidential communications with Defendant regarding journalist newsgathering. | Defendant and confidential third party | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026); *Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993)). |
| 213. | Twitter direct messages (1 page) | 7/2/24 | N/A (withheld) | Messages with third party who confidentially communicated with Defendant regarding third party's political opinions and political organizing/confidential information gathering. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity* |

App. 254

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 214. | Twitter direct messages (1 page) | 4/26/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions, third party's political activity, and political organizing confidential details and information sharing. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. |

141

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 215. | Twitter direct messages (6 pages) | 4/30/24-5/2/24, 5/23/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions, third party's political activity, political organizing confidential details and information sharing, personal identifying information, and personal contact information. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 216. | Twitter direct messages (1 page) | 4/25/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); |

App. 256

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | communications with Defendant regarding third party's political opinions, and political organizing confidential details and information sharing. | | *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 217. | Twitter direct messages (1 page) | unknown | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions and political organizing confidential details and information sharing. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); |

App. 257

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 218. | Twitter direct messages (1 page) | 6/11/24 | N/A (withheld) | Journalist third party mutually engaged in confidential communications with Defendant regarding journalist newsgathering. | Defendant and confidential third party | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026); *Shoen v. Shoen,* 5 F.3d 1289 (9th Cir. 1993)). |
| 219. | Twitter direct messages (10 pages) | 5/1/24, 5/5/24, 5/29/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions, political activity, and political organizing confidential details and information sharing. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO,* |

144

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 220. | Twitter direct messages (1 page) | 5/1/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions, third party's political activity, third party's contact information, and political organizing confidential details and information sharing. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. |

145

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 221. | Twitter direct messages (1 page) | 5/5/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 222. | Twitter direct messages (1 page) | 5/1/24, 5/2/24 | N/A (withheld) | Journalist third party mutually engaged in confidential communications with Defendant regarding journalist newsgathering. | Defendant and confidential third party | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. |

App. 260

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | LEXIS 6497 (E.D. Cal. Jan. 12, 2026); *Shoen v. Shoen,* 5 F.3d 1289 (9th Cir. 1993)). |
| 223. | Twitter direct messages (1 page) | 4/24/24, 4/25/24, 4/30/24 | N/A (withheld) | Journalist third party mutually engaged in confidential communications with Defendant regarding journalist newsgathering. | Defendant and confidential third party | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026); *Shoen v. Shoen,* 5 F.3d 1289 (9th Cir. 1993)). |
| 224. | Twitter direct messages (2 pages) | 5/1/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions and political organizing and information sharing. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. |

147

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 225. | Twitter direct messages (3 page) | 5/2/24, 5/3/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 226. | Twitter direct messages (2 pages) | 5/2/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers* |

148

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | Defendant regarding third party's political opinions. | | *'74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 227. | Twitter direct messages (1 page) | 5/1/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); |

149

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---------|------------------|------------------|-------------------|-----------------------------------|----------------|-------------------|
| | | | | | | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 228. | Twitter direct messages (1 page) | 4/28/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions and political organizing and information sharing. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

150

App. 264

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 229. | Twitter direct messages (1 page) | 5/1/24 | N/A (withheld) | Journalist third party confidentially communicated with Defendant regarding journalist newsgathering. | Defendant and confidential third party | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026); *Shoen v. Shoen,* 5 F.3d 1289 (9th Cir. 1993)). |
| 230. | Twitter direct messages (1 page) | 5/1/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions, third party's political activity, political association, and political organizing and information sharing. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. |

151

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 231. | Twitter direct messages (2 pages) | 4/25/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions and third party's political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 232. | Twitter direct messages (2 pages) | 4/28/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions, | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 |

152

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | third party's political activity, and political organizing and information sharing. | | (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 233. | Twitter direct messages (1 page) | 4/28/24, 5/6/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions and third party's political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 |

153

App. 267

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 234. | Instagram direct messages (1 page) | 5/1/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions, political organizing strategy, and third party's political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 235. | Instagram direct | 5/1/24 | N/A (withheld) | Messages with third party who confidentially communicated with | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 |

154

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | messages (1 page) | | | Defendant regarding third party's political opinions and third party's political activity. | | U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 236. | Instagram direct messages (1 page) | 5/5/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions, third party's political activity, political associations, and personally identifying information of third party. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO,* |

155

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 237. | Instagram direct messages (2 pages) | 5/8/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions and third party's political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. |

156

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 238. | Instagram direct messages (1 page) | 5/1/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions, third party's financial contributions to political causes, and political associations. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991); *Tree of Life Christian, Sch. v. City of Upper Arlington,* No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

157

App. 271

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 239. | Instagram direct messages (1 page) | 5/1/24 | N/A (withheld) | Messages with third party who confidentially communicated with Defendant regarding third party's political opinions and third party's political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 240. | Instagram direct messages (1 page) | 4/30/24 | N/A (withheld) | Messages with third party who confidentially communicated with Defendant regarding third party's political opinions and third party's political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. |

158

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 241. | Instagram direct messages (1 page) | 5/1/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions, third party's political activity, and political organizing and information sharing. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. |

App. 273

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 242. | Instagram direct messages (1 page) | 5/2/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 243. | Instagram direct messages (2 pages) | 5/3/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers* |

160

<span style="color:red">App. 274</span>

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | Defendant regarding third party's political opinions, third party's political activity, and identifying information regarding third party. | | *'74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 244. | Instagram direct messages (1 page) | 5/23/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions, third party's political activity, and personal contact information. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); |

App. 275

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 245. | Instagram direct messages (1 page) | 5/23/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions, third party's political activity, and personal contact information. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

App. 276

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 246. | Instagram direct messages (1 page) | 5/23/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions, third party's political activity, and personal contact information. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 247. | Instagram direct messages (1 page) | unknown | N/A (withheld) | Journalist third party confidentially communicated with Defendant regarding journalist newsgathering. | Defendant and confidential third party | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. |

163

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | 12, 2026); *Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993)). |
| 248. | Email | 5/13/24 | N/A (withheld) | Email from third party who confidentially communicated with Defendant regarding third party's political opinions and third party's political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 249. | Instagram direct messages (2 pages) | 5/3/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 |

App. 278

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | and third party's political activity. | | (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 250. | Instagram direct messages (1 page) | unknown | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions, third party's political activity, and personal contact information. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 |

165

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 251. | Instagram direct messages (1 page) | 5/23/24 | N/A (withheld) | Messages with third party associated with and mutually engaged in confidential communications with Defendant regarding third party's political opinions, third party's political activity, and personal contact information. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 252. | Instagram direct | 6/12/24 | N/A (withheld) | Messages with third party who confidentially communicated with | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 |

App. 280

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | messages (2 pages) | | | Defendant regarding third party's political opinions and third party's political activity. | | U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 253. | Twitter direct messages (1 page) | 5/124 | N/A (withheld) | Messages with third party who confidentially communicated with Defendant regarding third party's political opinions, third party's political activity, political organizing strategy, political associations, and personal contact information. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO,* |

167

<span style="color:red">App. 281</span>

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | *Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 254. | Twitter direct messages | 5/10/24 | PCC1425 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

168

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 255. | Twitter direct messages | 5/1/24 | PCC1426 | Redacted portions: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions, third party's political associations, and third party's political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 256. | Twitter direct messages | 5/6/24, 5/9/24, 5/17/24, 5/22/24 | PCC1427-28 | Redacted portions: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. |

169

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | regarding third party's political opinions, political associations, political organizing, and third party's political activity. | | 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 257. | Twitter direct messages | 5/2/24 | PCC1429 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. |

170

App. 284

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---------|------------------|------------------|-------------------|-----------------------------------|----------------|-------------------|
| | | | | | | LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 258. | Twitter direct messages | 6/5/24 | PCC1430 | Redacted portions: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions and third party's political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 259. | Twitter direct messages | 5/6/24 | PCC1431 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 |

171

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  | (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 260. | Twitter direct messages | 5/23/24 | PCC1432 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

App. 286

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| 261. | Twitter direct messages | 4/30/24 | PCC1433 | Redacted portions: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions and third party's political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 262. | Twitter direct messages | 5/1/24 | PCC1434 | Redacted portions: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. |

173

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | regarding third party's political opinions and third party's political activity. | | 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 263. | Twitter direct messages | 5/1/24 | PCC1435 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. |

174

**App. 288**

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 264. | Twitter direct messages | 6/11/24 | PCC1436 | Redacted portion: Identity of anonymous activist. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); In re Anonymous Online Speakers, 661 F.3d 1168 (9th Cir. 2011)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 265. | Twitter direct messages | 5/17/24, 5/22/24, 5/23/24 | PCC1437-38 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021)); |

175

App. 289

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | | | Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 266. | Twitter direct messages | 5/17/24 | PCC1439 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 267. | Twitter direct messages | 5/23/24 | PCC1440 | Redacted portion: Identity of third party who | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 |

176

<span style="color:red">App. 290</span>

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---|---|---|---|---|---|---|
| | | | | Defendant confidentially communicated with. | | U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 268. | Twitter direct messages | 4/30/24 | PCC1441 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. |

| Log No. | Type of Document | Date of Document | Title of Document | Document Subject Matter Description | Name of Author | Privilege Claimed |
|---------|------------------|------------------|-------------------|-----------------------------------|----------------|-------------------|
| | | | | | | 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 269. | Twitter direct messages | 5/17/24 | PCC1442 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 270. | Twitter direct messages | 4/30/24, 5/6/24, 5/23/24 | PCC1443-45 | Redacted portions: Identity of third party who associated with and mutually engaged in confidential communications with | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm.* |

178

| | | | | Defendant; Confidential communications between Defendant and third party regarding third party's political opinions. | | *(Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 271. | Twitter direct messages | 5/1/24 | PCC1446 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. |

179

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 272. | Twitter direct messages | 4/30/24 | PCC1447 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 273. | Twitter direct messages | 6/11/24 | PCC1448 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g.,* |

180

App. 294

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 277. | Twitter direct messages | 5/22/24 | PCC1449 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 278. | Email | 6/7/24 | PCC1450-52 | Redacted portion: Identity of third party who Defendant confidentially communicated with and personal contact information. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 |

181

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 279. | Email | 5/22/24 | PCC1453-61, PCC1472 | Redacted portion: Identity of third party who Defendant confidentially communicated with and personal contact information. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

| 280. | Email | 5/23/24 | PCC1462-71 | Redacted portion: Identity of third party who Defendant confidentially communicated with and personal contact information. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 281. | Email | 5/23/24 | PCC1473-80 | Redacted portion: Identity of third party who Defendant confidentially communicated with and personal contact information. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. |

App. 297

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 282. | Email | 6/12/24 | PCC1481 | Redacted portion: Identity of third party who Defendant confidentially communicated with and personal contact information. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 283. | Email | 5/22/24 | PCC1482-1504 | Redacted portion: Identity of third party who Defendant confidentially communicated with and personal contact information. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity* |

184

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | *Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 284. | Twitter direct messages | 5/23/24 | PCC1506 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 285. | Twitter direct messages | 4/30/24, 5/1/24 | PCC1507 | Redacted portions: Identity of third party who associated with and | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 |

185

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions and third party's political activity. | | U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 286. | Twitter direct messages | 5/1/24 | PCC1508 | Redacted portion: Identity of third party who associated with and mutually engaged in confidential communications with Defendant. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. |

186

<span style="color:red">App. 300</span>

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 287. | Twitter direct messages | 5/1/24 | PCC1509 | Redacted portions: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 288. | Twitter direct messages | 4/27/24, 4/28/24, 4/30/24 | PCC1510 | Redacted portions: Identity of third party who associated with and mutually engaged in confidential communications with | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm.* |

187

| | | | | Defendant; Confidential communications between Defendant and third party regarding third party's political opinions, political organizing strategy, and third party's political activity. | | *(Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
| 289. | Twitter direct messages | 5/23/24 | PCC1512 | Redacted portion: Identity of third party who Defendant confidentially communicated with. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick*, No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. |

| | | | | | | LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |
|---|---|---|---|---|---|---|
| 290. | Twitter direct messages | 5/23/24 | PCC1513 | Redacted portions: Identity of third party who associated with and mutually engaged in confidential communications with Defendant; Confidential communications between Defendant and third party regarding third party's political opinions and third party's political activity. | Defendant and confidential third party | First Amendment privilege re. association (*see e.g., NAACP v. Alabama,* 357 U.S. 449, 462-63 (1958); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio),* 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595 (2021); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991); Privacy rights of Defendant and third parties (*see e.g., Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Nuno v. Eslick,* No. 1:21-cv-00769-KES-SAB (PC), 2026 U.S. Dist. LEXIS 6497 (E.D. Cal. Jan. 12, 2026)). |

189

# Exhibit E

Dan Stormer, Esq. [S.B. #101967]
Rebecca Brown, Esq. [S.B. #336638]
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
T: (626) 585-9600 / F: (626) 577-7079
Emails: dstormer@hadsellstormer.com
          rbrown@hadsellstormer.com

Attorneys for Defendant
PEOPLE'S CITY COUNCIL

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW WEINBERG, RABBI DOVID GUREVICH, NIR HOFTMAN, ELI TSIVES,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, JOHN DOE #1, PRESIDENT OF THE UCLA CHAPTER OF SJP, AJP EDUCATIONAL FOUNDATION, INC., D/B/A AMERICAN MUSLIMS FOR PALESTINE, OSAMA ABURSHAID, HATEM AL-BAZIAN, FACULTY FOR JUSTICE IN PALESTINE NEWTWORK, UC DIVEST COALITION, WESPAC FOUNDATION, PEOPLE'S CITY COUNCIL,<br><br>Defendants | Case No.: 2:25-cv-03714-MCS-AYP<br><br>[Assigned to the Honorable Mark C. Scarsi – Courtroom 7C]<br><br>**DEFENDANT PEOPLE'S CITY COUNCIL'S SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE**<br><br>Complaint Filed:      April 25, 2025 |

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)

**PROPOUNDING PARTY:**    PLAINTIFFS

**RESPONDING PARTY:**    DEFENDANT People's City Council

**SET NUMBER:**    ONE (Nos. 1-34)

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant People's City Council ("Defendant") hereby submits the following supplemental responses and objections to Plaintiff's Requests for Production of Documents, Set One, as follows:

## I.    PRELIMINARY STATEMENT

At the outset, it should be noted that Defendant has not completed their investigation of the facts relating to this case and has not completed their discovery in this action.  Accordingly, all the responses contained herein are based only upon such information and documents which are currently available and specifically known to Defendant. It is anticipated that further independent investigation, discovery, legal research and analysis will supply additional facts, add meaning to the known facts, and establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in and variations from the responses herein set forth.

The following responses are given without prejudice to Defendant's right to introduce evidence of any subsequently discovered fact, witness or documents which Defendant may later recall or find. Defendant accordingly reserves the right to change any and all responses herein as additional facts are ascertained, analyses are made, legal research is completed, and contentions are made. The responses and objections contained herein are made in a good faith effort to supply as much factual information and as much specification of legal contentions as are presently known which should in no way be to the prejudice of Defendant in relation to future discovery, research or analysis.

## II.    OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Defendant objects to Plaintiffs' instructions regarding the production of metadata information on the grounds it is unduly burdensome. Creation of a .DAT file that contains information for each document produced imposes obligations beyond those set forth in

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    1

App. 306

Federal Rule of Civil Procedure 34. Defendant anticipates producing hundreds of responsive documents. Defendant is a collective managed by volunteers on a part time basis. Defendant does not have the capacity to create such a file for all documents produced. Defendant will provide metadata information for produced native documents where possible.

Defendant objects to Plaintiffs' instruction regarding documents no longer in its possession, custody, or control on the ground it imposes obligations upon it beyond those set forth in the Federal Rules of Civil Procedure and seeks information that is not relevant nor are proportional to the needs of the case. Further, it is unduly burdensome for a collective with no paid staff to attempt to identify documents that do not exist and information regarding these documents over a several year period. Defendant will not respond to this instruction.

Defendant objects to Plaintiffs' definition of "People's City Council" as it, and to each Request to the extent that it, seeks information protected by the attorney-client privilege, the attorney work product doctrine, or by any other protection afforded by law. Defendant also objects to Plaintiffs' definition of "People's City Council" as it, and to each Request to the extent that it, purports to impose obligations upon it beyond those set forth in the Federal Rules of Civil Procedure and seeks document that are not relevant nor are proportional to the needs of the case. Documents in the personal possession of Defendant's attorneys, former attorneys, accountants, financial advisors, investigators, agents, employees, representatives, directors, officers, consultants, and persons acting on behalf of Defendant are not within the possession, custody, or control of Defendant. *See, e.g.*, *Lalumiere v. Willow Springs Care, Inc.*, No. 1:16-CV-3133-RMP, 2017 U.S. Dist. LEXIS 216041 at *5-6 (E.D. Wa. Sep. 18, 2017). Likewise, Defendant objects to Plaintiffs' scope instruction on these same bases. On these grounds, Defendant will not search for nor produce documents that are in the personal possession of its attorneys, former attorneys, accountants, financial advisors, investigators, agents, employees, representatives, directors, officers, consultants, or persons acting on behalf of Defendant.

