William J. Brown, Jr. (SBN 192950)
bill@brownwegner.com
Kyle J. Berry (SBN 355393)
kberry@brownwegner.com
BROWN WEGNER LLP
2010 Main Street, Suite 1260
Irvine, California 92614
Telephone: (949) 705-0080

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Matthew Weinberg, et al., | **Case No. 2:25-cv-03714-MCS-AJR** |
| *Plaintiffs,* | **PLAINTIFFS' MOTION TO COMPEL PEOPLE'S CITY COUNCIL TO ANSWER INTER-ROGATORY #7** |
| v. | |
| National Students for Justice in Palestine, et al., | DISCOVERY MATTER |
| *Defendants.* | On Submission |
| | Magistrate Judge: Hon. A. Joel Richlin |

PLAINTIFFS' MOTION TO COMPEL

[Additional Counsel Cont. from previous page]
Thomas R. McCarthy (VA Bar No. 47154)*
Thomas A. Wilson (DC Bar No. 90019385)*
Julius Kairey (VA Bar No. 101216)*
Zachary P. Grouev (FL Bar No. 1038629)*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
Telephone: (703) 243-9423
tom@consovoymccarthy.com
twilson@consovoymccarthy.com
julius@consovoymccarthy.com
zach@consovoymccarthy.com

Patrick Strawbridge (MA Bar No. 678274)*
CONSOVOY MCCARTHY PLLC
8th Floor South PMB #706
Boston, MA 02109
Telephone: (617) 227-0548
patrick@consovoymccarthy.com

Richard A. Rosen (NY Bar No. 1663830)*
Omer Wiczyk (NY Bar No. 4321600)*
THE LOUIS D. BRANDEIS CENTER
FOR HUMAN RIGHTS UNDER LAW
1330 6th Avenue, 23rd Floor
New York, NY 10019
Telephone: (917) 363-9004
rrosen@brandeiscenter.com
owiczyk@brandeiscenter.com

* Admitted pro hac vice

*Attorneys for Plaintiffs*

## <u>MOTION TO COMPEL PEOPLE'S CITY COUNCIL TO ANSWER INTERROGATORY #7</u>

TO THE HONORABLE COURT, DEFENDANTS, AND THEIR RE-SPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Plaintiffs Matthew Weinberg, Nir Hoftman, Eli Tsives, and Dovid Gurevich (Plaintiffs) will and hereby do move this Court to compel Defendant People's City Council (PCC), notwithstanding its objections, to answer Interrogatory #7. The Interrogatory states: "Identify the person employed by, affiliated with or acting on Your behalf who is most knowledgeable about Your sources of funds." App.19 This Motion is made following an informal discovery conference before the Honorable A. Joel Richlin. *See* Dkt.156.

DATED: May 22, 2026

BROWN WEGNER LLP
CONSOVOY MCCARTHY PLLC
THE LOUIS D. BRANDEIS CENTER
FOR HUMAN RIGHTS UNDER LAW

By: /s/ Thomas R. McCarthy*
Thomas R. McCarthy*
Patrick Strawbridge*
Thomas A. Wilson*
Zachary P. Grouev*
Julius Kairey*
Richard A. Rosen*
Omer Wiczyk*

Attorneys for Plaintiffs

PLAINTIFFS' MOTION TO COMPEL            1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs file this Motion pursuant to the Court's Minute Order of May 11, 2026. *See* Dkt.156. PCC objects to Plaintiffs' Interrogatory #7 on relevance, First Amendment, and work-product doctrine grounds. *See* App.96-99. For the reasons that follow, these objections fail.

### **I.    BACKGROUND**

The relevant background is provided in Plaintiffs' motion to compel production regarding ten documents implicating PCC's First Amendment and privacy objections, which was filed today. *See* Dkt.166.

