Dan Stormer, Esq. [S.B. # 101967]
Bina Ahmad, Esq. [S.B. # 329387]
Rebecca Brown, Esq. [S.B. #336638]
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600
Facsimile:  (626) 577-7079
Emails: dstormer@hadsellstormer.com
         bahmad@hadsellstormer.com
         rbrown@hadsellstormer.com

Attorneys for Defendant
PEOPLE'S CITY COUNCIL

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW WEINBERG, RABBI DOVID GUREVICH, NIR HOFTMAN, ELI TSIVES, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, JOHN DOE #1, PRESIDENT OF THE UCLA CHAPTER OF SJP, AJP EDUCATIONAL FOUNDATION, INC., D/B/A AMERICAN MUSLIMS FOR PALESTINE, OSAMA ABURSHAID, HATEM AL-BAZIAN, FACULTY FOR JUSTICE IN PALESTINE NEWTWORK, UC DIVEST COALITION, WESPAC FOUNDATION, PEOPLE'S CITY COUNCIL, <br><br> Defendants | Case No.: 2:25-cv-03714-MCS-JC <br><br> [Assigned to the Honorable Mark C. Scarsi – Courtroom 7C] <br><br> **DEFENDANT PEOPLE'S CITY COUNCIL'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION FROM DEFENDANT PEOPLE'S CITY COUNCIL RE: TEN DOCUMENTS** <br><br> DISCOVERY MATTER <br><br> <u>On Submission</u> <br><br> Magistrate Judge: Hon. A. Joel Richlin |

DEFT PCC'S OPP TO PLTFS' MTC PROD
FROM DEFT PCC RE: TEN DOCS

## I.    INTRODUCTION

Plaintiffs' broad and compound discovery requests go far beyond Federal Rule of Civil Procedure 26's parameters, the United States Constitution, and Ninth Circuit precedent in a clear attempt to invade and impede PCC's political activity. Plaintiffs premise this fishing expedition on the argument that because Plaintiffs allege serious constitutional violations, they are automatically entitled to all of PCC's records, absent any actual proof of relevance. The ten documents at issue demonstrate the reality—PCC has produced over 1,500 pages of responsive documents and only redacted and withheld documents that are legitimately privileged under the First Amendment and right to privacy. Brown Dec. ¶ 3.

## II.    RELEVANT FACTUAL BACKGROUND

Plaintiffs and PCC each selected five documents as the subject of Plaintiffs' motion, all of which are communications between PCC and third parties. In PCC 851-53, the identity of the third party and communications regarding political organizing strategy, PCC's political associations, and the third party's political associations and political activity are redacted. Brown Dec. Ex. 1; App. 116. In PCC 854, the identity of the third party and communications regarding political organizing strategy are redacted. Brown Dec. Ex. 2; App. 116-17. In PCC 1182-83, the identity of the third party is redacted. Brown Dec. Ex. 3, App. 160-61. In PCC 1310, the identity of the third party and communications regarding the third party's political opinions and political activity are redacted. Brown Dec. Ex. 4, App. 208-09. In PCC 1370-73, the identity of the third party and communications regarding political organizing strategy and the third party's personal political beliefs and activity are redacted. Brown Dec. Ex. 5; App. 226-27. In PCC 1426, the identity of the third party is redacted and communications regarding the third party's political opinions, political associations, and political activity are redacted. Brown Dec. Ex. 6; App. 283. In PCC 1450-52 and PCC 1482-1504, the identities of the third parties and their contact information are redacted. Brown Dec. Exs. 7-8; App. 295-96, 298-99. Privilege Log #230 is withheld and contains the identity of the third party and communications regarding the third party's personal political opinions, political activity, and political associations, as well as political

organizing. App. 265-66. Privilege Log #238 is withheld and contains the identity of the third party and communications regarding the third party's personal political opinions, financial contributions to political causes, and political associations. App. 271.

