Jonathan Wallace (Admitted Pro Hac Vice)
PO #728
Amagansett, NY 11930
917 359 6234 | jonathan.wallace80@gmail.com

Attorney for Defendant, National Faculty and Staff for Justice in Palestine

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW WEINBERG, et al., | Case No. 2:25-cv-03714 MCS (JCx) |
| Plaintiffs, | NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES |
| vs. | |
| NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, et al., | Date:  July 20, 2026 |
| Defendants. | Time: 9:00 a.m. |
| | Ctrm: 7C |
| | Complaint Filed:  April 25, 2025 |

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on June 20, 2026 at 9:00am, or as soon thereafter as the matter may be heard in Courtroom 7C of the above-entitled Court located at 350 W First St, Los Angeles, CA 90012, Defendant, National Faculty and Staff for Justice in Palestine, will and hereby do, move this Court for an order dismissing all counts of Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

This Motion is made on the grounds that Plaintiffs have failed to plead sufficient facts to establish the essential elements of any of the six causes of action in the First Amended Complaint.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the pleadings and papers on file in this action, and such other argument and evidence as may be presented at the hearing.

Date: June 15, 2026                          /s/ Jonathan Wallace
                                             Attorney for Faculty for Justice in
                                             Palestine Network

ii

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS
# MEMORANDUM OF POINTS AND AUTHORITIES

I.      Introduction …………………………………………… 1-2

II.     Argument

    a.  The Cornerstone of the Complaint Is the Now Untenable Assertion that Anti-Zionism is Antisemitism …………… 2-7

    b.  Plaintiffs' Assertions of Article III Standing are Founded on Intentional Misrepresentations of Fact and Law, in Violation of Rule 11 …………………………………... 7-21

    c.  The Complaint is a Shotgun Pleading …………………… 21-22

    d.  The Complaint Against NFSJP Must Be Dismissed Under Rule 12(B)(1) and 12(B)(6) …………………………... 22-25

III.    Conclusion …………………………………………... 25

# TABLE OF AUTHORITIES

**Cases**

*StandWithUs Ctr. for Legal Just. v. Massachusetts Inst. Of Tech.*, 2025
U.S. App. LEXIS 27390, at *18 (1st Cir Oct. 21, 2025, No. 24-1800) …   2

*Sussman et al v. Massachusetts Institute of Technology et al.*, 1:25-cv-
11826-RGS (D Mass 2025) Docket No. 75, 1/5/2026 …………………..   3

*Eyal Yakoby v Trustees of the Univ. of Pennsylvania*, 2025 US Dist
LEXIS 103709, at *18-19 (ED Pa June 2, 2025, No. 23-4789) …………   3,5,22

*Landau v. Corp. of Haverford Coll.*, No. 24-2044, 2025 U.S. Dist.
LEXIS 1402, at *4-5 (E.D. Pa. Jan. 6, 2025) ……………………………   3,5

*Am. Assn. of Univ. Professors v Rubio*, 802 F Supp 3d 120, n 17 (D
Mass 2025) ……………………………………………………………   3

*Canel v Art Inst. of Chicago*, 2025 US Dist LEXIS 30309, at *24-25
(ND Ill Feb. 20, 2025, No. 23 CV 17064) ………………………………   3,4,5

*Gerwaski v Nevada ex rel. Bd. of Regents of the NV Sys. of Higher
Educ.*, 2025 US Dist LEXIS 84645, at *21-22 (D Nev May 5, 2025, No.
2:24-cv-00985-APG-MDC) …………………………………………..   4,5

*Newman v. Point Park Univ.*, No. 2:20-cv-00204, 2022 U.S. Dist.
LEXIS 60722, at *78-79 (W.D. Pa. Mar. 31, 2022) ……………………   4,5

*Holgate v. Baldwin*, 425 F3d 671, 676 (9th Cir 2005) …………………..   7

*Doe Jewish USC Fac. Member 2004 v. Univ. of S. California*, 2026 US
Dist LEXIS 76647, at *10 (CD Cal Mar. 31, 2026, No. 2:25-cv-06375-
FLA (SSCx) …………………………………………………………...   10

*Commack Self-Service Kosher Meats, Inc. v. Weiss*, 294 F3d 415, 429
(2d Cir 2002) …………………………………………………………   12

*James v. Columbia*, 655038/2024 (Supreme Court New York County
2024), paragraphs 100-114 …………………………………………   16

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

*Olivieri v Ward*, 801 F2d 602, 605 (2d Cir 1986), cert. den. 480 U.S. 917 (1987) ………………………………………………………………… 17

*Startzell v City of Phila.*, 533 F3d 183, 200 (3rd Cir 2008) …………….. 17

*Marcavage v City of Phila.*, 481 F App'x 747 (3d Cir 2012) …………… 17

*Haselton v City of Seattle*, 2023 US Dist LEXIS 189227, at *19 (WD Wash 2023, No. 2:23-cv-0706-BJR) ………………………………… 17

*NAACP Alamance County Branch v Peterman*, 2020 US Dist LEXIS 141860, at *21 (MDNC 2020, Civil Action No. 1:10CV613) ………….. 17,18

*Mody v Hoboken*, 959 F2d 461, 466 (3d Cir 1992) ……………………... 18

*Hawk v Perillo*, 642 F Supp 380, 384 (ND Ill 1985) …………………… 19

*Payne v Off. of the Commr. of Baseball,* 705 F App'x 654, 655 (9th Cir 2017) ………………………………………………………………….. 19

*Perry v Newsom*, 18 F.4th 622, 630 (9th Cir 2021) ……………………. 20

*MAO-MSO Recovery II LLC v Mercury Gen.*, 2023 U.S. App. LEXIS 2936, at *11 (9th Cir Feb. 7, 2023, Nos. 21-56395, 21-56396) ………… 20

*Tunic v Astorga*, 2025 US Dist LEXIS 172156, at *17 (CD Cal July 3, 2025, No. 2:25-cv-04695-MCS-MBK) ………………………………… 20

*Johnson v Kuma Kuma LLC*, 2022 US Dist LEXIS 218871, at *8 (ND Cal Dec. 5, 2022, No. 22-cv-01386-CRB) ………………………………… 20

*Gibson v City of Portland*, 165 F.4th 1265, 1271 (9th Cir 2026) ………. 21

*Destfino v Reiswig*, 630 F3d 952, 958 (9th Cir 2011) …………………... 21

*Ramirez-Fort v Regents of the Univ. of California*, 2026 US Dist LEXIS 76985, at *10 (CD Cal Mar. 31, 2026, No. 2:24-cv-09103-SRM-SSC) ... 21

*California Clippers, Inc. v United States Soccer Football Asso.*, 314 F Supp 1057, 1068 (ND Cal 1970) ……………………………….……... 22

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

**Statutes and Codices**

Article III……………………………………………………………… 1
FRCP 12(b)(1)…………………………………………………………… 1,24
12(b)(6)……………………………………………………………….... 1
FRCP 11(b)(2)…………………………………………………………… 5
FRCP 8………………………………………………………………….. 11
FRCP 11………………………………………………………………… 11,20

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

## MEMORANDUM OF LAW IN SUPPORT
## OF NFSJP'S MOTION TO DISMISS

## I.      INTRODUCTION

Defendant National Faculty and Staff for Justice in Palestine ("NFSJP") asserts that Plaintiffs both lack Article III standing under FRCP Rule 12(b)(1) and fail to state a cause of action under 12(b)(6) for the following reasons.

