**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MATTHEW WEINBERG, ET AL.,

Plaintiffs,

v.

NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, ET AL.,

Defendants.

Case No. 2:25-cv-03714-MCS-AJR

**MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL PRODUCTION FROM PEOPLE'S CITY COUNCIL RE: TEN DOCUMENTS (DKT. 166)**

## I.

## INTRODUCTION

The operative First Amended Complaint filed by Plaintiffs Matthew Weinberg, Rabbi David Gurevich, Nir Hoftman, and Eli Tsives (collectively "Plaintiffs") asserts civil rights claims under 42 U.S.C. § 1985(3) against Defendants National Students for Justice in Palestine, John Doe #1, President of UCLA SJP, AJP Educational Foundation, Inc., d/b/a American Muslims for Palestine, Faculty for Justice in Palestine Network, UC Divest Coalition, WESPAC Foundation, and People's City Council ("PCC"), as well as claims under 42 U.S.C. § 1986 against Defendants Doe #1, Osama Abuirshaid, and Hatem Bazian. (Dkt.

54.) The First Amended Complaint broadly alleges an antisemitic conspiracy to create and maintain an encampment on the campus of the University of California, Los Angeles ("UCLA") from April 25, 2024 through May 2, 2024 for the purpose of excluding Jewish students, faculty, and staff from public spaces using violence and threats of violence. (Id. at 3-12.)

Currently before the Court is Plaintiffs' Motion to Compel Production from PCC re: Ten Documents (the "Motion to Compel") filed on May 22, 2026. (Dkt. 166.) On June 5, 2026, PCC filed an Opposition to the Motion to Compel (the "Opposition"). (Dkt. 174.) On June 9, 2026, PCC filed a Corrected Declaration of Ricci Sergienko and Exhibits in Support of the Opposition (the "Sergienko Declaration"). (Dkt. 178.) The Court previously advised that it would take the matter under submission without hearing or a reply. (Dkt. 156 at 1); see Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion to Compel. (Dkt. 166.)

## II.

## THE DISCOVERY AT ISSUE

Plaintiffs seek to compel the production of documents by PCC that are responsive to Plaintiffs' document requests, which PCC has either withheld or produced with redactions. (Dkt. 166 at 4.) PCC objected to production on First Amendment and privacy grounds. (Id.) To provide context to the ongoing dispute about application of the First Amendment privilege and privacy objections, both sides picked five exemplar documents for the Court to address. (Id. at 4-5.) PCC also provided the documents to the Court unredacted for *in camera* review to the extent necessary for the Court's resolution of the Motion. The documents identified by PCC are:

- **PCC854:** Instagram direct messages between PCC and a third party,

which were produced with redactions. (Dkt. 174-1 at 2, 10.) The identity of the third party and communications regarding political organizing strategy are redacted. (Dkt. 174 at 2.) The communications relate to a post by PCC about a new encampment launched at UCLA:




(Dkt. 174-1 at 10.)

- **PCC1182-83:** Instagram direct messages between PCC and a third party, which were produced with redactions. (Dkt. 174-1 at 2, 12-13.) The identity of the third party is redacted. (Dkt. 174 at 2.) The communications are all from PCC and none of them are redacted. (Dkt. 174-1 at 12-13.) The communications relate to several posts about a new encampment launched at UCLA:




(Id. at 13.)

- **PCC1370-73:** Instagram direct messages between PCC and a third party, which were produced with redactions. (Dkt. 174-1 at 3, 17-20.) The identity of the third party, communications regarding political organizing strategy, and the third party's personal political beliefs and

activity are redacted. (Dkt. 174 at 2.) The communications relate to several posts about a new encampment launched at UCLA:




(Dkt. 174-1 at 20.)

- **PRIVILEGE LOG #230:** Twitter direct messages between PCC and a third party, which was withheld. (Dkt. 166-1 at 269-70.) These messages contain the identity of the third party and communications regarding the third party's personal political opinions, political activity, and political associations, as well as political organizing. (Dkt. 174 at 2-3.)
- **PRIVILEGE LOG #238:** Instagram direct messages between PCC and a third party, which was withheld. (Dkt. 166-1 at 275). These messages contain the identity of the third party and communications regarding the third party's personal political opinions, financial contributions to political causes, and political associations. (Dkt. 174 at 3.)

The documents identified by Plaintiffs are:

- **PCC851-53:** Instagram direct messages between PCC and a third party, which were produced with redactions. (Dkt. 174-1 at 2, 6-8.) The identity of the third party and communications regarding political organizing strategy, PCC's political associations, and the third party's political associations and political activity are redacted. (Dkt. 174 at 2.) The communications are with a UCLA student who was at the UCLA encampment for 6 hours on April 25, 2024:




PCC 000851

(Dkt. 174-1 at 6.)

- **PCC1310:** Instagram direct messages between PCC and a third party, which were produced with redactions. (Dkt. 174-1 at 2-3, 15.) The identity of the third party and communications regarding the third party's political opinions and political activity are redacted. (Dkt. 174 at 2.) The communications relate to a post by PCC about a new encampment launched at UCLA:




(Dkt. 174-1 at 15.)

- **PCC1426:** Instagram direct messages between PCC and a third party, which were produced with redactions. (Dkt. 174-1 at 3, 22.) The identity of the third party is redacted and communications regarding the third party's political opinions, political associations, and political activity are redacted. (Dkt. 174 at 2.) The communications relate to PCC's post of a statement from students at one of the UCLA encampments:




(Dkt. 174-1 at 22.)

- **PCC1450-52:** Emails between PCC and a third party, which were produced with redactions. (Dkt. 174-1 at 3, 24-26.) The identities of the third parties and their contact information are redacted. (Dkt. 174 at 2.) None of the content in the emails is redacted. (Dkt. 174-1 at 24-26.)
- **PCC1482-1504:** Emails between PCC and a third party, which were produced with redactions. (Dkt. 174-1 at 3, 28-50). The identities of the third parties and their contact information are redacted. (Dkt. 174 at 2.) The emails contain photos from one of the UCLA encampments. (Dkt. 174-1 at 28-50.) None of the content in the emails is redacted. (<u>Id.</u>) The individual sending the photos to PCC is the only information redacted. (<u>Id.</u> at 28, 50.)

## III.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery in federal cases and provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Federal Rule of Evidence 401 provides that evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Relevance under Rule 26(b)(1) is defined broadly. See, e.g., Snipes v. United States, 334 F.R.D. 548, 550 (N.D. Cal. 2020); V5 Techs. v. Switch, Ltd., 334 F.R.D. 306, 309 (D. Nev. 2019) (noting that relevance for discovery purposes remains broad even after the 2015 amendments of the Federal Rules of Civil Procedure), aff'd sub nom., V5 Techs., LLC v. Switch, LTD., 2020 WL 1042515 (D. Nev. Mar. 3, 2020). In addition to relevance, Rule 26(b)(1) requires that discovery be proportional to the needs of the case. Proportionality is determined by a consideration of the following factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Proc. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id.

Under Rule 34, a party may serve on any other party a request for production of documents, electronically stored information, or tangible things within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). For each request, the response must either state that the responding party will produce copies of documents or electronically stored information as requested or state with specificity the grounds for objecting to the request, including the reasons. See Fed. R. Civ. P. 34(b)(2)(B). "An objection must state whether any responsive materials are being withheld on the basis of that

objection." Fed. R. Civ. P. 34(b)(2)(C). An objection to only part of a request must specify the part that is being objected to and the part where the responding party will comply. See id.

Where a party fails to comply with discovery requests, the requesting party may move to compel discovery. Fed. R. Civ. P. 37(a). "Upon a motion to compel discovery, the movant has the initial burden of demonstrating relevance." Nguyen v. Lotus by Johnny Dung Inc., 2019 WL 3064479, at *2 (C.D. Cal. June 5, 2019) (internal quotation marks omitted). "Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." Garces v. Pickett, 2021 WL 978540, at *2 (E.D. Cal. Mar. 16, 2021). "The opposing party is required to carry a heavy burden of showing why discovery was denied." Id. (internal quotation marks omitted). Specifically, the party opposing discovery must show that the requested discovery is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive, the party seeking discovery has had ample opportunity to obtain the information by discovery in the action, or the proposed discovery is outside the scope permitted by Rule 26(b)(1). See Fed. R. Civ. P. 26(b)(2)(C). The opposing party must specifically detail the reason why the request is improper. See Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." (internal quotation marks omitted)).

If a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). However, the court must not order this payment if the movant filed the motion before attempting in good faith to obtain agreement from the opposing party

without court action, the opposing party's position was substantially justified, or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii). By contrast, where a motion to compel is denied, the court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B). However, "the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust." Id. Finally, if a motion to compel is granted in part and denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses of the motion." Fed. R. Civ. P. 37(a)(5)(C).

## IV.
## DISCUSSION

As set forth below, the Court concludes that PCC has established a *prima facie* case for First Amendment protection. Therefore, the Court goes on to balance the burdens imposed on First Amendment rights against Plaintiffs' interest in disclosure. Based on this balancing, the Court ultimately concludes that Plaintiffs' interest in disclosure outweighs the burden on First Amendment rights as to some of the redactions.

### A. PCC Has Established A *Prima Facie* Case For First Amendment Protection.

PCC primarily relies on First Amendment privilege to support its redactions and the documents withheld from production.[1] (Dkt. 174 at 2-10.) The "First

[1] PCC also relies on the right to privacy, (Dkt. 174 at 10-11), but the Court concludes that it is not necessary to separately address the right to privacy because the First Amendment privilege provides greater protection for the information at (cont'd . . .)

Amendment protects political association as well as political expression, and the freedom to associate with others for the common advancement of political beliefs and ideas is protected by the First and Fourteenth Amendments." Perry v. Schwarzenegger, 591 F.3d 1126, 1139 (9th Cir. 2010) (internal quotation marks, citation, and ellipses omitted). "[T]he government must justify its actions not only when it imposes direct limitations on associational rights, but also when governmental action would have the practical effect of discouraging the exercise of constitutionally protected political rights. Such actions have a chilling effect on, and therefore infringe, the exercise of fundamental rights. Accordingly, they must survive exacting scrutiny." Id. (internal quotation marks and citation omitted). "Disclosures of political affiliations and activities that have a deterrent effect on the exercise of First Amendment rights are therefore subject to this same exacting scrutiny. A party who objects to a discovery request as an infringement of the party's First Amendment rights is in essence asserting a First Amendment privilege." Id. at 1139-40 (internal quotation marks and citation omitted).

The Ninth Circuit "sets forth a two-part test for analyzing claims of first amendment privilege in a discovery dispute. First, the party asserting the privilege must make a *prima facie* showing of arguable [F]irst [A]mendment infringement. This *prima facie* showing requires a party to demonstrate that enforcement of the discovery requests will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or chilling of, the members' associational rights. A *prima facie* showing turns not on the type of information sought, but on whether disclosure of the information will have a deterrent effect on the exercise of protected activities." Chevron Corp. v. Donziger, 2013 WL 1402727, at *2 (N.D. Cal. Apr. 5,

---

issue than any state or federal right to privacy. Therefore, any analysis of the state or federal right to privacy would be redundant and would not change the Court's ruling on any redaction.

2013) (internal quotation marks, citations, and brackets omitted, italics added); accord In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig., 2025 WL 2405489, at *4 (N.D. Cal. Aug. 19, 2025), motion for relief from judgment denied, 2025 WL 4076605 (N.D. Cal. Dec. 9, 2025).

If the party asserting the privilege makes a *prima facie* showing of arguable First Amendment infringement, then the Ninth Circuit requires that courts "balance the burdens imposed on individuals and associations against the significance of the interest in disclosure, to determine whether the interest in disclosure outweighs the harm." Perry, 591 F.3d at 1140 (internal quotation marks, citation, and ellipses omitted). The Ninth Circuit has provided the following guidance on evaluating this balance:

> "This balancing may take into account, for example, the importance of the litigation; the centrality of the information sought to the issues in the case; the existence of less intrusive means of obtaining the information; and the substantiality of the First Amendment interests at stake. Importantly, the party seeking the discovery must show that the information sought is highly relevant to the claims or defenses in the litigation—a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1). The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable."

Id. at 1140-41 (internal quotation marks and citations omitted). In other words, "the second step of the analysis is meant to make discovery that impacts First Amendment associational rights available only after careful consideration of the need for such discovery, but not necessarily to preclude it. Id. at 1140.

Here, PCC has provided the declaration of Ricci Sergienko, one of the five

members of PCC,[2] who declares that "[d]isclosure of PCC's communications regarding political organizing strategy will several impact and chill PCC's ability and willingness to engage in political organizing in the future." (Dkt. 178 at 2.) The declaration explains that "PCC has a practice of always asking permission before publicly identifying someone as a supported or follower of PCC or publicly identifying a supporter or follower's political activity or political beliefs, particularly around the political issues of Palestin[e] and Israel." (Id.) "This is because PCC and its members have been subjected to doxing and harassment, including be elected officials, because of PCC's political advocacy work and unpopular political opinions." (Id.) "Always asking permission before publicly identifying someone as a supporter or follower of PCC is also PCC's practice because PCC has observed the violent and repressive attacks on people who publicly express support for Palestine and criticism of Israel's government." (Id. at 2-3.) "Accordingly, PCC has taken the safety of its supporters and political allies very seriously while attempting to organize and support others' organizing efforts." (Id. at 3.)

The Sergienko Declaration further states that "[m]ultiple people have asked to confirm that their conversations with PCC will be confidential before sharing sensitive or personal information or have requested that PCC does not publicly share the communications or publicly identify them." (Id.) Mr. Sergienko states that it was his "understanding that PCC and individuals/organizations who communicated with one another regarding the UCLA encampment, including regarding personal safety concerns, sensitive political beliefs, and news gathering for reporting, did so with the understanding and expectation that such communications were private." (Id.) If "[t]he communications that are the subject of Plaintiffs' motion to compel

[2] PCC has also provided the declaration of Phillip Kim, another member of PCC. (Dkt. 174-3.) Mr. Kim's declaration is similar to and therefore duplicative of Mr. Sergienko's declaration.

are disclosed, PCC would cease communicating regarding and engaging in any political organizing on the topic of Palestine and Israel." (Id. at 4.) "This would happen even if the communications were disclosed only to Plaintiffs and their attorneys." (Id.) "Any disclosure of PCC's communications regarding political organizing strategy or regarding third parties' privately held political beliefs, political activity, political associations, and financial contributions to political causes, as well as disclosure of the identities of people and organizations PCC has confidentially communicated with, would chill PCC's operations, political activity, and good will amongst the community." (Id.)

Mr. Sergienko further states that he is "informed, and PCC reported, that at least one of the Plaintiffs, Eli Tsives, has repeatedly engaged in violence against pro-Palestinian advocates." (Id.) "Tsives participated in the violent mob attack on the encampment on April 30, 2024, brought mace or pepper spray to the encampment, attempted to instigate violence at the encampment, and engaged in violence against a pro-Palestine demonstrator at a screening about the student encampments at UCLA on April 30, 2025." (Id.) Therefore, Mr. Sergienko declares that he is "afraid that revealing the identifies of people and organizations that PCC communicated with regarding the encampment, their pro-Palestine political beliefs and activity, and PCC's political organizing strategy to Tsives will lead Tsives to engage in violence or harassment of those individuals and organizations." (Id.) "If these communications are disclosed, PCC will stop communicating with people and organizations regarding Palestine and Israel for fear future communications may be disclosed and the recipient will be subjected to violence or harassment." (Id.)

The Court concludes that the Sergienko Declaration satisfies the two-part framework to establish a *prima facie* claim of First Amendment privilege. See Perry, 591 F.3d at 1140. Specifically, the Court concludes that PCC has made a *prima facie* showing of First Amendment infringement based on the disclosure of

PCC's confidential communications about political organizing strategy. Indeed, the Ninth Circuit has recognized that "disclosure of internal campaign information can have a deterrent effect on the free flow of information within campaigns." Perry, 591 F.3d at 1162. "Implicit in the right to associate with others to advance one's shared political beliefs is the right to exchange ideas and formulate strategy and messages, and to do so in private. Compelling disclosure of internal campaign communications can chill the exercise of these rights." Id. (footnote omitted).

The Court further concludes that PCC has made a *prima facie* showing of First Amendment infringement based on the disclosure of the identities of third parties who communicated confidentially with PCC. Indeed, the Supreme Court has recognized "that compelled disclosure of affiliation with groups engaged in advocacy may constitute a[n] effective a restraint on freedom of association." Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson, 357 U.S. 449, 462 (1958). Moreover, the First Amendment's protection for association "extends not only to the organization itself, but also to its staff, members, contributors and others who affiliated with it." Int'l Union v. Nat'l Right to Work Legal Defense and Ed. Found., Inc., 590 F.2d 1139, 1147 (D.C. Cir. 1978).

Finally, the Court concludes that PCC has made a *prima facie* showing of First Amendment infringement based on the disclosure of third parties' personal political beliefs and activity, financial contributions to political causes, and political associations. Indeed, the Supreme Court has recognized that "compelled disclosure of political associations and beliefs . . . can seriously infringe on privacy of association and belief guaranteed by the First Amendment." Brown v. Socialist Workers '74 Campaign Comm. (Ohio), 459 U.S. 87, 91 (1982). The Supreme Court has also recognized that the purpose of the First Amendment's protection for anonymous speech is "to protect unpopular individuals from retaliation—and their ideas from suppression—at the hands of an intolerant society." McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 357 (1995).

Because PCC has made a *prima facie* showing of First Amendment infringement, the Court must next "balance the burdens imposed on individuals and associations against the significance of the interest in disclosure, to determine whether the interest in disclosure outweighs the harm." Perry, 591 F.3d at 1140 (internal quotation marks, citation, and ellipses omitted). As set forth below, the Court concludes that Plaintiffs' interest in disclosure outweighs the burden on First Amendment rights with regard to some of the redactions.

**B. Plaintiffs' Interest In Disclosure Outweighs The Burden On First Amendment Rights As To Some Of The Redactions.**

As set forth above, the parties each picked five exemplar documents for the Court to address in the Motion. (Dkt. 166 at 4-5.) The Court will address each document below and consider the balance of interests between the burden on First Amendment rights from disclosure and Plaintiffs' need for the information sought. See Perry, 591 F.3d at 1140.

**1. PCC854:** This is a screen shot of Instagram direct messages between PCC and a third party, which were produced with redactions. (Dkt. 174-1 at 2, 10.) The identity of the third party and communications regarding political organizing strategy are redacted. (Dkt. 174 at 2.) The communications relate to a post by PCC about a new encampment launched at UCLA. (Dkt. 174-1 at 10.)

Because the communications are directly related to the subject matter of the lawsuit, the Court concludes that the communications are highly relevant to the claims and defenses in the action. Indeed, the operative First Amended Complaint alleges that PCC conspired with the other defendants and "a laundry-list of third parties" "to create and maintain (or to enable the creation and maintenance of) the UCLA encampment and its attempted successors knowing that they were based on class-based animus; that their purpose and effect was to exclude Jewish students, faculty, and staff from public spaces using violence and the threat of violence; and that they were violently hostile to law-enforcement efforts to restore order and

protect the rights of Jews." (Dkt. 54 at 11-12.) Thus, the actions taken by PCC and its coordination with third parties related to the UCLA encampment are highly relevant to both Plaintiffs' claims and PCC's defenses in this action. Therefore, both the content of PCC's communications with the third party in this screen shot and the identity of the third party are also highly relevant. The content of PCC's communications is relevant because it reflects PCC's conduct with regard to the UCLA encampment. The identity of the third party is relevant as a witness to PCC's conduct.

**2. PCC1182-83:** Instagram direct messages between PCC and a third party, which were produced with redactions. (Dkt. 174-1 at 2, 12-13.) The identity of the third party is redacted, but the messages are not. (Dkt. 174 at 2.) The communications are all from PCC and none of them are redacted. (Dkt. 174-1 at 12-13.) The communications relate to several posts about a new encampment launched at UCLA. (Id. at 13.)

Because the third party in this screen shot did not respond to PCC's messages, and all of PCC's messages were produced without redactions, the identity of the third party is not relevant as a witness. It is unclear from the isolated screen shot why the third party is included in the screen shot at all. Assuming there are other screen shots that may provide context, the identity of the third party would only be relevant if there were some reason to believe based on other communications that the third party engaged in conduct related to the UCLA encampment or was a witness to PCC's conduct.

**3. PCC1370-73:** Instagram direct messages between PCC and a third party, which were produced with redactions. (Dkt. 174-1 at 3, 17-20.) The identity of the third party, communications regarding political organizing strategy, and the third party's personal political beliefs and activity are redacted. (Dkt. 174 at 2.) The communications relate to several posts about a new encampment launched at UCLA. (Dkt. 174-1 at 20.)

Because the communications are directly related to the subject matter of the lawsuit, the Court concludes that the communications are highly relevant to the claims and defenses in the action. (See Dkt. 54 at 11-12.) Thus, the Court concludes that both the content of communications in this screen shot, as well as the identity of the third party are also highly relevant. The content of the communications is relevant because it reflects the conduct of PCC with regard to the UCLA encampment. The identity of the third party is relevant as a witness to PCC's conduct.

**4. PRIVILEGE LOG #230:** Twitter direct messages between PCC and a third party, which was withheld. (Dkt. 166-1 at 269-70.) These messages contain the identity of the third party and communications regarding the third party's personal political opinions, political activity, and political associations, as well as political organizing. (Dkt. 174 at 2-3.)

Having reviewed this document *in camera*, the Court concludes that the direct messages have only marginal relevance to the claims or defenses in the case. The message is from a medical professional who expresses their political support to PCC and offers to provide medical attention to any student at the UCLA encampment in need. PCC responds by asking for the medical professional's license number, but never actually asks the medical professional for assistance. There is no indication that the medical professional ever actually went to the UCLA encampment or provided assistance. Thus, the content of the communications has only marginal relevance and the identity of the third-party medical professional does not appear to be relevant at all.

**5. PRIVILEGE LOG #238**: Instagram direct messages between PCC and a third party, which was withheld. (Dkt. 166-1 at 275). PCC asserts that these messages contain the identity of the third party and communications regarding the third party's personal political opinions, financial contributions to political causes, and political associations. (Dkt. 174 at 3.)

Having reviewed this document *in camera*, the Court concludes that the direct messages have only marginal relevance to the claims or defenses in the case. The message is from someone who wants to donate to students at UCLA. PCC responds by providing the Venmo QR Code to donate to SJP UCLA, which PCC has previously disclosed doing. The identity of the third-party donor is not relevant at all.

**6. PCC851-53:** Instagram direct messages between PCC and a third party, which were produced with redactions. (Dkt. 174-1 at 2, 6-8.) The identity of the third party and communications regarding political organizing strategy, PCC's political associations, and the third party's political associations and political activity are redacted. (Dkt. 174 at 2.) The communications are with a UCLA student who was at the UCLA encampment for 6 hours on April 25, 2024. (Dkt. 174-1 at 6.)

Because the communications are directly related to the subject matter of the lawsuit, the Court concludes that the communications are highly relevant to the claims and defenses in the action. (See Dkt. 54 at 11-12.) Thus, the Court concludes that both the content of the communications in this screen shot, as well as the identity of the third party are highly relevant. The content of the communications is relevant because it reflects the conduct of PCC with regard to the UCLA encampment. The identity of the third party is relevant as a witness to PCC's conduct and to what happened at the encampment.

**7. PCC1310:** Instagram direct messages between PCC and a third party, which were produced with redactions, (Dkt. 174-1 at 2-3, 15.) The identity of the third party and communications regarding the third party's political opinions and political activity are redacted. (Dkt. 174 at 2.) The communications relate to a post by PCC about a new encampment launched at UCLA. (Dkt. 174-1 at 15.)

Having reviewed this document *in camera*, the Court concludes that the direct messages have only marginal relevance to the claims or defenses in the case. The

redacted message from the third party simply states that they will repost the information being shared by PCC. Therefore, redacted messages and the identity of the third party have very little relevance, if any.

**8. PCC1426:** Instagram direct messages between PCC and a third party, which were produced with redactions. (Dkt. 174-1 at 3, 22.) The identity of the third party is redacted and communications regarding the third party's political opinions, political associations, and political activity are redacted. (Dkt. 174 at 2.) The communications relate to PCC's post of a statement from students at one of the UCLA encampments. (Dkt. 174-1 at 22.)

Because the communications are directly related to the subject matter of the lawsuit, the Court concludes that the communications are highly relevant to the claims and defenses in the action. (See Dkt. 54 at 11-12.) Thus, the Court concludes that both the content of communications in this screen shot, as well as the identity of the third party are also highly relevant. The content of the communications is relevant because it reflects the conduct of PCC with regard to the UCLA encampment. The identity of the third party is relevant as a witness to PCC's conduct, as well as to what happened at the encampment.

**9. PCC1450-52:** Emails between PCC and a third party, which were produced with redactions. (Dkt. 174-1 at 3, 24-26.) The identities of the third parties and their contact information are redacted. (Dkt. 174 at 2.) None of the content in the emails is redacted. (Dkt. 174-1 at 24-26.)

Because none of the content in the emails is redacted, the Court concludes that the identity of the third party is not relevant to the claims or defenses in the action. The redactions simply withhold the identity of the third party who is forwarding a message from the University of California Office of the President to PCC's email account. (Id.) There is no basis in the document to conclude that the third party is a witness to either PCC's conduct with regard to the UCLA encampment or is a witness to what happened at the encampment.

**10. PCC1482-1504:** Emails between PCC and a third party, which were produced with redactions. (Dkt. 174-1 at 3, 28-50). The identities of the third parties and their contact information are redacted. (Dkt. 174 at 2.) The emails contain photos from one of the UCLA encampments. (Dkt. 174-1 at 28-50.) None of the content in the emails is redacted. (Id.) The individual sending the photos to PCC is the only information redacted. (Id. at 28, 50.)

Because the photos reflect what happened at the encampment, they are highly relevant to the claims and defenses in the action. (See Dkt. 54 at 11-12.) The identity of the third parties (and their contact information) who are sending the photos is also highly relevant because these third parties are witnesses to what happened at the encampment.

As set forth above, the purpose of the ten exemplar documents was to provide context for the Court to rule on the First Amendment issues and provide guidance that the parties could apply more generally. (Dkt. 166 at 4-5.) Therefore, the Court will use the specific examples set forth above to provide generally applicable guidance. Based on the examples set forth above, the Court concludes that Plaintiffs' interest in disclosure outweighs the burden on First Amendment rights where the content of the communications is directly related to the subject matter of the lawsuit (such as PCC854, PCC1370-73, PCC851-53, and PCC1426), *i.e.*, PCC's conduct and coordination with third parties related to the UCLA encampment. Such communications are highly relevant and necessary for Plaintiffs to obtain through discovery to attempt to prove their claims. Indeed, there does not appear to be any alternative method for Plaintiffs to attempt to prove, and PCC to defend against,[3] Plaintiffs' claims that PCC engaged in a conspiracy to deprive Plaintiffs of their civil rights related to the UCLA encampment.

---

[3] Indeed, based on the Court's *in camera* review, it appears that the content of the communications may be exculpatory.

The Court similarly concludes that Plaintiffs' interest in disclosure outweighs the burden on First Amendment rights where the identity of a third party is relevant either as a witness to PCC's conduct or as a witness to what happened at the encampment (such as PCC854, PCC1370-73, PCC851-53, PCC1426, PCC1482-1504). See Sines v. Kessler, 2018 WL 3730434, at *12 (N.D. Cal. Aug. 6, 2018) ("The Court agrees that disclosure of Doe's identity implicates her right to speak anonymously. After balancing the interests, however, and given the existence of the protective order entered by the Western District of Virginia, the importance to the case of disclosing Doe's identity outweighs any burden on this right."). The identity of such third parties is highly relevant and necessary for Plaintiffs to obtain through discovery to attempt to prove their claims. Indeed, there does not appear to be any alternative method for Plaintiffs to attempt to prove, and PCC to defend against, Plaintiffs' claims that PCC engaged in a conspiracy to deprive Plaintiffs of their civil rights related to the UCLA encampment.

By contrast where the content of the communications does not indicate that either PCC or the third party engaged in conduct related to the UCLA encampment (such as PRIVILEGE LOG #230,[4] PRIVILEGE LOG #238,[5] and PCC1310[6]), then the communications have only marginal relevance and the burden on First Amendment rights outweighs Plaintiffs' interest in disclosure. Similarly, where there is no reason to believe that a third party engaged in conduct related to the UCLA encampment, was a witness to PCC's conduct, or was a witness to what

[4] In PRIVILEGE LOG #230, it is not clear that the medical professional ever actually provided assistance to anyone at the encampment.

[5] In PRIVILEGE LOG #238, the only conduct is a third party donating money to SJP UCLA. This conduct, without more, has only marginal relevance to Plaintiffs' claims.

[6] In PCC1310, the only conduct is a third party stating that they will repost information being shared by PCC. This conduct, without more, has only marginal relevant to Plaintiffs' claims.

happened at the encampment (such as PCC1182-83, PCC1310, and PCC1450-52), then their identity is not relevant and the burden on First Amendment rights outweighs Plaintiffs' interest in disclosure.

The Court has provided this guidance so that the parties can resolve their disputes as to redactions and the withholding of documents based on First Amendment privilege beyond the 10 example documents at issue in this Motion. The Court expects the parties to meet and confer in good faith and attempt to apply this guidance to resolve any remaining dispute. Only after the parties have exhausted such efforts may the parties seek additional guidance and resolution of specific document disputes from the Court where the parties are unable to agree on how the forgoing principles should apply.

## V.

## CONCLUSION

Consistent with the foregoing, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion to Compel, (Dkt. 166), as follows:

1. **PCC854:** PCC shall produce this document without redactions.

2. **PCC1182-83:** PCC's First Amendment privilege objections are sustained.

3. **PCC1370-73:** PCC shall produce this document without redactions.

4. **PRIVILEGE LOG #230:** PCC's First Amendment privilege objections are sustained.

5. **PRIVILEGE LOG #238**: PCC's First Amendment privilege objections are sustained.

6. **PCC851-53:** PCC shall produce this document without redactions.

7. **PCC1310:** PCC's First Amendment privilege objections are sustained.

8. **PCC1426:** PCC shall produce this document without redactions.

9. **PCC1450-52:** PCC's First Amendment privilege objections are

sustained.

**10. PCC1482-1504:** PCC shall produce this document without redactions.

The Court concludes that PCC may produce the unredacted documents pursuant to the Stipulated Protective Order with a "Confidential" designation to protect the First Amendment rights at stake. However, the Court also concludes that producing such documents with an "Attorneys' Eyes Only" designation would impermissibly prevent Plaintiffs from litigating their claims and is unnecessary to protect the First Amendment rights at stake. The Court acknowledges that PCC has expressed concern for misuse of the information if produced even subject to a "Confidential" designation. However, the Court assumes and expects that the parties will abide by the terms of the Stipulated Protective Order. If there is a violation of those terms, the parties can promptly raise such issue to the Court at that time and the Court is prepared to take swift action with regard to enforcement. The Court directs PCC to make a supplemental production consistent with the guidance in this ruling no later than **September 11, 2026**.

Finally, Rule 37 states that if a motion to compel is granted in part and denied in part, the court "<u>may</u>, after giving an opportunity to be heard, apportion the reasonable expenses of the motion." Fed. R. Civ. Proc. 37(a)(5)(C) (emphasis added). Here, the Court has granted Plaintiffs' Motion to Compel in part and denied the motion in part. Therefore, the Court exercises its discretion to decline to require expense reimbursement from either side. <u>See, e.g.</u>, <u>Shijiazhuang Hongray Grp. v. World Trading 23, Inc.</u>, 2022 WL 17363907, at *4 (C.D. Cal. Nov. 15, 2022) ("[B]ecause the motion was granted in part and denied in part, subsection 37(a)(5)(C) applies and any potential award was discretionary.").

\\

\\

IT IS SO ORDERED.

DATED: August 28, 2026

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE