Dan Stormer, Esq. [S.B. # 101967]
Bina Ahmad, Esq. [S.B. # 329387]
Rebecca Brown, Esq. [S.B. #336638]
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600
Facsimile: (626) 577-7079
Emails: dstormer@hadsellstormer.com
bahmad@hadsellstormer.com
rbrown@hadsellstormer.com

Attorneys for Defendant
PEOPLE'S CITY COUNCIL

*[Additional Counsel Cont. on next page]*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MATTHEW WEINBERG,
RABBI DOVID GUREVICH,
NIR HOFTMAN,
ELI TSIVES,

Plaintiffs,

v.

NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, JOHN DOE #1, PRESIDENT OF THE UCLA CHAPTER OF SJP, AJP EDUCATIONAL FOUNDATION, INC., D/B/A AMERICAN MUSLIMS FOR PALESTINE, OSAMA ABURSHAID, HATEM AL-BAZIAN, FACULTY FOR JUSTICE IN PALESTINE NETWORK, UC DIVEST COALITION, WESPAC FOUNDATION, PEOPLE'S CITY COUNCIL,

Defendants

Case No.: 2:25-cv-03714-MCS-AJR

[Assigned to the Honorable Mark C. Scarsi – Courtroom 7C]

**JOINT STATUS REPORT**

| | |
|---|---|
| Complaint Filed: | April 25, 2025 |
| Discovery Cut-Off: | October 5, 2026 |
| Motion Cut-Off: | Dec. 14, 2026 |
| Trial: | April 27, 2027 |

*[Additional Counsel Cont. from previous page]*

William J. Brown, Jr. (SBN 192950)
bill@brownwegner.com
Kyle J. Berry (SBN 355393)
kberry@brownwegner.com
BROWN WEGNER LLP
2010 Main Street, Suite 1260
Irvine, California 92614
Telephone: (949) 705-0080
*Attorneys for Plaintiffs*

Thomas R. McCarthy (VA Bar No. 47154)*
Thomas A. Wilson (DC Bar No. 90019385)*
Julius Kairey (VA Bar No. 101216)*
Zachary P. Grouev (FL Bar No. 10386291)*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
Telephone: (703) 243-9423
tom@consovoymccarthy.com
twilson@consovoymccarthy.com
julius@consovoymccarthy.com
zach@consovoymccarthy.com

Patrick Strawbridge (MA Bar No. 678274)*
CONSOVOY MCCARTHY PLLC
8th Floor South PMB #706
Boston, MA 02109
Telephone: (617) 227-0548
patrick@consovoymccarthy.com

Richard A. Rosen (NY Bar No. 1663830)*
Omer Wiczyk (NY Bar No. 4321600)*
Evan Gottstein (NY Bar No. 5749783)*
THE LOUIS D. BRANDEIS CENTER
FOR HUMAN RIGHTS UNDER LAW
1330 6th Avenue, 23rd Floor
New York, NY 10019
Telephone: (917) 363-9004
rrosen@brandeiscenter.com
owiczyk@brandeiscenter.com
egottstein@brandeiscenter.com

* Admitted pro hac vice
Counsel for Plaintiffs

**TO THE COURT, THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

By and through their counsel of records, Plaintiffs MATTHEW WEINBERG, RABBI DOVID GUREVICH, NIR HOFTMAN, and ELI TSIVES, and Defendant PEOPLE'S CITY COUNCIL (together referred to herein as "the Parties"), hereby present this Joint Status Report regarding the dispute regarding People City Council's Request for Production No. 51.

**Defendant People's City Council's Position**:

Defendant People's City Council's (PCC) Request for Production No. 51 (propounded on each Plaintiff) seeks "All DOCUMENTS and COMMUNICATIONS RELATING TO Palestine, Arabs, or Islam." PCC subsequently offered to limit the scope of this RFP to 2020 through present. Plaintiffs refused to respond to this RFP on the grounds that "it is vague and ambiguous in that it fails to sufficiently define the term 'Palestine'" and that "it is unduly burdensome as it is not relevant to any party's claim or defense in this action, and it is not proportional to the needs of the case."

At the Informal Discovery Conference held on August 21, 2026, the Court agreed these topics were highly relevant to motivation for bringing this case and to bias but stated that the RFP is overbroad as drafted. The Court proposed narrowing the RFP to communications related to the October 7, 2023 attack by Hamas and Israel's military response in Gaza. Defendant PCC agreed to this compromise. Plaintiffs objected that this scope was still unduly burdensome. The Court directed the Parties to meet and confer on a compromise to RFP No. 51. *See* Dkt. 200 at 2.

On August 25, the Parties met and conferred. Plaintiffs requested that PCC offer search terms and connectors as a way to further narrow the scope and burden of searching for and producing these documents. On August 27, 2026, PCC provided Plaintiffs with a list of proposed search terms and connectors that is aimed at identifying relevant bias and motivation for bringing this lawsuit in the context of the October 7 attack and Israel's

subsequent military activity in Gaza. *See* Exhibit 1 at 2-3. On August 28, 2026, Plaintiffs responded that PCC's proposed search terms generated more than 36,000 documents. *Id.* at 1. Plaintiffs contend that this scope is unduly burdensome and not proportional to the needs of the case. *Id.*

**PCC requests that the Court order that Plaintiffs all supplement their responses to RFP No. 51 to identify and produce all non-privileged documents generated by the search terms and connectors proposed by PCC in the August 27 email (see Ex. 1 at 2-3) from October 7, 2023-present.** As Plaintiffs have 11 attorneys working on this case, which is centered on the public response to October 7, 2023 and Israel's subsequent military activity in Palestine, PCC does not agree that this search for highly relevant documents is overly burdensome.

As the Court stated in its Minute Order, PCC is "entitled to discovery related to Plaintiffs' motivation for bringing this lawsuit." Dkt. 200 at 2. *See, e.g.*, *Lenz v. Universal Music Corp.*, No. 5:07-cv-03783 JF (PVT), 2010 U.S. Dist. LEXIS 125874, at *7 (N.D. Cal. Nov. 17, 2010) ("Because information about Lenz's motivations for filing suit reasonably may lead to discoverable evidence about her claimed injury, her conversations about those motivations are discoverable"); *Conan v. City of Fontana*, No EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 218776, at *4 (C.D. Cal. Oct. 16, 2017) ("Plaintiff's financial motivation in bringing the instant lawsuit is relevant to Plaintiff's bias and credibility."); *S. Lake Union Hotel LLC v. F&F Rogers Fam. Ltd. P'Ship*, 2025 U.S. Dist. LEXIS 169195, at *5 (W.D. Wash. Aug. 29, 2025) ("the Court finds that the underlying questions of Plaintiff's motivation [for filing this lawsuit] and/or credibility are an appropriate area for examination at trial.").

PCC contends that this lawsuit is an attempt to silence Plaintiffs' political opponents, including those who publicly support Palestine, as well as Arabs and Islam. Plaintiffs' motives for bringing this lawsuit are relevant to the extent of their emotional distress damages, as well as to their credibility as witnesses.

PCC's belief in Plaintiffs' motivations is substantiated by Plaintiff Eli Tsives publicly calling for Defendant National Student for Justice in Palestine to be shut down: "What we need is clubs like SJP (Students for Justice in Palestine) to be shut down on college campuses." Kylie Ora Lobell, Not Afraid at UCLA, AISH (Mar. 30, 2025), https://aish.com/not-afraid-at-ucla/. Likewise, Adam Milstein, a donor to the organization funding this lawsuit, the Louis D. Brandeis Center for Human Rights Under Law, publicly identified PCC as "an enemy who we can attack" and falsely accused PCC of being sponsored by China and Marxist billionaires when speaking at the Israeli-American Council National Summit in January, 2026. Video posted by Mint Press News, Facebook (Jan. 21, 2026), *During the 10th Israeli-American Council (IAC) National Summit held from January 16-18, 2026, in Hollywood, Florida, philanthropist Adam Milstein advocated for an aggressive, "offensive" strategy to combat groups critical of Israel*, https://www.facebook.com/watch/?v=1409397814175452; see Who We Support, Adam and Gila Milstein Family Foundation, https://www.milsteinff.org/who-we-support/ (last visited June 5, 2026).

Similarly, the Brandeis Center has made its own motivations known by publicly labeling speech by pro-Palestinian student groups as "material support for terrorism," a sentiment which is echoed throughout Plaintiffs' FAC, in a letter urging nearly 200 university presidents to investigate SJP chapters on their campuses. See David Cole, *Why We Must Reject Efforts to Restrict Constitutionally Protected Speech on College Campuses*, ACLU.org (Nov. 2, 2023), aclu.org/news/free-speech/why-we-must-reject-efforts-to-restrictconstitutionally-protected-speech-on-college-campuses; Dkt. 54 at ¶¶ 9, 41, 82, 88. The Brandeis Center has filed numerous similar lawsuits targeting Palestine activism and speech. For example, the Brandeis Center has brought *Torres v. Carlson*, No. 25-cv-3747 (S.D.N.Y. 2025), suing numerous students for their pro-Palestine protests. The Brandeis Center also openly argues that antizionism is antisemitism. *See* The Brandeis Center, *LBD Explains the New Definition of Anti-Semitism*, available at https://brandeiscenter.com/ldb-explains-the-new-anti-semitism/. For example, the

Brandeis Center hosted a Capital Hill briefing on "Confronting Rising Antisemitism" where they cite the Anti-Defamation League's report card on campus antisemitism, which negatively views anti-Israel or antizionist beliefs. *See* The Brandeis Center, *Brandeis Center Hosts Capital Hill Briefing on Confronting Rising Antisemitism*, available at https://brandeiscenter.com/brandeis-center-hosts-capitol-hill-briefing-on-confronting-rising-antisemitism/; *see also* The Anti-Defamation League, *Campus Antisemitism Report Card: Frequently Asked Questions*, available at https://www.adl.org/campus-antisemitism-report-card/faqs. To receive a positive report card score, a campus report card must have opposed the Boycott Divest Sanctions (BDS) movement, or the Palestine movement calling for boycott, divestment and sanctions against Israel. *See* The Anti-Defamation League, *Campus Antisemitism Report Card: Criteria Guide*, available at https://www.adl.org/campus-antisemitism-report-card/criteria-guide. The Brandeis Center also openly brands the BDS movement as antisemitic. *See* The Brandeis Center, *Campus Anti-Semitism and the BDS Movement*, available at https://brandeiscenter.com/campus-anti-semitism-and-the-bds-movement/. The report card also blatantly views antizionism as antisemitism. *Id.*

The Court also agreed with PCC that "PCC is entitled to discovery related to potential bias." Dkt. 200 at 2. *See Lugo v. Miller*, 2014 U.S. Dist. LEXIS 67249, at *73 (C.D. Cal. Feb. 25, 2014) ("(E)vidence suggesting a witness's bias or prejudice in favor of or against a party is uniquely pertinent to assessment of a witness's credibility and the truth of the witness's testimony."); *United States v. Abel*, 469 U.S. 45, 52 (1984) ("[I]t is permissible to impeach a witness by showing his bias . . . .Bias is a term used in the 'common law of evidence' to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.").

Here, Plaintiffs' bias against Palestine advocacy for Palestinians in Gaza post October 7 is clear throughout their pleadings. Plaintiffs' lawsuit on its face reveals their likely biases as they allege an unlawful antisemitic conspiracy based on Defendants opposing Israel's actions in Gaza post October 7 and advocating for Palestinian human rights. Plaintiffs' First Amended Complaint is 66 pages long, with approximately 37 pages dedicated to the events of October 7, Israel's military action in Gaza after October 7, and nationwide students protests and campus encampments against Israel's military actions in Gaza. *See* Dkt. 54. Plaintiffs brought this case against numerous organizations specifically focused on Palestinian human rights advocacy and activism after October 7, including Students for Justice in Palestine, American Muslims for Palestine, and Faculty for Justice in Palestine. In fact, the terms "October 7" and "Gaza" are used repeatedly throughout their FAC, document production, and personal social media platforms.

Plaintiffs have already shown evidence of their bias against Palestine/Palestinians and those who support Palestine. For example, Plaintiff Eli Tsives posted a video on Instagram captioned "It's not fashionable to be a pro-Palestinian student at UCLA anymore," where he referred to the UCLA student encampment as "pro-Palestinian bullshit" and deemed pro-Palestine protesters at UCLA antisemitic. @tsiveseli, INSTAGRAM (March 30, 2026), https://www.instagram.com/reel/DWiJ5_Pj1Z2/. Likewise, Tsives has publicly accused student supporters of Palestine of wanting to turn America "into a Sharia law theological state." @traumainformedla, INSTAGRAM (May 27, 2025), https://www.instagram.com/reel/DKKNpavSZQp/.

Here, the requested documents will likely further reveal Plaintiffs' biases against these communities and those who support them, as well as the political cause of Palestinian sovereignty, including PCC and the other Defendants. Again, this case arises out of the UCLA Palestine solidarity encampment, where students and community members organized in solidarity with and alongside Palestinians, as well as Arabs and Muslims, in response to Israel's violence in Gaza. *See, e.g.*, Dkt. 54 at ¶¶ 94c ("members of the encampment were 'a militant, confrontational force of students and community

members committed to risking and sacrificing in solidarity with Palestine'"), 94f ("the encampment included contributions from 'non-direct actionist community support, mostly non-student, and often from cultural groups or organizations focused on housing, education,' including 'local Arabs and Muslims that didn't organize but would show up for Palestine'").

Furthermore, these documents are also relevant to Plaintiffs' alleged evidence of antisemitic animus. In their lawsuit for an alleged unlawful antisemitic conspiracy, Plaintiffs allege that chants made at UCLA regarding Palestine, such as "from the river to the sea, Palestine will be free," are antisemitic and aimed to "paralyze Jewish students with fear." Dkt. 54 at ¶ 90. Likewise, throughout their FAC, Plaintiffs appear to assert that any support for Palestine and Palestinians and any criticism of Israel's actions in Palestine are antisemitic. See, e.g., Dkt. 54 at ¶¶ 39, 41 ("AMP explained that SJP National's purpose was to '[u]nite the work for Palestine on campuses throughout the United States,' to '[o]ffer support to' and '[s]hare resources, experiences, and knowledge' with SJP chapters, to help chapters 'organize events and find speakers,' and to '[h]elp facilitate divestment campaigns on your campus.'"; "AMP 'frequently engages in rhetoric that promotes antisemitic tropes . . . For example, AMP annual conferences feature a 'Campus Activism Track' that is 'designed and led by former SJPers' and intended to provide participants with 'the tools and resources you need to strengthen your presence and pro-Palestinian presence on your campus.'"). As Plaintiffs allege that PCC acted with antisemitic animus, an element required to establish their deprivation clause conspiracy claim, PCC must be able to investigate the bases of this allegation. *See Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).

The search and connector terms proposed by PCC are proportionate to the needs of the case. Again, this case is centered on the public response to October 7, 2023 and Israel's subsequent military action in Palestine. Over half of Plaintiffs' First Amended Complaint is dedicated to chronicling in detail the public response to the events of October 7, 2023 and Israel's military action in Gaza after October 7, including the

nationwide students protests and campus encampments against Israel's military actions in Palestine. *See* Dkt. 54. Plaintiffs elected to bring this case alleging gravely serious violations of foundational civil rights law and to set this broad scope of their factual allegations. They cannot now claim that discovery into these very topics and terms is disproportionate and unduly burdensome. PCC proposed specific search and connector terms include key terms related to bias against Palestine, Islam, and Arabs in the wake of the October 7th attacks, bias against Palestine, Islam, and Arabs in the context of Israel's subsequent military action in Gaza, Israel's bombing of Gaza post-October 7th, and slurs commonly used against Palestinians. These terms are aimed at narrowing the scope of RFP No. 51 to evidence of Plaintiffs' motivations for bringing this lawsuit and biases related to October 7 and Israel's military actions in Palestine.

While reviewing the responsive documents will require time and resources, that fact alone does not render this discovery request unduly burdensome. The requested documents are highly relevant to Plaintiffs' motivations for bringing this lawsuit, Plaintiffs' biases, and Plaintiffs' allegations of antisemitic animus and are proportionate to the needs of the case. Plaintiffs are well resourced, including a team of at least ten attorneys across three law firms/organizations. The burden presented by this RFP is appropriate for the expansive and serious lawsuit Plaintiffs are bringing against PCC and others.

PCC requests that the Court order that Plaintiffs all supplement their responses to RFP No. 51 to identify and produce all non-privileged documents generated by the search terms and connectors proposed by PCC in the August 27 email (see Ex. 1 at 2-3) from October 7, 2023-present. In the alternative, PCC requests that the Court order that Plaintiffs all supplement their responses to RFP No. 51 to identify and produce all non-privileged documents related to the October 7, 2023 attack by Hamas and Israel's responsive military operation in Gaza.

**Plaintiffs' Position**:

Plaintiffs do not dispute the Court's direction that the parties meet and confer regarding a reasonable narrowing of RFP 51 consistent with the Court's ruling. To be clear, the Court held that it would narrow the request to two permissible discovery goals: (1) Plaintiffs' motivation for filing this lawsuit, and (2) Plaintiffs' potential bias for or against any party in the litigation. *See* Minute Order, ECF No. 200. The Court did not hold that "these topics [of Palestine, Arabs, or Islam] were highly relevant" as PCC suggests *supra*. The Court issued its ruling following the Informal Discovery Conference on Friday, August 21. On Monday, August 24, Plaintiffs reached out to PCC to initiate that meet-and-confer process. On Tuesday, August 25, counsel for the parties spoke over the telephone regarding a potential compromise. During that call, Plaintiffs advised that "all communications related the October 7, 2023 attack by Hamas and Israel's responsive military operation in Gaza" would almost certainly include a volume of documents—many of which would have no relation to potential bias or motivation—so large that it would be impossible to review and produce before the Plaintiffs' depositions and possibly even the October 5 fact discovery cut-off. Plaintiffs therefore asked PCC to propose search terms and connectors that PCC believed would appropriately narrow RFP No. 51 consistent with the Court's ruling, so that Plaintiffs could determine the burden of the proposed search and, if necessary, propose a narrower search protocol more effectively targeted at the two discovery goals the Court is permitting. PCC agreed to provide Plaintiffs with proposed search terms, which Plaintiffs could then evaluate and test against their collected documents.

On the afternoon of Thursday, August 27 – the afternoon before the parties' joint status update was due – PCC provided Plaintiffs with the following proposed search terms and connectors.

| **Search terms:** | **Additional Connectors:** |
|---|---|
| October 7, October 7th, October Seventh, 10/7, Hamas attack, terror attack, kidnap, hostage, ransom, prisoner, exchange | Savage, animal, thug, scum, monster, revenge, deserve, Muslim, Islam, Arab |
| Netanyahu, Bibi, Iron Dome, Palestine, Palestinian, Gaza, evacuation, evacuate, blockade, occupation, Doctors Without Borders, Iran, war crime, war criminal, ICJ, International Court of Justice, South Africa, ICC, International Criminal Court | Tunnel, civilian, hunger, aid, humanitarian murder, torture, behead, slaughter, massacre, assassinate, Munich, savage, animal, thug, scum, monster, deserve, fuck, bullshit, Islam, Muslim, Arab, caliphate, Jihad, mosque, Sharia Law, lie, not true |
| War, bombing, bomb, military, strike, hospital, school, refugee | Palestine, Palestinian, Gaza |
| Hamas, IDF, Israel Defense Forces, siege, terrorist, genocide, "from the river to the sea", Palestine Liberation Organization, PLO, Judea and Samaria, human shield, settler, aid, flotilla, famine, starving, ceasefire, Red Crescent, Katz, Zamir, Gaza City, Khan Yunis, Rafah, raghead, camel jockey, towel head, sand nigger, Pallywood, keffiyeh | N/A |

Notably, PCC's fourth proposed search term contains no connector or other limitation at all and would require review of every document containing any one of the listed terms.

Without debating the validity of PCC's proposed terms, Plaintiffs promptly forwarded PCC's proposal to their discovery vendor and asked the vendor to run the proposed searches against Plaintiff's collected documents. The vendor advised Plaintiff that PCC's proposed searches (with connectors) generated over 36,111 documents requiring review.[1] This means that PCC's proposed search terms for RFP 51 alone would require

[1] Plaintiffs' e-discovery vendor is still in the process of collecting additional data from one of the plaintiff's materials to run these additional search strings, so the actual number of documents with search hits will likely be greater than 36,111.

Plaintiffs to review approximately the same number of documents we reviewed in responding to PCC's other 381 RFPs across all four Plaintiffs.

Plaintiffs contacted PCC the following morning of Friday, August 28, 2026 (today), and advised PCC of those results and explained that the proposed search terms did not provide a reasonable or proportional means of narrowing RFP 51. Plaintiffs nevertheless expressly advised PCC that we remain willing to continue discussing modifications or adjustments to the proposed searches to make them more targeted toward identifying communications potentially bearing on the issues of bias or motivation identified by the Court. Plaintiffs also requested a call this morning to discuss possible modifications and the parties' joint status update.

PCC declined to engage in further discussions before the filing deadline. Instead, PCC responded that it did not consider review of more than 36,111 documents unduly burdensome "given the nature and scope of the case," stated that it intended to ask the Court to require Plaintiffs to conduct the searches using PCC's proposed terms and connectors, and advised that it would proceed with preparing its portion of this joint submission.

PCC's proposal does not accomplish the narrowing contemplated by the Court. The Court held that RFP No. 51 – which seeks "[a]ll DOCUMENTS and COMMUNICATIONS RELATING TO Palestine, Arabs, or Islam"—"is overbroad as drafted and therefore must be narrowed." The Court directed the parties to meet-and-confer regarding a compromise and stated that it intended to reach "some middle ground that is tied to the permissible discovery goals of Plaintiffs motivation for filing this lawsuit, as well as potential bias." ECF No. 200.

The results of PCC's proposed searches demonstrate that they do not provide such a middle ground. Rather than meaningfully narrowing the universe of potentially responsive documents, PCC's searches generate more than 36,111 documents—effectively requiring Plaintiffs to undertake a second review of approximately more than half the same volume

of documents they reviewed for their entire production (391 other RFPs). The result confirms that the proposed search strings remain substantially overbroad and are not proportional to the needs of the case. Indeed, many of PCC's proposed search strings are, on their face, overbroad and susceptible to generating a large volume of documents completely unrelated to potential bias, the attacks of October 7 and Israel's military response, or motivation to bring this lawsuit. To name just a few examples, PCC's proposed search terms would generate communications containing the word combinations "ransom" and "revenge," "exchange" and "deserve," "terror attack" and "monster" (which could relate to any number of terror attacks in the world other than Hamas's attacks from October 7, 2023) and "evacuate" and "animal" anywhere in the same document. Of course, many documents can contain these word combinations without having anything to do with bias, motivation for a lawsuit, October 7, or anything related to Israel and Palestine. PCC's proposed search strings would also generate any documents containing just the term "IDF" or "starving" or "aid" or "Katz" (a rather common Jewish last name) regardless of context. The existence of one of these words in a document, of course, is by no means closely tied to October 7, potential bias against another party in the case, or motivation for bringing this lawsuit.

PCC's extended discussion of the alleged relevance of Plaintiffs' views does not address this dispositive problem. Plaintiffs acknowledge that the Court is permitting PCC to obtain discovery concerning motivation or potential bias against another party. The issue is whether PCC may require review and production of every nonprivileged document captured by **exceedingly** broad searches merely because some subset of those documents *might* bear on those subjects. Relevance does not eliminate the independent requirements of reasonable tailoring and proportionality under Rule 26. Nor do PCC's allegations concerning public statements by a Plaintiff, Plaintiffs' counsel, or unrelated third parties establish that all 36,111 search hits are relevant—or justify requiring Plaintiffs to review them to locate an unidentified subset that might be.

PCC's reliance on the number of attorneys listed on Plaintiffs' pleadings is both factually misleading and legally misplaced. Several of the attorneys included in PCC's count are no longer actively working on this matter, while others have discrete responsibilities unrelated to document review. More fundamentally, Rule 26 does not measure proportionality by counting the names appearing on a pleading. The Advisory Committee expressly cautioned that consideration of a party's resources does not "justify unlimited discovery requests addressed to a wealthy party" and that the proportionality standard must be applied to prevent discovery from becoming "a war of attrition." Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment. Relevance and proportionality are "related but distinct requirements," *In re Bard IVC Filters Products Liability Litigation*, 317 F.R.D. 562, 564 (D. Ariz. 2016), and "[r]elevancy alone is no longer sufficient to obtain discovery." *Centeno v. City of Fresno*, No. 1:16-cv-00653-DAD-SAB, 2016 WL 7491634, at *4 (E.D. Cal. Dec. 29, 2016). The relevant comparison is the actual burden imposed by the proposed searches: a review for this single RFP comparable in size to Plaintiffs' review for PCC's other 381 RFPs across four separate Plaintiffs.

The actual search results demonstrate the burden and lack of reasonable tailoring. PCC's searches returned 24,199 documents containing direct hits and 36,111 documents when document families are included. *See* Exhibit 2. PCC's fourth proposed search—which contains no connector or other contextual limitation—alone captures 20,002 direct-hit documents and 30,620 documents with families, approximately 85% of the entire family-inclusive population. Although some documents were previously reviewed for responsiveness to other RFPs, those earlier responsiveness decisions did not evaluate responsiveness under PCC's newly proposed interpretation of RFP No. 51. Plaintiffs therefore would need to review or re-review all 36,000+ documents under a materially different responsiveness standard.

Additionally, many of the 391 other RFPs to which Plaintiffs have responded are already sufficiently probative of the two discovery goals that the Court ruled are permissible

for RFP 51. For example, Plaintiffs' responses to RFP Nos. 3-8 already include *any* documents/communications about PCC or any of its individual members, and the parties agreed to Plaintiffs limiting their responses to RFP Nos. 9-11 and 14-18 to seeking any documents/communications concerning any of the current and former defendants and/or their individual members in the context of their roles in any event/protest at UCLA or the Spring 2024 nationwide campaigns known as the Popular University for Gaza and Campus Support Coalition. Any documents relevant to any potential bias by a Plaintiff against any of those organizations or their members for any "advocacy" at UCLA or the Popular University for Gaza or Campus Support Coalition would be reflected in the documents produced in response to those RFPs. Similarly, in response to RFP No. 62, Plaintiffs have produced non-privileged communications between any plaintiff and any non-party concerning *this lawsuit*, which would also necessarily include any non-privileged communications that would address any motivation for bringing *this lawsuit*.

PCC's argument also ignores the substantial discovery obligations Plaintiffs are already addressing in this action. Plaintiffs are simultaneously conducting discovery involving two other defendants, reviewing materials produced in response to third-party subpoenas, preparing for several depositions scheduled for September, and responding to an additional set of document requests, requests for admission, and interrogatories that PCC served just this afternoon, August 28, 2026, many of which present substantial threshold objections. These obligations do not excuse Plaintiffs from responding to proportional discovery, but they are part of the practical burden that Rule 26 requires the Court to assess. *See Youngevity International, Corp. v. Smith*, No. 16-cv-704-BTM (JLB), 2017 WL 4777318, at *3–4, *7–8 (S.D. Cal. Oct. 23, 2017).

PCC's cited authorities do not support its proposed search methodology. At most, they establish that specific evidence genuinely bearing on a witness's motivation or bias may be discoverable or admissible. Several are trial-evidence decisions rather than discovery decisions, and none addresses whether a party may require review of tens of

thousands of documents captured by broad search terms merely because some unidentified subset might bear on motivation or bias.[2] PCC's fourth search illustrates the problem: it does not narrowly target communications that would indicate bias or litigation motivation, but instead captures any document containing commonplace terms such as "Hamas," "IDF," "aid," "terrorist," "ceasefire," "settler," or "Gaza City," regardless of context. The results confirm that PCC's proposal does not provide the "middle ground" contemplated by the Court.

Nor do PCC's factual accusations justify its proposed searches. PCC falsely implies that Adam Milstein is involved in or funding this litigation merely because he has donated to the Brandeis Center. Mr. Milstein has no involvement in this lawsuit, and PCC identifies no evidence to the contrary. PCC likewise selectively quotes Plaintiff Eli Tsives's public comments and strips them of context. Mr. Tsives's criticism of SJP—including his view that SJP chapters should be shut down because of their alleged conduct and support for organizations and activities at issue in this case—is not an assertion that lawful pro-Palestinian speech should be suppressed, much less evidence that Plaintiffs brought this lawsuit to "silence" political opponents. Plaintiffs brought this action to remedy Defendants' alleged participation in an unlawful, discriminatory conspiracy that deprived Jewish students of their civil rights, not to suppress protected advocacy.

PCC's attacks on the Brandeis Center are similarly misplaced. The Brandeis Center is Plaintiffs' counsel, not a plaintiff or fact witness, and its publicly stated legal and policy positions do not establish the motivations or biases of the four Plaintiffs. Nor is it probative that a civil-rights organization has represented clients in other matters involving similar alleged discrimination. PCC's disagreement with the Brandeis Center's legal and policy positions does not transform Plaintiffs' private communications concerning Israel, Gaza,

[2] For a more detailed rebuttal of PCC's cited authorities in its position above, Plaintiffs respectfully refer the Court to their position in the parties' Joint IDC Statement, dated August 13, 2026.

Palestinians, Arabs, or Muslims into relevant discovery.[3] In any event, even if PCC's assertions established some permissible area of inquiry—which Plaintiffs dispute—they would not establish that every document captured by PCC's proposed searches is relevant or that review of the resulting document population is proportional.

Plaintiffs remain willing to meet and confer regarding revised search terms, additional connectors, custodial or subject-matter limitations, or other reasonable methods of identifying documents genuinely bearing on the two issues specified by the Court. But PCC's current proposal, which generates more than 36,111 documents and includes a search for individual terms containing no connector at all and combination of terms that can have no connection to the two permissible goals of the RFP, does not meaningfully narrow RFP No. 51 and should not be ordered. Plaintiffs therefore respectfully request that the Court direct the parties to continue meeting and conferring regarding a reasonably tailored and proportional search, with another status update due in one week. In the alternative, if PCC is unwilling to meet and confer further, Plaintiffs respectfully request that the Court limit RFP 51 to "Communications sent by any Plaintiff concerning the Hamas attacks of October 7, 2023, and Israel's military response in Gaza, which also tend to reflect any Plaintiff's potential bias for or against any party in this litigation or motivation for bringing this lawsuit." Plaintiffs are currently working on modifying PCC's proposed search strings in a way that will generate more targeted, relevant results within this scope. But, given the timing of PCC's first proposed search strings just yesterday afternoon, Plaintiffs require additional time to confer with our e-discovery vendor to determine which modifications to the search strings will be most efficient at generating more targeted results that will accomplish the two permissible discovery goals articulated in the Court's August 21, 2026

[3] PCC's rhetoric rests on an untenably expansive definition of "funding." The Brandeis Center is one of Plaintiffs' counsel. By PCC's logic, a law firm that provides pro bono representation "funds" its client's litigation—meaning PCC's own pro bono counsel is likewise "funding" PCC's defense, and Defendants NSJP and NFSJP's pro bono counsel are likewise "funding" their clients' defenses as well.

Minute Order, be more proportional to the needs of the case, and better streamline Plaintiffs' supplemental production..

Dated: August 28, 2026

Respectfully Submitted,

HADSELL STORMER RENICK & DAI LLP

By: /s/ Rebecca Brown
Dan Stormer
Bina Ahmad
Rebecca Brown
Attorneys for Defendant People's City Council

Dated: August 28, 2026

Respectfully Submitted,

THE LOUIS D. BRANDEIS CENTER
FOR HUMAN RIGHTS UNDER LAW

By: Evan Gottstein /s/
Richard A. Rosen
Omer Wiczyk
Evan Gottstein
Attorneys for Plaintiffs

**ATTESTATION**

I hereby attest that the other signatories listed, on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: August 28, 2026

Respectfully Submitted,

HADSELL STORMER RENICK & DAI LLP

By: /s/ Rebecca Brown
Dan Stormer
Bina Ahmad
Rebecca Brown
Attorneys for Defendant People's City Council