**Jonathan Wallace, Esq.**
**PO #728**
**Amagansett, New York 11930**
**917-359-6234**
**jonathan.wallace80@gmail.com**

September 25, 2026

Magistrate Judge A. Joel Richlin
U.S. District Court
Northern District of California

*Via e-filing*

Re: Re: Weinberg, et al., v. National Students for Justice in Palestine, et al., No. 2:25-cv-3714-MCS-AJR (C.D. Cal.)

Your Honor:

Putting it quite bluntly, I am completely, personally overwhelmed by the volume of discovery generated by Plaintiffs in this matter to my two clients. The purpose of this letter is to describe the dilemma, then to suggest a solution.

I have worked really hard-- as much as half of each day is routinely devoted to this one case out of fifty in which I have appeared. And I have accomplished an astonishing amount, with the help of my paralegal May, including installing Everlaw at Your Honor's suggestion and reviewing more than 20,000 pages of documents (producing 14,000+ to Plaintiffs in the end). Currently, May and I are supervising former and present Steering members of both clients in performing searches and collections pursuant to 34 subpoenas issued to them. I have spent about nine hours of my time on these subpoenas in the past seven days, and May has spent much more (it is her main activity at this point).

May by the way, who is not getting regularly paid, is best characterized as a part time paralegal at this point.

Prior to last night, when I noticed in email that Plaintiffs had served yet more interrogatories and RFP's which I have not yet reviewed, Plaintiffs have so far served 15 interrogatories, 85 requests for production, over 250 search terms, and, most recently, 34 subpoenas. They have sent several very extensive deficiency notices. I have already tried to inform Your Honor that Plaintiff's counsel does not meet and confer in good faith, because they never once concede or look for a middle ground as to relevance, scope, etc. (they have offered some extensions of time).

I write in advance of our IDC to express some serious concerns approaching constitutional access-to-justice proportions about the way the discovery process is shaping up. Rule 26 refers to "the parties' resources" as a significant criterion in exercises of discretion regarding discovery, language which though little interpreted by the Courts, must certainly mean something. This has now become an existential issue for us.

***I have no help to send, therefore I must go myself***

I have worked very hard in good faith to catch up here. In the end, I had to do about 80% of the document review myself, and May did the other 20. The attempt to get other people to help has now definitively failed; there is no one else who can or will reliably take on any part of the review. May and I completed the original universe review recently, covering 22,000 pages ourselves.

A large part of the problem is the sense that the rules are not clear or seem constantly to shift. Please remember that I am inexperienced in federal discovery, especially at this large a scale, but have had had to learn very rapidly. (New York practice is much less rigorous, not comparable to federal.) I replaced another attorney, who had delegated the searches to the client. Now having done the collection ourselves at Your Honor's direction, the new "relevant universe", searched with 250 stand alone terms which are not combined in limiting search strings, is massive, more than one million documents.

The subpoenas to Steering member of both clients are also a case study in the systemic unfairness of the process. I have never had a case my entire paid career in which there were 34 non-party subpoenas. I do not have the resources to deal with these on any reasonable time frame even if the Steering members are doing their own searches and collections, while fulfilling all other discovery including the newly incoming. There are the same existential issues of overbreadth, First Amendment retaliation and chill, invasions of privacy, and possible doxing of nonparty as of party witnesses. In normal circumstances, I would absolutely seek waiver of conflicts and wish to represent all current Steering and many of the ex-Steering members. Your Honor said that was off the table.

Mr. Weinberg quitting the case before the weekend is also an iconic indication of the imbalance here. Defendants can't quit. He avoided sitting for his own deposition. Defendants can't. And, if the other Plaintiffs follow suit, now or later, the harm to defendants from the discovery process so far does not merely evaporate.

NSJP has not been sued seven times because it is a Marvel super-villain reaching out nationally to harm innocent people everywhere, though that is what the Plaintiffs in this case assert. It is a group of American students in their twenties who passionately use their First Amendment rights to advocate for the Palestinian people and against the Israeli nation-state, and it is being targeted everywhere for that reason. The result of all this litigation has already been a substantial First Amendment chill. NSJP lost its funding. Candidates for steering positions are aware that they may be sued or subpoenaed if they join. A less courageous group of people might have closed up shop by now. And now, NFSJP, a professors' group with the same goals, which has never been sued before, is being dragged into the same process.

Four of those seven cases have been dismissed so far, *Manhart v WESPAC Found., Inc.,* 2025 US Dist LEXIS 152019, at *42 (ND Ill Aug. 7, 2025, No. 24-cv-08209) ('[T]he Court believes that Plaintiff's filings were presented for the improper purpose of harassment and that Plaintiff made legal contentions that were neither supported by existing law nor nonfrivolous arguments in favor of the extension or modification of existing law. Accordingly, and for the reasons explained in further detail below, Defendants' motions for sanctions are granted"); (*Parizer v AJP Educ. Found., Inc.,* 2025 US Dist LEXIS 158917, at *62-63 (ED Va Aug. 15, 2025, Civil Action No. 1:24-cv-724 (RDA/IDD)) ("In short, although Plaintiffs allege domestic conduct, almost all of their specific allegations relate to conduct that occurred after October 7, 2023. Thus, they fail to show how this domestic conduct is 'relevant'—that is, that it assisted Hamas's October 7, 2023 attack or any subsequent violations of

international law upon which Plaintiffs could premise their claims here"); *Gerwaski v Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.,* 2025 US Dist LEXIS 84645, at *21-22 (D Nev May 5, 2025, No. 2:24-cv-00985-APG-MDC) ("[The] conduct alleged in the FAC is protected by the First Amendment. All the conduct alleged appears to take place in public areas and involves speech on the conflict between Israel and Palestine and UNLV's response to that conflict. This is a matter of public, rather than private concern"); *Schnaider v. American Muslims for Palestine,* 8:24-cv-01067-MSS-SPF (MD Fla. 2024) ("Here, Plaintiffs fail to sufficiently plead the second or third elements of the Halberstam framework or any affirmative act by Defendants that could have aided in the October 7 attacks"). In a case filed in New York State Supreme Court, motions to dismiss are still pending; in another, in federal court in the Southern District of New York, NSJP has not yet filed a motion.

The instant case is an outlier, the only lawsuit against NSJP in which a motion to dismiss has been denied and we are in the discovery phase.

I believe that drowning us in the deep end of the pool has been Plaintiffs' strategy all along. The Anti-Defamation League purports to speak for Brandeis Center also on its website: "Along with our colleagues at The Louis D. Brandeis Center for Human Rights Under Law (Brandeis Center), ADL has turned to the courts to create *massive disincentives* for those engaging in antisemitism, hate or extremism." https://support.adl.org/event/2025-oc-justice-you-shall-pursue-fighting-antisemitism-through-litigation/ (Emphasis added) Note this does not say "to win cases", or "to change the law", but to "create massive disincentives"-- which can be accomplished merely by crushing small, impecunious defendants under discovery requests and motion practice. This was posted in 2025, and I have cited it to Courts several times by now, and Brandeis Center certainly hasn't repudiated the language or demanded it be taken down.

I have previously filed papers with the Court and stated to Your Honor that I believe this case verges on (or attains ) frivolity. The two plaintiffs deposed so far have both admitted that they knew Jewish people were inside the encampment. Plaintiffs also seem to have no first hand knowledge as to why either of my clients were named in this action. In the 20,000 pages I have reviewed, I find no evidence of antisemitism, of control over chapters, or direct involvement at UCLA. At this point, Plaintiffs' ever-broadening RFP's are, in my opinion, a fishing expedition.

This Court should note that at the outset, NSJP had defendant Wespac as a fiscal sponsor, and had some modest cash flow from grants and contributions which permitted activities like national conferences. I don't know that this amounted to more than a hundred thousand dollars or so in a given year. NSJP has no endowment, savings, nest egg or other financial resources. However, Wespac was also named as a defendant in several cases including this one, sadly succumbed to the pressure, and canceled its fiscal sponsorship of NSJP. The result is that NSJP's cash flow this year is not likely to exceed $20,000. *This client has no resources to pay for anything.*

Requiring a broke organization and its harried solo attorney to be able to respond to whatever Plaintiffs' two law firms and law nonprofit can throw creates a truly Darwinian environment. As well as the First Amendment chill, issues of equal protection and of access to justice are raised by the use of the Court system to bring "massive disincentives" to small, marginalized ideological defendants.

The U.S. federal court system everywhere tends to be near oblivious to the plight of small impecunious litigants and of solo attorneys. This rises to the level in many places of a sort of unconscious systemic

bias. I frequently detect, very quickly, the surprise and in many cases the exasperation some federal judges feel when I appear in their courtroom. While it would certainly be very convenient if in every case, a firm like Consovoy could be opposed by a firm like Consovoy, in our world it doesn't work that way. *There is no firm that size that will take this case, or even help with it.* I am the lawyer available. There is no other. If not for me, these two clients would be unrepresented at this time.

With relentless self evaluation, I am probably at best only a 3 on the 10 scale in terms of my ability to meet federal discovery requirements. I am old, sick, slow, non-technical and haven't done federal discovery in many years (and never at this scale). If there was any one else in the environment able to help, I would gladly accept, and if there was a firm available to replace me, I would happily step out of the way. I can't because I am the "parties' resources" at this point. Since both my clients are unincorporated associations, I believe they would be in default if not represented by me.

I remain in good faith and eager to fulfill discovery requirements, could they be reasonably tailored to our actual, invariable capacity. My proposed solution is that, without resorting to formal motion practice, we agree on some informal means for Your Honor to review all outstanding discovery requests and deficiency notices and to supervise the creation of a description and calendar of all discovery still owed. This could be in the form of a joint status report or of separately submitted brief memoranda. I would also propose that once we have put this discovery plan into place, Plaintiffs then would have to seek Your Honor's leave to serve additional requests.

For example, among the measures I would propose, many of which I have already fruitlessly suggested to Plaintiffs at meet and confer calls, are: staging the Steering subpoenas by permitting only five to seven total in the first instance, then requiring a showing of good cause to Your Honor before more are required; requiring that the 250 proposed search terms be limited by being combined in search strings, so that we do not have to search stand-alone terms such as "accountability"; and review of relevance and scope of many RFP's, such as those pertaining generally to Zionism and to all demonstrations attended by Steering members.

In summary, I am drowning here and seek Your Honor's intervention to calibrate discovery to resources.

Sincerely,

/s/ Jonathan Wallace

*I have no help to send, therefore I must go myself*