Consovoy McCarthy PLLC

1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

**VIA CM/ECF**

September 25, 2026

Magistrate Judge A. Joel Richlin
United States District Court
Northern District of California

Re: *Weinberg, et al., v. National Students for Justice in Palestine, et al.*, No. 2:25-cv-3714-MCS-AJR (C.D. Cal.)

Dear Judge Richlin:

Plaintiffs write to respond to the letter filed this morning by counsel for Defendants National Students for Justice in Palestine ("NSJP") and Faculty for Justice in Palestine Network ("FJPN") before our upcoming informal discovery conference regarding NSJP's and FJPN's failure to comply with this Court's orders and the discovery requirements of the Federal Rules.

## I. Contrary to NSJP's and FJPN's Unfounded Assertions, Plaintiffs' Efforts to Conduct Discovery in this Case are Entirely Reasonable.

Before addressing the substance of Mr. Wallace's proposal, Plaintiffs must correct several misstatements in Mr. Wallace's email of this morning (none of which was discussed with Plaintiffs prior to his submission to this Court).

First, Mr. Wallace appears to view Plaintiffs' service of 15 interrogatories and 85 requests for production as somehow improper. But 15 interrogatories is well within the default limit set by Rule 34, and the 85 RFPs pale in comparison to the *nearly 400* RFPs to which Plaintiffs thoroughly responded. Moreover, Mr. Wallace's contention that he is "inexperienced in federal discovery" (Ltr. at 2) directly contradicts the representations he made to this Court at the outset of his involvement in this case. When petitioning the Court to allow him to substitute for Mr. Kleiman and handle discovery for NSJP, Mr. Wallace represented that he had numerous years of discovery experience and would quickly be able to get up to speed. Now, after five months of continual delay and belated productions, he claims the opposite.

In the same vein, Mr. Wallace's complaints about accepting "34 non-party subpoenas" (Ltr. at 2) come far too late. Since the parties were forced to bring their discovery issues to the Court in April of this year, the path forward in this case has been clear: Defendant organizations must provide names of their key members, and Plaintiffs may pursue discovery into those members under Rule 45. While Defendant People's City Council immediately thereafter identified its members and accepted subpoenas on their behalf, NSJP continued to withhold names and engage in months of gamesmanship over whether it would provide names and accept service for subpoenas on its members. To the extent Mr. Wallace feels overwhelmed, this feeling is entirely a product of his own conduct since entering the case.

Mr. Wallace's discovery arguments ultimately reduce to the same improper merits arguments his predecessor, Mr. Kleiman, made before leaving this case: He "believe[s] this case verges on (or attains) frivolity," so virtually any discovery burdens are unreasonable. Ltr. at 2. Not only are these merits arguments patently improper, they are wrong—and Mr. Wallace knows it. While Mr. Wallace represents to the Court that the case is "frivol[ous]" because there is "no evidence of antisemitism, of control over chapters, or direct involvement at UCLA," Ltr. at 2, the documents he has produced confirm the opposite. If the Court would like, Plaintiffs are happy to submit several such documents under seal and discuss further at the informal discovery conference.

These late-breaking documents have come into Plaintiffs' possession only because Plaintiffs have pursued the very follow-up discovery requests that Mr. Wallace complains about. Mr. Wallace's attempt to halt discovery is an acknowledgment that, after finally beginning to comply with the Federal Rules, he has been forced to provide Plaintiffs with the documents they need to prove their case. The Court should reject Mr. Wallace's gambit and require that he comply with both the Federal Rules and this Court's orders—both of which he continues to disregard.

For the avoidance of all doubt, Plaintiffs are *not* attempting to "drow[n]" Mr. Wallace or NSJP "in the deep end of the pool" through discovery requests. Ltr. at 3. Nor is the Louis D. Brandeis Center attempting to "crus[h] small, impecunious defendants" through discovery, Ltr. at 3—a callous assertion that Mr. Wallace continues to deploy absent any basis. Plaintiffs seek—as they have since the outset of this litigation—to receive the documents to which they are entitled under the Federal Rules, and to win their case on the merits.

### II. NSJP and FJPN Continue to Ignore Their Obligations Under the Federal Rules and This Court's Express Orders, and There Is No Basis for Relieving NSJP or FJPN from Those Obligations.

#### A. Procedural Background

After the parties' last informal discovery conference on August 28, 2026, the Court issued an order directing counsel for NSJP and FJPN to "promptly confer with his clients and prepare a supplemental disclosure regarding the sources of responsive documents and ESI." Doc. 203 at 1. Those disclosures—designed to enable "the parties and the Court to understand the universe and sources of responsive documents and information in the possession, custody, or control of both NSJP and FJPN"—were due September 4, 2026. *Id.*

The Court "further direct[ed]" counsel "to promptly begin collecting all of the sources of responsive documents and information identified in the supplemental disclosures so that counsel can run search terms on that universe and promptly turn to document review and production." *Id.* at 2. To that end, the Court directed Plaintiffs to provide NSJP and FJPN an updated list of search terms by September 4, 2026. *Id.* Once the parties had exchanged supplemental disclosures and search terms, the Court directed NSJP and FJPN to "complete the collection of all sources of responsive documents and ESI so that they can run Plaintiffs' search terms no later than September 11, 2026." *Id.* at 2. By the same date, the Court ordered NSJP and FJPN to "run Plaintiffs' proposed search terms on the complete universe of sources of responsive documents and ESI and provide to both Plaintiffs and the Court the total number of responsive documents, both with and without families." *Id.*

After outlining Defendants' ESI obligations, the Court explained that "current steering committee members for both NSJP and FJPN are subject to subpoena" and that "historical steering committee members from October 2023 through June of 2024 are likely to have relevant information given their role in the organizations during this time period." *Id.* The Court thus gave NSJP and FJPN a choice: provide either "a list of all such steering committee members with their last known contact information or provide their names and

agree to accept service on their behalf (but then may withhold their last known contact information)" by September 4, 2026. *Id.*

Finally, the Court set a follow-on informal discovery conference for September 14, 2026. The Court "intend[ed] to use the supplemental Rule 26 disclosures as well as the total number of responsive documents based on running Plaintiffs' search terms to set deadlines for NSJP and FJPN to complete document productions" and to "revisit the issues related to NSJP's and FJPN's privilege logs, as well as discovery responses." *Id.* at 2-3. The conference was later moved to September 21, 2026. Doc. 211.

**B. NSJP and FJPN Have Failed to Comply with the Federal Rules and the Court's Orders, and the Court Should Reject Their Attempt to Evade Basic Discovery Obligations to which They Previously Agreed.**

NSJP and FJPN have failed to comply with their obligations under this Court's order. Although Plaintiffs held up their end of the bargain and provided updated search terms on September 4, 2026, Counsel for NSJP and FJPN provided the Court with the required supplemental ESI disclosures on September 4 but withheld those disclosures from Plaintiffs until the morning of September 10. The next day, rather than provide "the total number of responsive documents, both with and without families," NSJP and NFJP provided a document identifying a projected total number of responsive documents and pages and served blanket objections to many Plaintiffs' proposed search terms. A substantial number of those objections were copy-pasted boilerplate, and none of them were supported by a search-terms analysis to support counsel's assertions that Plaintiffs' proposed terms are unduly burdensome or not reasonably calculated to identifying discoverable evidence.

Plaintiffs have provided search terms in good faith on numerous occasions—both before and after the Court's instruction to offer search terms—and have provided words specifically targeted to respond to Plaintiffs' RFPs. Notably, Mr. Wallace has not provided any sort of analysis regarding which search terms are most problematic and might warrant further tailoring (such as proximity to other terms, connectors, etc.). Plaintiffs would of course be amenable to such conversations, but Mr. Wallace has refused to meet and confer on these issues. If anything, Plaintiffs may need to provide additional search terms based on information that has only come to light in NSJP's most

recent productions. And of course, FJPN has yet to produce a single document from itself or its Steering Committee members.

NSJP and FJPN asked to meet and confer on September 18, 2026, three days before the September 21, 2026 informal discovery conference. Plaintiffs agreed and set a date, hoping to get more information from counsel about which terms were resulting in the substantial amount of hits described in NSJP's and FJPN's latest ESI disclosures. But counsel for NSJP and FJPN canceled the September 18 meet-and-confer, citing illness. Even after the Court delayed the informal discovery conference again to September 25, counsel for NSJP and FJPN has not met and conferred with Plaintiffs or provided any additional information to support his search term objections. In short, rather than meet and confer, Mr. Wallace decided to ambush Plaintiffs with a letter to the Court the day of the parties' belated IDC (which Plaintiffs agreed to continue to the end of the week without objection out of respect to Mr. Wallace's health concerns). And while Mr. Wallace claims to have "fruitlessly" raised his proposed "measures" with Plaintifffs, Ltr. at 3, this is misrepresentation; Mr. Wallace did not raise these issues with Plaintiffs before sending his letter to the Court because, again, Mr. Wallace canceled the parties' scheduled meet-and-confer.

NSJP's unsupported boilerplate objections to Plaintiffs' search terms are especially concerning because recent productions have made clear that NSJP's ESI disclosures do not capture all electronic sources of information that NSJP interacted with during the relevant period. For example, Plaintiffs recently served additional discovery requests related to NSJP's use of the Cryptpad, Zapier, and Telegram platforms based on references to those platforms by NSJP's Steering Committee. These obvious discrepancies justify "discovery on discovery" and underscore NSJP and FJPN's failure to comply with their discovery obligations under this Court's orders and the Federal Rules.

Finally, while Mr. Wallace routinely cites his personal schedule and personal lack of resources as a reason he should be excused from complying with his discovery obligations, he has provided no support for the proposition that the "parties" lack adequate resources to fulfill their obligations under the Federal Rules. Moreover, to the extent Mr. Wallace cites the parties' resources as a reason to ignore his obligation to respond to Plaintiffs' Rule 45 subpoenas, that argument ignores the resources of the 34 individuals who agreed for Mr. Wallace to accept service for them in exchange for withholding their contact information and being served in person. Mr. Wallace has never mentioned the

"resources" of these individuals, much less made a showing supported by evidence that they have insufficient resources to timely respond to a subpoena for which they accepted service through counsel.

* * *

NSJP and FJPN have not made a good-faith effort to comply with this Court's orders and their clear obligations under the Federal Rules. This Court should not allow them to continue to evade those obligations going forward.

Sincerely,

/s/ Thomas R. McCarthy
Thomas R. McCarthy

**CERTIFICATE OF SERVICE**

The undersigned counsel of record for Plaintiffs certifies that a true and correct copy of the foregoing was electronically filed and served upon all counsel of record who have appeared in the case and are registered with the CM/ECF. Parties may access this filing through the Court's CM/ECF System, including the below counsel for Defendants:

Mark Kleiman
KLEIMAN / RAJARAM
12121 Wilshire Boulevard, #810
Los Angeles, CA 90025
Phone: 310-392-5455
Email: mark@krlaw.us

*Counsel for National Students for Justice in Palestine*

Dan Stormer
Rebecca Brown
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, CA 91103
Phone: 626-585-9600
Emails: dstormer@hadsellstormer.com
rbrown@hadsellstormer.com

*Counsel for People's City Council*

Ramsey Judah
JUDAH LAW GROUP, LLC
1026 Foothall Boulevard
Upland, CA 91786
Phone: 626-899-7667
Email: ramsey@judahlawgroup.com

Jonathan Wallace
PO Box #728
Amagansett, NY 11930
Phone: 917-359-6234
Email: jonathan.wallace80@gmail.com

*Counsel for Faculty for Justice in Palestine Network*

*/s/ Thomas R. McCarthy*