Jonathan Wallace, Esq.
PO #728
Amagansett, New York 11930
917-359-6234
jonathan.wallace80@gmail.com

October 16, 2026

Magistrate Judge Joel Richlin
United States District Court
Central District, California
By email and efiling

**Re: Weinberg v. NSJP– Status Report - Defendant's Responses to Magistrate Richlin's 10.9.26 Order**

Your Honor:

Defendants NSJP and NFSJP submit their status report pursuant to Your Honor's minute order dated October 9, 2026.

**Search Terms.** Everlaw did not wish to schedule a meeting including Plaintiff's counsel, who is not their client. However, May and I met with our account representative and reviewed Plaintiffs' search terms. He identified two punctuation artifacts which he believed were causing some search strings to fail, (/ and .) We deleted these and reran the searches and they appeared to work properly this time. Copies of the two search reports are attached.

As we have articulated in every status report over the last few weeks, we have only collected Defendant ESI for both NSJP and NFSJP from September 2023 - December 2024. Therefore, we only ran the search terms for this date range.

*Scope of Document Review.* As this report shows, the updated search terms Plaintiffs provided for NSJP produce 5, 305 responsive documents. This is still far more than I can review alone. As I told Your Honor at the last IDC, I have now learned by experience that I can hit a pace of about 50 documents per day x 6 days a week, which is 300 documents per week. The reason I can't go faster is that many of the documents are quite long (consisting of meeting notes or of downloads of chats or social media discussions) and require careful reading and many small redactions of proper and organization names consistent with Your Honor's rulings for PCC. This Court should note that this is an aggressive and ambitious target, difficult to sustain for many weeks at a time, and that I am also obliged to carry the rest of my law practice at the same time (the amount of time every day I have been devoting to this one case since April is hugely disproportionate).

Given the math, I respectfully request that we limit NSJP's review to 2,000 documents. We have so far disclosed more than 14,000 pages of discovery to Plaintiffs and as far as I am aware, they contain no material evidence that NSJP was involved directly with the UCLA encampment, controls the UCLA

chapter, is antisemitic, or that the encampment was a "Jew exclusion zone". If there is any evidence useful to Plaintiffs, reviewing 2,000 more documents, rather than 5,000, will disclose it. At that point, Plaintiffs certainly should be permitted to make a case to Your Honor that further (limited) discovery is warranted, to pursue leads they have turned up in prior discovery-- but not to conduct an ever-widening fishing expedition.

My further duty to review documents could be implemented in the following ways. We could rewrite the search terms further until the responsive document list equals or comes in just under 2,000 documents. However, I think it would also be effective for me, using this latest set of search terms, simply to review the first 2,000 randomly batched for me by the Everlaw system, and to stop there, pending further discussion.

A third alternative is that I hire an unemployed attorney to assist me full time in document review at Plaintiff's expense. This would cost them approximately $20,000. Using that approach, we could review the entire 5,000 documents.

*NFSJP*: The updated search terms from Plaintiffs yielded 211 documents, which we will review.

**Cost.** At the IDC, Your Honor suggested that we archive, and delete from Everlaw, all unresponsive documents. We are eager to, but cannot yet, because search terms are still evolving. Nor can we predict how much space that would free up below the 50 gig free limit. We are hesitant to upload NSJP and NFSJP's data from Jan 2025 onwards, as it will put us in the same, but worse, predicament as we are now. Furthermore, all the discovery we have delivered has shown no evidence for any claims Plaintiffs have made, and any evidence would be found within the 15 month span around the five day encampment period.

**First Amendment Issues at 30(b)(6)'s.** At 10 am on October 15, the parties held a meet and confer to discuss issues pertaining to 30(b)(6) questions.

I agreed to disclose the names of Advisory Board members and also that we would answer questions about the means used to communicate with the organizations named in the April 26, 2024 "movement partner" notes disclosed in discovery (GAZA002989-002991). I do not agree that the date of the document or a passing reference to UCLA at the end of the meeting waives First Amendment privilege as to all participants.

Plaintiffs have signaled their intention to ask for the identity of "movement partners" in general. This is not a term of art. At one time or another, NSJP has attended meetings or calls with many, perhaps most, of the other organizations in the pro-Palestinian space. Utilizing "movement partner" as an exception would also largely negate Defendants' use of a First Amendment privilege.

Another area of disagreement is whether Plaintiffs can ask questions about the names of all entities involved in discussions about the "Popular University for Gaza". This was a meme or brand used to describe all protest activities that year centering on Palestine. Its usage is therefore so broad and vague that treating it as automatically relevant to Plaintiffs' claims would effectively prevent Defendants from asserting First Amendment privilege in almost any instance.

Again, I think the best solution to these disagreements is to go ahead with the depositions, and subsequently, if needed, ask Your Honor to rule on specific instances in which I assert First

Amendment privilege. If overruled, I will present the witness[es] for a follow up. Otherwise, we are dealing with this issue in the abstract.

**Subpoenas.** As I previously have said, **t**he Plaintiffs issuing 38 subpoenas against these individuals in a case of this size and nature was an act of very substantial over-reach which has created a near-impossible situation. I have dealt with it the best I could, coordinating a response and supporting these witnesses as much as possible, without being able to take full responsibility as I would if each witness was a client. Nevertheless, I had little choice but to try to help given the chaotic situation which would have ensued if I had stayed out of it entirely, allowing counsel to deal directly with the witnesses, eventually threatening many of them with contempt of court in the ensuing confusion.

Attached are status reports we prepared based on polling them as to their progress. We believe that about 5-6 NSJP steering members will be ready to deliver their subpoenas the week of October 26, 2026 and that 5-6 NFSJP steering members will be prepared to deliver their subpoenas by the first week of November. Attempting to manage the unprecedented number of subpoenas is largely one of the reasons we have been unable to devote as much time as we would have wished to document review.

Also attached are the search terms provided by us to the witnesses to facilitate the searches.

I renew the request that Your Honor consider relieving us of the need to respond to more subpoenas after the initial round of disclosure (based on a review of those results) as to any Steering Committee members of either defendant without links to UCLA.

**Accidental Disclosure of Names.** As I stated at the IDC, the disclosure of the names of attendees at the "movement partners" meeting was the result of a document review failure, as we absolutely would have asserted First Amendment privilege as to these names. Depending on the outcome of the conversation about whether a passing reference to UCLA at the end of the meeting is sufficient to take the entire document out of privileged status, I respectfully request that I be permitted to "claw back" the document as I would be if we had disclosed an attorney-client privileged document by accident. In any event, I wish to make clear that no waiver of First Amendment privilege otherwise applicable to these groups and topics was intended.

**Request.** In closing, I again respectfully request–this is where I think we are heading, but I want to say it– that we pin down a final set of search terms, a final number of documents I accordingly will review, and a deadline for completing all document review, all of these within Defendants' resources. After that, any further discovery requested by Plaintiffs should be for good cause shown to Your Honor, including the demonstration that specific documents already disclosed raise relevant and material issues which further discovery would be needed to resolve.

Sincerely,

/s/ Jonathan Wallace