William J. Brown, Jr. (SBN 192950)
bill@brownwegner.com
Evan Mark Simon (SBN 246455)
esimon@brownwegner.com
BROWN WEGNER LLP
2010 Main Street, Suite 1260
Irvine, California 92614
Telephone: 949.705.0080
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

Matthew Weinberg, *et al.*,

*Plaintiffs*,

v.

National Students for Justice in Palestine, *et al.*,

*Defendants*.

**Case No. 2:25-cv-03714-MCS-AJR**

**PLAINTIFFS' STATUS UPDATE RE: DOCKET 241**

Honorable Mark C. Scarsi
Magistrate Judge A. Joel Richlin

Informal Conference Date: November 10, 2026
Time: 2:00 p.m.

[Additional Counsel Cont. from previous page]
Thomas R. McCarthy (VA Bar No. 47154)*
Thomas A. Wilson (DC Bar No. 90019385)*
Julius Kairey (VA Bar No. 101216)*
Zachary P. Grouev (FL Bar No. 1038629)*
CONSOVOY MCCARTHY PLLC
2107 Wilson Blvd., Ste. 725
Arlington, VA 22201
Telephone: (703) 243-9423
tom@consovoymccarthy.com
twilson@consovoymccarthy.com
julius@consovoymccarthy.com
zach@consovoymccarthy.com

Patrick Strawbridge (MA Bar No. 678274)*
CONSOVOY MCCARTHY PLLC
8th Floor South PMB #706
Boston, MA 02109
Telephone: (617) 227-0548
patrick@consovoymccarthy.com

Richard A. Rosen (NY Bar No. 1663830)*
Omer Wiczyk (NY Bar No. 4321600)*
Evan Gottstein (NY Bar No. 5749783)*
THE LOUIS D. BRANDEIS CENTER
FOR HUMAN RIGHTS UNDER LAW
1675 Broadway, 13th Floor
New York, NY 10019
Telephone: (877) 600-3532
rrosen@brandeiscenter.com
owiczyk@brandeiscenter.com
egottstein@brandeiscenter.com

* Admitted pro hac vice

*Attorneys for Plaintiffs*

Plaintiffs respectfully provide this update on Defendants' progress in completing the steps ordered by the Court following the October 29, 2026 informal discovery conference. *See* Dkt. 241.

In its Order, the Court noted that Mr. Wallace stated he had produced responsive documents for Sean Eren, was "working on producing the documents for three or four more respondents no later than **November 2, 2026**," and would provide "a comprehensive update as to all of the subpoena respondents and the status of their productions no later than **November 4, 2026**." *Id.* at 1. The Court encouraged Plaintiffs to move forward with scheduling personal-capacity depositions of Mr. Eren, Dylan Kupsh, and Carrie Zaremba. *Id.* at 1-2.

The Court further concluded that Plaintiffs' proposed search terms for NSJP for the "date range up to December 31, 2024" were "reasonable and proportional to the needs of the case, with minor modifications" that the Court detailed. *Id.* at 2-4. The Court accordingly instructed Plaintiffs to modify the search terms and send them to Mr. Wallace, and directed Mr. Wallace to "promptly run and begin reviewing and producing responsive documents using the modified search terms with a document production completion deadline of **November 20, 2026**." *Id.* at 4.

As to FJPN, the Court required Mr. Wallace to "provide an update on the status of the FJPN document production no later than **November 2, 2026**," and to produce "documents for Mr. Ross no later than **November 6, 2026**." *Id.*

## I. Status of NSJP Discovery

### A. Updates regarding NSJP document production

**1.** In accordance with the Court's Order, Plaintiffs provided modified search strings to Mr. Wallace on October 30, 2026. *See* Exh. A at 1-2. Although the Court directed NSJP "to promptly run and begin reviewing and

producing responsive documents using the modified search terms," Dkt. 241 at 4, NSJP has yet to produce any additional documents or even indicate that it has *started* the court-ordered review.

Mr. Wallace's last communication to Plaintiffs on this subject, on Monday November 2, stated only that he would "begin" the process of "recommencing NSJP review" at some unknown future date. Given the lack of clarity on when this "recommencing" will begin and Mr. Wallace's continued assertion that he would review only "50 [documents] per day (in bursts)," Exh. B at 1, Plaintiffs were extremely concerned that Mr. Wallace did not intend to comply with the court's "document production completion deadline of **November 20, 2026**," Dkt. 241 at 4.

Mr. Wallace's status update confirms Plaintiffs' fears. The status update states that the Court's modified search strings result in a universe of "4,521 documents" from NSJP. Wallace Update at 1. And it contains a flat admission by Mr. Wallace that he will not "review anything near this number by December 14th." *Id.* Mr. Wallace's acknowledgement that he will not comply with the Court's order to complete NSJP's production by November 20 is based on his continued assertion that he will "review at best 50 documents per day." *Id.* But as the Court has explained in previous conferences, it is not uncommon or an undue burden for counsel in civil litigation to review several hundred documents per day. *See, e.g.*, *Brown v. Barnes & Noble, Inc.*, 474 F. Supp. 3d 637, 645 (S.D.N.Y. 2019) (explaining that the average rate of document review is 40-60 documents *per hour*). Mr. Wallace's proposed rate of document review is unacceptably slow, and his "extensive *pro bono* practice" does not relieve his clients of their obligations under the Federal Rules. *Contra* Wallace Update at 1.

Mr. Wallace next states that it is "impossible" for him to comply with the Court's order requiring him to upload documents from NSJP and FJPN

from December 31, 2024 to the present to Everlaw and search those documents using Plaintiffs' (substantially narrowed) post-2025 search terms. But if Mr. Wallace has "run out of time to collect and load these documents, let alone review them," that is a problem entirely of his own making. *Contra* Wallace Update at 2. Plaintiffs provided Mr. Wallace their final search terms for the period spanning September 2023 through December 2024 more than a week ago on October 30. And the Court "direct[ed] Mr. Wallace to work with Everlaw on removing non-responsive data from Everlaw (while preserving the data somewhere else) and loading data for the data range of January 1, 2025 to the present" on October 29. Dkt. 241 at 4. Mr. Wallace's "update on his progress" in the interim, due today, is that he has not attempted to make any progress and refuses to do so moving forward. *Contra id.* at 4-5. Finally, Mr. Wallace states that his compliance with the Court's orders concerning subpoena productions is "a serious problem." Wallace Update at 2.

Rather than comply with the Court's order, Mr. Wallace proposes that he review *at most* 1,150 documents before the close of discovery. Wallace Update at 2. Mr. Wallace specifies that this proposal "would include both NSJP and NFSJP documents," so Plaintiffs cannot even count on receiving the 211 responsive documents from FJPN that Mr. Wallace "agreed was reasonable" to produce on October 20, almost three weeks ago. Dkt. 238 at 1. In exchange for reviewing less than one third of the documents identified using the Court's reasonable set of search terms (and ignoring all responsive documents from 2025 on), Mr. Wallace asks Plaintiffs to forego all remaining depositions—an especially unacceptable request given that Mr. Wallace has yet to produce a properly prepared Rule 30(b)(6) deponent for either of his clients. *See infra* Parts I.B., II.B. In addition, Mr. Wallace proposes that he be allowed to disregard a substantial number of Plaintiffs'

outstanding subpoenas in defiance of this Court's orders. *Compare* Wallace Update at 2, *with* Dkt. 238 at 2; Dkt. 241.

Exacerbating the prejudice to Plaintiffs entailed by these proposals, Mr. Wallace insists that he be given "no deadlines prior to December 14," the final day of fact discovery. Wallace Update at 3. Given Plaintiffs' difficulties in securing compliance with the Court's orders concerning FJPN's relatively modest document production and Mr. Wallace's failure to prepare his clients' Rule 30(b)(6) representatives for depositions, Plaintiffs are extremely concerned that a December 14 deadline would allow Mr. Wallace to "run out the discovery clock" without making any additional productions before the close of discovery. *See* Wallace Update at 1.

Accordingly, Plaintiffs respectfully request that during the IDC scheduled for November 10, 2026, the Court directly ask Mr. Wallace whether he intends to comply with its Order or—as his status report suggests—defy it. If Mr. Wallace states that he will not have reviewed and produced all responsive documents by November 20, Plaintiffs respectfully propose that the Court require Mr. Wallace to produce all un-reviewed documents by November 20, with the understanding that Mr. Wallace may seek to apply confidentiality designations or redactions to certain documents following production and without waiver of any meritorious claims of privilege. *See* Lueck & Arenz, *Federal Rule of Evidence 502(d) and Compelled Quick Peek Productions*, 10 SEDONA CONF. J. at 229 (2009) (discussing the use of "quick peek" production orders as a tool to ensure parties satisfy their discovery obligations and meet court-ordered deadlines); *Transamerica Computer Co. v. Int'l Bus. Machines Corp.*, 573 F.2d 646, 653 (9th Cir. 1978) (explaining that such orders are a "reasonable method of accelerating the discovery proceedings without impinging upon the parties' right to prepare their cases properly").

"Courts should reserve the option to compel quick peek productions as a sanction on parties that are found to egregiously violate their discovery obligations." Lueck & Arenz, 10 SEDONA CONF. J. at 235; *accord Fairholme Funds, Inc. v. United States*, 134 Fed. Cl. 680, 688 (2017) (explaining that "use of the quick peek procedure [was] eminently appropriate" to "bring jurisdictional discovery to an end so that the case may move forward"). Mr. Wallace's conduct in discovery implicates both rationales. Because NSJP and FJPN have "repeatedly refus[ed] to produce relevant documents" and, as discussed *infra*, have "grossly over-designat[ed] documents as privilege[d]," Plaintiffs propose that the Court issue an order requiring Mr. Wallace to immediately produce all documents responsive to the search terms approved by the Court in its October 29 order "without a privilege review." Lueck & Arenz, 10 SEDONA CONF. J. at 235.

**2.** Relatedly, Mr. Wallace's confidentiality designations thus far appear significantly overbroad. For example, Mr. Wallace designated the publicly filed complaint in *Parizer et al. v. AJP Educational Foundation et al.,* No. 1:24-cv-00724 (E.D. Va.) as "highly confidential." *See* GAZA000884-932 (Exh. C at 1-49). He did the same for the publicly filed complaint in *Shnaider et al. v. American Muslims for Palestine et al.,* No. 8:24-cv-01067 (M.D. Fla.). *See* GAZA000933-1123 (Exh. C at 50-240). Mr. Wallace also designated as confidential an article on the Anti-Defamation League's website. *See* GAZA000758-767 (Exh. C at 241-250). While Plaintiffs would typically seek to challenge these designations immediately and request re-production without the improper confidentiality designations, doing so would likely impede Mr. Wallace's review and production of the remaining NSJP and FJPN documents. Given that Mr. Wallace has a significant amount of documents to review and produce over the next month, Plaintiffs thus

propose reserving confidentiality challenges for after the discovery period closes on December 14, 2026.

Plaintiffs respectfully request that the Court confirm this is a permissible course of action under the Protective Order, which provides that a party may "challenge a designation of confidentiality at any time that is consistent with the Court's Scheduling Order." Dkt. 121 §6.1.

**B. Updates regarding NSJP depositions**

**1.** Notwithstanding Mr. Wallace's statement that, "Sean Eren's 30(b)(6) deposition … proceeded uneventfully," Wallace Update at 2, the deposition revealed two significant problems.

*First*, NSJP failed to prepare Mr. Eren as a Rule 30(b)(6) witness. Mr. Eren testified to having reviewed only the documents in his personal possession, and was unable to provide any answer whatsoever to numerous deposition topics that the Court previously approved in its Order of October 2, 2026 (Dkt. 230). *See* Exh. D (Gottstein Decl.) ¶¶9-15.[1] Indeed, Mr. Eren testified that he had not made any effort to learn about topics by, for example, contacting other members of NSJP who might have relevant information. *See id.* ¶¶10-11. What is more, on numerous occasions Mr. Eren testified that current members of NSJP's Steering Committee might possess a document or know an answer to a question but stated that he had made no effort to discuss his testimony *as NSJP's organizational representative* with the organization's leadership. *See id.* ¶15.

*Second*, the Rule 30(b)(6) examination revealed significant spoliation stemming from either an absence of any appropriate document-preservation instruction or a refusal to follow one.

[1] Plaintiffs ordered a transcript of the deposition and expect to receive it by no later than November 18, 2026. Mr. Gottstein's declaration is based off of his recollection as deposer and contemporaneous notes. Plaintiffs welcome the opportunity to provide supplemental citations of the transcript upon receipt.

Plaintiffs initially raised this precise concern in March of this year, following what appeared to be a deficient document collection from NSJP. *See* Exh. E at 1 (listing as first issue for IDC "[w]hether NSJP properly advised individuals with potentially relevant documents and communications to preserve such documents and communications"). Accordingly, during the Parties' first IDC on April 10, 2026, the Court directly asked NSJP's lawyer, Mr. Mark Kleiman—who remains NSJP's counsel of record—whether he had sent "some litigation hold to all the members of [NSJP]." *See* Exh. F at 21:4-9. Mr. Kleiman's response was unequivocal: "Oh, that was done" for the entire Steering Committee in "September or October" of 2025. *Id.* at 21:12-15.

Yet Mr. Eren testified under oath that the only preservation notice he received came from Mr. Wallace *just over a month ago*. *See* Exh. D, Gottstein Decl. ¶¶17-19. Mr. Eren was a member of NSJP's Steering Committee in fall 2025, so, had Mr. Kleiman sent such a preservation notice during that period, Mr. Eren (and all other members of NSJP's Steering Committee) would have received it. Nevertheless, Mr. Eren testified that prior to September or October of 2026, NSJP did not take steps to ensure that the auto-delete functions on all platforms which NSJP used to communicate regarding UCLA, the Popular University for Gaza, or the Campus Support Coalition, were disabled; that NSJP had a "policy" for all members to wipe the data from their personal devices any time that they travel outside of the United States; and that he personally followed this policy during international travel on multiple occasions, with his most recent mass deletion occurring this past summer. *Id.* ¶¶20-23.

The statements of Mr. Kleiman and Mr. Eren cannot both be true; either Mr. Kleiman never sent a preservation notice despite representing

otherwise, or Mr. Eren received the notice and ignored it. Considering the importance of Mr. Eren's documents and the apparent evidence of spoliation, Plaintiffs thus respectfully request that the Court order NSJP to produce the preservation notice that Mr. Kleiman claims he sent. *See, e.g. City of Colton v. Am. Promotional Events, Inc.*, 2011 WL 13223880, at *5 (C.D. Cal. Nov. 22, 2011) ("[A] court may order the production of litigation hold letters on a preliminary factual showing that leads to an inference of spoliation. Here, the extraordinary delay in issuing litigation hold letters in combination with witness testimony regarding inconsistent or non-existent retention practices leads to an inference of spoliation."); *Doe LS 340 v. Uber Techs., Inc.*, 710 F. Supp. 3d 794, 802 (N.D. Cal. 2024) ("The basic details surrounding the litigation hold are not protected by the attorney-client privilege and the work product doctrine.") (cleaned up).

**2.** In accordance with the Court's Order of October 29, Plaintiffs have worked with Mr. Kupsh's attorney, Ben Gharagozli, to schedule Mr. Kupsh's deposition. The deposition is set to take place remotely on November 20, 2026. Ms. Zaremba's attorney, Joshua Dratel, has also responded to Plaintiffs' counsel and Plaintiffs are currently negotiating Ms. Zaremba's deposition.

Further, based on the initial Rule 30(b)(6) examination of NSJP via Mr. Eren, Plaintiffs have identified three more NSJP members whom they seek to depose: [redacted]. Mr. Wallace previously represented that he will accept service for [redacted], but has not yet responded to Plaintiffs' request to schedule these individuals' depositions. Mr. Wallace has not stated that he will accept service for or otherwise represent [redacted], and Plaintiffs are currently attempting to serve her. In a November 9 email to Plaintiffs, Mr.

Wallace claimed that he was not authorized to accept service for [redacted]. *See* Exh. G at 1. Based on this new representation, Plaintiffs expect to revisit the issue of which individuals to depose, and arrange for at least one more deposition.

Beyond the four PCC depositions Plaintiffs have already taken, Plaintiffs thus intend to take at least the following eight depositions (only five of which will be defended by Mr. Wallace): NSJP 30(b)(6); FJPN 30(b)(6); Sean Eren; Dylan Kupsh; Carrie Zaremba; [redacted]. Plaintiffs anticipate seeking at most one additional FJPN-related deposition of [redacted], who appears to have been FJPN's local connection at UCLA. Plaintiffs thus respectfully request the Court's authorization to exceed the 10-deposition default limit.

## II. Status of FJPN Discovery

### A. Updates regarding FJPN document collection

During the Parties' previous IDCs, Mr. Wallace acknowledged that the 211 potentially responsive FJPN documents amounted to a light review that would not be difficult to complete, and represented that he would produce relevant and responsive documents by November 6 in order to provide Plaintiffs' counsel time to review the documents ahead of the FJPN Rule 30(b)(6) deposition scheduled for November 9. To date, however, Mr. Wallace has produced only 15 FJPN documents—all of which were collected using his own search terms.

On Monday, November 2, Mr. Wallace emailed Plaintiffs and the Court stating that instead of producing FJPN's documents prior to FJPN's Rule 30(b)(6) deposition on November 9, he would "complete this review no later than the 10th." Exh. B at 1. On Friday, November 6, Plaintiffs reminded Mr. Wallace of his obligation to timely produce FJPN's documents

and explained that "[w]aiting until after the deposition to produce any additional documents severely hampers Plaintiffs' ability to conduct a proper examination of FJPN's Rule 30(b)(6) representative." *Id.* Mr. Wallace responded on the morning of November 9, stating that he "was unable to get these docs set up and review them in time for today." Exh. B at 1.

**B. Updates regarding FJPN depositions**

Again, notwithstanding Mr. Wallace's representation that today's Rule 30(b)(6) deposition of FJPN's organizational designee, Mr. Andrew Ross, "seemed to proceed rather smoothly," Wallace Update at 3, the deposition evidenced the same problems that plagued the NSJP Rule 30(b)(6) deposition. As with the NSJP deposition, FJPN failed to adequately prepare Mr. Ross to testify on Plaintiffs' several deposition topics as FJPN's organizational designee. And again as with the NSJP deposition, Mr. Ross's testimony evinced significant evidence of spoliation.

Mr. Wallace's failure to prepare Mr. Ross as an organizational designee was patent. Mr. Ross testified that he had only reviewed Plaintiffs' deposition notice and the topics on which he was obligated to testify *for the first time yesterday evening*. *See* Exh. H (Wiczyk Decl.) ¶11. Unsurprisingly, Mr. Ross accordingly testified that he did not know anything about numerous Topics. *See id.* ¶¶10, 12, 14. And while Mr. Ross testified that he had reviewed documents in his personal possession and an unknown set of FJPN documents, it became clear that Mr. Ross had failed to review even the 15 FJPN documents that FJPN produced. *See id.* ¶10. Nor did Mr. Ross attempt to speak with any current members of FJPN's Steering Committee or access FJPN's internal documents in order to educate himself on the deposition Topics. *See id.* ¶¶11, 13-14, 16.

As to spoliation, Mr. Ross testified that FJPN had not begun to preserve documents until "April or May 2026." *Id.* ¶17. Indeed, Mr. Ross testified that, in his and other FJPN members' view, they had "no obligation to preserve evidence" on the theory that they had not been properly served. *Id.* ¶18. This despite Mr. Ross having signed a return receipt upon service of the Complaint in this case on June 9, 2025. *See id.* ¶17. Mr. Ross thus deliberately declined to take any steps to disable auto-delete functions from their primary communications applications, and he further testified he was unsure whether any FJPN Steering Committee members did—again, because he never asked them. *Id.* ¶¶19-20.

**III. Status of Third-Party Discovery**

On October 30, Mr. Wallace produced documents for subpoenaed NSJP members [redacted]. The folders containing responsive documents for [redacted] were empty, which Mr. Wallace confirmed meant that these individuals provided no responsive documents.

Mr. Wallace previously represented that he sent a do-it-yourself instruction kit to each subpoenaed Steering Committee member, and his collection would consist of documents that these individuals chose to produce to him. While it is not impossible that NSJP's Steering Committee members [redacted] lack responsive documents that other members of NSJP's Steering Committee (viz. [redacted]) possess, Plaintiffs are concerned that the Mr. Wallace's document-collection efforts may be inadequate. Among other potential problems, Plaintiffs are concerned that Mr. Wallace's kit categorically instructed subpoena recipients not to search for any documents created after December 31, 2024. As the Court explained in its October 29 Order, Plaintiffs are entitled to discovery (though more narrowly tailored for documents after 2025) for the entire

period from September 2023 to the present. Plaintiffs thus respectfully request that Mr. Wallace provide the Court with the instruction manual he sent to NSJP's Steering Committee members so that the Court can determine *in camera* whether Mr. Wallace's document-collection process represents a sufficient attempt to collect relevant documents. *Cf. Doe LS 340*, 710 F. Supp. 3d at 802 ("Plaintiffs are not entitled to probe into what exactly Uber's employees were told by its attorneys through the litigation holds, [but] they are certainly entitled to know what Uber's employees are doing with respect to collecting and preserving ESI. Even though such inquiry may, indirectly, implicate communications from counsel to the employees, the focus can and should be on the facts of what [Uber's] document retention and collection policies are, including the kinds and categories of ESI preserved[.]").

## IV. Additional Updates

The Court previously imposed a discovery stay "[t]o assist with the ability of NSJP, FJPN, and the Subpoena Respondents in focusing on reviewing and producing documents." Dkt. 224. Given that discovery is set to close on December 14, Plaintiffs must serve their final discovery requests no later than November 13, to allow NSJP and FJPN 30 days to respond. During his deposition, Mr. Eren stated that he was unprepared to discuss NSJP communications with Samidoun [redacted]. Plaintiffs intend to use their final interrogatories to gather information about these communications. Plaintiffs also respectfully request the Court's permission to serve requests for admission on NSJP and FJPN.

Respectfully submitted,

DATED: November 9, 2026

BROWN WEGNER LLP
CONSOVOY MCCARTHY PLLC
THE LOUIS D. BRANDEIS CENTER
FOR HUMAN RIGHTS UNDER LAW

By: /s/ Thomas R. McCarthy*
Thomas R. McCarthy*
Patrick Strawbridge*
Thomas A. Wilson*
Zachary P. Grouev*
Julius Kairey*
Richard A. Rosen*
Omer Wiczyk*
Evan Gottstein*

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned counsel of record for Plaintiffs certifies that a true and correct copy of the foregoing was electronically filed and served upon all counsel of record who have appeared in the case and are registered with the CM/ECF. Parties may access this filing through the Court's CM/ECF System.

Dated: November 9, 2026

/s/ Thomas R. McCarthy
Thomas R. McCarthy