Defendant objects to Plaintiffs' definition/instruction regarding the term identify because it imposes obligations upon it beyond those set forth in the Federal Rules of Civil Procedure and seeks information that are not relevant nor are proportional to the needs of the case. Defendant will provide identifying information consistent with Federal Rules of Civil Procedure 34 and 26.

Defendant objects to Plaintiffs' defined period at issue on the grounds that it seeks information that is clearly irrelevant to the case as the acts at issue in the lawsuit occurred in the late Spring of 2024 while the Requests seek documents from January 2023 (well over a year before the events at issue) through present day (almost two years after the events at issue). Furthermore, searching for responsive documents in the period at issue is unduly burdensome for Defendant, a part-time volunteer-run collective. *See* Dkt. 110-2 at ¶ 4. A search for all responsive documents would require Defendant to manually search through an estimated over one hundred thousand social media posts and an estimated tens of thousands of messages, both on multiple platforms. This burden is not proportional to the needs of the case. Per the Parties' discussion, Defendant will search for responsive documents commencing September 1, 2023, unless otherwise specified. Defendant will search for responsive documents through June 30, 2025 (per Plaintiffs, the conclusion of Defendant's social media posts concerning the one-year anniversary of the 2024 encampment at UCLA), unless otherwise specified.

## III. SUPPLEMENTAL RESPONSES AND OBJECTIONS TO REQUESTS FOR PRDUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All documents relied upon, consulted, or referenced in your responses to Plaintiffs' first set of interrogatories, served concurrently with these requests.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant incorporates by reference Defendant's objections to each Interrogatory. Defendant objects that this Request is overbroad, unduly burdensome, and

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                3                <span style="color:red">App. 308</span>

harassing. Defendant further objects that this Request seeks documents that are not proportional to the needs of the case. Defendant further objects that this Request seeks information that is irrelevant. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*. Defendant further objects that this Request seeks information that is protected by the attorney client privilege, attorney work product protection doctrine, or by any other protection afforded by law. Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant incorporates by reference Defendant's objections to each Interrogatory.

Subject to and without waiving these objections, Defendant responds to this Request at this time as follows: PCC000001-482, 484-653, 658-686, 691, 694-726, 731, 738-776, 778-1023.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Defendant identifies the following responsive documents: PCC000001-482, 484-653, 658-686, 691, 694-726, 731, 738-776, 778-1513.

**REQUEST FOR PRODUCTION NO. 2:**

Documents sufficient to show PCC's organizational structure. This request includes but is not limited to all organizational charts, filings with any governmental entity or

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    4                    App. 309

insurer reflecting PCC's organizational structure, the recordings and minutes of any organizational meetings, and memoranda or other documents reflecting, referring or relating to PCC's organizational structure.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**.

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is overbroad, unduly burdensome, and harassing. Defendant objects that this Request is overbroad as to time. Defendant further objects that this Request seeks documents that are not proportional to the needs of the case. Defendant further objects that this Request seeks information that is irrelevant. Defendant objects that this Request is vague and ambiguous, as are the terms "sufficient to show" and "organizational structure." Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*. Defendant further objects that this Request seeks information that is protected by the attorney client privilege, attorney work product protection doctrine, or by any other protection afforded by law. Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is overbroad, particularly as to recordings and minutes of meetings and documents referring or relating to Defendant's organizational structure, which may be cumulative as to organizational structure and may contain large quantities of information not responsive to this Request or otherwise

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                     5                     <span style="color:red">App. 310</span>

relevant to nor proportional to the needs of the case. The internal organizational structure of Defendant sheds no light on Defendant's actions regarding the UCLA encampment.

Defendant objects to this Request because it seeks disclosure of Defendant's internal organizational structure, and recordings and minutes of organizational meetings which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's and its members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am*., 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise

unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. It is well established that political advocacy organizations, including Defendant, have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)); *see also Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed). Here, disclosure of Defendant's internal structure would deter Defendant and its members from continuing to engage in protected political organizing. It would also subject Defendant to harassment from those who disagree with Defendant's political views, which Defendant has been subjected to in the past.  Furthermore, compelled disclosure of Defendant's membership is likely to "induce members to withdraw from [Defendant] and dissuade others from joining it because of fear of exposure of their beliefs." *NAACP*, 357 U.S. 447 at 463 (1958); *see also McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011).

As the internal organizational structure of Defendant sheds no light on Defendant's actions regarding the UCLA encampment, Plaintiffs cannot show that the information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as

discussed above, this Request is not narrowly tailored as it seeks a plethora of documents regarding the internal structure of Defendant, regardless of whether it pertains to Defendant's involvement in or response to the UCLA student encampment.

Subject to and without waiving these objections, Defendant responds to this request at this time as follows: Defendant does not have any responsive documents in its possession, custody or control.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Defendant does not have any responsive documents in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 3:**

All documents reflecting, referring or relating to the roles played and functions performed by Jason Reedy, Albert Corado, and Ricci Sergienko in Your organization, including but not limited to documents regarding Reedy, Corado, and Sergienko's roles as organizers in Your organization.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is overbroad, unduly burdensome, and harassing. Defendant further objects that this Request seeks documents that are not proportional to the needs of the case. Defendant further objects that this Request seeks information that is irrelevant. Defendant objects that this Request is vague and ambiguous, as are the terms "roles played," "functions," and "organizers." Defendant further objects that this Request is overbroad as to time. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*. Defendant further objects that this Request seeks information that is protected by the

attorney client privilege, attorney work product protection doctrine, or by any other protection afforded by law. Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is overbroad as it seeks information that is wholly unrelated to the UCLA student encampment and any involvement in or response to by Defendant, such as Reedy's, Corado's, and Sergienko's roles in actions taken by Defendant on issues that have nothing to do with any of the allegations set forth in the complaint. As Plaintiffs explained in their First Amended Complaint, Defendant is an "abolitionist, anti-capitalist, and anti-imperialist collective," which organizes around a variety of issues. Furthermore, given the vast scope of this Request, it is unduly burdensome for a part-time volunteer-run collective to search for *all* documents regarding *any* role and *any* function performed by three individuals related to *any* political issue for Defendant. *See* Dkt. 110-2 at ¶ 4. This burden is not proportional to the needs of the case.

Defendant objects to this Request because it seeks disclosure of Defendant's members' "roles played and functions" which is protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's and its members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    9

App. 314

test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am*., 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. It is well established that political advocacy organizations, including Defendant, have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)); *see also Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    10                    **App. 315**

participate in meetings if minutes of meetings were to be disclosed). Compelled disclosure of Defendant's members' roles is likely to "induce members to withdraw from [Defendant] and dissuade others from joining it because of fear of exposure of their beliefs." *NAACP*, 357 U.S. 447 at 463 (1958).

Plaintiffs cannot show that information regarding Reedy's, Corado's, and Sergienko's roles within Defendant, particularly Reedy's, Corado's, and Sergienko's roles related to advocacy and organizing that is unrelated to the allegations in the FAC, is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Request is not narrowly tailored as it seeks a plethora of documents regarding Reedy's, Corado's, and Sergienko's roles, regardless of whether it pertains to Defendant's involvement in or response to the UCLA student encampment.

Subject to and without waiving these objections, Defendant responds to this request at this time as follows: Defendant does not have any responsive documents in its possession, custody or control.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Defendant does not have any responsive documents in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 4:**

All documents reflecting, referring or relating to Reedy and Corado's roles in the production of People's City Propaganda, including but not limited to documents regarding the production of the July 19, 2024, episode of People's City Propaganda titled "Student Intifada."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:.**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is overbroad, unduly burdensome, harassing, and made for an improper purpose.  Defendant further objects that this Request

seeks documents that are not proportional to the needs of the case. Defendant further objects that this Request seeks information that is irrelevant.  Defendant objects that this Request is vague and ambiguous, as is the term "roles."  Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*. Defendant further objects that this Request seeks information that is protected by the attorney client privilege, attorney work product protection doctrine, or by any other protection afforded by law. Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein.  Defendant objects that this Request is overbroad and unduly burdensome. Reedy and Corado's roles in the production of People's City Propaganda podcast are wholly unrelated to Defendant's involvement in and response to the UCLA student encampment. Furthermore, despite only identifying one episode about the UCLA student encampment, Plaintiffs seek documents related to Reedy and Corado's roles in the production of *all* episodes of the podcast, including all other episodes which did not discuss any topics relevant to Plaintiffs' allegations.  This Request seeks information that is not relevant to the case and requires a search that is highly burdensome for a part-time volunteer-run collective, and is therefore not proportional to the needs of the case. *See* Dkt. 110-2 at ¶ 4.

Defendant objects to this Request because it seeks disclosure of Defendant's members' roles relating to political associations and podcast guests' political associations,

which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's, Defendant's members', and People's City Propaganda's guests' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am*., 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. It is well established that political advocacy organizations, including Defendant and People's City

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    13                    App. 318

Propaganda, have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)). Here, disclosure of Reedy's and Corado's roles in the production of People's City Propaganda would deter Reedy, Corado, others involved in People's City Propaganda, Defendant, and Defendant's members from continuing to engage in protected political organizing. *See Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed). Furthermore, compelled disclosure of Reedy's and Corado's roles is likely to "induce [participants] to withdraw from [People's City Propaganda] and dissuade others from joining it because of fear of exposure of their beliefs." *NAACP*, 357 U.S. 447 at 463 (1958); *see also In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011).

Plaintiffs cannot show that all documents regarding Reedy and Corado's roles in the production of the People's City Propaganda podcast are highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Request is not narrowly tailored as it seeks a documents regarding *all* episodes of People's City Propaganda, regardless of whether they discuss Defendant's involvement in or response to the UCLA student encampment. The documents sought by this Request are protected by the First Amendment.

Defendant likewise objects to the extent this Request seeks documents regarding Defendant's, Corado's, and Reedy's newsgathering efforts. *See Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) ("Rooted in the First Amendment, the [journalist's] privilege is a recognition that society's interest in protecting the integrity of the newsgathering process,

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                        14                        App. 319

and in ensuring the free flow of information to the public, is an interest of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice." (internal quotations and citation omitted)).

Subject to and without waiving these objections, Defendant conducted a search for responsive documents regarding the July 19, 2024 podcast episode and responds to this request at this time as follows: PCC000846.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Defendant objects that this Request is overbroad and unduly burdensome. Reedy and Corado's roles in the production of People's City Propaganda podcast are wholly unrelated to Defendant's involvement in and response to the UCLA student encampment. Furthermore, despite only identifying one episode about the UCLA student encampment, Plaintiffs seek documents related to Reedy and Corado's roles in the production of *all* episodes of the podcast, including all other episodes which did not discuss any topics relevant to Plaintiffs' allegations.  This Request seeks information that is not relevant to the case and requires a search that is highly burdensome for a part-time volunteer-run collective, and is therefore not proportional to the needs of the case. *See* Dkt. 110-2 at ¶ 4. Accordingly, Defendant only conducted a search for responsive documents regarding the July 19, 2024 podcast episode.

Defendant identifies the following responsive documents: PCC000846.

**REQUEST FOR PRODUCTION NO. 5:**

All documents reflecting, referring or relating to the interview with Unity of Fields that PCC conducted in March of 2025 and posted on its official Instagram page on March 13, 2025.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is overbroad, unduly burdensome, harassing, and made for an improper purpose.  Defendant further objects that this Request

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                     15                     <span style="color:red">App. 320</span>

seeks documents that are not proportional to the needs of the case. Defendant further objects that this Request seeks information that is irrelevant. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*. Defendant further objects that this Request seeks information that is protected by the attorney client privilege, attorney work product protection doctrine, or by any other protection afforded by law. Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is overbroad as *all* documents reflecting, referring or relating to the Unity of Fields interview with Defendant are not relevant to Plaintiffs' claims.

Defendant objects to the extent this Request seeks information regarding information shared with journalists who confidentially communicated with Defendant for the purpose of newsgathering. *See Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) ("Rooted in the First Amendment, the [journalist's] privilege is a recognition that society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public, is an interest of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice." (internal quotations and citation omitted)).

Subject to and without waiving these objections, Defendant responds to this request at this time as follows: PCC000260-275, 654-657, 783-790, 812-827. Defendant

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    16

App. 321

attempted to obtain metadata for these documents. Defendant was unable to obtain metadata for its tweets. Defendant was able to obtain metadata for its direct messages sent and received via Twitter, but the data was only provided in one file for all of Defendant's direct messages sent and received on Twitter, and as the file contains metadata for thousands of messages, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive message. Likewise, Defendant was able to obtain metadata for its posts on Instagram and direct messages sent and received via Instagram, but the data was only provided in one file for all of Defendant's Instagram posts and one file for all of Defendant's direct messages sent and received on Instagram, and as the files contain metadata for thousands of posts and thousands of messages, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive post and message. The responsive articles produced are reproductions from publicly available sources and Defendant does not have metadata for the original documents in its possession, custody, or control.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Defendant identifies the following responsive documents: PCC000260-275, 654-657, 783-790, 812-827, 1050-51, 1505. Defendant attempted to obtain metadata for these documents. Defendant was unable to obtain metadata for its tweets. Defendant was able to obtain metadata for its direct messages sent and received via Twitter, but the data was only provided in one file for all of Defendant's direct messages sent and received on Twitter, and as the file contains metadata for thousands of messages, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive message. Likewise, Defendant was able to obtain metadata for its posts on Instagram and direct messages sent and received via Instagram, but the data was only provided in one file for all of Defendant's Instagram posts and one file for all of Defendant's direct messages sent and received on Instagram, and as the files contain metadata for thousands of posts and thousands of messages, it is unduly burdensome for Defendant to identify and

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    17                    App. 322

produce the metadata for each responsive post and message. The responsive articles produced are reproductions from publicly available sources and Defendant does not have metadata for the original documents in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 6:**

All communications on the subject of Jason Reedy, Albert Corado, and Ricci Sergienko's roles and functions in Your organization, including but not limited to communications between PCC and WESPAC, AMP, NSJP, NFJP, UC Divest, Unity of Fields, or any other third party.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**.

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant further objects that this Request is overbroad as to time. Defendant objects that this Request is overbroad, unduly burdensome, and harassing. Defendant objects that this Request is vague and ambiguous, as are the terms "roles" and "functions." The Request for "all communications" and "any other third party" are unparticularized, overbroad, unduly burdensome, vague, ambiguous, and seeks documents that are neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence—including to the extent it seeks "all communications" regardless of relevance to this litigation. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*. Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

/ / /

/ / /

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    18                    App. 323

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein.  Defendant objects that this Request is overbroad as it seeks information that is wholly unrelated to the UCLA student encampment and any involvement in or response to by Defendant, such as Reedy's, Corado's, and Sergienko's roles in actions taken by Defendant on issues that have nothing to do with any of the allegations set forth in the complaint. As Plaintiffs explained in their First Amended Complaint, Defendant is an "abolitionist, anti-capitalist, and anti-imperialist collective," which organizes around a variety of issues. Furthermore, given the scope of this Request, it is unduly burdensome for a part-time volunteer-run collective to search for *all* communications regarding *any* role and *any* function performed by three individuals related to *any* political issue for Defendant. *See* Dkt. 110-2 at ¶ 4.  This burden is not proportional to the needs of the case.

Defendant objects to this Request because it seeks disclosure of Defendant's members' roles which is protected by the First Amendment. This Request also seeks information regarding third parties' political associations, confidentially expressed political views, and political strategy, which is likewise protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's and its members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    19                    App. 324

consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. It is well established that political advocacy organizations, including Defendant, have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)). Compelled disclosure of information regarding Defendant's members' roles is likely to "induce members to withdraw from [Defendant] and dissuade others from joining it because of fear of exposure of their beliefs." *NAACP*, 357 U.S. 447 at 463 (1958).

The identities of individuals who confidentially communicate with Defendant regarding political strategy and beliefs and content of such communication are protected

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    20                    App. 325

under the First Amendment. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation— and their ideas from suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect"); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.*, 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers*, 661 F.3d 1168 (9th Cir. 2011). Entities and individuals who communicate with Defendant regarding political organizing and strategy do so with an expectation of confidentiality. Disclosure of these communications will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

Plaintiffs cannot show that information regarding Reedy's, Corado's, and Sergienko's roles within Defendant, particularly Reedy's, Corado's, and Sergienko's roles related to advocacy and organizing that is unrelated to the allegations in the FAC, is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Request is not narrowly tailored as it seeks a plethora of documents regarding Reedy's, Corado's, and Sergienko's roles, regardless of whether it pertains to Defendant's involvement in or response to the UCLA student encampment. The communications sought in this Request are protected by the First Amendment.

Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another.

Subject to and without waiving these objections and responds to this request at this time as follows: Defendant does not have any responsive communications in its possession, custody or control.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Defendant does not have any responsive communications in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 7:**

All documents reflecting, referring or relating to PCC's involvement with the encampments that were part of NSJP's Popular University for Gaza initiative, including but not limited to documents regarding efforts to establish encampments on college campuses around the country, efforts to use PCC resources to fund and supply encampments, and efforts to promote encampments using PCC social media accounts.

/ / /

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    22                    <span style="color:red">App. 327</span>

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein.  Defendant further objects that this Request seeks documents that are not proportional to the needs of the case. Defendant further objects that this Request seeks information that is irrelevant.  Defendant objects that this Request is overbroad, unduly burdensome, and harassing. Defendant objects that this Request is overbroad as to time. Defendant objects that this Request is vague and ambiguous, as are the terms "involvement" and "resources." The Request's use of the terms "all documents" and "efforts to establishment encampments on college campuses around the country" render this Request overbroad, vague, and unduly burdensome. In using these terms, the Request seeks documents that are neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence, improperly seeks privileged or protected documents, and imposes obligations and demands on Defendant that go beyond any reasonable or commonly accepted meaning of the terms or exceed the requirements of applicable law.  Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein.  Defendant objects that this Request is overly broad and unduly burdensome because it encompasses all Popular University for Gaza encampments across the country, while only one of these encampments, the UCLA encampment, is at issue in this lawsuit.

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    23

App. 328

Defendant's involvement in other student encampments, which is broadly defined to include even promotion of encampments on social media, is not relevant to Plaintiffs' claims. Furthermore, a search for responsive documents concerning all Popular University for Gaza encampments across the country is unduly burdensome for a part-time volunteer-run collective. *See* Dkt. 110-2 at ¶ 4. Defendant made an estimated over one thousand social media posts regarding all Palestine solidarity encampments. A search for all responsive documents would require Defendant to manually search through an estimated over one hundred thousand social media posts on multiple platforms, review hundreds of documents for privileged content and prepare hundreds of documents for production. This burden is not proportional to the needs of the case. On these grounds, Defendant will only conduct a search for documents regarding the UCLA student encampment.

Defendant objects that the terms "involvement" and "resources" as used in this Request are vague and ambiguous.

Defendant objects to this Request because it seeks disclosure of Defendant's political advocacy strategy, political associations, and financial contributions to political organizing efforts, which are protected by the First Amendment. Compelled disclosure of such information implicates Defendant's, individuals and entities affiliated with Defendant's, and individuals and entities Defendant has engaged in protected association activity with's right to free association and would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other

consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. Political advocacy organizations have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)); *see also Perry,* 591 F.3d 1147; *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984). Disclosure of Defendant's confidential internal documents will dissuade Defendant and its members from engaging in First Amendment protected activity in the future, such as organizing around various political issues and will dissuade others from joining or working with Defendant on political advocacy efforts in the future as they will fear exposure of their

political strategy and advocacy efforts.

Furthermore, the identities of political advocacy organization's members and affiliates are protected under the First Amendment. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Disclosure of the identities of these individuals and entities will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

Likewise, a political advocacy organization's financial records regarding its political advocacy work is protected by the First Amendment because the revelation of this information might chill the rights of group members. *Adolph Coors v. Wallace*, 570 F.

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                     26

Supp. 202, 208-10 (N.D. Cal. 1983); *see also Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect").

As all documents relating a nation-wide initiative sheds little light on Defendant's actions regarding the UCLA encampment, Plaintiffs cannot show that the information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Request is not narrowly tailored as it seeks a plethora of information regarding encampments and organizing efforts beyond the UCLA student encampment and Plaintiffs' allegations. Information sought by this Request is protected by the First Amendment.

Subject to and without waiving these objections, Defendant conducted a search for responsive documents regarding the UCLA student encampment and responds to this request at this time as follows: PCC0001-24, 26-41, 43-47, 49-50, 52-55, 57-58, 60-61, 63, 65-66, 68-154, 165-184, 190-199, 210-211, 238-247, 260-275, 276-295, 297-299, 301-302, 304-438, 443-446, 449-482, 484-637, 662-685, 691, 694-696, 738-741, 783-827, 905-1009, 1013-1023. Defendant attempted to obtain metadata for these documents. Defendant was unable to obtain metadata for its tweets. Defendant was able to obtain metadata for its posts on Instagram, but the data was only provided in one file for all of Defendant's Instagram, and as the file contains metadata for thousands of posts, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive post. Defendant will produce additional responsive documents as they become available.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Defendant objects that this Request is overly broad and unduly burdensome because

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    27                    App. 332

it encompasses all Popular University for Gaza encampments across the country, while only one of these encampments, the UCLA encampment, is at issue in this lawsuit. Defendant's involvement in other student encampments, which is broadly defined to include even promotion of encampments on social media, is not relevant to Plaintiffs' claims. Furthermore, a search for responsive documents concerning all Popular University for Gaza encampments across the country is unduly burdensome for a part-time volunteer-run collective. *See* Dkt. 110-2 at ¶ 4.  Defendant made an estimated over one thousand social media posts regarding all Palestine solidarity encampments. A search for all responsive documents would require Defendant to manually search through an estimated over one hundred thousand social media posts on multiple platforms, review hundreds of documents for privileged content and prepare hundreds of documents for production. This burden is not proportional to the needs of the case. On these grounds, Defendant will only conduct a search for documents regarding the UCLA student encampment.

Defendant objects to this Request because it seeks disclosure of Defendant's political advocacy strategy, political associations, and financial contributions to political organizing efforts, which are protected by the First Amendment. Compelled disclosure of such information implicates Defendant's, individuals and entities affiliated with Defendant's, and individuals and entities Defendant has engaged in protected association activity with's right to free association and would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other

consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Furthermore, the identities of political advocacy organization's affiliates and supporters are protected under the First Amendment. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Int'l Union v. Nat'l*

*Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Disclosure of the identities of these individuals and entities will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

As all documents relating a nation-wide initiative sheds little light on Defendant's actions regarding the UCLA encampment, Plaintiffs cannot show that the information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Request is not narrowly tailored as it seeks a plethora of information regarding encampments and organizing efforts beyond the UCLA student encampment and Plaintiffs' allegations. Information sought by this Request is protected by the First Amendment and Defendant will not disclose communications described above that are protected by the First Amendment nor the identities of those who made or received these protected communications and is withholding responsive communications and information on this basis. Defendant is not withholding any non-communication documents under a claim of privilege.

Defendant identifies the following non-privileged, responsive documents (note some documents are partially redacted based on the above privileges): PCC0001-24, 26-41, 43-47, 49-50, 52-55, 57-58, 60-61, 63, 65-66, 68-154, 165-184, 190-199, 210-211, 238-247, 260-275, 276-295, 297-299, 301-302, 304-438, 443-446, 449-482, 484-637,

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    30                    <span style="color:red">App. 335</span>

662-685, 691, 694-696, 738-741, 783-831, 833, 836-838, 840-842, 844-845, 847-864, 867-878, 880-882, 884-1009, 1013-1023, 1045, 1137-88, 1190-1237, 1239-46, 1248-70, 1272-73, 1275-84, 1286-95, 1297-1325, 1327-31, 1333-60, 1362-65, 1367-68, 1370-80, 1382-93, 1395-1408, 1410, 1412-17, 1420, 1425-28, 1430-31, 1433-37, 1439, 1441-44, 1446-49, 1506-11. Defendant attempted to obtain metadata for these documents. Defendant was unable to obtain metadata for its tweets. Defendant was able to obtain metadata for its posts on Instagram, but the data was only provided in one file for all of Defendant's Instagram, and as the file contains metadata for thousands of posts, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive post.

**REQUEST FOR PRODUCTION NO. 8:**

All communications on the subject of PCC's involvement with the encampments that were part of NSJP's Popular University for Gaza initiative, including but not limited to communications between PCC and WESPAC, AMP, NSJP, NFJP, UC Divest, Unity of Fields, or any other third party.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**.

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts. Defendant further objects that this Request is overbroad as to time. The Request for "all communications," "the encampments," and "any other third party" are unparticularized, overbroad, unduly burdensome, vague, ambiguous, and seeks documents that are neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence—including to the extent it seeks "all communications" regardless of relevance to this litigation. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others'

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                31                      App. 336

exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is overly broad and unduly burdensome because it encompasses all Popular University for Gaza encampments across the country, while only one of these encampments, the UCLA encampment, is at issue in this lawsuit. Defendant's involvement in other student encampments, which is broadly defined to include even promotion of encampments on social media, is not relevant to Plaintiffs' claims. Furthermore, a search for responsive communications concerning all Popular University for Gaza encampments across the country is unduly burdensome for a part-time volunteer-run collective. *See* Dkt. 110-2 at ¶ 4. A search for all responsive communications would require Defendant to manually search through an estimated tens of thousands of messages on multiple platforms, review hundreds of communications for privileged content, and prepare hundreds of communications for production. This burden is not proportional to the needs of the case. On these grounds, Defendant will only conduct a search for responsive communications regarding the UCLA student encampment.

Defendant objects that the term "involvement" as used in this Request is vague and ambiguous.

Defendant objects to this Request because it seeks disclosure of Defendant's and those who communicate with Defendant's political advocacy strategy, political associations, and financial contributions to political organizing efforts, which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's and its members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    32                    App. 337

(1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. The identities of political advocacy organization's members and affiliates are protected under the First Amendment, as are the identities of individuals who confidentially communicate with Defendant regarding political strategy. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    33                    App. 338

to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect"); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Entities and individuals who communicate with Defendant regarding political organizing and strategy do so with an expectation of confidentiality, especially given the politically sensitive and controversial topic of Palestine and Israel. Disclosure of the identities of these individuals and entities and contents of their communications will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

Likewise, political advocacy organizations have "a First Amendment interest in

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                     34                     App. 339

keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)); *see also Perry,* 591 F.3d 1147; *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984). Disclosure of Defendant's confidential communications will dissuade Defendant and its members from engaging in First Amendment protected activity in the future, such as organizing around various political issues and will dissuade others from joining or working with Defendant on political advocacy efforts in the future as they will fear exposure of their political strategy and advocacy efforts.

As information concerning all communications relating a nation-wide initiative sheds little light on Defendant's actions regarding the UCLA encampment, Plaintiffs cannot show that the information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Request is not narrowly tailored as it seeks a plethora of information regarding encampments and organizing efforts beyond the UCLA student encampment and Plaintiffs' allegations. Communications and information sought by this Request is protected by the First Amendment and Defendant will not disclose it.

Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another. Defendant likewise objects to the extent this Interrogatory seeks information regarding information sharing with journalists who confidentially communicated with Defendant for the purpose of

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    35                    <span style="color:red">App. 340</span>

newsgathering. *See Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) ("Rooted in the First Amendment, the [journalist's] privilege is a recognition that society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public, is an interest of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice." (internal quotations and citation omitted)). Defendant will not disclose such confidential information.

Subject to and without waiving these objections, Defendant conducted a search for responsive communications regarding the UCLA student encampment and responds to this request at this time as follows: PCC000828-831, 833, 836-838, 840-842, 844-845, 847-864, 867-878, 880-882, 884-904. Defendant attempted to obtain metadata for these documents. Defendant was able to obtain metadata for its direct messages sent and received via Twitter, but the data was only provided in one file for all of Defendant's direct messages sent and received on Twitter, and as the file contains metadata for thousands of messages, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive message. Likewise, Defendant was able to obtain metadata for its direct messages sent and received via Instagram, but the data was only provided in one file for all of Defendant's direct messages sent and received on Instagram, and as the file contains metadata for thousands of messages, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive message. Defendant will produce additional responsive documents as they become available.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Defendant objects that this Request is overly broad and unduly burdensome because it encompasses all Popular University for Gaza encampments across the country, while only one of these encampments, the UCLA encampment, is at issue in this lawsuit. Defendant's involvement in other student encampments, which is broadly defined to include even promotion of encampments on social media, is not relevant to Plaintiffs' claims. Furthermore, a search for responsive communications concerning all Popular

University for Gaza encampments across the country is unduly burdensome for a part-time volunteer-run collective. *See* Dkt. 110-2 at ¶ 4. A search for all responsive communications would require Defendant to manually search through an estimated tens of thousands of messages on multiple platforms, review hundreds of communications for privileged content, and prepare hundreds of communications for production. This burden is not proportional to the needs of the case. On these grounds, Defendant will only conduct a search for responsive communications regarding the UCLA student encampment.

Defendant objects to this Request because it seeks disclosure of Defendant's and those who communicate with Defendant's political advocacy strategy, political associations, and financial contributions to political organizing efforts, which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's and its members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    37                    <span style="color:red">App. 342</span>

information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. The identities of political advocacy organization's members and affiliates are protected under the First Amendment, as are the identities of individuals who confidentially communicate with Defendant regarding political strategy. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect"); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011).

Entities and individuals who communicate with Defendant regarding political organizing and strategy do so with an expectation of confidentiality, especially given the politically sensitive and controversial topic of Palestine and Israel. Disclosure of the identities of these individuals and entities and contents of their communications will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

As information concerning all communications relating a nation-wide initiative sheds little light on Defendant's actions regarding the UCLA encampment, Plaintiffs cannot show that the information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Request is not narrowly tailored as it seeks a plethora of information regarding encampments and organizing efforts beyond the UCLA student encampment and Plaintiffs' allegations. Communications and information sought by this Request is protected by the First Amendment and Defendant will not disclose communications described above that are protected by the First Amendment nor the identities of those who made or received these protected communications and is withholding responsive communications on this basis.

Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    39

App. 344

privacy when confidentially communicating with one another. Defendant likewise objects to the extent this Interrogatory seeks information regarding information sharing with journalists who confidentially communicated with Defendant for the purpose of newsgathering. *See Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) ("Rooted in the First Amendment, the [journalist's] privilege is a recognition that society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public, is an interest of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice." (internal quotations and citation omitted)). Defendant will not disclose such confidential information on this basis.

Defendant identifies the following non-privileged, responsive documents (note some documents are partially redacted based on the above privileges): PCC000828-831, 833, 836-838, 840-842, 844-845, 847-864, 867-878, 880-882, 884-904, 1037, 1045, 1047-71, 1089-91, 1096, 1100-88, 1190-1237, 1239-46, 1248-70, 1272-73, 1275-84, 1286-95, 1297-1325, 1327-31, 1333-60, 1362-65, 1367-68, 1370-80, 1382-93, 1395-1428, 1430-31, 1433-37, 1439, 1441-44, 1446-1511. Defendant attempted to obtain metadata for these documents. Defendant was able to obtain metadata for its direct messages sent and received via Twitter, but the data was only provided in one file for all of Defendant's direct messages sent and received on Twitter, and as the file contains metadata for thousands of messages, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive message. Likewise, Defendant was able to obtain metadata for its direct messages sent and received via Instagram, but the data was only provided in one file for all of Defendant's direct messages sent and received on Instagram, and as the file contains metadata for thousands of messages, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive message.

**REQUEST FOR PRODUCTION NO. 9:**

All documents reflecting, referring or relating to Jews, Judaism or any Jewish practices or beliefs, including but not limited to recordings and minutes of Your organizational meetings.

---

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                40

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request, including but not limited to the term "all documents," is overbroad, unduly burdensome, and harassing. Defendant further objects that this Request is overbroad as to time. Defendant further objects that this Request seeks documents that are not proportional to the needs of the case. Defendant further objects that this Request seeks information that is irrelevant. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights (including religious freedoms) and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is vague and ambiguous as "reflecting, referring or relating" a faith and members of a faith is subject to an array of interpretations. This Request is overbroad as this Request could be interpreted to include any document that makes any reference to a person who happens to be of the Jewish faith. Accordingly, this Request is unduly burdensome on Defendant, a part-time volunteer-run collective, as it will require an extensive search for anything that meets this vague criteria. *See* Dkt. 110-2 at ¶ 4. As such, the Request seeks documents that are irrelevant and not proportional to the needs of the case.

Defendant objects to this Request because it seeks disclosure of Defendant's recordings and minutes of organizational meetings, which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's and its members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry*

*v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

The Ninth Circuit has recognized that a prima facie case is made when a party seeks discovery on minutes of meetings. *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed). Disclosure of such records will "induce members to withdraw from the [Defendant] and dissuade others from joining it because of

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                42

App. 347

fear of exposure of their beliefs." *NAACP*, 357 U.S. 447 at 463 (1958). In addition, political advocacy organizations have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)).

Plaintiffs cannot establish that any relevance of Defendant's meeting recordings and minutes is sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Any responsive meeting minutes are protected by the First Amendment.

Subject to and without waiving these objections, Defendant conducted a search for responsive documents regarding any Jewish individual's faith, Judaism, or any Jewish practices or beliefs and responds to this request at this time as follows: PCC000248-259, 328, 658-661. Defendant attempted to obtain metadata for these documents. Defendant was unable to obtain metadata for its tweets. Defendant was able to obtain metadata for its posts on Instagram, but the data was only provided in one file for all of Defendant's Instagram posts, and as the file contains metadata for thousands of posts, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive post.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Defendant identifies the following responsive documents: PCC000248-259, 328, 658-661, 1024-42, 1072-88, 1092-95. Defendant attempted to obtain metadata for these documents. Defendant was unable to obtain metadata for its tweets. Defendant was able to obtain metadata for its posts on Instagram, but the data was only provided in one file for

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)

all of Defendant's Instagram posts, and as the file contains metadata for thousands of posts, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive post.

**REQUEST FOR PRODUCTION NO. 10:**

All communications on the subject of Jews, Judaism or any Jewish practices or beliefs, including but not limited to communications between PCC and WESPAC, AMP, NSJP, NFJP, UC Divest, Unity of Fields, or any other third party.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request, including but not limited to the term "all communications," is overbroad, unduly burdensome, and harassing. Defendant further objects that this Request is overbroad as to time. Defendant further objects that this Request seeks documents that are not proportional to the needs of the case. Defendant further objects that this Request seeks information that is irrelevant.  Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights (including religious freedoms) and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*.  Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is vague and ambiguous as "reflecting, referring or relating" a faith and members of a faith is subject to an array of interpretations. This Request is overbroad as this Request could be interpreted to include

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    44                    <span style="color:red">App. 349</span>

any communication with or that makes any reference to a person who happens to be of the Jewish faith. Accordingly, this Request is unduly burdensome on Defendant, a part-time volunteer-run collective, as it will require an extensive search for anything that meets this vague criteria. *See* Dkt. 110-2 at ¶ 4. As such, the Request seeks communications that are irrelevant and not proportional to the needs of the case.

Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another.

Subject to and without waiving these objections, Defendant conducted a search for responsive communications regarding any Jewish individual's faith, Judaism, or any Jewish practices or beliefs and responds to this request at this time as follows: PCC000834-835, 839, 843. Defendant attempted to obtain metadata for these documents. Defendant was able to obtain metadata for its direct messages sent and received via Twitter, but the data was only provided in one file for all of Defendant's direct messages sent and received on Twitter, and as the file contains metadata for thousands of messages, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive message. Likewise, Defendant was able to obtain metadata for its direct messages sent and received via Instagram, but the data was only provided in one file for all of Defendant's direct messages sent and received on Instagram, and as the file contains metadata for thousands of messages, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive message.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Defendant identifies the following responsive documents: PCC000834-835, 839, 843. Defendant attempted to obtain metadata for these documents. Defendant was able to obtain metadata for its direct messages sent and received via Twitter, but the data was

only provided in one file for all of Defendant's direct messages sent and received on Twitter, and as the file contains metadata for thousands of messages, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive message. Likewise, Defendant was able to obtain metadata for its direct messages sent and received via Instagram, but the data was only provided in one file for all of Defendant's direct messages sent and received on Instagram, and as the file contains metadata for thousands of messages, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive message.

**REQUEST FOR PRODUCTION NO. 11:**

All documents reflecting, referring or relating to PCC's involvement with the Campus Support Coalition, including but not limited to documents regarding requests for support from the Coalition and the use of NSJP resources to fund or support the Coalition.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant further objects that this Request seeks documents that are not proportional to the needs of the case. Defendant further objects that this Request seeks information that is irrelevant. Defendant objects that this Request is overbroad, unduly burdensome, and harassing. Defendant objects that this Request is overbroad as to time. Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*.

/ / /

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                                46

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein.  Defendant objects that this Request is overly broad and unduly burdensome because it encompasses all Popular University for Gaza encampments across the country, while only one of these encampments, the UCLA encampment, is at issue in this lawsuit. Defendant's involvement with the Campus Support Coalition regarding other student encampments, is not relevant to Plaintiffs' claims.

Defendant objects that the term "involvement" as used in this Request is vague and ambiguous.

Defendant objects to this Request because it seeks disclosure of Defendant's political advocacy strategy, political associations, and financial contributions to political organizing efforts, which are protected by the First Amendment. Compelled disclosure of such information implicates Defendant's, individuals and entities affiliated with Defendant's, and individuals and entities Defendant has engaged in protected association activity with's right to free association and would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am*., 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                          47

Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. Political advocacy organizations have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)); *see also Perry,* 591 F.3d 1147; *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984). Disclosure of Defendant's confidential internal documents will dissuade Defendant and its members from engaging in First Amendment protected activity in the future, such as organizing around various political issues and will dissuade others from joining or working with Defendant on political advocacy efforts in the future as they will fear exposure of their political strategy and advocacy efforts.

Furthermore, the identities of political advocacy organization's members and affiliates are protected under the First Amendment. *See NAACP*, 357 U.S. at 462-463

(recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Disclosure of the identities of these individuals and entities will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

Likewise, a political advocacy organization's financial records regarding its political advocacy work is protected by the First Amendment because the revelation of this information might chill the rights of group members. *Adolph Coors v. Wallace*, 570 F. Supp. 202, 208-10 (N.D. Cal. 1983); *see also Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost

certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect").

Plaintiffs cannot show that Defendant's involvement with the Campus Support Coalition is highly relevant to their claims, especially in regard to encampments beyond the UCLA student encampment, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Request is not narrowly tailored as it seeks a documents regarding encampments and organizing efforts beyond the UCLA student encampment and Plaintiffs' allegations. The information sought by this Request is protected by the First Amendment.

Subject to and without waiving these objections, Defendant responds to this request at this time as follows: Defendant does not have any responsive documents in its possession, custody or control.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Defendant does not have any responsive documents in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 12:**

All communications on the subject of the Campus Support Coalition, including but not limited to communications between PCC and WESPAC, AMP, NSJP, NFJP, UC Divest, Unity of Fields, or any other third party.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts. Defendant objects that this Request is overbroad, unduly burdensome, and harassing. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First

Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is overly broad and unduly burdensome because it encompasses all Popular University for Gaza encampments across the country, while only one of these encampments, the UCLA encampment, is at issue in this lawsuit. Defendant's involvement with the Campus Support Coalition regarding other student encampments, is not relevant to Plaintiffs' claims.

Defendant objects to this Request because it seeks disclosure of information concerning Defendant's protected communications, the disclosure of the identities of individuals and entities affiliated with Defendant or which Defendant engaged in protected association activity with, the disclosure of other political advocacy organizations' membership, and the disclosure of Defendant's internal advocacy strategy. Compelled disclosure of such information implicates Defendant's, individuals and entities affiliated with Defendant's, and individuals and entities Defendant has engaged in protected association activity with's right to free association and would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    51

App. 356

consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am*., 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. The identities of political advocacy organization's members and affiliates are protected under the First Amendment, as are the identities of individuals who confidentially communicate with Defendant regarding political strategy. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation— and their ideas from suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Tree of Life*

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)

52

App. 357

*Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect"); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Entities and individuals who communicate with Defendant regarding political organizing and strategy do so with an expectation of confidentiality, especially given the politically sensitive and controversial topic of Palestine and Israel. Disclosure of the identities of these individuals and entities and contents of their communications will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

Likewise, political advocacy organizations have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)); *see also Perry,* 591 F.3d 1147; *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); *Roberts v. U.S.*

*Jaycees*, 468 U.S. 609 (1984). Disclosure of Defendant's confidential communications will dissuade Defendant and its members from engaging in First Amendment protected activity in the future, such as organizing around various political issues and will dissuade others from joining or working with Defendant on political advocacy efforts in the future as they will fear exposure of their political strategy and advocacy efforts.

As information concerning all communications relating a nation-wide initiative sheds little light on Defendant's actions regarding the UCLA encampment, Plaintiffs cannot show that the information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Request is not narrowly tailored as it seeks communications regarding encampments and organizing efforts beyond the UCLA student encampment and Plaintiffs' allegations. Such communications are protected by the First Amendment.

Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another.

Subject to and without waiving these objections, Defendant responds to this request at this time as follows: Defendant does not have any responsive documents in its possession, custody or control.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Defendant does not have any responsive documents in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 13:**

All documents reflecting, referring or relating to PCC's involvement in the UCLA encampment, including but not limited to documents regarding: the use of PCC's official

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    54                    App. 359

social media accounts to promote the encampment; which members of Yours were present at the UCLA encampment or on the UCLA campus between April 1, 2024, and May 3, 2024; any supplies or funding solicited or provided by You to or for the benefit of the UCLA encampment; and the exclusion of any persons or groups of persons from the encampment. This request also includes communications with UCLA employees or representatives regarding the UCLA encampment; communications regarding encampment security, UCLA security, or law enforcement; and communications regarding the exclusion of any persons or groups from the UCLA encampment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is vague and ambiguous, as is the term "involvement." The Request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence—including to the extent it seeks "all communications" regardless of relevance to this litigation. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*. Defendant further objects to the extent that this Request seeks information that is protected by the right to privacy of Defendant or third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts. Defendant further objects to the extent that this Request seeks information that is protected by the attorney client privilege, attorney work product protection doctrine, or by any other protection afforded by law.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Defendant hereby incorporates by reference the above general objections as if fully

stated herein.

Defendant objects that the term "involvement" as used in this Request is vague and ambiguous.

Defendant objects to this Request because it seeks disclosure of Defendant's membership, political advocacy strategy, political associations, and financial contributions to political organizing efforts, which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's and its members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am*., 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or

subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. The identities of political advocacy organization's members and affiliates are protected under the First Amendment, as are the identities of individuals who confidentially communicate with Defendant regarding political strategy. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation— and their ideas from suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Entities and individuals who communicate with Defendant regarding political organizing and strategy do so with an expectation of confidentiality, especially given the politically sensitive and controversial topic of Palestine and Israel. Disclosure of the identities of these individuals and entities and contents of their communications will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                                    57

<span style="color:red">App. 362</span>

safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

Likewise, political advocacy organizations have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)); *see also Perry,* 591 F.3d 1147; *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984). Disclosure of Defendant's confidential internal documents and communications will dissuade Defendant and its members from engaging in First Amendment protected activity in the future, such as organizing around various political issues and will dissuade others from joining or working with Defendant on political advocacy efforts in the future as they will fear exposure of their political strategy and advocacy efforts.

Further, a political advocacy organization's financial records regarding its political advocacy work is protected by the First Amendment because the revelation of this information might chill the rights of group members. *Adolph Coors v. Wallace*, 570 F. Supp. 202, 208-10 (N.D. Cal. 1983); *see also Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect").

Plaintiffs cannot show that the protected information they are requesting is highly

relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Defendant will not disclose documents and information sought by this Request that is protected by the First Amendment.

Defendant further objects that this Request seeks communications and information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another, particularly around sensitive political issues.

Subject to and without waiving these objections, Defendant responds to this request at this time as follows: PCC000 1-24, 26-41, 43-47, 49-50, 52-55, 57-58, 60-61, 63, 65-66, 68-154, 165-184, 190-199, 210-211, 238-247, 260-275, 276-295, 297-299, 301-302, 304-438, 443-446, 449-482, 484-637, 662-685, 691, 694-696, 738-741, 783-827, 905-1009, 1013-1023. Defendant attempted to obtain metadata for these documents. Defendant was unable to obtain metadata for its tweets. Defendant was able to obtain metadata for its posts on Instagram, but the data was only provided in one file for all of Defendant's Instagram posts, and as the file contains metadata for thousands of posts, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive post. Defendant will produce additional responsive documents as they become available.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Defendant objects to this Request because it seeks disclosure of Defendant's supporters, political advocacy strategy, and political associations, which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's and its members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to

---

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                59                App. 364

result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. The identities of political advocacy organization's affiliates and supporters are protected under the First Amendment, as are the identities of individuals who confidentially communicate with Defendant regarding political strategy. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92

(1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Entities and individuals who communicate with Defendant regarding political organizing and strategy do so with an expectation of confidentiality, especially given the politically sensitive and controversial topic of Palestine and Israel. Disclosure of the identities of these individuals and entities and contents of their communications will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

Plaintiffs cannot show that the protected information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. The documents sought by this Request are protected by the First Amendment and Defendant will not disclose communications described above that are protected by the First Amendment nor the identities of those who made or

received these protected communications and is withholding responsive communications and information on this basis. Defendant is not withholding any non-communication documents under a claim of privilege.

Defendant further objects that this Request seeks communications and information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another, particularly around sensitive political issues. Defendant will not disclose privileged communications and information on this basis. Defendant is not withholding any non-communication documents under a claim of privilege.

Defendant identifies the following non-privileged, responsive documents (note some documents are partially redacted based on the above privileges): PCC000 1-24, 26-41, 43-47, 49-50, 52-55, 57-58, 60-61, 63, 65-66, 68-154, 165-184, 190-199, 210-211, 238-247, 260-275, 276-295, 297-299, 301-302, 304-438, 443-446, 449-482, 484-637, 662-685, 691, 694-696, 738-741, 783-831, 833, 836-838, 840-842, 844-845, 847-864, 867-878, 880-882, 884-1009, 1013-1023, 1045, 1137-88, 1190-1237, 1239-46, 1248-70, 1272-73, 1275-84, 1286-95, 1297-1325, 1327-31, 1333-60, 1362-65, 1367-68, 1370-80, 1382-93, 1395-1408, 1410, 1412-17, 1420, 1425-28, 1430-31, 1433-37, 1439, 1441-44, 1446-49, 1506-11. Defendant attempted to obtain metadata for these documents. Defendant was unable to obtain metadata for its tweets. Defendant was able to obtain metadata for its posts on Instagram, but the data was only provided in one file for all of Defendant's Instagram posts, and as the file contains metadata for thousands of posts, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive post.

**REQUEST FOR PRODUCTION NO. 14:**

All communications on the subject of the UCLA encampment including but not limited to communications between PCC and WESPAC, AMP, NSJP, NFJP, UC Divest,

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    62

Unity of Fields, or any other third party.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is overbroad, unduly burdensome, and harassing. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*. Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein.  Defendant objects that this Request is overly broad and unduly burdensome because it encompasses all communications regarding the UCLA encampment, regardless of their relevance to Plaintiffs' claims.

Defendant objects to this Request because it seeks disclosure of Defendant's membership, political advocacy strategy, political associations, and financial contributions to political organizing efforts, which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's and its members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. The identities of political advocacy organization's members and affiliates are protected under the First Amendment, as are the identities of individuals who confidentially communicate with Defendant regarding political strategy. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    64                    App. 369

and their ideas from suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect"); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Entities and individuals who communicate with Defendant regarding political organizing and strategy do so with an expectation of confidentiality, especially given the politically sensitive and controversial topic of Palestine and Israel. Disclosure of the identities of these individuals and entities and contents of their communications will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

Likewise, political advocacy organizations have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their

effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)); *see also Perry,* 591 F.3d 1147; *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984). Disclosure of Defendant's confidential internal communications will dissuade Defendant and its members from engaging in First Amendment protected activity in the future, such as organizing around various political issues and will dissuade others from joining or working with Defendant on political advocacy efforts in the future as they will fear exposure of their political strategy and advocacy efforts.

Plaintiffs cannot show that the protected information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Defendant will not disclose communications and information sought by this Request that are protected by the First Amendment.

Defendant further objects that this Request seeks communications and information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another, particularly around sensitive political issues. Defendant likewise objects to the extent this Request seeks information regarding the identities of journalists who confidentially communicated with Defendant for the purpose of newsgathering. *See Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) ("Rooted in the First Amendment, the [journalist's] privilege is a recognition that society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public, is an interest of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice." (internal quotations and citation omitted)). Defendant will not disclose the identities of individuals and entities who it confidentially

communicated or confidentially communicated with Defendant nor the content of the confidential communications on this basis.

Subject to and without waiving these objections, Defendant responds to this request at this time as follows: PCC000828-831, 833, 836-838, 840-842, 844-845, 847-864, 867-878, 880-882, 884-904. Defendant attempted to obtain metadata for these documents. Defendant was able to obtain metadata for its direct messages sent and received via Twitter, but the data was only provided in one file for all of Defendant's direct messages sent and received on Twitter, and as the file contains metadata for thousands of messages, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive message. Likewise, Defendant was able to obtain metadata for its direct messages sent and received via Instagram, but the data was only provided in one file for all of Defendant's direct messages sent and received on Instagram, and as the file contains metadata for thousands of messages, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive message.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Defendant objects to this Request because it seeks disclosure of Defendant's supporters' identities, political advocacy strategy, and political associations, which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's and its members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1)

harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. The identities of political advocacy organization's members and affiliates are protected under the First Amendment, as are the identities of individuals who confidentially communicate with Defendant regarding political strategy. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps.*

*Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect"); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Entities and individuals who communicate with Defendant regarding political organizing and strategy do so with an expectation of confidentiality, especially given the politically sensitive and controversial topic of Palestine and Israel. Disclosure of the identities of these individuals and entities and contents of their communications will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

Plaintiffs cannot show that the protected information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. The documents sought by this Request are protected by the First Amendment and Defendant will not disclose communications described above that are protected by the First Amendment nor the identities of those who made or received these protected communications and is withholding responsive communications

and information on this basis.

Defendant further objects that this Request seeks communications and information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another, particularly around sensitive political issues. Defendant likewise objects to the extent this Request seeks information regarding the identities of journalists who confidentially communicated with Defendant for the purpose of newsgathering. *See Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) ("Rooted in the First Amendment, the [journalist's] privilege is a recognition that society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public, is an interest of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice." (internal quotations and citation omitted)). Defendant will not disclose the identities of individuals and entities who it confidentially communicated or confidentially communicated with Defendant nor the content of the confidential communications on this basis.

Defendant identifies the following non-privileged, responsive documents (note some documents are partially redacted based on the above privileges): PCC000828-831, 833, 836-838, 840-842, 844-845, 847-864, 867-878, 880-882, 884-904, 1037, 1045, 1047-71, 1089-91, 1096, 1100-88, 1190-1237, 1239-46, 1248-70, 1272-73, 1275-84, 1286-95, 1297-1325, 1327-31, 1333-60, 1362-65, 1367-68, 1370-80, 1382-93, 1395-1428, 1430-31, 1433-37, 1439, 1441-44, 1446-1511.  Defendant attempted to obtain metadata for these documents.  Defendant was able to obtain metadata for its direct messages sent and received via Twitter, but the data was only provided in one file for all of Defendant's direct messages sent and received on Twitter, and as the file contains metadata for thousands of messages, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive message. Likewise, Defendant was able to obtain metadata

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    70

for its direct messages sent and received via Instagram, but the data was only provided in one file for all of Defendant's direct messages sent and received on Instagram, and as the file contains metadata for thousands of messages, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive message.

**REQUEST FOR PRODUCTION NO. 15:**

All documents reflecting, referring or relating to transactions or purchases made for, on behalf of, or involving a transfer of funds related to the UCLA encampment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is overbroad and vague. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein.  Defendant objects that this Request is vague and overbroad, as it appears to refer to all transactions and purchases made for the UCLA student encampment, not just those made by Defendant. Purchases or transactions made for the UCLA student encampment that do not involve Defendant are irrelevant to Plaintiffs' claims against Defendant.

Defendant objects to this Request because it seeks disclosure of Defendant's documents relating to transactions, purchases, and funding which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's and its members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry*

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                      71                      App. 376

*v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. Political advocacy organizations have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant

First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)). Disclosure of Defendant's internal strategy, including the allocation of its resources, would deter Defendant and its members from continuing to engage in protected political organizing and deter individuals from joining or working with Defendant.

Plaintiffs cannot show that all documents related to transactions, purchases, and transfers of funds for the UCLA student encampment are highly relevant to their claims against Defendant, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Defendant will not disclose this protected information.

Subject to and without waiving these objections, Defendant responds to this request at this time as follows: PCC00015, 109, 306, 308, 430, 434.  Defendant attempted to obtain metadata for these documents. Defendant was unable to obtain metadata for its tweets. Defendant was able to obtain metadata for its posts on Instagram, but the data was only provided in one file for all of Defendant's Instagram posts, and as the file contains metadata for thousands of posts, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive post.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Defendant objects to this Request because it seeks disclosure of communications regarding political activity and political financial contributions of those who associate with and/or support Defendant, which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's and its supporters' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    73                    <span style="color:red">App. 378</span>

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. Defendant has a First Amendment interest in keeping confidential communications regarding political contributions made by its supporters and those who associate with it, as well as communications regarding its supporters' political opinions and political activity. *See Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect"); *NAACP*, 357 U.S. 447 at 463 (1958); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                          74                          App. 379

privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021). Disclosure of such communications would deter Defendant and its members from continuing to engage in protected political organizing and political activity, and deter individuals from joining or working with Defendant.

Plaintiffs cannot show that all communications related to transactions, purchases, and transfers of funds for the UCLA student encampment (made by third parties only) are highly relevant to their claims against Defendant, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. The documents sought by this Request are protected by the First Amendment and Defendant will not disclose communications described above that are protected by the First Amendment nor the identities of those who made or received these protected communications and is withholding responsive communications on this basis. Defendant is not withholding any non-communication documents under a claim of privilege.

Defendant further objects that this Request seeks communications and information that are protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another, particularly around sensitive political issues and related financial contributions and political activity. Defendant will not disclose the identities of individuals and entities who it confidentially communicated or confidentially communicated with Defendant nor the content of the confidential communications on this basis. Defendant is not withholding any non-communication documents under a claim of privilege.

Defendant identifies the following non-privileged, responsive documents: PCC00015, 109, 306, 308, 430, 434. Defendant attempted to obtain metadata for these documents. Defendant was unable to obtain metadata for its tweets. Defendant was able to

obtain metadata for its posts on Instagram, but the data was only provided in one file for all of Defendant's Instagram posts, and as the file contains metadata for thousands of posts, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive post.

**REQUEST FOR PRODUCTION NO. 16:**

All communications on the subject of transactions or purchases made for, on behalf of, or involving a transfer of funds relating to the UCLA encampment, including but not limited to communications between PCC and WESPAC, AMP, NSJP, NFJP, UC Divest, Unity of Fields, or any other third party.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is overbroad, unduly burdensome, and harassing. Defendant further objects that this Request is overbroad as to time. The Request for "all communications" and "any other third party" are unparticularized, overbroad, unduly burdensome, vague, ambiguous, and seeks documents that are neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence—including to the extent it seeks "all communications" regardless of relevance to this litigation. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*. Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

///

///

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    76                    App. 381

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is vague and overbroad, as it appears to refer to all transactions and purchases made for the UCLA student encampment, not just those made by Defendant. Purchases or transactions made for the UCLA student encampment that do not involve Defendant are irrelevant to Plaintiffs' claims against Defendant.

Defendant objects to this Request because it seeks disclosure of Defendant's communications relating to transactions, purchases, and funding which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's and its members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)      77      App. 382

demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. Political advocacy organizations have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)). Disclosure of Defendant's internal strategy, including the allocation of its resources, would deter Defendant and its members from continuing to engage in protected political organizing and deter individuals from joining or working with Defendant.

Furthermore, the identities of individuals who confidentially communicated with Defendant regarding transactions, purchases, and transfers of funds for the UCLA encampment are protected under the First Amendment. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *Tree*

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)

App. 383

*of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect"); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Entities and individuals who communicate with Defendant regarding political organizing and strategy, including financial or material contributions to the UCLA encampment, do so with an expectation of confidentiality. Disclosure of the identities of these individuals and entities will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

Plaintiffs cannot show that all communications related to transactions, purchases, and transfers of funds for the UCLA student encampment are highly relevant to their claims against Defendant, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Defendant will not disclose this protected information.

Defendant further objects that this Interrogatory seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another, particularly around sensitive political issues. Defendant will not disclose the identities of individuals and

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                79

entities who it confidentially communicated or confidentially communicated with Defendant on this basis.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Defendant objects to this Request because it seeks disclosure of communications regarding political activity and political financial contributions of those who associate with and/or support Defendant, which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's and its supporters' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate

out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. Defendant has a First Amendment interest in keeping confidential communications regarding political contributions made by its supporters and those who associate with it, as well as communications regarding its supporters' political opinions and political activity. *See Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect"); *NAACP*, 357 U.S. 447 at 463 (1958); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed*); Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021). Disclosure of such communications would deter Defendant and its members from continuing to engage in protected political organizing and political activity, and deter individuals from joining or working with Defendant.

Plaintiffs cannot show that all communications related to transactions, purchases, and transfers of funds for the UCLA student encampment (made by third parties only) are highly relevant to their claims against Defendant, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. The documents sought by this Request are protected by the First Amendment and Defendant will not disclose communications described above that are protected by the First Amendment nor the identities of those who made or received these protected communications and is withholding responsive communications on this basis.

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                         81

Defendant further objects that this Request seeks communications and information that are protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another, particularly around sensitive political issues and related financial contributions and political activity. Defendant will not disclose the identities of individuals and entities who it confidentially communicated or confidentially communicated with Defendant nor the content of the confidential communications on this basis.

Defendant has not identified any non-privileged, responsive documents.

**REQUEST FOR PRODUCTION NO. 17:**

All records of any meetings relating to the Popular University for Gaza initiative, the Campus Support Coalition, the UCLA encampment, or efforts to reestablish the UCLA encampments. This request includes but is not limited to notes, minutes, presentations, and any other prepared materials used during or created after such meetings.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is overbroad, unduly burdensome, and harassing.  Defendant further objects that the undefined term "relating" is vague and ambiguous.  Defendant further objects that this Request seeks documents that are not proportional to the needs of the case. Defendant further objects that this Request seeks information that is irrelevant. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*. Defendant further objects that this Request seeks information that is

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    82                    App. 387

protected by the attorney client privilege, attorney work product protection doctrine, or by any other protection afforded by law. Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is overly broad and unduly burdensome because it encompasses all Popular University for Gaza encampments across the country, while only one of these encampments, the UCLA encampment, is at issue in this lawsuit. Defendant's involvement in other student encampments is not relevant to Plaintiffs' claims. The documents sought in this Request are not proportional to the needs of the case.

Defendant further objects that the undefined term "relating" is vague and ambiguous.

Defendant objects to this Request because it seeks disclosure of Defendant's or other political advocacy organizations records of political advocacy and strategy meetings, which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's, its members', other political advocacy organizations', and their members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first

amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

The Ninth Circuit has recognized that a prima facie case is made when a party seeks discovery on minutes and content of political organizing meetings. *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed). Disclosure of such records will "induce members to withdraw from the [Defendant and other involved political advocacy organizations] and dissuade others from joining it because of fear of exposure of their beliefs." *NAACP*, 357 U.S. 447 at 463 (1958). In addition, political advocacy organizations have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with

political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)).

Plaintiffs cannot establish that any relevance of all records of meetings regarding all Popular University for Gaza encampments and initiatives across the Country is sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Any responsive meeting minutes are protected by the First Amendment. Furthermore, as discussed above, this Interrogatory is not narrowly tailored as it seeks a plethora of information regarding encampments and organizing efforts beyond the UCLA student encampment and Plaintiffs' allegations. Information sought by this Request is protected by the First Amendment.

Subject to and without waiving these objections, Defendant responds to this request at this time as follows: Defendant does not have any responsive documents in its possession, custody or control.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Defendant does not have any responsive documents in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 18:**

All documents summarizing, commenting on, reviewing, or otherwise analyzing the events surrounding the UCLA encampment and subsequent efforts to reestablish it. This request includes but is not limited to after-actions, post-mortems, audits, and any other similar memoranda or reports.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Plaintiff hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is overbroad, unduly burdensome, and harassing. Defendant objects that this Request is vague and ambiguous, as is the term

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                               85                    App. 390

"events surrounding." Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*. Defendant further objects that this Request seeks information that is protected by the attorney client privilege, attorney work product protection doctrine, or by any other protection afforded by law. Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein.  Defendant objects that this Request is overbroad, including to the extent that it seeks documents created by individuals who lack personal knowledge concerning the encampment and to the extent it seeks documents unrelated to Defendant's involvement in or response to the UCLA encampment.

Defendant objects that the term "involvement" as used in this Request is vague and ambiguous.

Defendant objects to the extent this Request seeks disclosure of Defendant's membership, political advocacy strategy, and political associations, which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's and its members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*,

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                          86                          App. 391

No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. It is well established that political advocacy organizations, including Defendant, have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)). Here, disclosure of

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    87                    App. 392

Defendant's internal political strategy would deter Defendant and its members from continuing to engage in protected political organizing. It would also subject Defendant to harassment from those who disagree with Defendant's political views, which Defendant has been subjected to in the past. Furthermore, compelled disclosure of Defendant's membership is likely to "induce members to withdraw from [Defendant] and dissuade others from joining it because of fear of exposure of their beliefs." *NAACP*, 357 U.S. 447 at 463 (1958); *see also Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed).

Furthermore, to the extent responsive documents disclose the identities of Defendant's members and those who organize with Defendant, they are likely to "induce members to withdraw from [Defendant] and dissuade others from joining it because of fear of exposure of their beliefs." *NAACP*, 357 U.S. 447 at 463 (1958); *see also McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). *Bursey v. U.S.*, 466 F.2d 1059 (9th Cir. 1972). Publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of Defendant's members, representatives, and associates presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant, which will hamper Defendant's associational activities.

Plaintiffs cannot show that the information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights.

Subject to and without waiving these objections, Defendant responds to this request

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                88

App. 393

at this time as follows: PCC000 662-677, 742-776, 778-827. Defendant attempted to obtain metadata for these documents. Defendant was unable to obtain metadata for its tweets. The responsive articles and statements produced are reproductions from publicly available sources and Defendant does not have metadata for the original documents in its possession, custody, or control. Defendant will produce additional responsive documents as they become available.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Defendant identifies the following responsive documents: PCC000 662-677, 742-776, 778-827. Defendant attempted to obtain metadata for these documents. Defendant was unable to obtain metadata for its tweets. The responsive articles and statements produced are reproductions from publicly available sources and Defendant does not have metadata for the original documents in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 19:**

All social media posts made by You or Your officers, employees, contractors, volunteers, agents, or other representatives, including but not limited to posts on Instagram, Twitter/X, Bluesky, Threads, Mastodon, Discord, and Telegram, regarding the UCLA encampment and subsequent efforts to reestablish it.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects to the request as it is overbroad. Defendant objects that this Request is vague and ambiguous, as is the term "representatives." Defendant is not obligated to provide information equally available to Plaintiffs—that includes social media that is public and equally available to Defendants. Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that the Request is overbroad because it seeks social media posts made by Defendant's officers, employees, contractors, volunteers, agents, and other representatives, which are not in the possession, custody, or control of Defendant (see General Objections, *supra* II) and are equally available to Plaintiffs, to the extent they are public social media accounts. Conducting a search of all social media accounts of by Defendant's officers, employees, contractors, volunteers, agents, and other representatives is unduly burdensome to Defendant, a part-time volunteer-run collective, and is therefore not proportional to the needs of the case. *See* Dkt. 110-2 at ¶ 4. On this basis, Defendant will not conduct such a search.

Defendant objects to this Request because it seeks disclosure of the identities of Defendant's officers, employees, contractors, volunteers, agents, and other representatives, which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's and its members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-

App. 395

50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. Compelled disclosure of Defendant's officers, employees, contractors, volunteers, agents, and other representatives is likely to "induce members to withdraw from [Defendant] and dissuade others from joining it because of fear of exposure of their beliefs." *NAACP*, 357 U.S. 447 at 463 (1958); *see also McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). *Bursey v. U.S.*, 466 F.2d 1059 (9th Cir. 1972). Publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of Defendant's members, representatives, and associates presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant, which will hamper Defendant's associational activities.

Plaintiffs cannot show that any relevance of the identities of Defendant's officers, employees, contractors, volunteers, agents, and other representatives is sufficient to

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    91                    App. 396

overcome the infringement on Defendant's and others' First Amendment rights.

Subject to and without waiving these objections, Defendant has conducted a search for responsive documents in its possession, custody, and control and to this request at this time as follows: PCC0001-741, 905-1023. Defendant attempted to obtain metadata for these documents. Defendant was unable to obtain metadata for its tweets. Defendant was able to obtain metadata for its posts on, but the data was only provided in one file for all of Defendant's Instagram posts, and as the file contains metadata for thousands of posts, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive post. Defendant will produce additional responsive documents as they become available.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Defendant objects that the Request is overbroad because it seeks social media posts made by Defendant's officers, employees, contractors, volunteers, agents, and other representatives, which are not in the possession, custody, or control of Defendant and are equally available to Plaintiffs, to the extent they are public social media accounts. Conducting a search of all social media accounts of by Defendant's officers, employees, contractors, volunteers, agents, and other representatives is unduly burdensome to Defendant, a part-time volunteer-run collective, and is therefore not proportional to the needs of the case. *See* Dkt. 110-2 at ¶ 4. On this basis, Defendant will not conduct such a search.

Defendant identifies the following responsive documents: PCC0001-741, 905-1023, 1037, 1045, 1047-71, 1089-91, 1096, 1100-36. Defendant attempted to obtain metadata for these documents. Defendant was unable to obtain metadata for its tweets. Defendant was able to obtain metadata for its posts on, but the data was only provided in one file for all of Defendant's Instagram posts, and as the file contains metadata for thousands of posts, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive post.

**REQUEST FOR PRODUCTION NO. 20:**

All documents reflecting, referring or relating to the management of Your social media accounts, including but not limited to Instagram, Twitter/X, Bluesky, Threads, Mastodon, Discord, and Telegram.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is overbroad. Defendant objects that this Request is vague and ambiguous, as is the term "management. Defendant further objects that this Request seeks documents that are not proportional to the needs of the case. Defendant further objects that this Request seeks information that is irrelevant. Defendant further objects that this Request is overbroad as to time. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is overbroad because it seeks information regarding management of Defendant's social media accounts, which encompasses thousands of posts on numerous topics that are wholly unrelated to any of Plaintiffs' allegations. Furthermore, the management of Defendant's social media accounts is not relevant to Defendant's involvement in or response to the UCLA encampment. As such, the documents sought in this Request are not relevant nor proportional to the needs of the case.

Defendant further objects that the term management as used in the Request is vague and ambiguous.

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    93                    App. 398

Defendant objects to this Request because it seeks disclosure of Defendant's internal management which is protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's and its members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. It is well

established that political advocacy organizations, including Defendant, have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)); *see also Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed). Compelled disclosure of Defendant's internal management is likely to "induce members to withdraw from [Defendant] and dissuade others from joining it because of fear of exposure of their beliefs." *NAACP*, 357 U.S. 447 at 463 (1958).

Plaintiffs cannot show that documents regarding management of its social media accounts, including its use of social media for purposes unrelated to Plaintiffs' allegations, is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Request is not narrowly tailored as it seeks documents regarding management of Defendant's social media accounts, regardless of whether they pertains to Defendant's involvement in or response to the UCLA student encampment. Such documents are protected by the First Amendment.

Subject to and without waiving these objections, Defendant responds to this request at this time as follows: Defendant does not have any responsive documents in its possession, custody or control.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Defendant does not have any responsive documents in its possession, custody or

control.

**REQUEST FOR PRODUCTION NO. 21:**

All communications on the subject of the management of Your social media accounts, including but not limited to communications between PCC and WESPAC, AMP, NSJP, NFJP, UC Divest, Unity of Fields, or any other third party.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant further objects that this Request is overbroad as to time. The Request for "all communications" and "any other third party" are unparticularized, overbroad, unduly burdensome, vague, ambiguous, and seeks documents that are neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence—including to the extent it seeks "all communications" regardless of relevance to this litigation. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*. Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is overbroad because it seeks information regarding management of Defendant's social media accounts, which encompasses thousands of posts on numerous topics that are wholly unrelated to any of Plaintiffs' allegations. Furthermore, the management of Defendant's social media

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                96                   App. 401

accounts is not relevant to Defendant's involvement in or response to the UCLA encampment. As such, the documents sought in this Request are not relevant nor proportional to the needs of the case.

Defendant further objects that the term management as used in the Request is vague and ambiguous.

Defendant objects to this Request because it seeks disclosure of Defendant's internal management and related confidential communications, which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's and its members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate

out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. It is well established that political advocacy organizations, including Defendant, have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)); *see also Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed). Compelled disclosure of Defendant's internal management is likely to "induce members to withdraw from [Defendant] and dissuade others from joining it because of fear of exposure of their beliefs." *NAACP*, 357 U.S. 447 at 463 (1958).

Furthermore, the identities of individuals who confidentially communicate with Defendant regarding political strategy and beliefs and content of such communication are protected under the First Amendment. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—

and their ideas from suppression—at the hand of an intolerant society."); *Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect"); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Entities and individuals communicate with Defendant regarding political organizing and strategy do so with an expectation of confidentiality. Disclosure of these communications will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

Plaintiffs cannot show that communications regarding management of its social media accounts, including its use of social media for purposes unrelated to Plaintiffs' allegations, is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Request is not narrowly tailored as it seeks communications regarding management of Defendant's social media accounts, regardless of whether they pertains to Defendant's involvement in or response to the UCLA student encampment. Such documents are protected by the First Amendment.

Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                                    99                    App. 404

Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another.

Subject to and without waiving these objections, Defendant responds to this request at this time as follows: Defendant does not have any responsive documents in its possession, custody or control.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Defendant does not have any responsive documents in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 22:**

All documents reflecting, referring or relating to PCC's involvement in efforts to reestablish the UCLA encampment, including, but not limited to, documents regarding: the use of PCC's official social media accounts to promote efforts to reestablish the encampment; which members of Yours were present at efforts to reestablish the encampment or on the UCLA campus between May 3, 2024, and August 1, 2024; any supplies or funding provided by You to or for the benefit of efforts to reestablish UCLA encampment; and the exclusion of any persons or groups of persons from the encampment. This request also includes communications with UCLA employees or representatives regarding efforts to reestablish the UCLA encampment; communications regarding encampment security, UCLA security, or law enforcement; and communications regarding exclusion of any persons or groups from subsequent encampments.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is vague and ambiguous, as is the term "involvement." Defendant objects that this Request is overbroad, unduly burdensome, and harassing. Defendant further objects that this Request seeks documents that are not

proportional to the needs of the case. Defendant further objects that this Request seeks information that is irrelevant. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*. Defendant further objects that this Request seeks information that is protected by the attorney client privilege, attorney work product protection doctrine, or by any other protection afforded by law. Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein.

Defendant objects that the term "involvement" as used in this Request is vague and ambiguous.

Defendant objects to this Request because it seeks disclosure of Defendant's membership, political advocacy strategy, political associations, and financial contributions to political organizing efforts, which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's and its members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

---

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                                101                                <span style="color:red">App. 406</span>

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am*., 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. The identities of political advocacy organization's members and affiliates are protected under the First Amendment, as are the identities of individuals who confidentially communicate with Defendant regarding political strategy. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—

and their ideas from suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.*, 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers*, 661 F.3d 1168 (9th Cir. 2011). Entities and individuals who communicate with Defendant regarding political organizing and strategy do so with an expectation of confidentiality, especially given the politically sensitive and controversial topic of Palestine and Israel. Disclosure of the identities of these individuals and entities and contents of their communications will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

Likewise, political advocacy organizations have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)); *see also Perry*, 591 F.3d 1147; *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); *Roberts v. U.S.*

*Jaycees*, 468 U.S. 609 (1984). Disclosure of Defendant's confidential internal documents and communications will dissuade Defendant and its members from engaging in First Amendment protected activity in the future, such as organizing around various political issues and will dissuade others from joining or working with Defendant on political advocacy efforts in the future as they will fear exposure of their political strategy and advocacy efforts.

Further, a political advocacy organization's financial records regarding its political advocacy work is protected by the First Amendment because the revelation of this information might chill the rights of group members. *Adolph Coors v. Wallace*, 570 F. Supp. 202, 208-10 (N.D. Cal. 1983); *see also Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect").

Plaintiffs cannot show that the protected information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Documents and information sought by this Request are protected by the First Amendment.

Defendant further objects that this Request seeks communications and information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another, particularly around sensitive political issues.

Subject to and without waiving these objections, Defendant responds to this request at this time as follows: PCC000 25, 42, 48, 51, 56, 59, 62, 64, 67, 155-164, 185-189, 200-209, 212-237, 248-259, 296, 300, 303, 439-442, 447-448, 637-653, 658-661, 682-683, 686, 697-726, 731, 1010-1012. Defendant attempted to obtain metadata for these

documents. Defendant was unable to obtain metadata for its tweets. Defendant was able to obtain metadata for its posts on Instagram, but the data was only provided in one file for all of Defendant's Instagram posts, and as the file contains metadata for thousands of posts, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive post. Defendant will produce additional responsive documents as they become available.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Defendant objects to this Request because it seeks disclosure of Defendant's political advocacy strategy, political associations, identities of Defendant's supporters, and Defendant's supporters' political activity, which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's and its members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the

information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. The identities of political advocacy organization's affiliates and supporters, as well as their political activity, political opinions, and organizing strategy, are protected under the First Amendment. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.*, 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Disclosure of the identities and communications of these individuals and entities will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine

and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

Plaintiffs cannot show that the protected information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. The documents sought by this Requests are protected by the First Amendment and Defendant will not disclose communications described above that are protected by the First Amendment nor the identities of those who made or received these protected communications and is withholding responsive communications and information on this basis. Defendant is not withholding any non-communication documents under a claim of privilege.

Defendant further objects that this Request seeks communications and information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another, particularly around sensitive political issues. Defendant will not produce responsive confidential communications or information on this basis. Defendant is not withholding any non-communication documents under a claim of privilege.

Defendant identifies the following non-privileged, responsive documents (note some documents are partially redacted based on the above privileges): PCC000 25, 42, 48, 51, 56, 59, 62, 64, 67, 155-164, 185-189, 200-209, 212-237, 248-259, 296, 300, 303, 439-442, 447-448, 637-653, 658-661, 682-683, 686, 697-726, 731, 832, 834-835, 839, 843, 849, 861, 863, 865, 879-880, 883, 1010-1012, 1183, 1187, 1189-98, 1200, 1202, 1206,

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    107                    <span style="color:red">App. 412</span>

1216, 1220, 1222, 1224, 1226, 1230, 1238, 1241, 1243, 1247-48, 1251, 1255, 1260, 1267, 1271, 1274, 1276, 1279, 1285, 1287, 1296, 1298-1300, 1304, 1306, 1309, 1315-16, 1319, 1322, 1326, 1332, 1334, 1337, 1341, 1345, 1348, 1353, 1361-62, 1366, 1368-69, 1378, 1381, 1385, 1387, 1389-90, 1394, 1403, 1406, 1429, 1432, 1438, 1440, 1445, 1512-13. Defendant attempted to obtain metadata for these documents. Defendant was unable to obtain metadata for its tweets. Defendant was able to obtain metadata for its posts on Instagram, but the data was only provided in one file for all of Defendant's Instagram posts, and as the file contains metadata for thousands of posts, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive post.

**REQUEST FOR PRODUCTION NO. 23:**

All communications on the subject of efforts to reestablish the UCLA encampment, including but not limited to communications between PCC and WESPAC, AMP, NSJP, NFJP, UC Divest, Unity of Fields, or any other third party.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is overbroad, unduly burdensome, and harassing. Defendant further objects that this Request seeks documents that are not proportional to the needs of the case. Defendant further objects that this Request seeks information that is irrelevant. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*. Defendant further objects that this Request seeks information that is protected by the attorney client privilege, attorney work product protection doctrine, or by any other protection afforded by law. Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as

recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein.  Defendant objects that this Request is overly broad and unduly burdensome because it encompasses all communications regarding efforts to reestablish the UCLA encampment, regardless of their relevance to Plaintiffs' claims.

Defendant objects to this Request because it seeks disclosure of Defendant's membership, political advocacy strategy, political associations, and financial contributions to political organizing efforts, which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's and its members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am*., 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more

---

demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. The identities of political advocacy organization's members and affiliates are protected under the First Amendment, as are the identities of individuals who confidentially communicate with Defendant regarding political strategy. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation— and their ideas from suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect"); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Entities and individuals who communicate with Defendant regarding political organizing

and strategy do so with an expectation of confidentiality, especially given the politically sensitive and controversial topic of Palestine and Israel. Disclosure of the identities of these individuals and entities and contents of their communications will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

Likewise, political advocacy organizations have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)); *see also Perry,* 591 F.3d 1147; *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984). Disclosure of Defendant's confidential internal communications will dissuade Defendant and its members from engaging in First Amendment protected activity in the future, such as organizing around various political issues and will dissuade others from joining or working with Defendant on political advocacy efforts in the future as they will fear exposure of their political strategy and advocacy efforts.

Plaintiffs cannot show that the protected information they are requesting is highly

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                   111                        App. 416

relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Defendant will not disclose communications and information sought by this Request that are protected by the First Amendment.

Defendant further objects that this Request seeks communications and information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another, particularly around sensitive political issues. Defendant likewise objects to the extent this Request seeks information regarding the identities of journalists who confidentially communicated with Defendant for the purpose of newsgathering. *See Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) ("Rooted in the First Amendment, the [journalist's] privilege is a recognition that society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public, is an interest of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice." (internal quotations and citation omitted)). Defendant will not disclose the identities of individuals and entities who it confidentially communicated or confidentially communicated with Defendant nor the content of the confidential communications on this basis.

Subject to and without waiving these objections, Defendant responds to this request at this time as follows: PCC000832, 834-835, 839, 843, 849, 861, 863, 865, 879-880, 883. Defendant attempted to obtain metadata for these documents. Defendant was able to obtain metadata for its direct messages sent and received via Twitter, but the data was only provided in one file for all of Defendant's direct messages sent and received on Twitter, and as the file contains metadata for thousands of messages, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive message. Likewise, Defendant was able to obtain metadata for its direct messages sent and received via Instagram, but the data was only provided in one file for all of Defendant's

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    112

direct messages sent and received on Instagram, and as the file contains metadata for thousands of messages, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive message. Defendant will produce additional responsive documents as they become available.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Defendant objects to this Request because it seeks disclosure of Defendant's political advocacy strategy, political associations, identities of Defendant's supporters, and Defendant's supporters' political activity, which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's and its members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure

26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. The identities of political advocacy organization's affiliates and supporters, as well as their political activity, political opinions, and organizing strategy, are protected under the First Amendment. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.*, 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Disclosure of the identities and communications of these individuals and entities will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)

App. 419

extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

Plaintiffs cannot show that the protected information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. The documents sought by this Requests are protected by the First Amendment and Defendant will not disclose communications described above that are protected by the First Amendment nor the identities of those who made or received these protected communications and is withholding responsive communications and information on this basis.

Defendant further objects that this Request seeks communications and information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another, particularly around sensitive political issues. Defendant will not produce responsive confidential communications and information on this basis.

Defendant identifies the following non-privileged, responsive documents (note some documents are partially redacted based on the above privileges): PCC000832, 834-835, 839, 843, 849, 861, 863, 865, 879-880, 883, 1043-44, 1046, 1097, 1099, 1183, 1187, 1189-98, 1200, 1202, 1206, 1216, 1220, 1222, 1224, 1226, 1230, 1238, 1241, 1243, 1247-48, 1251, 1255, 1260, 1267, 1271, 1274, 1276, 1279, 1285, 1287, 1296, 1298-1300, 1304, 1306, 1309, 1315-16, 1319, 1322, 1326, 1332, 1334, 1337, 1341, 1345, 1348, 1353, 1361-62, 1366, 1368-69, 1378, 1381, 1385, 1387, 1389-90, 1394, 1403, 1406, 1429, 1432, 1438, 1440, 1445, 1512-13. Defendant attempted to obtain metadata for these documents.  Defendant was able to obtain metadata for its direct messages sent and

received via Twitter, but the data was only provided in one file for all of Defendant's direct messages sent and received on Twitter, and as the file contains metadata for thousands of messages, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive message. Likewise, Defendant was able to obtain metadata for its direct messages sent and received via Instagram, but the data was only provided in one file for all of Defendant's direct messages sent and received on Instagram, and as the file contains metadata for thousands of messages, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive message.

**REQUEST FOR PRODUCTION NO. 24:**

All documents reflecting, referring or relating to AMP's involvement in NSJP's creation, funding, and operation of its national initiatives, including but not limited to documents regarding AMP's involvement in the Popular University for Gaza, the Campus Support Coalition, the UCLA encampment, and efforts to reestablish the encampment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant further objects that this Request is overbroad as to time. The Request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence—including to the extent it seeks "all documents" regardless of relevance to this litigation. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*. Defendant further objects that this Request seeks information that is protected by the attorney client privilege, attorney work product protection doctrine, or by any other protection afforded by law. Defendant further objects that this Request seeks

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    116

App. 421

information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request seeks information that is irrelevant as AMP is no longer a party to this lawsuit. Defendant objects that this Request is overly broad and unduly burdensome because it encompasses NSJP's entire existence and all Popular University for Gaza encampments across the country, while only one of these encampments, the UCLA encampment, is at issue in this lawsuit. AMP's involvement in the founding of NSJP and in other student encampments is not relevant to Plaintiffs' claims. Furthermore, a search for responsive documents concerning all Popular University for Gaza encampments across the country is unduly burdensome for a part-time volunteer-run collective. *See* Dkt. 110-2 at ¶ 4.

Defendant objects that the term "involvement" as used in this Request is vague and ambiguous.

Defendant objects to this Request because it seeks disclosure of documents relating to NSJP's creation, funding, and operations which are protected by the First Amendment. Compelled disclosure of such information would not only violate NSJP's and its members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010).

Defendant objects to this Request to the extent it seeks disclosure of Defendant's, AMP's, and NSJP's membership, political advocacy strategy, political associations, and financial contributions to political organizing efforts, which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's, AMP's, NSJP's, and their members members' rights of free association, but

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                117

App. 422

it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am*., 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. Political advocacy organizations have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C.

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    118

App. 423

May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)); *see also Perry,* 591 F.3d 1147; *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984). Disclosure of Defendant's, AMP's, or NSJP's confidential internal documents will dissuade these organizations and their members from engaging in First Amendment protected activity in the future, such as organizing around various political issues and will dissuade others from joining or working with Defendant, AMP, or NSJP on political advocacy efforts in the future as they will fear exposure of their political strategy and advocacy efforts.

Further, the identities of political advocacy organization's members and affiliates are protected under the First Amendment. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011).

A political advocacy organization's financial records regarding its political advocacy work is protected by the First Amendment because the revelation of this information might chill the rights of group members. *Adolph Coors v. Wallace*, 570 F.

Supp. 202, 208-10 (N.D. Cal. 1983); *see also Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect").

Plaintiffs cannot show that the protected information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Such information is protected by the First Amendment.

Subject to and without waiving these objections, Defendant responds to this request at this time as follows: Defendant does not have any responsive documents in its possession, custody or control.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Defendant does not have any responsive documents in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 25:**

All communications on the subject of AMP's involvement in NSJP's creation, funding, and operation of its national initiatives, including, but not limited to, communications regarding AMP's involvement in the Popular University for Gaza, the Campus Support Coalition, the UCLA encampment, and efforts to reestablish the encampment to reestablish the UCLA encampment, including but not limited to communications between PCC and WESPAC, AMP, NSJP, NFJP, UC Divest, Unity of Fields, or any other third party.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant further objects that this Request is overbroad as to time. The Request is overbroad, unduly burdensome, and seeks documents that are neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    120                    <span style="color:red">App. 425</span>

admissible evidence—including to the extent it seeks "all communications" regardless of relevance to this litigation. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*. Defendant further objects that this Request seeks information that is protected by the attorney client privilege, attorney work product protection doctrine, or by any other protection afforded by law. Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request seeks information that is irrelevant as AMP is no longer a party to this lawsuit. Defendant objects that this Request is overly broad and unduly burdensome because it encompasses NSJP's entire existence and all Popular University for Gaza encampments across the country, while only one of these encampments, the UCLA encampment, is at issue in this lawsuit. AMP's involvement in the founding of NSJP and in other student encampments is not relevant to Plaintiffs' claims. Furthermore, a search for responsive communications concerning all Popular University for Gaza encampments across the country is unduly burdensome for a part-time volunteer-run collective. *See* Dkt. 110-2 at ¶ 4.

Defendant objects that the term "involvement" as used in this Request is vague and ambiguous.

Defendant objects to this Request to the extent it seeks disclosure of confidential communications that would reveal Defendant's, AMP's, and NSJP's membership,

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    121                    <span>App. 426</span>

political advocacy strategy, political associations, and financial contributions to political organizing efforts, which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's, AMP's, NSJP's, and their members members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. Political

advocacy organizations have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)); *see also Perry,* 591 F.3d 1147; *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984). Disclosure of Defendant's, AMP's, or NSJP's confidential internal documents will dissuade these organizations and their members from engaging in First Amendment protected activity in the future, such as organizing around various political issues and will dissuade others from joining or working with Defendant, AMP, or NSJP on political advocacy efforts in the future as they will fear exposure of their political strategy and advocacy efforts.

Further, the identities of individuals who confidentially communicate with Defendant regarding political strategy and beliefs and content of such communication are protected under the First Amendment. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation— and their ideas from suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS

32205, at *9-10, (S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect"); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Entities and individuals communicate with Defendant regarding political organizing and strategy do so with an expectation of confidentiality. Disclosure of these communications will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

In addition, a political advocacy organization's financial records regarding its political advocacy work is protected by the First Amendment because the revelation of this information might chill the rights of group members. *Adolph Coors v. Wallace*, 570 F. Supp. 202, 208-10 (N.D. Cal. 1983); *see also Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect").

Plaintiffs cannot show that the protected communications they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Such communications are protected by the First Amendment.

---

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                           124                           App. 429

Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties with which is communicated as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and the third parties had a high and reasonable expectation of privacy when confidentially communicating with one another.

Subject to and without waiving these objections, Defendant responds to this request at this time as follows: Defendant does not have any responsive documents in its possession, custody or control.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Defendant does not have any responsive documents in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 26:**

All documents reflecting, referring or relating to the article Advancing the Line, Emboldening the People: Reflections on the One-Year Anniversary of the UCLA Palestine Solidarity Encampment, published by Unity of Fields on May 1, 2025.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein.  Defendant objects that this Request is overbroad, unduly burdensome, and harassing. Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*.

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    125                    <span style="color:red">App. 430</span>

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein.  Defendant objects that this Request is overbroad as *all* documents reflecting, referring or relating to the article are not relevant to Plaintiffs' claims.

Defendant objects to the extent this Request seeks information regarding information sharing with journalists who confidentially communicated with Defendant for the purpose of newsgathering. *See Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) ("Rooted in the First Amendment, the [journalist's] privilege is a recognition that society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public, is an interest of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice." (internal quotations and citation omitted)).

Subject to and without waiving these objections, Defendant responds to this request at this time as follows: PCC000663, 669-670, 673, 677, 742-776. Defendant attempted to obtain metadata for these documents. Defendant was unable to obtain metadata for its tweets. Defendant was able to obtain metadata for its posts on Instagram, but the data was only provided in one file for all of Defendant's Instagram posts, and as the file contains metadata for thousands of posts, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive post. The responsive articles produced are reproductions from publicly available sources and Defendant does not have metadata for the original documents in its possession, custody, or control.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Defendant identifies the following responsive documents: PCC000663, 669-670, 673, 677, 742-776, 1058, 1066-69. Defendant attempted to obtain metadata for these documents. Defendant was unable to obtain metadata for its tweets. Defendant was able to obtain metadata for its posts on Instagram, but the data was only provided in one file for

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    126                    App. 431

all of Defendant's Instagram posts, and as the file contains metadata for thousands of posts, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive post. The responsive articles produced are reproductions from publicly available sources and Defendant does not have metadata for the original documents in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 27:**

All communications on the subject of the article Advancing the Line, Emboldening the People: Reflections on the One-Year Anniversary of the UCLA Palestine Solidarity Encampment, published by Unity of Fields on May 1, 2025, between PCC and WESPAC, AMP, NSJP, NFJP, UC Divest, Unity of Fields, including but not limited to communications between PCC and WESPAC, AMP, NSJP, NFJP, UC Divest, Unity of Fields, or any other third party.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein.  Defendant objects that this Request is overbroad, unduly burdensome, and harassing.  Defendant objects to this Request as it seeks documents subject to third-party confidentiality restrictions and/or protections. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein.  Defendant objects that this Request is overbroad as *all* communications on the subject of the article are not relevant to Plaintiffs' claims, such as relevant to Defendant's involvement in or response to the UCLA encampment.  Defendant objects that the phrase "on the subject of" is vague and ambiguous.

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                              127                        App. 432

Defendant objects to this Request because it seeks disclosure of Defendant's protected communications and the disclosure of the identities of individuals and entities affiliated with Defendant or which Defendant engaged in protected association activity with. Compelled disclosure of such information implicates Defendant's, individuals and entities affiliated with Defendant's, and individuals and entities Defendant has engaged in protected association activity with's right to free association and would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise

unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. The identities of political advocacy organization's members and affiliates are protected under the First Amendment, as are the identities of individuals who confidentially communicate with Defendant regarding political strategy. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation— and their ideas from suppression—at the hand of an intolerant society."); *Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect"); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Entities and individuals who communicate with Defendant regarding political organizing and strategy do so with an expectation of confidentiality, especially given the politically sensitive and controversial topic of Palestine and Israel. *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed). Disclosure of the identities of these individuals and entities and contents of their communications will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                        129

App. 434

Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

As information concerning *all* documents and communications regarding an article sheds little light on Defendant's actions regarding the UCLA encampment, Plaintiffs cannot show that the communications they are requesting are highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. This information is protected by the First Amendment.

Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another about the politically sensitive and controversial topic of Israel and Palestine.

Subject to and without waiving these objections, Defendant responds to this request at this time as follows: Defendant does not have any responsive documents in its possession, custody, or control.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Defendant does not have any responsive documents in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 28:**

All documents reflecting, referring or relating to Unity of Fields' involvement in the UCLA encampment and efforts to reestablish the UCLA encampment.

/ / /

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    130                    App. 435

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein.  Defendant objects that this Request is overbroad, unduly burdensome, and harassing. Defendant further objects that this Request seeks documents that are not proportional to the needs of the case. Defendant further objects that this Request seeks information that is irrelevant. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*. Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request seeks information that is irrelevant as Unity of Fields is not a party to this lawsuit. Defendant objects that the term "involvement" as used in this Request is vague and ambiguous.

Defendant objects to this Request to the extent it seeks disclosure of Defendant's and Unity of Field's membership, political advocacy strategy, and political associations, which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's and its members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v.*

*Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am*., 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. The identities of political advocacy organization's members and affiliates are protected under the First Amendment. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    132                    **App. 437**

suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011).

Likewise, political advocacy organizations have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)); *see also Perry,* 591 F.3d 1147; *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984). Disclosure of Defendant's or Unity of Field's confidential internal documents and communications will dissuade Defendant, Unity of Fields, and their members from engaging in First Amendment protected activity in the future, such as organizing around various political issues and will dissuade others from joining or working with Defendant or Unity of Fields on political advocacy efforts in the future as they will fear exposure of their political strategy and advocacy efforts.

Plaintiffs cannot show that the protected information they are requesting regarding an organization that is not a party to this lawsuit is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Therefore, such documents are protected by the First Amendment.

Subject to and without waiving these objections, Defendant responds to this request at this time as follows: Defendant does not have any responsive documents in its possession, custody or control.

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                                   133                          App. 438

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Defendant does not have any responsive documents in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 29:**

All communications on the subject of Unity of Fields' involvement in the UCLA encampment and efforts to reestablish the UCLA encampment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is overbroad, unduly burdensome, and harassing. Defendant further objects that this Request seeks documents that are not proportional to the needs of the case. Defendant further objects that this Request seeks information that is irrelevant. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*. Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request seeks information that is irrelevant as Unity of Fields is not a party to this lawsuit. Defendant objects that the terms "on the subject of" and "involvement" as used in this Request are vague and ambiguous. Defendant objects to this Request to the extent it seeks disclosure of Defendant's

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    134                    App. 439

and Unity of Field's confidential communications, membership, political advocacy strategy, and political associations, which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's and its members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. The identities of

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    135                    App. 440

individuals who confidentially communicate with Defendant regarding political strategy and beliefs and content of such communication are protected under the First Amendment. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect"); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Entities and individuals communicate with Defendant regarding political organizing and strategy do so with an expectation of confidentiality. Disclosure of these communications will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with

Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

Likewise, political advocacy organizations have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)); *see also Perry,* 591 F.3d 1147; *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984). Disclosure of Defendant's or Unity of Field's confidential internal documents and communications will dissuade Defendant, Unity of Fields, and their members from engaging in First Amendment protected activity in the future, such as organizing around various political issues and will dissuade others from joining or working with Defendant or Unity of Fields on political advocacy efforts in the future as they will fear exposure of their political strategy and advocacy efforts.

Plaintiffs cannot show that the protected communications they are requesting regarding an organization that is not a party to this lawsuit is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Therefore, such communications are protected by the First Amendment.

Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties who communicated with Defendant as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another.

Subject to and without waiving these objections, Defendant responds to this request at this time as follows: Defendant does not have any responsive documents in its possession, custody or control.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Defendant does not have any responsive documents in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 30:**

All documents reflecting, referring or relating to Your sources of funding relating to your involvement in the UCLA encampment, the efforts to reestablish the UCLA encampment, the Popular University for Gaza initiative, and the Campus Support Coalition, including but not limited to financial statements and statements of cash flow or income and expenses (whether or not audited).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein.  Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*. Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein.  Defendant objects that this Request is overly broad and unduly burdensome because it encompasses all Popular University for Gaza encampments across the country,

while only one of these encampments, the UCLA encampment, is at issue in this lawsuit. Defendant's involvement in other student encampments is not relevant to Plaintiffs' claims. Defendant further objects that any sources of Defendant's funding are not relevant to Plaintiffs' allegations, including to Defendant's involvement in or response to the UCLA encampment.

Defendant objects that the term "involvement" as used in this Request is vague and ambiguous.

Defendant objects to this Request because it seeks disclosure of Defendant's funding sources. Compelled disclosure of such information implicates Defendant's and its members' right to free association and would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am*., 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209

(N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. A political advocacy organization's sources of financial support is protected by the First Amendment because the revelation of this information might chill the rights of group members. *Adolph Coors v. Wallace*, 570 F. Supp. 202, 208-10 (N.D. Cal. 1983); *see also Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect"). In addition, political advocacy organizations have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)). Disclosure of information concerning Defendant's funding sources will cause any individuals or entities that provide funding to Defendant to cease providing funding to Defendant and other political advocacy organizations for fear of public exposure of their political views and associations. *See In re Anonymous Online Speakers*, 661 F.3d 1168 (9th Cir. 2011) (Any identifying information that would unmask anonymous speakers is also privileged). Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of Defendant's funding sources presents grave safety

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    140                    <span style="color:red">App. 445</span>

risks. For this reason, disclosure will also dissuade people and entities from providing funding to Defendant, which will hamper Defendant's associational activities.

As information regarding Defendant's funding sources sheds no light on Defendant's actions regarding the UCLA encampment, Plaintiffs cannot show that the information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Request is not narrowly tailored as it seeks information concerning Defendant's sources of funding regarding all Popular University for Gaza encampments and initiatives, regardless of whether it pertains to Defendant's involvement in or response to the UCLA student encampment. The information sought by this Request is protected by the First Amendment and Defendant will not disclose this protected information.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Defendant does not have any responsive documents in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 31:**

All communications on the subject of Your sources of funding relating to your involvement in the UCLA encampment, the efforts to reestablish the UCLA encampment, the Popular University for Gaza initiative, and the Campus Support Coalition.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*. Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    141

guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein.  Defendant objects that this Request is overly broad and unduly burdensome because it encompasses all Popular University for Gaza encampments across the country, while only one of these encampments, the UCLA encampment, is at issue in this lawsuit. Defendant's involvement in other student encampments is not relevant to Plaintiffs' claims. Defendant further objects that any sources of Defendant's funding are not relevant to Plaintiffs' allegations, including to Defendant's involvement in or response to the UCLA encampment.

Defendant objects that the term "involvement" as used in this Request is vague and ambiguous.

Defendant objects to this Request because it seeks disclosure of Defendant's funding sources. Defendant also objects to this Request because it seeks disclosure of Defendant's and those who communicate with Defendant's political advocacy strategy, political associations, and financial contributions to political organizing efforts, which are protected by the First Amendment. Compelled disclosure of such information implicates Defendant's and its members' right to free association and would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1)

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    142                    **App. 447**

harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. A political advocacy organization's sources of financial support is protected by the First Amendment because the revelation of this information might chill the rights of group members. *Adolph Coors v. Wallace*, 570 F. Supp. 202, 208-10 (N.D. Cal. 1983); *see also Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect"). In addition, political advocacy organizations have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their

effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)). Disclosure of information concerning Defendant's funding sources will cause any individuals or entities that provide funding to Defendant to cease providing funding to Defendant and other political advocacy organizations for fear of public exposure of their political views and associations. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of Defendant's funding sources presents grave safety risks. For this reason, disclosure will also dissuade people and entities from providing funding to Defendant, which will hamper Defendant's associational activities.

Further, the identities of individuals who confidentially communicate with Defendant regarding political strategy and beliefs and content of such communication are protected under the First Amendment. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Entities and individuals communicate with Defendant regarding political organizing and strategy do so with an expectation of confidentiality. Disclosure of these communications will cause such individuals and entities to cease working and communicating with Defendant, dissuade

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    144

App. 449

them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

As communications regarding Defendant's funding sources sheds no light on Defendant's actions regarding the UCLA encampment, Plaintiffs cannot show that the information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Request is not narrowly tailored as it seeks communications concerning Defendant's sources of funding regarding all Popular University for Gaza encampments and initiatives, regardless of whether it pertains to Defendant's involvement in or response to the UCLA student encampment. The information sought by this Request is protected by the First Amendment.

Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another.

Subject to and without waiving these objections, Defendant responds to this request at this time as follows: Defendant does not have any responsive documents in its custody, possession, or control.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Defendant does not have any responsive documents in its custody, possession, or

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    145

control.

**REQUEST FOR PRODUCTION NO. 32:**

All documents reflecting, referring or relating to your involvement in the UCLA encampment, the efforts to reestablish the UCLA encampment, the Popular University for Gaza initiative, and the Campus Support Coalition, including but not limited to financial statements and statements of cash flow or income and expenses (whether or not audited).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is overbroad, unduly burdensome, and harassing. Defendant further objects that this Request is cumulative and duplicative. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*. Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein.  Defendant objects that this Request is overly broad and unduly burdensome because it encompasses all Popular University for Gaza encampments across the country, while only one of these encampments, the UCLA encampment, is at issue in this lawsuit. Defendant's involvement in other student encampments is not relevant to Plaintiffs' claims. Furthermore, a search for responsive documents concerning all Popular University for Gaza encampments across the country is unduly burdensome for a part-time volunteer-

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    146                    <span style="color:red">App. 451</span>

run collective. *See* Dkt. 110-2 at ¶ 4. Defendant made an estimated over one thousand social media posts regarding all Palestine solidarity encampments. A search for all responsive documents would require Defendant to manually search through an estimated over one hundred thousand social media posts on multiple platforms, review hundreds of documents for privileged content and prepare hundreds of documents for production. This burden is not proportional to the needs of the case. On these grounds, Defendant will only conduct a search for documents regarding the UCLA student encampment.

Defendant objects that the term "involvement" as used in this Request is vague and ambiguous.

Defendant objects to this Request because it seeks disclosure of Defendant's political advocacy strategy, political associations, and financial contributions to political organizing efforts, which are protected by the First Amendment. Compelled disclosure of such information implicates Defendant's, individuals and entities affiliated with Defendant's, and individuals and entities Defendant has engaged in protected association activity with's right to free association and would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is

sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. Political advocacy organizations have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)); *see also Perry,* 591 F.3d 1147; *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991); *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984). Disclosure of Defendant's confidential internal documents will dissuade Defendant and its members from engaging in First Amendment protected activity in the future, such as organizing around various political issues and will dissuade others from joining or working with Defendant on political advocacy efforts in the future as they will fear exposure of their political strategy and advocacy efforts.

Furthermore, the identities of political advocacy organization's members and affiliates are protected under the First Amendment. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's

associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Disclosure of the identities of these individuals and entities will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

Likewise, a political advocacy organization's financial records regarding its political advocacy work is protected by the First Amendment because the revelation of this information might chill the rights of group members. *Adolph Coors v. Wallace*, 570 F. Supp. 202, 208-10 (N.D. Cal. 1983); *see also Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                149

"has a reasonable possibility of a chilling effect").

As all documents relating a nation-wide initiative sheds little light on Defendant's actions regarding the UCLA encampment, Plaintiffs cannot show that the information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Request is not narrowly tailored as it seeks a plethora of information regarding encampments and organizing efforts beyond the UCLA student encampment and Plaintiffs' allegations. Defendant will not disclose information sought by this Request that is protected by the First Amendment.

Subject to and without waiving these objections, Defendant conducted a search for responsive documents regarding the UCLA student encampment and responds to this request at this time as follows: PCC0001-482, 484-653, 658-686, 691, 694-726, 731, 738-741, 783-827, 905-1023. Defendant attempted to obtain metadata for these documents. Defendant was unable to obtain metadata for its tweets. Defendant was able to obtain metadata for its posts on Instagram, but the data was only provided in one file for all of Defendant's Instagram posts, and as the file contains metadata for thousands of posts, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive post. The responsive articles produced are reproductions from publicly available sources and Defendant does not have metadata for the original documents in its possession, custody, or control. Defendant will produce additional responsive documents as they become available.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Defendant objects that this Request is overly broad and unduly burdensome because it encompasses all Popular University for Gaza encampments across the country, while only one of these encampments, the UCLA encampment, is at issue in this lawsuit. Defendant's involvement in other student encampments is not relevant to Plaintiffs' claims. Furthermore, a search for responsive documents concerning all Popular University

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)

150

for Gaza encampments across the country is unduly burdensome for a part-time volunteer-run collective. *See* Dkt. 110-2 at ¶ 4. Defendant made an estimated over one thousand social media posts regarding all Palestine solidarity encampments. A search for all responsive documents would require Defendant to manually search through an estimated over one hundred thousand social media posts on multiple platforms, review hundreds of documents for privileged content and prepare hundreds of documents for production. This burden is not proportional to the needs of the case. On these grounds, Defendant will only conduct a search for documents regarding the UCLA student encampment and any efforts to reestablish the UCLA student encampment.

Defendant objects to this Request because it seeks disclosure of Defendant's political advocacy strategy, political associations, identities of Defendant's supporters, and Defendant's supporters' political activity, which are protected by the First Amendment. Compelled disclosure of such information would not only violate Defendant's and its members' rights of free association, but it would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    151                    App. 456

protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. The identities of political advocacy organization's affiliates and supporters, as well as their political activity, political opinions, and organizing strategy, are protected under the First Amendment. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91-92 (1982); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.*, 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Disclosure of the identities and communications of these individuals and entities will cause such individuals and entities to cease working and communicating with

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)

**App. 457**

Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill Defendant's and such entities and individual's First Amendment rights.

Plaintiffs cannot show that the protected information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. This Request is not narrowly tailored as it seeks a plethora of information regarding encampments and organizing efforts beyond the UCLA student encampment and beyond Plaintiffs' allegations. The documents sought by this Requests are protected by the First Amendment and Defendant will not disclose communications described above that are protected by the First Amendment nor the identities of those who made or received these protected communications and is withholding responsive communications and information on this basis. Defendant is not withholding any non-communication documents under a claim of privilege.

Defendant further objects that this Request seeks communications and information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another, particularly around sensitive political issues. Defendant will not produce responsive confidential communications or information on this basis. Defendant is not withholding any non-communication documents under a claim of privilege.

Defendant identifies the following non-privileged, responsive documents: PCC0001-482, 484-653, 658-686, 691, 694-726, 731, 738-741, 783-827, 905-1023,1045,

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    153                    App. 458

1137-1408, 1410, 1412-17, 1420, 1425-49, 1506-13. Defendant attempted to obtain metadata for these documents. Defendant was unable to obtain metadata for its tweets. Defendant was able to obtain metadata for its posts on Instagram, but the data was only provided in one file for all of Defendant's Instagram posts, and as the file contains metadata for thousands of posts, it is unduly burdensome for Defendant to identify and produce the metadata for each responsive post. The responsive articles produced are reproductions from publicly available sources and Defendant does not have metadata for the original documents in its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 33:**

All communications on the subject of Your financial expenses relating to your involvement in the UCLA encampment, the efforts to reestablish the UCLA encampment, the Popular University for Gaza initiative, and the Campus Support Coalition.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is overbroad, unduly burdensome, and harassing. Defendant further objects that this Request is cumulative and duplicative. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*. Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Defendant hereby incorporates by reference the above general objections as if fully

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    154                    <span style="color:red">App. 459</span>

stated herein.  Defendant objects that this Request is overly broad and unduly burdensome because it encompasses all Popular University for Gaza encampments across the country, while only one of these encampments, the UCLA encampment, is at issue in this lawsuit. Defendant's involvement in other student encampments is not relevant to Plaintiffs' claims. Furthermore, a search for responsive communications concerning all Popular University for Gaza encampments across the country, including through thousands of social media posts, is unduly burdensome for a part-time volunteer-run collective. *See* Dkt. 110-2 at ¶ 4.  This burden is not proportional to the needs of the case.

Defendant objects that the term "involvement" as used in this Request is vague and ambiguous.

Defendant objects to this Request because it seeks disclosure of financial records regarding its political advocacy work. Defendant also objects to this Request because it seeks disclosure of Defendant's and those who communicate with Defendant's political advocacy strategy, political associations, and financial contributions to political organizing efforts, which are protected by the First Amendment. Compelled disclosure of such information implicates Defendant's and its members' right to free association and would chill participation in constitutionally protected activities. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). "(W)here substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity." *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In the Ninth Circuit, a claim of First Amendment privilege is subject to a two-part test. Defendant must first "demonstrate . . . a prima facie showing of arguable first amendment infringement;" that "enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotations and citation omitted). The burden then shifts to

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                             155                    <span style="color:red">App. 460</span>

Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *NAACP*, 357 U.S. at 463. Plaintiffs "must show that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161; *see Adolph Coors v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983) ("enhanced scrutiny" of defendants' relevance theory was appropriate out of concern that "civil lawsuits [can] be misused as coercive devices to cripple, or subdue, vocal opponents"). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Defendant can easily establish a prima facie case of infringement. A political advocacy organization's financial expenditures used in its advocacy work are protected by the First Amendment because the revelation of this information might chill the rights of group members. *Adolph Coors v. Wallace*, 570 F. Supp. 202, 208-10 (N.D. Cal. 1983); *see also Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, S.D. Oh. Mar. 12, 2012) (holding that "Plaintiff's disclosure of the donor's identity to Defendant will almost certainly put at least some strain on the relationship between Plaintiff and its donor" and "has a reasonable possibility of a chilling effect"). In addition, political advocacy organizations have "a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, No. 22-659 (TJK), 2022 602 F. Supp. 3d 1, 33 (D.D.C. May 1, 2022). The "Supreme Court has concluded that extensive interference with political groups' internal operations and with their effectiveness does implicate significant First Amendment interests in associational autonomy." *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)). Disclosure of information concerning Defendant's financial expenditures used in advocacy work will dissuade Defendant and its

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                156                **App. 461**

members from investing financial and other resources into protected First Amendment advocacy, which will hamper Defendant's associational activities.

Further, the identities of individuals who confidentially communicate with Defendant regarding political strategy and beliefs, including use of Defendant's resources for political advocacy, and content of such communication are protected under the First Amendment. *See NAACP*, 357 U.S. at 462-463 (recognizing "vital relationship between freedom to associate and privacy in one's associations"; compelled disclosure of affiliation with groups engaged in advocacy may induce members to withdraw or dissuade others from joining because of fear of exposure of their beliefs); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (the First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456 (9th Cir. 1991) (finding that a prima facie case of First Amendment privilege was made when union members stated they could no longer participate in meetings if minutes of meetings were to be disclosed); *Int'l Union v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.,* 590 F.2d 1139 (D.C. Cir. 1978); *In re Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011). Entities and individuals communicate with Defendant regarding political organizing and strategy do so with an expectation of confidentiality. Disclosure of these communications will cause such individuals and entities to cease working and communicating with Defendant, dissuade them from communicating their political beliefs regarding Palestine and Israel, and dissuade others from joining Defendant or engaging in political advocacy with Defendant. Further, publicly identified members of Defendant have been subjected to extensive harassment and doxxing. Disclosure the identities of entities and individuals who communicate with presents grave safety risks. For this reason, disclosure will also dissuade people from politically organizing with or otherwise being affiliated with Defendant. In sum, disclosure will hamper Defendant's associational activities and chill

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                           157

Defendant's and such entities and individual's First Amendment rights.

As communications regarding Defendant's funding sources sheds no light on Defendant's actions regarding the UCLA encampment, Plaintiffs cannot show that the information they are requesting is highly relevant to their claims, sufficient to overcome the infringement on Defendant's and others' First Amendment rights. Furthermore, as discussed above, this Request is not narrowly tailored as it seeks communications concerning Defendant's sources of funding regarding all Popular University for Gaza encampments and initiatives, regardless of whether it pertains to Defendant's involvement in or response to the UCLA student encampment. The information sought by this Request is protected by the First Amendment.

Defendant further objects that this Request seeks information that is protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States, and as recognized by the California and federal courts as both Defendant and third parties had a high and reasonable expectation of privacy when confidentially communicating with one another.

Subject to and without waiving these objections, Defendant responds to this request at this time as follows: Defendant does not have any responsive documents in its custody, possession, or control.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Defendant does not have any responsive documents in its custody, possession, or control.

**REQUEST FOR PRODUCTION NO. 34:**

All documents reflecting, referring or relating to any representations made by You as to whether contributions to You are tax-deductible.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein. Defendant objects that this Request is overbroad, including but not limited

DEFT PCC'S SECOND SUPPL RESP &
OBJS TO PLTFS' RFPS (SET 1)                    158

App. 463

to as to time. Defendant further objects that this Request seeks documents that are not proportional to the needs of the case. Defendant further objects that this Request seeks information that is irrelevant. Defendant objects that this Request seeks First Amendment-protected information, which if disclosed, would violate Defendant's and others' First Amendment rights and would chill Defendant's and others' exercise of its First Amendment rights. *See NAACP v. Alabama*, 357 U.S. 449 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *see* General Objections, *supra*.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Defendant hereby incorporates by reference the above general objections as if fully stated herein.  Defendant objects that any representations as to whether donations to it are tax deductible are wholly irrelevant to Plaintiffs' claims, including to Defendant's involvement in and response to the UCLA encampment.

Subject to and without waiving these objections, Defendant responds to this request at this time as follows: Defendant does not have any responsive documents in its possession, custody or control.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Defendant does not have any responsive documents in its possession, custody or control.

Dated: April 24, 2026                  Respectfully Submitted,

                                       HADSELL STORMER RENICK & DAI LLP


                                       By: /s/ Rebecca Brown
                                           Dan Stormer
                                           Rebecca Brown

                                       Attorneys for Defendant People's City Council

**PROOF OF SERVICE**

I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 128 N. Fair Oaks Avenue, Pasadena, California 91103.

On April 24, 2026, I served the foregoing document described as: **DEFENDANT PEOPLE'S CITY COUNCIL'S SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE** on the interested parties in this cause by sending true and correct electronic copies addressed as follows:

**SEE ATTACHED SERVICE LIST**

XX    **BY EMAIL**

 XX   My electronic service address is avillegas@hadsellstormer.com. I caused the foregoing document(s) to be transmitted to the addressees listed above, and to the best of my knowledge, the transmission was complete and without error in that I did not receive an electronic notification to the contrary.

Executed on April 24, 2026, at Pasadena, California.

XX    (Federal)    I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

_____
Alexandra Villegas
Declarant

## SERVICE LIST

| | |
|---|---|
| William J. Brown, Jr.<br>Kyle J. Berry<br>BROWN WEGNER LLP<br>2010 Main Street, Suite 1260<br>Irvine, California 92614<br>Telephone: (949) 705-0080<br>Emails: bill@brownwegner.com<br>      kberry@brownwegner.com | **Attorneys for Plaintiff<br>MATTHEW WEINBERG; RABBI<br>DOVID GUREVICH; NIR<br>HOFTMAN; and ELI TSIVES** |
| Thomas R. McCarthy (pro hac vice)<br>Zachary P. Grouev (pro hac vice)<br>Julius Kairey (pro hac vice)<br>Taxi Wilson (pro hac vice)<br>CONSOVOY MCCARTHY PLLC<br>1600 Wilson Blvd., Ste. 700<br>Arlington, VA 22209<br>Telephone: (703) 243-9423<br>Emails: tom@consovoymccarthy.com<br>      zach@consovoymccarthy.com<br>      julius@consovoymccarthy.com<br>      twilson@consovoymccarthy.com | **Attorneys for Plaintiff<br>MATTHEW WEINBERG; RABBI<br>DOVID GUREVICH; NIR<br>HOFTMAN; and ELI TSIVES** |
| Richard A. Rosen (pro hac vice)<br>Omer Wiczyk (pro hac vice)<br>LOUIS D. BRANDEIS CENTER<br>FOR HUMAN RIGHTS UNDER LAW<br>1330 6th Avenue, 23rd Floor<br>New York, NY 10019<br>Telephone: (917) 363-9004<br>Emails: rrosen@brandeiscenter.com<br>      owiczyk@brandeiscenter.com | **Attorneys for Plaintiff<br>MATTHEW WEINBERG; RABBI<br>DOVID GUREVICH; NIR<br>HOFTMAN; and ELI TSIVES** |
| Mark Kleiman<br>KLEIMAN / RAJARAM<br>12121 Wilshire Boulevard, #810<br>Los Angeles, CA 90025<br>Phone: 310-392-5455<br>Email: mark@krlaw.us | **Attorney for Defendant<br>NATIONAL STUDENTS FOR<br>JUSTICE IN PALESTINE** |

App. 466

# Exhibit F

## ***En Camera***

## Plaintiffs' Document #1: PCC851-853

# Exhibit G

## ***En Camera***

## Plaintiffs' Document #2: PCC1310

# Exhibit H

## \*\*\*En Camera\*\*\*

## Plaintiffs' Document #3: PCC1426

# Exhibit I

## ***En Camera***

## Plaintiffs' Document #4: PCC1450-1452

# Exhibit J

## ***En Camera***

## Plaintiffs' Document #5: PCC1482-1504

# Exhibit K

## ***En Camera***

## PCC's
## Document #1:
## PCC854

App. 472

# Exhibit L

## ***En Camera***

## PCC's
## Document #2:
## PCC1182-1183

# Exhibit M

## ***En Camera***

## PCC's
## Document #3:
## PCC1370-1373

App. 474

# Exhibit N

**\*\*\*En Camera\*\*\***

**PCC's
Document #4:
Withheld (PCC
Priv. Log #230)**

# Exhibit O

## ***En Camera***

## PCC's Document #5: Withheld (PCC Priv. Log #238)