### **II.    LEGAL STANDARD**

Under Federal Rule of Civil Procedure 26(b)(1), "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *Cooper v. Cnty. of San Luis Obispo*, 350 F.R.D. 625, 630 (C.D. Cal. 2025) (Richlin, M.J.). "Federal Rule of Evidence 401 provides that evidence is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Id.* (quoting Fed. R. Evid. 401). "Relevance … is defined broadly." *Id.* (collecting cases). "Upon a motion to compel discovery, the movant has the initial burden of demonstrating relevance." *Nguyen v. Lotus by Johnny Dung Inc.*, 2019 WL 3064479, at *2 (C.D. Cal. June 5, 2019). Once the movant has discharged its burden, "the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Garces v. Pickett*, 2021 WL 978540, at *2 (E.D. Cal. Mar. 16, 2021). The opposing party must "carry a heavy burden of showing why discovery was denied." *Id*. Put another way, "whether discoverable evidence is

relevant is a low bar." *Matter of Municipality of Mariana*, 2024 WL 2023691, at \*5 (D. Ariz. May 7, 2024).

While the First Amendment protects "[t]he freedom to associate with others for the common advancement of political beliefs and ideas," *Perry v. Schwarzenegger*, 591 F.3d 1147, 1152 (9th Cir. 2010), the Supreme Court has made clear that this right "is not … absolute," *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984). "In this circuit, a claim of First Amendment privilege is subject to a two-part framework." *Perry*, 591 F.3d at 1140. First, "[t]he party asserting the privilege must demonstrate a *prima facie* showing of arguable first amendment infringement." *Id.* (cleaned up). That requires "the presentation of 'objective and articulable facts, which go beyond broad allegations or subjective fears.'" *Dole v. Loc. Union 375, Plumbers Int'l Union of Am., AFL-CIO*, 921 F.2d 969, 972 (9th Cir. 1990). If the objecting party carries its initial burden, then the requesting party must "demonstrate that the information sought through the discovery is rationally related to a compelling governmental interest and the least restrictive means of obtaining the desired information." *Perry*, 591 F.3d at 1160.

The work-product doctrine "protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (quotation marks omitted). Courts "have consistently held that the work product doctrine furnishes no shield against discovery" by interrogatories "of the facts that the adverse party's lawyer has learned, or the person from whom he has learned such facts[.]" *Pastrana v. Loc. 9509, Commc'ns Workers of Am., AFL-CIO*, 2007 WL 2900477, at \*5 (S.D. Cal. Sept. 28, 2007).

### III.  ARGUMENT

PCC raises three objections to answering Interrogatory #7. First, PCC challenges the relevance of the information sought, claiming that PCC "did

not expend any funds in connection with the UCLA Palestine solidarity encampment." App.96. Second, PCC claims that the First Amendment and right to privacy allow it to withhold the information. App.96-99. Third, PCC argues that the work-product doctrine protects the information sought. App.99. For the reasons given below, these arguments lack merit.

### A. The Information Sought is Relevant

As this Court has explained, relevance is understood broadly, and evidence is relevant if it makes a fact that is of consequence in the action more probable. *See Cooper*, 350 F.R.D. at 630. PCC's sources of funding are relevant to (1) the background of the conspiracy, (2) coordination between the Defendants, and (3) whether any animus motivated the conspiracy. Each of these is a legitimate basis on which Plaintiffs seek this information.

As background information, PCC's sources of funds are clearly relevant. "Evidence which is essentially background in nature ... is universally offered and admitted as an aid to understanding pursuant to Federal Rule of Evidence 401." *Grace v. Apple, Inc.*, 2020 WL 227404, at *2 (N.D. Cal. Jan. 15, 2020) (quotation marks omitted). In the criminal context, for example, relevant evidence "may explain the nature of the relationship between co-conspirators while placing their transaction in context for the jury, thereby showing the background and development of the conspiracy." *United States v. Jones*, 982 F.2d 380, 382-83 (9th Cir. 1992) (cleaned up). Simply put, who funded PCC is relevant to how the encampment came about, who was involved in its establishment, and whether the various co-conspirators were relying on the same funders or were funding each other.

Relatedly, PCC's funding sources are also relevant to coordination between PCC and other conspirators. If PCC and its co-conspirators had common sources of funding, it is more likely that they acted in accordance with a common plan to establish and maintain the encampment. Funding to

**PLAINTIFFS' MOTION TO COMPEL**      3

PCC before the establishment of the encampment is also relevant, as it goes to "understanding the nature and extent of the conspiracy." *Bray v. Safeway Stores, Inc.*, 392 F. Supp. 851, 866 (N.D. Cal. 1975).

Moreover, PCC's funding is relevant to whether the encampment was motivated by antisemitic animus. Discovery is "often necessary to uncover a trail of evidence regarding the defendants' intent in undertaking allegedly discriminatory action." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1061 (9th Cir. 2004). To prove their conspiracy claim, Plaintiffs must show "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). If PCC accepted funds from an antisemitic actor, that increases the likelihood that PCC's motivation in establishing the encampment was itself antisemitic. Just as "the animus of a supervisor can affect an employment decision if the supervisor 'influenced or participated in the decisionmaking process,'" so too the animus of a funder with influence over PCC can show that the conspiracy it funded was motivated by animus. *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1281 (9th Cir. 2017).

PCC claims that Interrogatory #7 is irrelevant because no PCC funds were used to support the encampment. App.96. But, even if true, PCC unquestionably solicited donations during the encampment, as evidenced by the documents PCC has produced. PCC also raised more than $2.4 million in its first three years of existence. And at least some funding was surely required to maintain the encampment, and, more generally, to enable PCC to exist as an organization. Whether or not particular funding can be attributable to the encampment can only be assessed once Plaintiffs are able to gather further information about the mechanics of PCC's funding, including whether funders earmarked funds for only certain purposes, and

**PLAINTIFFS' MOTION TO COMPEL**        4

which of PCC's members made decisions about where funding was directed. Plaintiffs thus easily clear the "low bar" of relevance. *Mariana,* 2024 WL 2023691, at *5. *See also Canaan v. Carnegie Mellon Univ.,* 2026 WL 444723, at *1 (W.D. Pa. Feb. 17, 2026) ("[The university's] relationship with and funding from Qatar is relevant[.]"); Order Granting In Part Motion to Compel, *CAIR v. Abbott,* No. 25-cv-1878-ADA (W.D. Tex. May 6, 2026) (ordering nonprofit organization to produce funding and donor information).

### B. PCC's First Amendment and Privacy Objections Fail

PCC's First Amendment objection fails at the outset. While PCC insists that it "can easily establish a prima facie case of infringement," App.97, it conspicuously declines to provide even one attestation regarding "the impact compelled disclosure would have" on members' First Amendment rights, *Perry*, 591 F.3d at 1163, based on "'objective and articulable facts,'" *Dole*, 921 F.2d at 972. Instead, PCC offers "broad, theoretical arguments by its counsel" about the potential chill its members might face. *Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 84 (D. Ariz. 2022). But such "conclusory statements, alone, do not establish a prima facie showing of First Amendment infringement." *Id.* (collecting cases); *see also Dole*, 921 F.2d at 974 ("Evidence arguing, rather than factually documenting, an alleged chill of associational freedom does not warrant quashing" legitimate subpoenas).

PCC's conclusory assertions that it "can easily establish a prima facie case of infringement" are all the more galling when considering that the Court has approved the parties' stipulated protective order, which provides robust protections from public disclosure. *See* Dkt.123. Remarkably, PCC does not address, much less engage with, the substantial impact that the protective order has on its First Amendment arguments. *Accord, e.g., Sines*

**PLAINTIFFS' MOTION TO COMPEL        5**

*v. Kessler*, 2018 WL 3730434, at *15 (acknowledging that a protective order "mitigate[s] th[e] harm" associated with a potential "chilling effect").

But even if PCC could meet its initial burden, the discovery Plaintiffs seek is "rationally related" to a "compelling" interest—namely, prosecuting a conspiracy to deprive a racial and religious minority of federal civil rights—and PCC is the only party that possesses the information that Plaintiffs have demanded. *Perry*, 591 F.3d at 1161 (cleaned up). The "importance of the litigation" is self-evident. *Id*. The antisemitic conspiracy alleged here caused each Plaintiff to suffer injury simply because he is Jewish, and was part of an "epidemic of hate, violence, and harassment targeting Jewish students." Am. Compl. ¶81. This "organized violence" was carried out by numerous individuals and organizations, in order to deprive Plaintiffs of federally protected rights and hinder efforts by law enforcement to protect those rights. *Id*. ¶163. The requested documents are critical to understanding who was responsible for this unlawful conduct.

Same for the "centrality of the information sought to the issues in the case," *Perry*, 591 F.3d at 1161, as the Interrogatory is tailored to identify the core objectives and means of effectuating the antisemitic conspiracy at issue and the individuals or entities involved, *accord, e.g., Sines*, 2018 WL 3730434, at *14. Whatever burden answering Plaintiffs' Interrogatory might place on PCC and its membership's First Amendment rights is thus plainly justified to avoid the "derogation of the search for truth" that "expansively construed" privileges would work on discovery. *United States v. Nixon*, 418 U.S. 683, 710 (1974).

Moreover, PCC severely overreads the cases on which it relies. Start with *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958). There, the NAACP had "produced substantially all the data called for" by the State of

**PLAINTIFFS' MOTION TO COMPEL**      6

Alabama, so the First Amendment inquiry narrowly turned on the State's demand for a complete list of the NAACP's rank-and-file members. *Id.* at 454; *accord, e.g., Wilkinson v. F.B.I.*, 111 F.R.D. 432, 437 (C.D. Cal. 1986). But Plaintiffs have not made a remotely analogous request here. Rather, Plaintiffs' Interrogatory focuses on funding to PCC, which goes to proving the alleged antisemitic conspiracy—that the information sought implicates individuals' speech poses no barrier to production. *Accord, e.g., Sines*, 2018 WL 3730434, at *14; *cf. United States v. Stromberg*, 22 F.R.D. 513, 521 (S.D.N.Y. 1957) ("The First Amendment does not protect a conspiracy from punishment because speech is used to effect the crime.").

Nor does the Ninth Circuit's *Perry* decision assist PCC. The *Perry* court deliberately limited its holding "to *private, internal* campaign communications concerning the *formulation of campaign strategy and messages*." 591 F.3d at 1165 n.12. So nothing in *Perry* supports PCC's argument that it need not disclose the funding it received from third parties. And in all events, as noted above, Plaintiffs' Interrogatory rationally relates to a compelling interest, so disclosure is warranted under *Perry* and its progeny.

At bottom, Plaintiffs' Interrogatory seeks information about those individuals who, through their funding, are directly connected to PCC's alleged involvement in planning and executing an antisemitic conspiracy. And, as the Court has made clear, "[c]onspiring to deprive Jews of their Thirteenth Amendment rights is not a protected activity under the First Amendment." Dkt.113 at 22. Discovery has now been ongoing for several months, and Plaintiffs require this information to prove their case.

PCC also objects that Plaintiffs' Interrogatory seeks information "protected by the right to privacy of Defendant and third parties as guaranteed under the laws and Constitutions of California and the United States."

**PLAINTIFFS' MOTION TO COMPEL**          7

App.98. This objection fundamentally misunderstands the law of privilege in federal court. Federal Rule of Evidence 501 provides that "[t]he common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless [the United States Constitution; a federal statute; or rules prescribed by the Supreme Court] provid[e] otherwise." Fed. R. Evid. 501; *Burrows v. Redbud Cmty. Hosp. Dist.*, 187 F.R.D. 606, 610 (N.D. Cal. 1998) ("[P]rivileges asserted in federal question cases shall be governed by federal law."). There is only one exception: claims or defenses "for which state law supplies the rule of decision." Fed. R. Evid. 501. In short, if federal law "governs the parties' dispute," then "the law of California, the forum state, does not inform federal privilege law." *Chatman v. Felker*, 2009 WL 173515, at *9 (E.D. Cal. Jan. 23).

Plaintiffs' claims against PCC arise under 42 U.S.C. §1985. That federal civil rights statute, not the California Constitution (or any other California law) supplies the rule of decision in this case. Thus, PCC's "right to privacy" under the California Constitution does not create an evidentiary privilege applicable in federal court. To the extent PCC argues that federal courts should adopt a privilege based on the California Constitution as a matter of comity, that approach is foreclosed by Supreme Court precedent requiring courts to look beyond the forum state when determining whether to recognize a new common law privilege. *See Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164, 1170 (C.D. Cal. 1998).

PCC's assertion of a federal privacy privilege is likewise without merit. The federal Constitution does not protect a "general right to privacy." *Katz v. United States*, 389 U.S. 347, 350 (1967). Rather, "the protection of a person's ... right to be let alone by other people—is, like the protection of his property and of his very life, left largely to the law of the individual

**PLAINTIFFS' MOTION TO COMPEL**        8

States." *Id.* at 350-51 (footnotes omitted); *cf. Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 235 (2022) (explaining, while overruling *Roe v. Wade*, that one aspect of that decision's "remarkably loose ... treatment of the constitutional text" was to recognize "a right to privacy" not mentioned in the Constitution). PCC's assertion of a federal "right to privacy" enforceable as a litigation privilege is irreconcilable with the Supreme Court's repeated rejection of any "general right to privacy." *Katz*, 389 U.S. at 350-51.

In addition to these substantive defects, PCC may not invoke the "privacy" rights of third parties as a basis for objecting to discovery requests. "[A] party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). "Applying this rule, courts have found that a defendant lacks standing to raise objections to unsealing based on purported injury to … a third party." *Carijano v. Occidental Petroleum Corp.*, 2019 WL 6896921, at *3 (C.D. Cal. June 20).

Thus, PCC lacks standing to object to discovery simply because it believes third-party funders may have privacy concerns regarding its discovery responses. Moreover, even if PCC had standing to assert the supposed privacy rights of these third parties, "third-party privacy rights" do not constitute a "federally recognized privilege," *Hill v. Eddie Bauer*, 242 F.R.D. 556, 562 (C.D. Cal. 2007), so any objection as to such a privilege cannot supply a basis for withholding a response here. *Accord, e.g., Garraway v. Ciufo*, 2020 WL 1263562, at *8 (E.D. Cal. Mar. 16) (holding that "objections based on privacy rights of third parties are not justified" because "there is no generic 'privacy' objection" to discovery requests); *Fontes*, 344 F.R.D. at 513 ("[An] organization may not invoke the First Amendment privilege to thwart discovery of its external communications with … third parties").

PLAINTIFFS' MOTION TO COMPEL          9

### C. The Information Sought is Not Protected by the Work-Product Doctrine

PCC also objects to the Interrogatory based on the work-product doctrine. *See* App.99. The work-product doctrine protects from discovery documents and tangible things prepared by a party or its representative in anticipation of litigation. *See Richey*, 632 F.3d at 567. But PCC cannot show that providing information about the person most knowledgeable about its sources of funds would somehow disclose the mental impressions of its attorneys. Because PCC cannot satisfy its burden of showing that answering this Interrogatory would "inherently reveal [its] attorney[s'] mental impression," its objection must be overruled. *California Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 644 (E.D. Cal. 2014).

Even if the work-product doctrine applied, the information Plaintiffs seek through this Interrogatory is "at best, … factual work product." *In re Harmonic, Inc. Sec. Litig.*, 245 F.R.D. 424, 429 (N.D. Cal. 2007). And "[t]he scope of that factual work product is minimal here since the only information being withheld is the identit[y] of" the individual most knowledgeable about PCC's funds. *In re Harmonic, Inc. Sec. Litig.*, 245 F.R.D. 424, 429 (N.D. Cal. 2007). Plaintiffs also need this information to determine who to depose in their personal capacities. Thus, the "need for and interest in this information" overcomes "the *de minimis* work product under the balancing process between the work product interest and the interest in discovery." *Id.*

### IV.   CONCLUSION

The Court should overrule PCC's objections to Plaintiffs' Interrogatory #7, and order PCC to give a complete response to the Interrogatory.

DATED: May 22, 2026

BROWN WEGNER LLP
CONSOVOY MCCARTHY PLLC
THE LOUIS D. BRANDEIS CENTER
FOR HUMAN RIGHTS UNDER LAW


By: /s/ Thomas R. McCarthy*
Thomas R. McCarthy*
Patrick Strawbridge*
Thomas A. Wilson*
Zachary P. Grouev*
Julius Kairey*
Richard A. Rosen*
Omer Wiczyk*

Attorneys for Plaintiffs

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs certifies that the foregoing is not more than 10 pages, which complies with the Court's page limit for discovery motions.

Dated: May 22, 2026                            /s/ Thomas R. McCarthy
                                               Thomas R. McCarthy

**PLAINTIFFS' MOTION TO COMPEL**          12

## CERTIFICATE OF SERVICE

The undersigned counsel of record for Plaintiffs certifies that a true and correct copy of the foregoing was electronically filed and served upon all counsel of record who have appeared in the case and are registered with the CM/ECF. Parties may access this filing through the Court's CM/ECF System.

Dated: May 22, 2026                                          /s/ Thomas R. McCarthy
                                                             Thomas R. McCarthy

**PLAINTIFFS' MOTION TO COMPEL**          13