### III.    ARGUMENT
#### A. PCC Can Establish a *Prima Facie* Case of Infringement
##### i. Disclosing PCC's Confidential Communications About Political Organizing Strategy Will Infringe on PCC's First Amendment Rights

Disclosing the communications in PCC 851-53, 854, 1370-73 and Privilege Log # 230 regarding political organizing strategy infringes on PCC's First Amendment rights. Courts have repeatedly recognized the grave infringement on associational rights that may result from disclosing communications regarding political organizing and messaging strategy. In *Perry v. Schwarzenegger*, the Ninth Circuit ruled that the First Amendment right to associate protected internal communications regarding organizing strategy :

> disclosure of internal campaign information can have a deterrent effect on the free flow of information within campaigns. Implicit in the right to associate with others to advance one's shared political beliefs is the right to exchange ideas and formulate strategy and messages, and to do so in private. Compelling disclosure of internal campaign communications can chill the exercise of these rights. 591 F.3d 1147, 1162-63 (9th Cir. 2010).

Likewise, the D.C. Circuit found that a regulation mandating disclosure of documents containing political organizations' strategy "will directly frustrate the organizations' ability to pursue their political goals effectively by revealing to their opponents activities, strategies and tactics that [they] have pursued in subsequent elections and will likely follow in the future." *AFL-CIO v. FEC,* 333 F.3d 168, 176-77 (D.C. Cir. 2003).

*Perry* is still applicable despite Plaintiffs' position that *Perry* does not support PCC's position. Plaintiffs argue that *Perry's* holding is limited to "private, internal campaign communications concerning the formulation of campaign strategy and messages." *See Perry*, 591 F.3d at 1165 n. 12. But *Perry* continued: "Our holding is also limited to *private, internal communications regarding formulation of strategy and messages*. It certainly does not apply to documents or messages conveyed to the electorate at large, discrete groups of voters or individual voters for purposes such as persuasion,

---

recruitment or motivation -- activities beyond the formulation of strategy and messages." *Id.* This is exactly the information PCC seeks to withhold – private communications with individuals about political organizing strategy and messages. PCC is not seeking to withhold communications sent for persuasion or recruitment. In fact, PCC has produced such communications. Brown Dec. ¶ 4.

Disclosing PCC's communications on political organizing strategy will severely chill PCC's political organizing in the future. Sergienko Dec. ¶ 4; Kim Dec. ¶ 4. According to PCC members, if such communications are disclosed, even only to Plaintiffs, it would cause PCC to cease engaging in any political organizing on Palestine and Israel. Sergienko Dec. ¶¶ 5-12; Kim Dec. ¶ 5. This is especially so Plaintiff Eli Tsives who brought a weapon to the UCLA encampment, threatened to dox encampment participants[1], and attempted to instigate and engaged in violence against pro-Palestine activists. Sergienko Dec. ¶¶ 13-15; Kim Dec. ¶ 7. In addition, PCC is also terrified of disclosing its documents to Plaintiffs' counsel, the Brandeis Center, who are themselves a politically-charged and anti-Palestine organization that condemns any criticism of Israel's government. Sergienko Dec. ¶¶ 16-21. PCC will not be able to effectively organize once their political organizing strategies are disclosed to its political opponents, or communicate with supporters about organizing for Palestine for fear of exposing the recipients to violence and harassment. Sergienko Dec. ¶¶ 13, 15, 18, 21; Kim Dec. ¶ 7. PCC would not be able to guarantee these communications' confidentiality, erasing the trust PCC has built with its supporters. Sergienko Dec. ¶ 22; Kim Dec. ¶ 9. PCC's allies would likely be dissuaded from joining, supporting or even following PCC. Sergienko Dec. ¶ 23; Kim Dec. ¶¶ 10-11. If disclosure is ordered, members Sergienko and Kim will strongly consider withdrawing from PCC or substantially reducing their involvement. Sergienko Dec. ¶ 24; Kim Dec. ¶ 12. PCC has even considered shutting down entirely if

---

[1] In April 2024, Plaintiff Eli Tsives confronted protestors at the UCLA encampment and told them: "Let's get a nice look at their faces. You can kiss your jobs goodbye." Will Alden, *Portrait of a Campus in Crisis,* Jewish Currents (October 31, 2025), https://jewishcurrents.org/portrait-of-a-campus-in-crisis.

DEFT PCC'S OPP TO PLTFS' MTC PROD
FROM DEFT PCC RE: TEN DOCS                                      3

disclosure is ordered. Sergienko Dec. ¶¶ 25-26. It is clear that disclosing communications regarding political organizing strategy will substantially infringe on PCC's First Amendment rights.

### ii. Disclosing the Identities of Third Parties PCC Confidentially Communicated with Will Infringe on PCC's First Amendment Rights

PCC's fears are not new. "It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute (an) effective … restraint on freedom of association." *NAACP v. Ala. Ex rel. Patterson*, 357 U.S. 449, 462 (1958). The First Amendment's association protections "extends not only to the organization itself, but also to its staff, members, contributors, and others who affiliate with it." *Int'l Union v. Nat'l Right to Work Legal Defense and Ed. Found., Inc.,* 590 F.2d 1139, 1147 (D.C. Cir. 1978). It also extends to communications between a party and other politically aligned groups. *See Federal Election Com. v. Machinists Non-Partisan Political League*, 655 F.2d 380, 384, 390, 396 (D.C. Cir. 1981).

Per the Supreme Court, publicizing a political advocacy group's supporters' names could deter engagement or participation with the group, and "therefore cripple a minor party's ability to operate effectively and thereby reduce the free circulation of ideas both within and without the political arena." *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 98 (1982). In *NAACP v. Alabama,* the Supreme Court held that "it [is] apparent that compelled disclosure of petitioner's Alabama membership is likely to affect adversely the ability of petitioner and its members to pursue their collective effort to foster beliefs" and "may induce members to withdraw from the Association and dissuade others from joining it because of fear of exposure of their beliefs shown through their associations and of the consequences of this exposure." *NAACP*, 357 U.S. at 462-63.[2] The

---

[2] Plaintiffs attempt to distinguish *NAACP* by claiming they are not seeking documents analogous to the list of names of members at issue in *NAACP*. However, the importance of the right to associate and the dangers of compelling such information's disclosure is applicable here, regardless of factual distinctions. The Ninth Circuit has held that "[t]he First Amendment privilege, however, has never been limited to the disclosure of identities of rank-and-file members." *Perry*, 591 F.3d at 1162 ("a prima facie case turns not on the

Supreme Court recently ruled that disclosing the identities of charitable organizations' supporters "creates an unnecessary risk of chilling in violation of the First Amendment . . . indiscriminately sweeping up the information of every major donor with reason to remain anonymous." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 616-17 (2021).

Other courts have repeatedly made similar rulings. *See International Action Ctr. v. United States*, 207 F.R.D. 1, 3-4 (D.D.C. 2002) (denying per the First Amendment similar requests for the identities of protest attendees as this would "chill future political dissent and discourage participation in other protest[s]"); *see also AFL-CIO*, 333 F.3d at 176; *Averill v. City of Seattle*, 325 F.Supp.2d 1173 (W.D. Wash. 2004); *Tree of Life Christian, Sch. v. City of Upper Arlington*, No. 2:11-cv-00009, 2012 U.S. Dist. LEXIS 32205, at *9-10, (S.D. Oh. Mar. 12, 2012) (disclosing donor identity would strain relationship between Plaintiff and donor and have a chilling effect.).

PCC's practice is to always ask permission before publicly identifying someone as a PCC supporter or follower, or this supporter or follower's political activity or political beliefs, particularly around Palestinian and Israel. Sergienko Dec. ¶ 5; *see* Brown Dec. Ex. 1 at PCC 851. This is because PCC and its members have been doxed and harassed, including by elected officials, because of PCC's political advocacy work and unpopular political opinions. Sergienko Dec. ¶¶ 6-7. This is also PCC's practice because PCC has observed the violent and repressive attacks on people who publicly express support for Palestine and criticism of Israel's government. Sergienko Dec. ¶ 8. People have been aggressively doxed, terminated from their jobs, expelled or suspended from school, subjected to meritless retaliatory lawsuits, targeted for arrest, and even subjected to

---

type of information sought, but on whether disclosure of the information will have a deterrent effect on the exercise of protected activities."). The *Stromberg* court's holding that the First Amendment does not protect a conspiracy using speech has no bearing on *NAACP's* applicability, as *Stromberg*, a criminal case, did not address the alleged infringement on associational rights on discovery requests. PCC is also not arguing that the information and documents at issue should not be disclose simply because they contain speech.

deportation proceedings for supporting Palestine[3]. *Id.* Accordingly, PCC takes the safety of its supporters and political allies very seriously. *Id.* PCC would no longer be safe to organize with or even communicate with others regarding Palestine if these third party identities are disclosed. Sergienko Dec. ¶ 11. Disclosing these identities will automatically reveal their political beliefs and activity.

In addition, PCC's supporters would be dissuaded from communicating with PCC because they would no longer have confidence in their private association with PCC or privately expressed political opinions to PCC. Sergienko Dec. ¶¶ 22-23; Kim Dec. ¶¶ 10-11. PCC member Phillip Kim has already been asked to stop organizing with different organizations because they do not want their political organizing strategy revealed publicly, to Plaintiffs or to their attorneys. Kim Dec. ¶ 11. Disclosing these identities would frustrate PCC's goals to raise awareness and encourage public participation in political activism. Sergienko Dec. ¶¶ 25-26; Kim Dec. ¶ 9. If disclosure is ordered, Sergienko and Kim may withdraw from PCC, and PCC may have to shut down entirely. Sergienko Dec. ¶¶ 24, 26; Kim Dec. ¶ 12. Disclosing these identities will substantially infringe on PCC's First Amendment rights.

### iii. Disclosing Third Parties who Communicated with PCC on Their Personal Political Beliefs and Activity, Financial Contributions to Political Causes, and Political Associations Also Infringes on PCC's First Amendment Rights

Disclosing the personal political beliefs and activity, financial contributions to political causes, and third parties' political associations who communicated with PCC, in PCC 851-53, 1310, 1370-73, 1426 and Privilege Log # 230 and 238, also infringes on PCC's own First Amendment rights. Courts have repeatedly found that "(t)he Constitution protects against the compelled disclosure of political associations and beliefs" because

---

[3] *See* Nicholas Fandos, *In an Online World, a New Generation of Protesters Chooses Anonymity*, N.Y. Times (May 2, 2024), https://www.nytimes.com/2024/05/02/nyregion/college-campus-protests-anonymity.html; Chris Lehmann, *ICE Is Following the Lead of Anti-Palestinian Doxxing Groups*, The Nation (July 11, 2025), https://www.thenation.com/article/society/ice-canary-mission/; Josh DuBose, *Counter-protestors attack pro-Palestinian encampment at UCLA*, KTLA (April 30, 2024), https://ktla.com/news/local-news/pro-palestinian-encampment-at-ucla-gains-ground-as-demonstrations-rage-on/.

"(s)uch disclosures can seriously infringe on privacy of association and belief guaranteed by the First Amendment." *Brown*, 459 U.S. at 91-92; *see also McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 357 (1995) (First Amendment's protection of anonymous speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."); *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280,* 950 F.2d 1456 (9th Cir. 1991) (union members established First Amendment privilege when they stated they could no longer participate in meetings if the minutes were disclosed); *AFL-CIO*, 333 F.3d at 176-78 (First Amendment infringement established by alleging that disclosing training descriptions, campaigns and strategies would frustrate their ability to pursue their political goals).

Disclosing these third parties' personal political beliefs, particularly on Palestine, political activity, contributions, and associations, will strain PCC's relationship with these individuals. Sergienko Dec. ¶¶ 9-11, 13, 15, 18, 21-23; Kim Dec. ¶¶ 4-12. This would impede PCC's mission to raise awareness and foster political engagement, including Palestine and Israel. Sergienko Dec. ¶¶ 25-26. Disclosing these communications could permanently silence PCC and substantially infringe on PCC's First Amendment rights.

**iv. The Protective Order Does Not Cure the First Amendment Violations, Or Completely Ameliorate Privacy Concerns**

Just as the Ninth Circuit has held, here, a "protective order limiting dissemination of this information will ameliorate but cannot eliminate these threatened [First Amendment] harms." *Perry,* 591 F.3d at 1164. The Supreme Court has recognized that "disclosure requirements can chill association '[e]ven if there [is] no disclosure to the general public . . . . While assurances of confidentiality may reduce the burden of disclosure to the State, they do not eliminate it.'" *Ams. for Prosperity Found.*, 594 U.S. at 616 (2021) (quoting *Shelton v. Tucker*, 364 U. S. 479, 486 (1960)).

Despite a protective order, PCC's First Amendment rights would still be infringed. The documents at issue would still be disclosed to PCC's political opponents, including Eli Tsives and the Brandeis Center. Sergienko Dec. ¶¶ 12-21; Kim Dec. ¶¶ 6-7;

DEFT PCC'S OPP TO PLTFS' MTC PROD
FROM DEFT PCC RE: TEN DOCS                    7

*See Int'l Action Ctr.*, 207 F.R.D. at 3 ("that the parties are adequately protected with an order limiting the use and custody of the information provided in discovery to the parties, the government simply ignores the thrust of Plaintiffs' fears. It is the government itself that Plaintiffs fear, and therefore confining that information to government (as well as PIC) counsel will hardly assuage those fears or avoid the intimidation that Plaintiffs fear might follow."). A protective order does not give Plaintiffs carte blanche to seek discovery into PCC's internal affairs and communications, regardless of relevance.

### B. Plaintiffs Cannot Establish That the Redacted Information and Withheld Documents Are Highly Relevant and Rationally Related to a Compelling Government Interest

As "the party seeking the discovery [Plaintiffs] must show [but fail to] that the information sought is highly relevant to the claims or defenses in the litigation -- a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1161. To meet this heightened standard, Plaintiffs must "explain precisely what information is sought, to which specific issues in the case the evidence is relevant, and whether these issues are likely to be determinative of the case." *Adolph Coors v. Wallace,* 570 F. Supp. 202, 209 (N.D. Cal. 1983). "Mere speculation that information might be useful will not suffice." *Id.* (quoting *Black Panther Party v. Smith*, 661 F.3d 1243, 1268 (D.C. Cir. 1981)). "This enhanced scrutiny is appropriate since civil lawsuits could be misused as coercive devices to cripple, or subdue, vocal opponents." *Id.*

Plaintiffs cannot articulate one specific fact, beyond generalized allegations of unlawful conduct, that any of the documents at issue are highly relevant to their claims. Plaintiffs do not even address any of the individual documents at issue in their step two analysis. Plaintiffs' vague hypothesis that the individuals PCC communicated with, and whose names are redacted, "may have had other communications with PCC that are relevant to this litigation" is the exact type of speculation that fails to establish relevance. Dkt. 166 at 5:22-25. It does not specifically identify why the redacted identities are relevant or why these individuals likely have relevant information.  *See* PCC 1482-1504.

Furthermore, Plaintiffs do not explain why communications regarding PCC's

---

DEFT PCC'S OPP TO PLTFS' MTC PROD
FROM DEFT PCC RE: TEN DOCS                                      8

political organizing strategy are relevant or why third parties' communications with PCC about their personal political beliefs and activity, political causes contributions and associations are relevant. In *Sines*, the plaintiffs sought an individual's communications as they had specific evidence of their racist and violent statements related to the incident at issue. Unlike *Sines*, here Plaintiffs are unable to offer any facts that substantiate their high relevance claims for the wide array of communications they seek. *See Sines v. Kessler, No.* 18-mc-80080-JCS, 2018 U.S. Dist. LEXIS 132054, at \*6-7 (N.D. Cal. Aug. 6, 2018).

Plaintiffs instead make the generalized and circular assertion that the disclosure's deterrent effects on PCC's First Amendment rights is still justified because they are suing PCC. But this fails to establish a basis for disclosure. While "the importance of the litigation," here by private actors, "may [be] take[n] into account" when "balance[ing] the burdens imposed . . . against the significance of the interest in disclosure," it does not alone establish relevance, nor justify the deterrent effect on PCC's right of association. *Perry*, 591 F.3d 1161. Plaintiffs' position that anyone who attended the encampment was automatically a part of the alleged antisemitic conspiracy is an inference the Supreme Court already rejected. *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982); *see also Bursey v. United States*, 466 F.2d 1059, 1092 n. 21 (9th Cir. 1972) (denying discovery where relevance theory premised upon "some kind of guilt by association.").

Furthermore, Plaintiffs' RFPs are far from narrowly tailored, and seek information irrelevant to PCC's actions regarding the UCLA encampment. *See Perry*, 591 F.3d at 1161 ("The request must also be carefully tailored to avoid unnecessary interference with protected activities"). For example, RFP No. 14 seeks "[a]ll communications on the subject of the UCLA encampment." App. 367. This is not tailored, much less limited to "identify[ing] the scope, core objectives, and means of effectuating the antisemitic conspiracy at issue and the individuals or entities involved." Dkt. 166 at 5:17-18.

## C. The Right to Privacy Protects the Documents and Information at Issue

Federal Courts recognize a constitutionally-based right of privacy, such as PCC's, can be raised in response to discovery requests. *See Breed v. United States Dist. Ct. for*

*Northern District*, 542 F.2d 1114, 1116 (9th Cir. 1976) (balancing invasion of minor's privacy rights against the court's need for ward files); *Cook v. Yellow Freight Sys., Inc.*, 132 F.R.D. 548, 550-51 (E.D. Cal. 1990) (balancing targeted individual's right of privacy against public's need for discovery in employment discrimination case); *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995)[4]. "Resolution of a privacy objection or request for a protective order requires a balancing of the need for the information sought against the privacy right asserted." *Soto*, 162 F.R.D. at 616. Individuals who communicated with PCC about the UCLA encampment did so expecting that such communications were private. Sergienko Dec. ¶¶ 5-10. Plaintiffs' desire for expansive discovery does not outweigh the harm to PCC and these parties, including these third party identities and the contents of their communications.[5] *See Burka v. New York City Transit Authority*, 110 F.R.D. 660, 665 (S.D.N.Y. 1986) ("closely related to the nature of the privacy interest is the reasonableness of the expectation that the interest will be protected.").[6] The documents at issue are shielded from disclosure by the right to privacy.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel production from Defendant People's City Council regarding ten documents should be denied.

---

[4] While the California privacy privilege is not binding, "if state doctrine promoting confidentiality does not conflict with federal interest, it may be taken into account as a matter of comity." *Ceramic Corp. of Am. v. Inka Mar. Corp. Inc.*, 163 F.R.D. 584, 588 (C.D. Cal. 1995).

[5] Courts have also denied discovery based on a third party's privacy rights. *See, e.g., Burmayan v. Garfield Beach CVS, LLC.*, No. CV 23-01788-FMO (AGRx), 2024 U.S. Dist. LEXIS 42292 (C.D. Cal. Feb. 27, 2024) (§ 1983 case denying discovery based on third party suspects' right to privacy in investigation materials); *Chavez-Deremer v. Coway USA, Inc.*, No. 2:24-cv-08156-JLS-AJR, 2025 U.S. Dist. LEXIS 189808 (C.D. Cal. July 18, 2025) (third party employees' privacy interests warranted protective order).

[6] Plaintiffs instead rely on several inapplicable cases. *See Katz v. United States,* 389 U.S. 347 (1967) (addresses privacy in applying Fourth Amendment in criminal procedure, not civil discovery); *Kowalski v. Tesmer,* 543 U.S. 125, 129 (2004) (addresses standing challenging criminal statute); *Carijano v. Occidental Petroleum Corp.*, No. CV075068PSGPJWX, 2019 WL 6896921 (C.D. Cal. June 20, 2019) (defendant attempts to assert plaintiffs' and plaintiffs' community members' privacy interests).

DEFT PCC'S OPP TO PLTFS' MTC PROD
FROM DEFT PCC RE: TEN DOCS                    10

Dated: June 5, 2026

Respectfully Submitted,
HADSELL STORMER RENICK & DAI LLP

By: /s/ Rebecca Brown
Rebecca Brown
Attorneys for Defendant People's City Council