1. The First Amended Complaint ("FAC") asserts loudly and proudly that anti-Zionism is antisemitism, a legal proposition which was already unsupported on the date the original complaint was filed. With these assertions disregarded or excised, the Complaint would in fact fail to assert the most basic claim of religious or national origin discrimination.

2. The Complaint and FAC center statements that were knowingly false when made, for example that the encampment was a "Jew exclusion zone". There was very significant Jewish participation in the encampment, including students who appeared on national television and made statements to the international press. Plaintiffs were certainly aware there were Jewish people in the encampment when they claimed, in a signed pleading filed with this Court, there were not.

3. Plaintiff's alleged Constitutional right to pass through the encampment is, once examined, a right to invade the encampment to provoke and troll pro-Palestinian protesters, a tactic which plaintiff Eli Tsives was particularly devoted, posting numerous videos of himself haranguing protesters while waving a large

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

Israeli flag. However, a long line of cases derived originally from the behavior of counter-protesters at Pride marches and abortion clinics makes utterly clear that separating these individuals from their targets is a reasonable time, place and manner restriction under the First Amendment-- a duty campus security and LA police abdicated (especially on the night when they stood by and watched Jewish people, cheered on by Tsives, beat pro-Palestinian protesters with two-by-fours). Since there is no "right to troll", the FAC fails to assert the required deprivation of a Constitutional right.

4.   Consideration of these issues should not be delayed for discovery, dispositive motions, trial or a later Rule 11 motion, because they go to whether Plaintiffs have Article III standing in the first place. It is respectfully requested that this Court order an evidentiary hearing on standing.

## II.   ARGUMENT

a.   <u>The Cornerstone of the Complaint is the Now Untenable Assertion that Anti-Zionism is Antisemitism</u>

5.   For many years, Plaintiffs self-identifying as Zionists have brought claims asserting that Defendants committed acts of antisemitism merely by criticizing Israel. What was fundamentally a misuse of the courts to achieve a political goal is coming to an end now, due to an extensive, well-elucidated and unanimous line of case law which holds that anti-Zionism is not antisemitism, *StandWithUs Ctr. for Legal Just. v. Massachusetts Inst. Of Tech.*, 2025 U.S. App. LEXIS 27390, at *18

2

(1st Cir Oct. 21, 2025, No. 24-1800) ("Most of the conduct about which plaintiffs complain is speech protected by the First Amendment, and we do not construe Title VI as requiring a university to quash protected speech"); *Sussman et al v. Massachusetts Institute of Technology et al.*, 1:25-cv-11826-RGS (D Mass 2025) Docket No. 75, 1/5/2026 ("But the court sees no basis on which to distinguish the First Circuit's conclusion that anti-Israeli sentiment is not, without more, antisemitic messaging"); *Eyal Yakoby v. Trustees of the Univ. of Pennsylvania, 2025 US Dist LEXIS 103709, at \*18-19 (ED Pa June 2, 2025, No. 23-4789)* ("At worst, Plaintiffs accuse Penn of tolerating and permitting the expression of viewpoints which differ from their own"); *Landau v. Corp. of Haverford Coll.*, No. 24-2044, 2025 U.S. Dist. LEXIS 1402, at \*4-5 (E.D. Pa. Jan. 6, 2025) ("Plaintiffs seek[] to blur the line between Zionism as a political philosophy and Zionism as a component of Jewish identity, and in the process implicitly sweep any and all criticism of Israel into the basket of antisemitism. As a threshold matter,....I reject Plaintiffs' embedded proposition that any anti- Israel speech is intrinsically antisemitic, because reasonable people acting in good faith can challenge decisions of the Israeli government without harboring antisemitic views"); *Am. Assn. of Univ. Professors v. Rubio*, 802 F Supp 3d 120, n 17 (D Mass 2025) ( "Criticisms of the State of Israel are not anti-Semitism, they're political speech, protected speech"); *Canel v. Art Inst. of Chicago*, 2025 US Dist LEXIS 30309, at \*24-25

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

(ND Ill Feb. 20, 2025, No. 23 CV 17064) ("[T]he banners and flyers reflect political points of view critical of the Israeli government.... From these allegations...the Court cannot also conclude that the banners and flyers represent discriminatory harassment of plaintiff on the ground of her Jewish or Israeli identities"); *Gerwaski v. Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.*, 2025 US Dist LEXIS 84645, at *21-22 (D Nev May 5, 2025, No. 2:24-cv-00985-APG-MDC) ("As pleaded, AMP and SJP-UNLV's conduct alleged in the FAC is protected by the First Amendment"); *Newman v. Point Park Univ.*, No. 2:20-cv-00204, 2022 U.S. Dist. LEXIS 60722, at *78-79 (W.D. Pa. Mar. 31, 2022) ("Despite the sensitive and important the issues these conflicting viewpoints and actions raise, as an overarching matter, such debates... have been recognized to fall within First Amendment protections when efforts have been advanced to limit or impair such advocacy...Against that backdrop, Plaintiff has not shown that Defendant has subjected her to an objectively hostile work environment by its not suppressing, or otherwise protecting Plaintiff from, the personal views and academic interests of some of Defendant's professors and students related to these geopolitical topics").

6. The number of federal cases holding that anti-Zionism is antisemitism: 0.

7. Despite the overwhelming number, clarity and straightforwardness of the

cases, some of which even use the phrase "anti-Zionism is not antisemitism", Plaintiffs are however committed to maintaining the opposite.

8. This is not a Rule 11 motion; none of the safe harbor procedures were followed, nor is NFSP asking for sanctions. The point is that the Complaint so completely fails to state a cause of action that it even fails minimal requirement that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law".

9. The Complaint was filed April 25, 2025, after the *Haverford*, *Canel*, and *Newman* cases were decided, supra. The FAC was filed on September 26, after *Yakoby* and *Gerwaski*.

10. The FAC thus flies squarely in the face of the case law, by conflating anti-Zionism and antisemitism, using them interchangeably and in fact, so entangles them that the Complaint fails to give NFSJP notice of when it is being accused of bias against Jewish people, rather than anger at Israel.

11. Assertions of anti-Zionism and antisemitism are so entangled in the FAC that there is no way to separate them, for example: Plaintiffs accuse all Defendants of using the word "Zionism" as a "racist dog whistle" (paragraph #6); "[I]n one organizer's words 'the most liberating and radicalizing part of the UCLA encampment was fighting the Zionists and police.' ... Because encampment

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

organizers believe that they are 'at war' with 'Zionists' and law enforcement, 'a clear militant line of needing to fight the police' predominates" (paragraph 8); assert the presence of signs saying "'Intifada" and 'Death 2 Zionism,' and... 'Israelis are Native 2 Hell'" (paragraph 12); "Encampment organizers 'demarcated five zones that Zionists often tried to breach, limited entry to only two zones, and established a complex check-in, wristband, and vouching system' to keep out 'Zionists'" (paragraph 13); "Defendant UC Divest Coalition is a California-based unincorporated association made up of individuals and entities that seek to pressure the UC system into divesting from, among other things, the State of Israel" (paragraph 45); "On April 20, 2024, SJP launched the nationwide 'Popular University for Gaza' initiative of which the UCLA encampment was a crown jewel" (paragraph 60); "Join us! Find an encampment, protest, walkout, or other mobilization happening near you and stand alongside encampments across the country in solidarity with Gaza!" (paragraph 61); "Globalize the student intifada!" (image, paragraph 66).

12. There are 35 references in the FAC to the Popular University for Gaza. Paragraph 78 states: "The 'Popular University for Gaza' did not occur in a vacuum...these events were merely an 'escalation' in the ongoing campus antisemitism crisis at UCLA and around the country." Plaintiffs plainly stake out

6

the position, for this Court and the finder of fact, that any attempt to center public awareness on Gaza, and in fact any reference to Gaza, is antisemitic.

13. Nor are references to "intifada" antisemitic, StandWithUs Ctr. for Legal Just. v Massachusetts Inst. of Tech., 158 F.4th 1, 19 (1st Cir 2025) ("[P]laintiffs say that we should construe chants of ...'intifada revolution', as calls to wipe out the Jewish people...but [the slogan does not] say [] as much on its face, nor do plaintiffs allege facts suggesting that [it was] was commonly so construed by the protestors. Thus, plaintiffs must again rely on a theory that they can dictate the interpretation of the protestors' speech in order to suppress it, without any facts suggesting that the protestors were using the [] slogan [] in the way plaintiffs claim").

14. The FAC therefore fails to state a claim because it asserts discrimination against a nonexistent protected class, *Holgate v. Baldwin*, 425 F3d 671, 676 (9th Cir 2005) (Claim that "consumers looking to build their dream home" were a protected class "cited no case law recognizing such a class as meriting heightened protection").

15. The FAC should be dismissed for failure to state a cause of action.

b.  <u>Plaintiffs' Assertions of Article III Standing are Founded on Intentional Misrepresentations of Fact and Law, In Violation Of Rule 11</u>

16. Plaintiffs claim that "wherever such an encampment appears, a growing

7

Jew exclusion zone enforced by threats, intimidation, and violence is not far behind" (paragraph 7); "Jewish and Israeli students were...physically prevented from accessing parts of the UCLA campus on the basis of their actual or perceived race, religion, and/or national origin" (paragraph 9); "students on their way to class were 'physically blocked from accessing parts of the campus'" (paragraph 10); "The UCLA encampment... was a festering sore of... racial exclusion" (paragraph 11); "Encampment organizers 'demarcated five zones that Zionists often tried to breach, limited entry to only two zones, and established a complex check-in, wristband, and vouching system' to keep out 'Zionists.'" (paragraph 13).

17. Stopping to examine that last. What foundational right is infringed, of Zionists—not a protected class, but a political ideology perceived by Arab and Muslim students and their supporters to be threatening and aggressive-- to pass anywhere they wish within an encampment of people with an opposing ideology?

18. Since, per this Court's order denying SJP's motion to dismiss, this is now— having to pass around an encampment-- the main harm alleged by Plaintiffs to show standing, it requires some unpacking.

19. First of all, Plaintiffs knew perfectly well, in drafting their Complaints, that numerous Jewish students participated in the UCLA encampment. Jewish Voice for Peace, a nationwide Jewish anti-Zionist organization, posted on its web site that "the encampment was a beacon of possibility and safety. Jewish UCLA students

8

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

led a Passover Seder at the encampment, as well as Shabbat and Havdalah services. Undergraduate UCLA student and JVP member Lilah explained that, 'Through our interfaith community, we are building the world we want to live in. We, Jewish students at UCLA, feel completely erased from the narratives put out by the Chancellor, who refuses to acknowledge the Jewish presence within the encampment because it is inconvenient to the narrative he is trying to perpetuate. The actions of our administration shows us their priorities.'" "JVP statement on the attack on the UCLA student encampment."[1]

20.Benjamin Kersten, a Jewish student and member of Jewish Voice for Peace, told The Guardian: "As a Jewish student who participated in the UCLA Palestine solidarity encampment, I find the charge that the encampments are antisemitic to not only be misleading but dangerous. All were welcome in the encampment who abided by the community agreements and engaged in good faith with its demands, including for the university to divest from weapons manufacturers and companies profiting from Israeli violence against Palestinians and to stop repressing pro-Palestinian advocacy on campus. For me, the encampments offered opportunities for Jewish learning and community building. We organized a Passover Seder and observed Shabbat and Havdalah, and we were

---

[1] Jewish Voice for Peace May 3, 2024 https://www.jewishvoiceforpeace.org/2024/05/03/jvp-statement-on-the-attack-on-the-ucla-student-encampment/

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

part of a multicultural, interfaith space – a glimpse of the world we hope to build. Inside the encampment, students learned, imagined, disagreed and recommitted. We recommitted to the values of justice, equality and dignity for all without exception."[2]

21. In *Doe Jewish USC Fac. Member 2004 v. Univ. of S. California*, 2026 US Dist LEXIS 76647, at *10 (CD Cal Mar. 31, 2026, No. 2:25-cv-06375-FLA (SSCx), also pertaining to the UCLA encampment, Plaintiffs foolishly sued Jewish Voice for Peace as a defendant-- then asked for certification as a class. The Court denied certification, holding this was ontologically impossible: "Plaintiffs' putative classes include the members of JVP, who Plaintiffs accuse of creating the purported 'Jew Exclusion Zone' and the conduct of which Plaintiffs complain....As Plaintiffs seek to bring class claims on behalf of a class that includes members of Defendant JVP, which Plaintiffs allege 'created, maintained, orchestrated, and engineered' the protest 'Encampment' and 'orchestrated' the protests, and engaged in the speech and conduct of which Plaintiffs complain the court finds Plaintiffs cannot make a prima facie showing of Rule 23's requirements on the face of the Complaint."

22. Since all Plaintiffs undeniably knew that there were Jewish students in the

---

[2] https://www.theguardian.com/commentisfree/article/2024/may/15/campus-protest-jewish-student Kersten was interviewed by CNN in the encampment, https://www.cnn.com/2024/04/27/us/video/ucla-student-pro-palestinian-protest-bernal-sot-digvid

10

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

encampment, the Complaint misreprese3nted the facts supporting standing when drafted, in making the claim that the encampment was a "Jew exclusion zone" (paragraph 7).

23. How the Plaintiffs are likely to react to this is quite predictable. In their world-view, any Jewish person who opposes Zionism is categorized as a "fake Jew", a "self-hating Jew" and an "antisemite". In other words, a somewhat pathological mental operation takes place, in which Plaintiffs and counsel believe they can assert that the encampment was a "Jew exclusion zone" because they have redefined the Jewish people they knew perfectly well were inside as...not Jewish. This kind of ontological magic does not begin to start to commence to comply with FRCP 8 or 11.

24. The Plaintiffs' project therefore goes far beyond the (already lost) battle of categorizing anti-Zionism as antisemitism. What they are actually trying to do is to categorize Zionism as the only Judaism. To do so, they must erase a very rich, compassionate and self-confident (and self-loving) tradition within Judaism.[34]

25. The Court would itself, as a state actor,[5] be violating the Establishment

---

[3] Peter Beinart, "Debunking The Myth That Anti-Zionism Is Anti-Semitic", The Forward February 27, 2019 https://forward.com/opinion/419988/debunking-the-myth-that-anti-zionism-is-anti-semitic/ .

[4] Shaul Magid, "'Anti-Zionism = Antisemitism' isn't Just Wrong, It's the Problem", Religion Dispatches December 13, 2023 https://religiondispatches.org/anti-zionism-is-antisemitism-isnt-just-wrong-its-the-problem/

[5] *New York Times Co. v. Sullivan,* 376 U.S. 254, 265 (1964) ("Alabama courts....applied a state rule of law which petitioners claim to impose invalid restrictions on their constitutional freedoms of speech and press").

11

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

Clause if it accepted Plaintiff's invitation to hold that anti-Zionist Jews are not Jews. *Commack Self-Service Kosher Meats, Inc. v. Weiss*, 294 F3d 415, 429 (2d Cir 2002) (New York State could not privilege Orthodox Jews over Conservative Jews by enacting their kosher butchering rules into law).

26.This is a *Twombly/Iqbal* issue, as well as a Rule 11 one. Plaintiffs assert that Zionism is a protected class in the FAC. This is not a "plausible" position, given the overwhelming line of recent case-law to the contrary, cited in Point One above.

27.It also means that the right of access they claim they were denied is actually a right of access as Zionists to charge into the midst of political adversaries who feel endangered as a result, who do not want them there. This completely "reverses the valences" as to what is actually pled in the FAC. Plaintiff Gurevich, the Chabad rabbi, is unlikely to deny his own widely quoted words regarding his presence filming students at the encampment: "Gurevich said he went down to observe the demonstration to 'be there for our students,' and live-streamed what he saw, both to keep alumni and parents apprised of what's happening on campus and as a form of protection because 'people are not as violent on camera as they can be off camera'".[6] Of course, claiming a right to charge into

---

[6] Susannah Luthi, "UCLA Has Not Apologized to Campus Rabbi Assaulted on Camera", The Washington Free Beacon, June 14, 2024  https://freebeacon.com/campus/ucla-has-not-apologized-to-campus-rabbi-assaulted-on-camera/

12

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

the encampment with a camera is a bit like claiming the right to charge in with a gun (which of course worked out fine for Kyle Rittenhouse, but hopefully will not have any leverage in this court).

28. Filming pro-Palestinian protesters is usually intended as a provocative, threatening act. The ACLU says: "For those speaking out in support of the Palestinian people, being recognized in a crowd can have extreme consequences for their personal and professional security. During the Gaza protests, pro-Israel activists and organizations have posted the faces and personal information of pro-Palestine activists to intimidate them, get them fired, or otherwise shame them for their views. These doxing attempts have intensified, with viral videos showing counterprotesters demanding that pro-Palestinian protesters remove their masks at rallies."[7] Rabbi Gurevich, by saying that he wanted parents and alumni (often students' future bosses) to "be apprised" was actually signaling an intention to doxx students.

29. Plaintiff Eli Tsives, however, took the lead in trolling the protesters, posting video on social media of himself waving a huge Israeli flag, haranguing an Arab American professor about the meaning of "genocide."[8]

---

[7] Jay Stanley, "States Dust Off Obscure Anti-Mask Laws to Target Pro-Palestine Protesters", ACLU May 15, 2024 https://www.aclu.org/news/privacy-technology/states-dust-off-obscure-anti-mask-laws-to-target-pro-palestine-protesters
[8] Tsives says that Israeli treatment of Palestinians cannot be genocide, because there are more Palestinians today than in 1948. https://www.instagram.com/reel/C6N9oMnMR8L/?hl=en

13

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

30.Jewish Currents, an anti-Zionist Jewish publication, reported: "On a Monday in late April 2024, Eli Tsives approached the southernmost entrance of the Royce Quad encampment....Tsives, then in the spring of his freshman year, was known to the activists as the student provocateur who'd shown up on the encampment's very first day wearing an Israel Defense Forces t-shirt and holding an Israeli flag, and who'd gone on to post a video to his Instagram page of a confrontation with student safety marshals ('Let's get a nice look at their faces. You can kiss your jobs goodbye,' he'd told them). Now, a friend filmed Tsives, a large Star of David dangling from his neck, as he demanded entry. The students at the steel barricades, in medical masks and keffiyehs, moved to form a wall with their bodies. By this point, experienced activists in the encampment had created a list of Zionist agitators from on and off campus who, for safety reasons, were not allowed in, according to a student organizer, Ethan, who asked that I not use his last name....'Everybody, look at this, look at this,' Tsives called out to onlookers off camera...'I'm a UCLA student. I deserve to go here. We pay tuition. This is our school. And they're not letting me walk in. My class is over there. I want to use that entrance'...'We're not engaging with agitators,' one of the students replied." https://jewishcurrents.org/portrait-of-a-campus-in-crisis

31.Tsives defended the April 30 attack on the encampment, when protesters

14

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

were beaten by a mob while police stood by (see below): "'The reason why this is happening is because Jews in L.A. have had enough,' Tsives told Fox & Friends. 'They've seen how these pro-Hamas protesters are treating Jewish students on campus. And they said, fine if the UCLA administration is not going to do anything if LAPD is not going to do anything, we're going to do something about it.'"[9]

32.In the FAC, Tsives admits that the purported Constitutional right he is asserting is the nonexistent one of confronting and trolling people with whom he radically disagrees. "Each day at the encampment, Tsives dressed in a manner that made clear that he was Jewish, including wearing a visible Star of David necklace. Thus, whenever Tsives attempted to pass through one of the 'checkpoints' surrounding the encampment, he was either physically blocked by uniformed members of the encampment's 'security teams' at point of entry or surrounded and forced out of the area by a 'human phalanx' shortly after. For example, on Monday, April 29, Tsives attempted to pass through the checkpoints and was denied entry after the 'security team' saw his Star of David necklace." (FAC paragraph 145).

33.Professor Hoftman also admits his own effort to invade the encampment

---

[9] https://www.mediaite.com/media/tv/jews-in-la-have-had-enough-ucla-student-tells-fox-counter-protestors-that-broke-up-pro-palestine-encampment-were-not-students/

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

and troll the protesters: "As Hoftman conducted an interview while walking towards the encampment, two or three individuals affiliated with the encampment moved to block his path." (FAC paragraph #132) That "interview" is ingenuous. He told News Nation he was there with a "professional filmmaker" to film the protesters.[10]

34.In other words, Plaintiffs are, as a matter of law as communicated by the plain meaning of their pleadings, asserting a First Amendment right to invade, harass and even assault groups of people whom they detest, and then to call them antisemites-- and sue them-- if they react. This right does not exist, and therefore eliminates Plaintiffs' claim of harm from the encampment which would support standing.

35.Counterprotesters bullying, threatening, frightening and even stepping on pro-Palestinian demonstrators until they are excluded or blocked, and then filing an antisemitism complaint, is a very common tactic nationwide, see the complaint in *James v. Columbia*, 655038/2024 (Supreme Court New York County 2024), paragraphs 100-114 (self-protective, peaceful, human chain characterized falsely as "antisemitic", leading to suspension of several participants).

36.A hugely impactful missing piece of information is why students have to

---

[10] https://www.youtube.com/watch?v=3S11O9oPPmw

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

police hostile access to their own gatherings, instead of being protected by campus security or the police. A long line of cases involving aggressive people who wanted to charge aggressively into protests they oppose, makes clear that it is a reasonable time place and manner restriction, not at all an act of antisemitism for goodness sake, to keep Plaintiffs a short distance away from the people they wish to film and confront, *Olivieri v Ward*, 801 F2d 602, 605 (2d Cir 1986), cert. den. 480 U.S. 917 (1987) ("[T]he First Amendment does not guarantee an absolute right to anyone to express their views any place, at any time, and in any way they want....The activities of Dignity and the Committee are subject to reasonable time, place and manner restrictions to further significant government interest"); *Startzell v City of Phila.*, 533 F3d 183, 200 (3rd Cir 2008) ("It is apparent that the police understood Appellants had rights under the First Amendment to express their message, but in directing Appellants to move to another location within OutFest they were merely imposing a content-neutral time, place, or manner restriction"); *Marcavage v City of Phila.*, 481 F App'x 747 (3d Cir 2012) ("Marcavage was relocated a short distance away from event participants"); *Haselton v City of Seattle*, 2023 US Dist LEXIS 189227, at *19 (WD Wash 2023, No. 2:23-cv-0706-BJR) ("[T]he section of City Hall Plaza designated for the Defend protestors and closed to Defund counter-protestors comprised a very limited area"); *NAACP Alamance County Branch v Peterman*, 2020 US Dist LEXIS 141860, at *21

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

(MDNC 2020, Civil Action No. 1:10CV613) ("The County defendants also point out that the space around the monument, which is the focus of the protests, is small and that conflict is likely to result from allowing protestors and counter-protestors access to the space between the monument and the courthouse. If that is so, and it appears to be, the County is free to impose reasonable time, place, and manner restrictions on protests in this small space").

37. Campus security and local police everywhere have shamefully abdicated this role, nowhere more visibly and violently than at the UCLA encampment, on April 30, 2024, when "counterprotesters attack[ed] students in the pro-Palestinian encampment for several hours, including beating them with sticks, using chemical sprays and launching fireworks as weapons" "with little or no police intervention."[11]

38. It is an egregious ontological error to assert a right to do something the police have a right to prevent you from doing. In this case, due to the membership of Arab, Muslim, and indeed Jewish protesters in a protected class, the police had not just a right, but a duty, to separate Plaintiffs from their targets, which was ignored, cf. *Mody v Hoboken*, 959 F2d 461, 466 (3d Cir 1992) ("We assume that discriminatory denial of police protection on the basis of race constitutes a

---

[11] Neil Bedi, Bora Erden, Marco Hernandez, Ishaan Jhaveri, Arijeta Lajka, Natalie Reneau, Helmuth Rosales and Aric Toler, "How Counterprotesters at U.C.L.A. Provoked Violence, Unchecked for Hours", The New York Times, May 3, 2024 https://www.nytimes.com/interactive/2024/05/03/us/ucla-protests-encampment-violence.html

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

violation of section 1983"); *Hawk v Perillo*, 642 F Supp 380, 384 (ND Ill 1985) ("[T]his court interprets plaintiffs complaint as alleging that the Police Defendants failed to act because plaintiffs are black. These allegations state a claim under Section 1983 for violations of the plaintiffs' Fourteenth Amendment right to equal protection").

39. The Court in its decision and order of January 20, 2026, stated that Mr. Weinberg had standing because "he actually changed his route through campus and deliberately avoided Royce Quad, an area that he previously traversed."[12] However, this assertion is inseparable from the claim that the reason he he could not traverse Royce was because he was Jewish. Plaintiff would not have Article III standing if the obstruction had been a wedding in a faith he did not share, or a fair of a different ethnicity whose noise and smells he disliked. Since Plaintiffs are in fact alleging a right to pass through Royce while filming protesters and shouting in their faces-- the reasons why they were in fact impeded-- this no more creates standing than an assertion of a right to drive down Fifth Avenue in a tank.

40. Given these realities-- that Plaintiffs knew perfectly well there were Jewish people in the  encampment, and that the gravamen of their complaint  is that they were deprived of a nonexistent right to provoke and troll anti-Zionists, including

---

[12] Counsel respectfully disagrees to the extent that Plaintiffs' fear of traversing Royce constituted "fears of hypothetical future harm that is not certainly impending", *Payne v Off. of the Commr. of Baseball,* 705 F App'x 654, 655 (9th Cir 2017).

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

Jews-- they lack Article III standing to bring this action, as they cannot show that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct . . . , and (3) that is likely to be redressed by a favorable judicial decision", *Perry v Newsom*, 18 F.4th 622, 630 (9th Cir 2021).

41.It is therefore respectfully requested that this Court order an evidentiary hearing on standing, as it has authority to do, *MAO-MSO Recovery II LLC v Mercury Gen.*, 2023 U.S. App. LEXIS 2936, at *11 (9th Cir Feb. 7, 2023, Nos. 21-56395, 21-56396) ("[h]earing on standing held July 2021"); *Tunic v Astorga*, 2025 US Dist LEXIS 172156, at *17 (CD Cal July 3, 2025, No. 2:25-cv-04695-MCS-MBK) ("The Court reserves the right to hold an evidentiary hearing after reviewing Plaintiff's forthcoming response, and to require Plaintiff's in-person attendance"); *Johnson v Kuma Kuma LLC*, 2022 US Dist LEXIS 218871, at *8 (ND Cal Dec. 5, 2022, No. 22-cv-01386-CRB) ("The Court requires more information before it can determine whether Johnson has Article III standing for his ADA claim, so it shall hold an evidentiary hearing on this topic").

c. THE COMPLAINT IS A SHOTGUN PLEADING

42.Many assertions of the Complaint are wholly irrelevant, improper under FRCP Rule 8, with 20/20 hindsight would have been fit topics for a motion to strike, and shout "shotgun pleading", for example, "In April 2025, Pennsylvania Governor Josh Shapiro was the victim of an arson attack on the first night of

20

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

Passover.... In May 2025, two staffers at the Israeli embassy in D.C. were murdered in cold blood outside the Capital Jewish Museum by a gunman who allegedly shouted 'Free Palestine' during the shooting....and in June 2025, an attacker motivated by hatred of 'Zionist[s]' threw two Molotov cocktails at a Jewish event calling attention to hostages held in Gaza, resulting in multiple serious injuries."

43.Shotgun pleadings are disfavored in the 9th Circuit (and everywhere), *Gibson v City of Portland*, 165 F.4th 1265, 1271 (9th Cir 2026) ("Although the complaint set forth detailed facts in 252 numbered paragraphs, in its causes of action, the complaint merely alleged the 'defendants' deprived them of various constitutional and statutory rights, leaving to Defendants, the district court, and us to decipher the details"); *Destfino v Reiswig*, 630 F3d 952, 958 (9th Cir 2011) ("The district court made clear in this order that plaintiffs must amend their 'shotgun pleading' to 'state[ ] clearly how each and every defendant is alleged to have violated plaintiffs' legal rights.' The second amended complaint was properly dismissed because it failed to do this, continuing to make 'everyone did everything' allegations"); *Ramirez-Fort v Regents of the Univ. of California*, 2026 US Dist LEXIS 76985, at *10 (CD Cal Mar. 31, 2026, No. 2:24-cv-09103-SRM-SSC) (Shotgun pleadings include "a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action").

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

44. Judge Goldberg said in dismissing an antisemitism lawsuit: "Plaintiffs' 111-page amended complaint sets out a wide variety of general allegations, complaints, historical and current events, and alleged antisemitic incidents that allegedly took place not just on Penn's campus, but elsewhere in the United States and the world.  It is unclear why Plaintiffs' counsel deemed it necessary to allege so many unrelated facts when doing so is directly contrary to federal pleading requirements", *Eyal Yakoby v Trustees of the Univ. of Pennsylvania*, 2025 US Dist LEXIS 103709, at *1-2 (ED Pa June 2, 2025, No. 23-4789).

45. The Complaint should be dismissed as an impermissible shotgun pleading.

d.  <u>The Complaint Against NFSJP Must Be Dismissed Under Rule 12(B)(1) and 12(B)(6)</u>

46. As is stated in Andrew Ross' affidavit submitted with this motion, there is no entity with the name "National Faculty and Staff for Justice in Palestine", and no physical address, governing board, or bank account. The web site is under the name "Faculty and Staff for Justice in Palestine Network" (https://www.fjp-network.org) and is maintained by an informal committee and functions as a mechanism by which the chapters stay aware of and in touch with each other, rather than as a separate, governing entity. Therefore, NFSJP is not an "unincorporated association" which can be sued. *California Clippers, Inc. v United States Soccer Football Asso.*, 314 F Supp 1057, 1068 (ND Cal 1970) ("Here, however, we have only the most informal and transitory of organizations....[I]t has

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

no charter, by-laws or articles, no office or place of business, no mailing address, no bank account, no assets or obligations, and has never transacted any business").

47. Also, the FAC's assertions against NFSJP fail to link it to any actions or participation in the encampment, just like AMP, which this Court dismissed from the action. "The complaint is entirely devoid of any specific factual allegations that AMP or anyone at AMP had any involvement with the UCLA encampment. Without more detailed factual allegations describing AMP's involvement in the alleged civil rights conspiracy, the Court cannot conclude that Plaintiffs have adequately stated a § 1985(3) claim against AMP. The Court grants AMP's motion."

48. The FAC's references to NFSJP are virtually all in lists such as the following: "SJP (through its national social media account, its regional SoCalSJP social media account, and its UCLA chapter's social media accounts), UC Divest (through its constituent organizations and UC Divest at UCLA), People's City Council, Doe, and FJP used electronic communications platforms including, on information and belief, Instagram, Twitter/X, BlueSky, and Google Docs as part of a coordinated effort to plan, execute, supply, reinforce, and 'defend' the encampment against 'Zionists and the police.'" (Paragraph 103.) No specific instance is ever given of such a use of social media by NFSJP, and the lists are hallmarks of a shotgun "everyone did everything" pleading, see part b. above.

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

49. The FAC refers to NFSJP 22 times. Other than in paragraphs describing it and asserting the Court's jurisdiction, NFSJP is only referred to in lists of defendants which provide no more FRCP Rule 8 specificity and notice than if the FAC had merely mentioned "defendants": see paragraphs 103, 104, 107, 109, 115, and 123. The sole exception is paragraph 110: "FJP members offered excused absences to students who joined the encampment, providing an incentive to participate in conduct that likely violated university policy". This, standing alone, does not support a cause of action; it does not even assert that NFSJP had any involvement, that the "members" did so in their capacity as NFSJP  members rather than as professors, or that there was any deviation from a policy which might offer excused absences in other circumstances as well.

50. This lack of specificity, and of failure to assert any specific actions in California by the national entity, also means that NFSJP lacked the minimum contacts needed for jurisdiction under Rule 12(b)(1), just as this Court determined that WESPAC did: "The complaint fails to raise an inference that WESPAC maintains sufficient contacts with California such that the Court can exercise specific personal jurisdiction over it. Plaintiffs do not allege that WESPAC, or any individual affiliated with WESPAC, was involved with the UCLA encampment."

## III.   CONCLUSION

51. The FAC should be dismissed for failure to state a cause of action,

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

because Plaintiffs lack standing, and as an impermissible shotgun complaint; and as against NFSJP, because it is not an "unincorporated association", and lacked contacts to the District.

Executed on the 15th day of June 2026.

/S/ *Jonathan Wallace*
Jonathan Wallace
Attorney for NFSJP

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

**Declaration of Andrew Ross**

I, Andrew Ross, declare:

1. I am a tenured professor at a private university.

2. At all relevant times, I was a volunteer member of the ad hoc committee that maintains the NFSJP website and fields queries, and can attest that NFSJP is not an organized entity. It is a decentralized national network of local FSJP chapters, set up for the purpose of mutual aid.

3. The network exists to facilitate communication between local chapters and to support occasional, virtual meetings in which chapter representatives share information about their campuses.

4. NFSJP has a website, but it does not have a physical address, bank account or governing board.

5. NFSJP has an ad hoc committee, with rotating membership, that is responsible for maintaining the website, putting chapter representatives in touch with one another, and for re-posting messages from local chapters through its social media account.

6. The committee has no central authority, cannot speak on behalf of the network, and does not formulate policy for the network of chapters. Queries or communications sent through the website are sent to an email address and are fielded and handled by the committee. These may be requests to join the

1

network or to co-sponsor a local campus event. However, because it has no central authority, NFSJP does not co-sponsor local events.

7. NFSJP has its own Principles of Unity, but individual chapters adopt their own and make decisions on an entirely autonomous basis. NFSJP has no standing to intervene in, or influence, the processes and activities of local chapters.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 21st day of May 2026, in New York, N.Y.


`                   `                   _____
                              ` Andrew Ross

2

DECLARATION OF ANDREW ROSS

# DECLARATION OF JONATHAN WALLACE

I, Jonathan Wallace, declare:

1. I am pro hac vice counsel for defendant National Faculty and Staff for Justice in Palestine ("NFSJP"), and give this affidavit in support of their motion to dismiss the First Amended Complaint ("FAC").

2. I am over the age of eighteen and under no mental disability or impairment. I have personal knowledge of the following facts and, if called as a witness, I would competently testify to them.

3. In a nation of approximately 1.4 million lawyers, without false modesty, I may be the only one working full time for free, defending faculty, students, schoolteachers, doctors and others who are being fired, expelled, suspended, investigated, and doxed for pro-Palestinian expression.

4. I am proudly Jewish, and was bar mitzvahed at temple Beth Elohim in Brooklyn in 1967.

5. During my 45-year career, I was a commercial litigator based in New York City, working solo and as a partner in two and four person firms.

6. I developed a significant pro bono practice as a sideline, in recent years defending protesters arrested at demonstrations in New York and at Standing Rock, faculty being sued and students facing conduct proceedings for their political speech, and litigating civil First Amendment claims.

7.  After October 7, 2023, when I had just retired from the paid practice, people began sending me clients. I have now counseled about 2,000 students and 400 faculty.

8.  I have appeared in approximately fifty cases, in New York, New Jersey, Massachusetts, Georgia, Tennessee, Florida, Texas and California.

9.  I know this is already far beyond the comfortable case load for a single litigator, but I take cases as the attorney of last resort, for many clients who would be unable to obtain counsel if not for me.

10. I work from home, and have no secretary, paralegal or associate-- or personal wealth adequate to pay filing fees, court reporters, for e-discovery software, or for travel.

11. Just last week, I bought nonrefundable tickets for travel to San Francisco and Los Angeles to argue motions (the latter for our case). Both courts then canceled argument after I bought my flights.

12. Few of my clients, who include impecunious college students, bootstrap organizations, and unemployed people, have the means to cover these expenses either.

13. I am speaking up now to offer the Court some historical context which would

DECLARATION OF JONATHAN WALLACE

support an exercise of discretion to order an evidentiary hearing on Plaintiff's standing. This Court has discretion to take the historical context of important cases into account and should do so in this instance.

14. This is the eighth great free speech emergency in American history, 1. Alien and Sedition Acts, 1800-1804; 2. Civil War, 1861-1865; 3. World War I era, 1918-1923; 4. World War II, 1941-1945;5.  McCarthy era, 1948-1959; 6. 1960's, 1964-1972; 7. 9/11, 2001-2005; 8. today, 2023-.

15. There are a number of entities with the project of serially suing pro-Palestinian organizations and individuals, apparently to put them out of business and assure they never criticize Israel again. These include the Brandeis Center, co-counsel in this case; the anti-Defamation League; and Lawfare. From where I stand, the goal may not be to win cases, but to "pile on" so definitively that activists are bankrupted or frightened into silence.

16. A search on "Zionism" on Brandeis Center's web site confirms that the organization resolutely ignores the existence of the massive federal case-law on the issue: titles of recent articles include "Anti-Zionism as National Origin Discrimination", "Wikipedia blasted for 'wildly inaccurate' change to entry on Zionism: 'Downright antisemitic'"; and "Anti-Zionism Getting the Poor Treatment it Deserves in Campus Anti-Semitism Cases."[1]  The Brandeis Center does not ever

---

[1] https://brandeiscenter.com/?s=zionism

3

DECLARATION OF JONATHAN WALLACE

seem to have updated this 2024 article, to say, perhaps that Zionism is getting "poor treatment" in antisemitism cases. In a June 2025 statement, Brandeis Center says: "[M]odern anti-Semitism is often masked as anti-Zionism."[2]

17.In another release, Jewish Voice for Peace is characterized as a "pro-Hamas organization[]."[3]

18.In December 2023, Brandeis Center president Alyza Lewin said JVP is "looking to erase and eradicate the one and only Jewish homeland."[4]

19.JVP is also described as "morally tendentious" and "malignant."[5]

20.There are 73 occurrences of "Jewish Voice for Peace" on Brandeis' web site. Not only is Brandeis highly aware of and vigilant towards the group, they reveal that Brandeis keeps track of where JVP is located-- for example, blaming them for the occupation of Hamilton Hall at Columbia.[6]

21.This may add up to a pyschological explanation of why Plaintiffs failed to inform the Court there were in fact large numbers of Jewish people in the encampment, but it provides no justification under Rules 11 or 12(b)(1) to claim the encampment was a "Jew exclusion zone".

---

[2] https://brandeiscenter.com/brandeis-center-files-amicus-brief-urging-federal-court-to-disregard-challenge-to-key-term-in-harvards-settlement-agreement/
[3] https://brandeiscenter.com/the-brandeis-brief-may-2025/
[4] https://brandeiscenter.com/on-the-last-day-of-the-global-conference-for-israel-in-denver-protestors-and-attendees-say-they-feel-unsafe-cbs-colorado/
[5] https://brandeiscenter.com/11423-2/
[6] https://brandeiscenter.com/reminiscent-of-the-kkk-columbia-janitors-sue-protesters-who-took-over-hamilton-hall-free-press/

4

DECLARATION OF JONATHAN WALLACE

22. Of course, per the Establishment Clause, this Court may not follow Plaintiffs' invitation in deciding who is Jewish and who gets voted off the island-- nor privilege on group of Jewish people over others.

23. The Anti-Defamation League states on its web-site: "Along with our colleagues at The Louis D. Brandeis Center for Human Rights Under Law (Brandeis Center), ADL has turned to the courts to create massive disincentives for those engaging in antisemitism, hate or extremism."[7] (emphasis added). Brandeis is co-counsel to the Plaintiffs.

24. "Massive disincentives" do not require victory on the merits; for defendants like NSJP, which has been sued in similar cases in New York, Florida, Illinois, Virginia and Nevada (several now dismissed) "massive disincentives" consist in being serially sued, having to undergo discovery and public shaming and exposure, expenses they cannot afford for discovery, travel and the like, and, in the present case, the risk that pro bono defense counsel will be devastated, and likely eliminated from the action, by the levying of sanctions.

25. If we reach a historical watershed moment where organizations like NSJP and NFSJP cannot find counsel any more, they will be forced to default, as they cannot represent themselves pro bono.

---

[7] https://support.adl.org/event/2025-oc-justice-you-shall-pursue-fighting-antisemitism-through-litigation/e687828#:~:text=Along%20with%20our%20colleagues%20at,the%20Merage%20JCC%20in%20Irvine

5

DECLARATION OF JONATHAN WALLACE

26. I am part of a five person team which represents NSJP whenever it is sued. So far, members of our team have appeared in seven cases in addition to this one, in New York, Virginia, Florida, Illinois and Nevada. In these cases, NSJP has been accused of violations of the Alien Tort statute; the Anti-Terrorism Act; 42 USC 1985; of committing the torts of defamation and false imprisonment; of conspiracy and assault.

27. Speaking bluntly, Your Honor, the instant case is an outlier, as none of the prior cases has yet survived a motion to dismiss.

28. The amount of effort our very small pro bono team (all of whom except me have day jobs) must put in to navigate through the decision on a 12(b) motion, and the ensuing appeal, is already immense. We are still scrambling to figure out how to manage discovery, as this is the only case which has gotten to that point so far.

29. In that context, what happened to Mark Kleiman, falling asleep from sheer exhaustion and stress and missing a court appearance, was a there-but-for-the-grace-of-god moment for us all.

30. Most plaintiffs' counsel appear quite vigilant for opportunities to make sanctions motions, exploiting opportunities created by our bandwidth issues, lack of people resources, poverty and, in some cases, our inexperience.

31. There are three ways we have witnessed our adversaries going after the lawyers

6

DECLARATION OF JONATHAN WALLACE

in our space. The first is getting us fired from our jobs. Since most of our team is self employed, we are not vulnerable to this.

32. The second is by doxing and attempting to shame us, frequently by accusing us, including Jewish people, of antisemitism. Our team, being mainly older people, also has some immunity or at least resistance to that.

33. Sanctions alone are devastating and even an existential threat to our security.

34. It is my impression, as I attempt to navigate the discovery issues in this case which I just lately volunteered for, that opposing counsel is driving towards a motion for discovery sanctions at the first opening.

35. If Your Honor were on the fence about ordering an evidentiary hearing on standing, a strong equitable basis for deciding to do it would be the maxed out condition of defense counsel, as a decision there was no standing would relieve us of the need to continue fronting the problems of bandwidth and resources we are so dangerously facing in this case.

36. A decision not to grant the motion to dismiss, made without a hearing, would kick the can down the road, finding that Plaintiffs' assertion of a "Jew exclusionary zone", though false, was adequately pled for Twombly/Iqbal purposes, and forcing us to get broker and more exhausted, and more vulnerable to sanctions, while waiting to raise the same issues again on a Rule 56 motion or at trial (if we are still here).

7

DECLARATION OF JONATHAN WALLACE

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 1st day of June 2026, in Amagansett, New York.

/s/ Jonathan Wallace
Jonathan Wallace
PO #728
Amagansett NY 11930
917-359-6234
jonathan.wallace80@gmail.com
Counsel for Defendant NFSJP

8

DECLARATION OF JONATHAN WALLACE

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, Cynthia Carter and Christopher Lopez, certifies that this brief contains 5,432 words, which complies with the word limit of L.R. 11-6.1.

Date: June 5, 2026

/s/ Jonathan Wallace
Jonathan Wallace
PO #728
Amagansett NY 11930
917-359-6234
jonathan.wallace80@gmail.com
Counsel for Defendant NFSJP

1
DECLARATION OF JONATHAN WALLACE

## DECLARATION REGARDING L.R. 7-3 COMPLIANCE

The undersigned, counsel of record for Defendants, National Faculty and Staff for Justice in Palestine, pursuant to L.R. 7-3, declares under penalty of perjury that before bringing the present motion, there was a conference that took place with Plaintiffs on May 8, 2026.  Plaintiffs' position was they would oppose.


Date: 6/15/2026

/s/ Jonathan Wallace
Jonathan Wallace
PO #728
Amagansett NY 11930
917-359-6234
jonathan.wallace80@gmail.com
Counsel for Defendant NFSJP

2

DECLARATION OF JONATHAN WALLACE

**PROOF OF SERVICE**
**(1013A, 2015.5 C.C.P.)**
STATE OF CALIFORNIA, COUNTY OF SAN BERNARDINO

I am employed in the County of Los Angeles, State of California, I am over the age of eighteen years and not a party to the within entitled action; my business address is 1026 W Foothill Blvd, Upland, CA 91786.

On **June 15, 2026**, I served the foregoing DEFENDANT NATIONAL STUDENTS FOR JUSTICE IN PALESTINE'S OPPOSITION TO PLAINTIFFS' MOTION FOR AN AWARD OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES on the interested parties in this action:

William J. Brown, Jr. (SBN 192950)
Kyle J. Berry (SBN 355393)
bill@brownwegner.com
kberry@brownwegner.com

Richard A. Rosen (pro hac vice)
Omer Wiczyk (pro hac vice)
rrosen@brandeiscenter.com
owiczyk@brandeiscenter.com

Mark Kleiman
mark@krlaw.us

Jonathan Wallace
jonathan.wallace80@gmail.com

Thomas R. McCarthy (pro hac vice)
Zachary P. Grouev (pro hac vice)
Julius Kairey (pro hac vice)
tom@consovoymccarthy.com
zach@consovoymccarthy.com
julius@consovoymccarthy.com
twilson@consovoymccarthy.com

Dan Stormer
Rebecca Brown
dstormer@hadsellstormer.com
rbrown@hadsellstormer.com

By Mail [   ]

I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Whittier, California.

By Personal Service [   ]

I caused such envelope to be delivered by hand to the office of the addressee(s).

By Email [ X ]

I caused such envelope to be delivered by electronic service to the office of the addressee(s).

By Facsimile [   ]

I caused such document to be transmitted via facsimile to the above-referenced telephone number(s).

State Service [ X ]

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Federal Service [   ]

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____
Ramsey Judah, Attorney

1

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW WEINBERG, et al.,<br><br>Plaintiffs,<br><br>    vs.<br><br>NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, et al.,<br><br>Defendants. | Case No. 2:25-cv-03714 MCS (JCx)<br><br>NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Date:  July 20, 2026<br>Time: 9:00 a.m.<br>Ctrm: 7C<br><br>Complaint Filed:  April 25, 2025 |

**ORDER OF THE HONORABLE JUDGE**

Upon consideration of the Respondent Counsel's Motion, it is HEREBY ORDERED that the Motion be ☐ **GRANTED** ☐ **DENIED**.

Date: _____          _____
                                                                      Honorable Judge Name

                                                                      _____
                                                                      Honorable Judge Signature

Certificate of Service

This document was served by ☐ Mail ☐ Personal Service
To: ☐ Defendant ☐ Defendant's Attorney/Representative

Date: _____          By: _____

2

NOTICE OF MOTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES